# EXHIBIT A

Senate Bill 202

By: Senators Burns of the 23rd, Miller of the 49th, Dugan of the 30th, Ginn of the 47th, Anderson of the 24th and others

**AS PASSED**

A BILL TO BE ENTITLED

AN ACT

To comprehensively revise elections and voting; to amend Chapter 2 of Title 21 of the Official Code of Georgia Annotated, relating to elections and primaries generally, so as to revise a definition; to provide for the establishment of a voter intimidation and illegal election activities hotline; to limit the ability of the State Election Board and the Secretary of State to enter into certain consent agreements, settlements, and consent orders; to provide that the Secretary of State shall be a nonvoting ex officio member of the State Election Board; to provide for the appointment, confirmation, term, and removal of the chairperson of the State Election Board; to revise provisions relating to a quorum of such board; to require the Secretary of State to support and assist the State Election Board; to provide for the appointment of temporary and permanent replacement superintendents; to provide for procedures; to provide for performance reviews of local election officials requested by the State Election Board or local governing authorities; to provide for a definition; to provide for appointment and duties of performance review boards; to provide for reports of performance review boards; to provide for promulgation of rules and regulations; to provide additional requirements on the State Election Board's power to adopt emergency rules and regulations; to provide that no election superintendents or boards of registrars shall accept private funding; to provide that the State Election Board shall develop methods for distribution of donations; to provide that certain persons may serve as poll workers in other than the county

of their residence; to provide for the appointment of acting election superintendents in the event of a vacancy or incapacitation in the office of judge of the probate court of counties without a board of elections; to provide for resumption of the duties of election superintendent upon the filling of such vacancy; to provide for the compensation of such acting election superintendents; to provide for the reduction in size of certain precincts under certain circumstances; to provide for notice when polling places are relocated; to provide for certain reports; to provide limitations on the use of buses and other moveable facilities; to provide that the name and designation of the precinct appears on every ballot; to provide for allocation of voting equipment by counties and municipalities; to provide for the manner of handling the death of a candidate prior to a nonpartisan election; to provide that no candidate shall take or be sworn into any elected public office unless such candidate has received a majority of the votes cast for such office except as otherwise provided by law; to provide for participation in a multistate voter registration system; to revise procedures and standards for challenging electors; to provide for the printing of ballots on safety paper; to provide for the time and manner for applying for absentee ballots; to provide for certain limitations and sanctions on the distribution of absentee ballot applications; to provide for the manner of processing of absentee ballot applications; to provide for absentee ballot drop boxes and the requirements therefor; to provide for the time and manner of issuing absentee ballots; to provide for the manner of voting and returning absentee ballots; to revise the times for advance voting; to limit changes to advance voting locations in the period prior to an election; to provide notice requirements for changes of advance voting locations; to provide for the processing and tabulation of absentee ballots; to provide sanctions for improperly opening an absentee ballot; to provide for certain elector identification for absentee balloting; to provide for monitors and observers; to provide for poll watcher training; to provide for restrictions on the distribution of certain items within close proximity to the polls on election days; to provide for the voting and processing of provisional ballots; to provide for duplication panels for defective ballots that cannot be processed by tabulating machines; to

provide for ranked choice voting for military and overseas voters; to revise the time for runoffs; to revise eligibility to vote in runoffs; to provide for the deadline for election certification; to provide for a pilot program for the scanning and publishing of ballots; to provide for the inspection and copying of original ballots by certain persons following the completion of a recount; to provide for special primaries and special elections to fill vacancies in certain offices; to provide for public notice and observation of preparation of voting equipment; to provide for observation of elections and ballot processing and counting; to provide for the filling of vacancies in certain offices; to prohibit observing or attempting to observe how a voter marks or has marked his or her ballot or inducing a voter to do so; to prohibit the acceptance of a ballot for return without authorization; to prohibit the photographing or other recording of ballots and ballot markers; to amend Chapter 35 of Title 36 of the Official Code of Georgia Annotated, relating to home rule powers, so as to provide for the delay of reapportionment of municipal corporation election districts when census numbers are delayed; to amend Title 50 of the Official Code of Georgia Annotated, relating to general provisions regarding state government, so as to provide for the submission and suspension of emergency rules by the State Election Board; to provide that scanned ballot images are public records; to provide for legislative findings; to provide a short title; to provide for related matters; to provide for effective dates; to repeal conflicting laws; and for other purposes.

BE IT ENACTED BY THE GENERAL ASSEMBLY OF GEORGIA:

**SECTION 1.**

This Act shall be known and may be cited as the "Election Integrity Act of 2021."

**SECTION 2.**

The General Assembly finds and declares that:

(1) Following the 2018 and 2020 elections, there was a significant lack of confidence in Georgia election systems, with many electors concerned about allegations of rampant voter suppression and many electors concerned about allegations of rampant voter fraud;

(2) Many Georgia election processes were challenged in court, including the subjective signature-matching requirements, by Georgians on all sides of the political spectrum before and after the 2020 general election;

(3) The stress of the 2020 elections, with a dramatic increase in absentee-by-mail ballots and pandemic restrictions, demonstrated where there were opportunities to update existing processes to reduce the burden on election officials and boost voter confidence;

(4) The changes made in this legislation in 2021 are designed to address the lack of elector confidence in the election system on all sides of the political spectrum, to reduce the burden on election officials, and to streamline the process of conducting elections in Georgia by promoting uniformity in voting. Several examples will help explain how these goals are achieved;

(5) The broad discretion allowed to local officials for advance voting dates and hours led to significant variations across the state in total number of hours of advance voting, depending on the county. More than 100 counties have never offered voting on Sunday and many counties offered only a single day of weekend voting. Requiring two Saturday voting days and two optional Sunday voting days will dramatically increase the total voting hours for voters across the State of Georgia, and all electors in Georgia will have access to multiple opportunities to vote in person on the weekend for the first time;

(6) Some counties in 2020 received significant infusions of grant funding for election operations, while other counties received no such funds. Promoting uniformity in the distribution of funds to election operations will boost voter confidence and ensure that there

is no political advantage conferred by preferring certain counties over others in the distribution of funds;

(7) Elections in Georgia are administered by counties, but that can lead to problems for voters in counties with dysfunctional election systems. Counties with long-term problems of lines, problems with processing of absentee ballots, and other challenges in administration need accountability, but state officials are limited in what they are able to do to address those problems. Ensuring there is a mechanism to address local election problems will promote voter confidence and meet the goal of uniformity;

(8) Elections are a public process and public participation is encouraged by all involved, but the enthusiasm of some outside groups in sending multiple absentee ballot applications in 2020, often with incorrectly filled-in voter information, led to significant confusion by electors. Clarifying the rules regarding absentee ballot applications will build elector confidence while not sacrificing the opportunities for electors to participate in the process;

(9) The lengthy absentee ballot process also led to elector confusion, including electors who were told they had already voted when they arrived to vote in person. Creating a definite period of absentee voting will assist electors in understanding the election process while also ensuring that opportunities to vote are not diminished, especially when many absentee ballots issued in the last few days before the election were not successfully voted or were returned late;

(10) Opportunities for delivering absentee ballots to a drop box were first created by the State Election Board as a pandemic response. The drop boxes created by rule no longer existed in Georgia law when the emergency rules that created them expired. The General Assembly considered a variety of options and constructed a system that allows the use of drop boxes, while also ensuring the security of the system and providing options in emergency situations;

(11) The lengthy nine-week runoffs in 2020 were exhausting for candidates, donors, and electors. By adding ranked choice voting for military and overseas voters, the run-off

period can be shortened to a more manageable period for all involved, easing the burden on election officials and on electors;

(12) Counting absentee ballots in 2020 took an incredibly long time in some counties. Creating processes for early processing and scanning of absentee ballots will promote elector confidence by ensuring that results are reported quickly;

(13) The sanctity of the precinct was also brought into sharp focus in 2020, with many groups approaching electors while they waited in line. Protecting electors from improper interference, political pressure, or intimidation while waiting in line to vote is of paramount importance to protecting the election system and ensuring elector confidence;

(14) Ballot duplication for provisional ballots and other purposes places a heavy burden on election officials. The number of duplicated ballots has continued to rise dramatically from 2016 through 2020. Reducing the number of duplicated ballots will significantly reduce the burden on election officials and creating bipartisan panels to conduct duplication will promote elector confidence;

(15) Electors voting out of precinct add to the burden on election officials and lines for other electors because of the length of time it takes to process a provisional ballot in a precinct. Electors should be directed to the correct precinct on election day to ensure that they are able to vote in all elections for which they are eligible;

(16) In considering the changes in 2021, the General Assembly heard hours of testimony from electors, election officials, and attorneys involved in voting. The General Assembly made significant modifications through the legislative process as it weighed the various interests involved, including adding further weekend voting, changing parameters for out-of-precinct voting, and adding transparency for ballot images; and

(17) While each of the changes in this legislation in 2021 stands alone and is severable under Code Section 1-1-3, the changes in total reflect the General Assembly's considered judgment on the changes required to Georgia's election system to make it "easy to vote and

hard to cheat," applying the lessons learned from conducting an election in the 2020 pandemic.

**SECTION 3.**

Chapter 2 of Title 21 of the Official Code of Georgia Annotated, relating to elections and primaries generally, is amended by revising paragraph (35) of Code Section 21-2-2, relating to definitions, as follows:

"(35) 'Superintendent' means:

(A) Either the judge of the probate court of a county or the county board of elections, the county board of elections and registration, the joint city-county board of elections, or the joint city-county board of elections and registration, if a county has such;

(B) In the case of a municipal primary, the municipal executive committee of the political party holding the primary within a municipality or its agent or, if none, the county executive committee of the political party or its agent;

(C) In the case of a nonpartisan municipal primary, the person appointed by the proper municipal executive committee; ~~and~~

(D) In the case of a municipal election, the person appointed by the governing authority pursuant to the authority granted in Code Section 21-2-70; and

(E) In the case of the State Election Board exercising its powers under subsection (f) of Code Section 21-2-33.1, the individual appointed by the State Election Board to exercise the power of election superintendent."

**SECTION 4.**

Said chapter is further amended by revising Code Section 21-2-3, which was previously reserved, as follows:

"21-2-3.

The Attorney General shall have the authority to establish and maintain a telephone hotline for the use of electors of this state to file complaints and allegations of voter intimidation and illegal election activities. Such hotline shall, in addition to complaints and reports from identified persons, also accept anonymous tips regarding voter intimidation and election fraud. The Attorney General shall have the authority to review each complaint or allegation of voter intimidation or illegal election activities within three business days or as expeditiously as possible and determine if such complaint or report should be investigated or prosecuted. ~~Reserved.~~"

**SECTION 5.**

Said chapter is further amended by revising Code Section 21-2-30 relating to creation, composition, terms of service, vacancies, quorum, seal, bylaws, and meetings of the State Board of Elections as follows:

"21-2-30.

(a) There is created a state board to be known as the State Election Board, to be composed of ~~the Secretary of State~~ a chairperson elected by the General Assembly, an elector to be elected by a majority vote of the Senate of the General Assembly at its regular session held in each odd-numbered year, an elector to be elected by a majority vote of the House of Representatives of the General Assembly at its regular session held in each odd-numbered year, and a member of each political party to be nominated and appointed in the manner provided in this Code section. No person while a member of the General Assembly shall serve as a member of the board.

(a.1)(1) The chairperson shall be elected by the General Assembly in the following manner: A joint resolution which shall fix a definite time for the nomination and election of the chairperson may be introduced in either branch of the General Assembly. Upon passage of the resolution by a majority vote of the membership of the Senate and House of Representatives, it shall be the duty of the Speaker of the House of Representatives to

call for the nomination and election of the chairperson at the time specified in the resolution, at which time the name of the qualified person receiving a majority vote of the membership of the House of Representatives shall be transmitted to the Senate for confirmation. Upon the qualified person's receiving a majority vote of the membership of the Senate, he or she shall be declared the duly elected chairperson; and the Governor shall be notified of his or her election by the Secretary of the Senate. The Governor is directed to administer the oath of office to the chairperson and to furnish the chairperson with a properly executed commission of office certifying his or her election.

(2) The chairperson of the board shall be nonpartisan. At no time during his or her service as chairperson shall the chairperson actively participate in a political party organization or in the campaign of a candidate for public office, nor shall he or she make any campaign contributions to a candidate for public office. Furthermore, to qualify for appointment as chairperson, in the two years immediately preceding his or her appointment, a person shall not have qualified as a partisan candidate for public office, participated in a political party organization or the campaign of a partisan candidate for public office, or made any campaign contributions to a partisan candidate for public office.

(3) The term of office of the chairperson shall continue until a successor is elected as provided in paragraph (1) of this subsection. In the event of a vacancy in the position of chairperson at a time when the General Assembly is not in session, it shall be the duty of the Governor and the Governor is empowered and directed to appoint a chairperson possessing the qualifications as provided in this subsection who shall serve as chairperson until the next regular session of the General Assembly, at which time the nomination and election of a chairperson shall be held by the General Assembly as provided in paragraph (1) of this subsection.

(b) A member elected by a house of the General Assembly shall take office on the day following the adjournment of the regular session in which elected and shall serve for a term

of two years and until his or her successor is elected and qualified, unless sooner removed. An elected member of the board may be removed at any time by a majority vote of the house which elected him or her. In the event a vacancy should occur in the office of such a member of the board at a time when the General Assembly is not in session, then the President of the Senate shall thereupon appoint an elector to fill the vacancy if the prior incumbent of such office was elected by the Senate or appointed by the President of the Senate; and the Speaker of the House of Representatives shall thereupon appoint an elector to fill the vacancy if the prior incumbent of such office was elected by the House of Representatives or appointed by the Speaker of the House of Representatives. A member appointed to fill a vacancy may be removed at any time by a majority vote of the house whose presiding officer appointed him or her.

(c) Within 30 days after April 3, 1968, the state executive committee of each political party shall nominate a member of its party to serve as a member of the State Election Board and, thereupon, the Governor shall appoint such nominee as a member of the board to serve for a term of two years from the date of the appointment and until his or her successor is elected and qualified, unless sooner removed. Thereafter, such state executive committee shall select a nominee for such office on the board within 30 days after a vacancy occurs in such office and shall also select a nominee at least 30 days prior to the expiration of the term of each incumbent nominated by it; and each such nominee shall be immediately appointed by the Governor as a member of the board to serve for the unexpired term in the case of a vacancy, and for a term of two years in the case of an expired term. Each successor, other than one appointed to serve an unexpired term, shall serve for a term of two years; and the terms shall run consecutively from the date of the initial gubernatorial appointment. No person shall be eligible for nomination by such state executive committee unless he or she is an elector and a member in good standing of the political party of the committee. Such a member shall cease to serve on the board and his or her office shall be

abolished if and when his or her political organization shall cease to be a 'political party' as defined in Code Section 21-2-2.

(d) The Secretary of State shall be ~~the chairperson of the board~~ an ex officio nonvoting member of the board. Three voting members of the board shall constitute a quorum, and no vacancy on the board shall impair the right of the quorum to exercise all the powers and perform all the duties of the board. The board shall adopt a seal for its use and bylaws for its own government and procedure.

(e) Meetings shall be held whenever necessary for the performance of the duties of the board on call of the chairperson or whenever any two of its members so request. Minutes shall be kept of all meetings of the board and a record kept of the vote of each member on all questions coming before the board. The chairperson shall give to each member of the board prior notice of the time and place of each meeting of the board.

(f) If any member of the board, other than the Secretary of State, shall qualify as a candidate for any public office which is to be voted upon in any primary or election regulated by the board, that member's position on the board shall be immediately vacated and such vacancy shall be filled in the manner provided for filling other vacancies on the board."

**SECTION 6.**

Said chapter is further amended in Code Section 21-2-33.1, relating to enforcement of chapter, by adding new subsections to read as follows:

"(f) After following the procedures set forth in Code Section 21-2-33.2, the State Election Board may suspend county or municipal superintendents and appoint an individual to serve as the temporary superintendent in a jurisdiction. Such individual shall exercise all the powers and duties of a superintendent as provided by law, including the authority to make all personnel decisions related to any employees of the jurisdiction who assist with carrying

out the duties of the superintendent, including, but not limited to, the director of elections, the election supervisor, and all poll officers.

(g) At no time shall the State Election Board suspend more than four county or municipal superintendents pursuant to subsection (f) of this Code section.

(h) The Secretary of State shall, upon the request of the State Election Board, provide any and all necessary support and assistance that the State Election Board, in its sole discretion, determines is necessary to enforce this chapter or to carry out or conduct any of its duties."

**SECTION 7.**

Such chapter is further amended in Subpart 1 of Part 1 of Article 2, relating to the State Election Board, by adding a new Code section to read as follows:

"21-2-33.2.

(a) The governing authority of a county or municipality, as applicable, following a recommendation based on an investigation by a performance review board pursuant to Code Section 21-2-106 may petition the State Election Board, through the Secretary of State, for extraordinary relief pursuant to this Code section. In addition, the State Election Board, on its own motion or following a recommendation based on an investigation by a performance review board pursuant to Part 5 of this article, may pursue the extraordinary relief provided in this Code section.

(b) Upon receiving a petition or taking appropriate action pursuant to subsection (a) of this Code section, the State Election Board shall conduct a preliminary investigation to determine if sufficient cause exists to proceed to a full hearing on the petition. Such preliminary investigation shall be followed by a preliminary hearing which shall take place not less than 30 days nor more than 90 days after the Secretary of State receives the petition. Service of the petition shall be made by hand delivery or by statutory overnight delivery to the Secretary of State's office. At such preliminary hearing, the State Election Board shall determine if sufficient cause exists to proceed to a full hearing on the petition

or if the petition should be dismissed. The State Election Board shall promulgate rules and regulations for conducting such preliminary investigation and preliminary hearing.

(c) Following the preliminary hearing described in subsection (b) of this Code section, the State Election Board may suspend a county or municipal superintendent pursuant to this Code section if at least three members of the board find, after notice and hearing, that:

(1) By a preponderance of the evidence, a county or municipal superintendent has committed at least three violations of this title or of State Election Board rules and regulations, in the last two general election cycles; and the county or municipal superintendent has not sufficiently remedied the violations; or

(2) By clear and convincing evidence, the county or municipal superintendent has, for at least two elections within a two-year period, demonstrated nonfeasance, malfeasance, or gross negligence in the administration of the elections.

(d) A majority of the members of a board of elections, board of elections and registration, or county commission; a probate judge who serves as election superintendent, or, for a sole commissioner form of government, a sole commissioner may petition the Secretary of State to continue any hearing scheduled pursuant to this Code section. Upon a showing of good cause, the State Election Board may in its sound discretion continue any such hearing. Notwithstanding any other provision of law, deliberations held on such petition by the State Election Board shall not be open to the public; provided, however, that testimony shall be taken in an open meeting and a vote on the recommendation shall be taken in an open meeting following the hearing or at the next regularly scheduled meeting.

(e)(1) If the State Election Board makes a finding in accordance with subsection (c) of this Code section, it may suspend the superintendent or board of registrars with pay and appoint an individual to serve as the temporary superintendent. The temporary superintendent who is appointed shall be otherwise qualified to serve or meet the necessary qualifications within three months of appointment.

(2) Any superintendent suspended under this Code section may petition the State Election Board for reinstatement no earlier than 30 days following suspension and no later than 60 days following suspension. In the event that a suspended superintendent or registrar does not petition for reinstatement within the allotted time period, his or her suspension shall be converted into permanent removal, and the temporary superintendent shall become a permanent superintendent subject to removal by the jurisdiction not less than nine months after his or her appointment.

(3) If, after the expiration of the nine-month period following the appointment, the jurisdiction removes the permanent superintendent, any provisions of local or general law governing appointment of the superintendent shall govern the appointment of the superintendent.

(4) If, at any time after the expiration of the nine-month period following the appointment, at least three members of the State Election Board find, after notice and hearing, that the jurisdiction no longer requires a superintendent appointed under this Code section, any provisions of local or general law governing appointment of the superintendent shall govern the appointment of the superintendent.

(f) Upon petition for reinstatement by a superintendent suspended pursuant to a finding under paragraph (1) of subsection (c) of this Code section, the State Election Board shall conduct a hearing for the purpose of receiving evidence relative to whether the superintendent's continued service as superintendent is more likely than not to improve the ability of the jurisdiction to conduct elections in a manner that complies with this chapter. The suspended superintendent shall be given at least 30 days' notice prior to such hearing and such hearing shall be held no later than 90 days after the petition is filed in accordance with Chapter 13 of Title 50, the 'Georgia Administrative Procedure Act,' except that the State Election Board shall have the power to call witnesses and request documents on its own initiative. If the State Election Board denies the petition, it shall be deemed a final agency decision under Chapter 13 of Title 50, the 'Georgia Administrative Procedure Act,'

and it may be appealed in a manner consistent with Code Section 50-13-19. The Attorney General or his or her designee shall represent the interests of the State Election Board in any such judicial review.

(g) A local government shall not expend any public funds for attorneys' fees or expenses of litigation relating to the proceedings initiated pursuant to this Code section except to the extent such fees and expenses are incurred prior to and through the recommendation of the State Election Board as provided in subsection (c) of this Code section; provided, however, that nothing in this subsection shall be construed to prohibit an insurance provider from covering attorneys' fees or expenses of litigation under an insurance policy. Any suspended superintendent who is reinstated by the State Election Board pursuant to this Code section may be reimbursed by the local government for his or her reasonable attorneys' fees and related expenses incurred in pursuing such reinstatement.

(h) For purposes of this Code section, where a judge of probate court serves as the superintendent, the suspension authorized by this Code section shall apply only to the judge of probate court's duties as a superintendent and not as a judge of probate court.

(i) When the State Election Board exercises its authority under subsection (f) of Code Section 21-2-33.1, the jurisdiction involved shall not diminish or reduce the funds already budgeted or appropriated by the jurisdiction pursuant to Code Section 21-2-71 and shall pay any necessary and reasonable funds over that amount, as determined by the temporary superintendent, to faithfully carry out their obligations under Code Section 21-2-70."0

**SECTION 8.**

Said chapter is further amended in Subpart 1 of Part 1 of Article 2, relating to the State Election Board, by adding new Code sections to read as follows:

"21-2-35.

(a) Notwithstanding any other provision of this chapter, Chapter 3 of Title 38, relating to emergency management, or Chapter 13 of Title 50, the "Georgia Administrative Procedure

Act," to the contrary, the State Election Board may only adopt emergency rules or regulations in circumstances of imminent peril to public health, safety, or welfare. To adopt any such emergency rule or regulation, in addition to any other rule-making requirement of this chapter or Chapter 13 of Title 50, the State Election Board shall:

(1) Give notice to the public of its intended action;

(2) Immediately upon the setting of the date and time of the meeting at which such emergency rule or regulation is to be considered give notice by email of its intended action to:

(A) The Governor;

(B) The Lieutenant Governor;

(C) The Speaker of the House of Representatives;

(D) The chairpersons of the standing committees of each house of the General Assembly tasked with election matters;

(E) Legislative counsel; and

(F) The chief executive officer of each political party registered pursuant to subsection (a) of Code Section 21-2-110; and

(3) State in the notices required by paragraphs (1) and (2) of this subsection the nature of the emergency and the manner in which such emergency represents an imminent peril to public health, safety, or welfare.

(b) Upon adoption or promulgation of any emergency rule or regulation pursuant to this Code section, a majority of the State Election Board shall certify in writing that such emergency rule or regulation was made in strict and exact compliance with the provisions of this chapter and subsection (e) of Code Section 50-13-4.

(c) In the event of any conflict between this Code section and any provision of Chapter 13 of Title 50, this Code section shall govern and supersede any such conflicting provision.

21-2-36.

The State Election Board, the members thereof, the Secretary of State, and any of their attorneys or staff, at least five business days prior to entering into any consent agreement, settlement, or consent order that limits, alters, or interprets any provision of this chapter, shall notify the House of Representatives and Senate Committees on the Judiciary of such proposed consent agreement, settlement, or consent order."

**SECTION 9.**

Said chapter is further amended by revising Code Section 21-2-71, relating to payment by county or municipality of superintendent's expenses, as follows:

"21-2-71.

(a) The governing authority of each county or municipality shall appropriate annually and from time to time, to the superintendent of such county or municipality, the funds that it shall deem necessary for the conduct of primaries and elections in such county or municipality and for the performance of his or her other duties under this chapter, including:

(1) Compensation of the poll officers, custodians, and other assistants and employees provided for in this chapter;

(2) Expenditures and contracts for expenditures by the superintendent for polling places;

(3) Purchase or printing, under contracts made by the superintendent, of all ballots and other election supplies required by this chapter, or which the superintendent shall consider necessary to carry out the provisions of this chapter;

(4) Maintenance of all voting equipment required by this chapter, or which the superintendent shall consider necessary to carry out this chapter; and

(5) All other expenses arising out of the performance of his or her duties under this chapter.

(b) No superintendent shall take or accept any funding, grants, or gifts from any source other than from the governing authority of the county or municipality, the State of Georgia, or the federal government.

(c) The State Election Board shall study and report to the General Assembly a proposed method for accepting donations intended to facilitate the administration of elections and a method for an equitable distribution of such donations state wide by October 1, 2021.″

**SECTION 10.**

Said chapter is further amended in Part 3 of Article 2, relating to superintendents, by adding a new Code section to read as follows:

″21-2-74.1.

(a) If a county does not have a board of elections and:

(1) There is a vacancy in the office of judge of the probate court that has not been filled pursuant to Code Section 15-9-10 or 15-9-11; or

(2) The judge of the probate court is incapacitated and unable to perform the duties of the election superintendent for a period of more than five days;

The chief judge of the superior court in the circuit to which the county is assigned shall appoint a qualified individual to serve as the acting election superintendent during such vacancy or incapacitation.

(b) Upon the filling of a vacancy in the office of judge of the probate court pursuant to Code Section 15-9-10 or 15-9-11, the judge of the probate court shall resume the duties of the election superintendent.

(c) The sole county commissioner or the board of county commissioners shall fix the compensation of the individual who serves as acting election superintendent until the vacancy is filled or the incapacitation ends. The compensation shall be paid from the general funds of the county.″

**SECTION 11.**

Said chapter is further amended by revising subsection (a) of Code Section 21-2-92, relating to qualifications of poll officers, service during municipal election or primary, and Student Teen Election Participant (STEP) program, as follows:

"(a)(1) Poll officers appointed pursuant to Code Sections 21-2-90 and 21-2-91 shall be judicious, intelligent, and upright citizens of the United States, residents of or otherwise employed by the county in which they are appointed except as otherwise provided in paragraph (2) of this subsection or, in the case of municipal elections, residents of or otherwise employed by the municipality in which the election is to be held or of the county in which that municipality is located, 16 years of age or over, and shall be able to read, write, and speak the English language. No poll officer shall be eligible for any nomination for public office or to be voted for at a primary or election at which the poll officer shall serve. No person who is otherwise holding public office, other than a political party office, shall be eligible to be appointed as or to serve as a poll officer. A parent, spouse, child, brother, sister, father-in-law, mother-in-law, son-in-law, daughter-in-law, brother-in-law, or sister-in-law of a candidate shall not be eligible to serve as a poll officer in any precinct in which such candidate's name appears on the ballot in any primary or election.

(2) A poll officer may be allowed to serve in a county that adjoins the county in which such poll officer resides if, in the discretion of the election superintendent of the county in which such person resides, the waiver of such county residency or county employment requirements of paragraph (1) of this subsection do not impair the ability of the county to provide adequate staff for the performance of election duties under this chapter and if, in the discretion of the county election superintendent in which such person wishes to serve, sufficient need for more poll officers exists."

**SECTION 12.**

Said chapter is further amended in Article 2, relating to supervisory boards and officers, by adding a new part to read as follows:

"Part 5

21-2-105.

As used in this part, the term 'local election official' means:

(1) A county board of elections or a county board of elections and registration established pursuant to Code Section 21-2-40;

(2) A judge of the probate court fulfilling the role of election superintendent; or

(3) A municipal election superintendent.

21-2-106.

(a) The following officials may request that a performance review of a local election official be conducted:

(1) The governing authority of the same jurisdiction as the local election official;

(2) For counties represented by more than three members of the Georgia House of Representatives and Georgia Senate, at least two members of the Georgia House of Representatives and two members of the Georgia Senate who represent the county; and

(3) For counties represented by fewer than four members of the Georgia House of Representatives and Georgia Senate, at least one member of the Georgia House of Representatives and one member of the Georgia Senate who represent the county.

Such request shall be transmitted to the State Election Board which shall appoint an independent performance review board within 30 days after receiving such resolution. The State Election Board shall appoint three competent persons to serve as members of the performance review board, one of whom shall be an employee of the elections division of

the Secretary of State and two of whom shall be local election officials, provided that no such appointee shall be a local election official for the county or municipality, as applicable, under review.

(b) It shall be the duty of a performance review board to make a thorough and complete investigation of the local election official with respect to all actions of the local election official regarding the technical competency in the maintenance and operation of election equipment, proper administration and oversight of registration and elections, and compliance with state law and regulations. The performance review board shall issue a written report of its findings to the Secretary of State, the State Election Board, and the local governing authority which shall include such evaluations, judgments, and recommendations as it deems appropriate. The local governing authority shall reimburse the members of the performance review board for reasonable expenses incurred in the performance of their duties, including mileage, meals, lodging, and costs of materials.

(c) The findings of the report of the review board under subsection (b) of this Code section or of any audit or investigation performed by the State Election Board may be grounds for removal of one or more local election officials pursuant to Code Section 21-2-33.2.

21-2-107.

(a) The State Election Board shall appoint an independent performance review board on its own motion if it determines that there is evidence which calls into question the competence of a local election official regarding the oversight and administration of elections, voter registration, or both, with state law and regulations.

(b) The State Election Board shall appoint three competent persons to serve as members of the performance review board, one of whom shall be an employee of the elections division of the office of Secretary of State and two of whom shall be local election officials, provided that none of the three appointees shall be a local election official for the county or municipality under review.

(c) The performance review board shall issue a written report of its findings to the State Election Board and the Secretary of State and the applicable local governing authority, which shall include such evaluations, judgments, and recommendations as it deems appropriate. The local governing authority shall reimburse the members of the performance review board for reasonable expenses incurred in the performance of their duties, including mileage, meals, lodging, and costs of materials.

(d) The findings of the report of the performance review board under subsection (c) of this Code section or of any audit or investigation performed by the State Election Board may be grounds for removal of a local election official pursuant to Code Section 21-2-33.2.

21-2-108.

The State Election Board shall promulgate such rules and regulations as may be necessary for the administration of this part.″

**SECTION 13.**

Said chapter is further amended in Code Section 21-2-134, relating to withdrawal, death, or disqualification of candidate for office, return of qualifying fee, and nomination certificate, by adding a new subsection to read as follows:

″(g) In the event of the death of a candidate on the ballot in a nonpartisan election prior to such nonpartisan election, such candidate's name shall remain on the ballot and all votes cast for such candidate shall be counted. If the deceased candidate receives the requisite number of votes to be elected, such contest shall be handled as a failure to fill the office under Code Section 21-2-504. If the deceased candidate receives enough votes to be in a run-off election, such run-off election shall be conducted as provided in Code Section 21-2-501 and the candidates in such runoff shall be determined in accordance with paragraph (2) of subsection (a) of Code Section 21-2-501.″

**SECTION 14.**

Said chapter is further amended by revising subsection (f) of Code Section 21-2-212, relating to county registrars, appointment, certification, term of service, vacancies, compensation and expenses of chief registrar, registrars, and other officers and employees, and budget estimates, as follows:

"(f) The board of registrars of each county shall prepare annually a budget estimate in which it shall set forth an itemized list of its expenditures for the preceding two years and an itemized estimate of the amount of money necessary to be appropriated for the ensuing year and shall submit the same at the time and in the manner and form other county budget estimates are required to be filed. No board of registrars shall take or accept any funding, grants, or gifts from any source other than from the governing authority of the county, the State of Georgia, or the federal government."

**SECTION 15.**

Said chapter is further amended by revising Code Section 21-2-229, relating to challenge of applicant for registration by other electors, notice and hearing, and right of appeal, as follows:

"21-2-229.

(a) Any elector of a county or municipality may challenge the qualifications of any person applying to register to vote in the county or municipality and may challenge the qualifications of any elector of the county or municipality whose name appears on the list of electors. Such challenges shall be in writing and shall specify distinctly the grounds of the challenge. There shall not be a limit on the number of persons whose qualifications such elector may challenge.

(b) Upon such challenge being filed with the board of registrars, the registrars shall set a hearing on such challenge within ten business days after serving notice of the challenge. Notice of the date, time, and place of the hearing shall be served upon the person whose

qualifications are being challenged along with a copy of such challenge and upon the elector making the challenge within ten business days following the filing of the challenge. The person being challenged shall receive at least three days' notice of the date, time, and place of the hearing. Such notice shall be served either by first-class mail addressed to the mailing address shown on the person's voter registration records or in the manner provided in subsection (c) of Code Section 21-2-228.

(c) The burden shall be on the elector making the challenge to prove that the person being challenged is not qualified to remain on the list of electors. The board of registrars shall have the authority to issue subpoenas for the attendance of witnesses and the production of books, papers, and other material upon application by the person whose qualifications are being challenged or the elector making the challenge. The party requesting such subpoenas shall be responsible to serve such subpoenas and, if necessary, to enforce the subpoenas by application to the superior court. Any witness so subpoenaed, and after attending, shall be allowed and paid the same mileage and fee as allowed and paid witnesses in civil actions in the superior court.

(d) After the hearing provided for in this Code section, the registrars shall determine said challenge and shall notify the parties of their decision. If the registrars uphold the challenge, the person's application for registration shall be rejected or the person's name removed from the list of electors, as appropriate. The elector shall be notified of such decision in writing either by first-class mail addressed to the mailing address shown on the person's voter registration records or in the manner provided in subsection (c) of Code Section 21-2-228 for other notices.

(e) Either party shall have a right of appeal from the decision of the registrars to the superior court by filing a petition with the clerk of the superior court within ten days after the date of the decision of the registrars. A copy of such petition shall be served upon the other parties and the registrars. Unless and until the decision of the registrars is reversed by the court, the decision of the registrars shall stand.

(f) Failure to comply with the provisions of this Code section by the board of registrars shall subject such board to sanctions by the State Election Board.″

**SECTION 16.**

Said chapter is further amended by revising Code Section 21-2-230, relating to challenge of persons on list of electors by other electors, procedure;, hearing, and right of appeal, as follows:

″21-2-230.

(a) Any elector of the county or municipality may challenge the right of any other elector of the county or municipality, whose name appears on the list of electors, to vote in an election. Such challenge shall be in writing and specify distinctly the grounds of such challenge. Such challenge may be made at any time prior to the elector whose right to vote is being challenged voting at the elector's polling place or, if such elector cast an absentee ballot, prior to 5:00 P.M. on the day before the ~~election~~ absentee ballots are to begin to be scanned and tabulated; provided, however, that challenges to persons voting by absentee ballot in person at the office of the registrars or the absentee ballot clerk shall be made prior to such person's voting. There shall not be a limit on the number of persons whose qualifications such elector may challenge.

(b) Upon the filing of such challenge, the board of registrars shall immediately consider such challenge and determine whether probable cause exists to sustain such challenge. If the registrars do not find probable cause, the challenge shall be denied. If the registrars find probable cause, the registrars shall notify the poll officers of the challenged elector's precinct or, if the challenged elector voted by absentee ballot, notify the poll officers at the absentee ballot precinct and, if practical, notify the challenged elector and afford such elector an opportunity to answer.

(c) If the challenged elector appears at the polling place to vote, such elector shall be given the opportunity to appear before the registrars and answer the grounds of the challenge.

(d) If the challenged elector does not cast an absentee ballot and does not appear at the polling place to vote and if the challenge is based on grounds other than the qualifications of the elector to remain on the list of electors, no further action by the registrars shall be required.

(e) If the challenged elector cast an absentee ballot and it is not practical to conduct a hearing prior to the close of the polls and the challenge is based upon grounds other than the qualifications of the elector to remain on the list of electors, the absentee ballot shall be treated as a challenged ballot pursuant to subsection (e) of Code Section 21-2-386. No further action by the registrars shall be required.

(f) If the challenged elector does not cast an absentee ballot and does not appear at the polling place to vote and the challenge is based on the grounds that the elector is not qualified to remain on the list of electors, the board of registrars shall proceed to hear the challenge pursuant to Code Section 21-2-229.

(g) If the challenged elector cast an absentee ballot and the challenge is based upon grounds that the challenged elector is not qualified to remain on the list of electors, the board of registrars shall proceed to conduct a hearing on the challenge on an expedited basis prior to the certification of the consolidated returns of the election by the election superintendent. The election superintendent shall not certify such consolidated returns until such hearing is complete and the registrars have rendered their decision on the challenge. If the registrars deny the challenge, the superintendent shall proceed to certify the consolidated returns. If the registrars uphold the challenge, the name of the challenged elector shall be removed from the list of electors and the ballot of the challenged elector shall be rejected and not counted and, if necessary, the returns shall be adjusted to remove any votes cast by such elector. The elector making the challenge and the challenged elector may appeal the decision of the registrars in the same manner as provided in subsection (e) of Code Section 21-2-229.

(h) If the challenged elector appears at the polls to vote and it is practical to conduct a hearing on the challenge prior to the close of the polls, the registrars shall conduct such hearing and determine the merits of the challenge. If the registrars deny the challenge, the elector shall be permitted to vote in the election notwithstanding the fact that the polls may have closed prior to the time the registrars render their decision and the elector can actually vote, provided that the elector proceeds to vote immediately after the decision of the registrars. If the registrars uphold the challenge, the challenged elector shall not be permitted to vote and, if the challenge is based upon the grounds that the elector is not qualified to remain on the list of electors, the challenged elector's name shall be removed from the list of electors.

(i) If the challenged elector appears at the polls to vote and it is not practical to conduct a hearing prior to the close of the polls or if the registrars begin a hearing and subsequently find that a decision on the challenge cannot be rendered within a reasonable time, the challenged elector shall be permitted to vote by casting a challenged ballot on the same type of ballot that is used by the county or municipality for provisional ballots. Such challenged ballot shall be sealed in double envelopes as provided in subsection (a) of Code Section 21-2-419 and, after having the word 'Challenged,' the elector's name, and the alleged cause of the challenge written across the back of the outer envelope, the ballot shall be deposited by the person casting such ballot in a secure, sealed ballot box notwithstanding the fact that the polls may have closed prior to the time the registrars make such a determination, provided that the elector proceeds to vote immediately after such determination of the registrars. In such cases, if the challenge is based upon the grounds that the challenged elector is not qualified to remain on the list of electors, the registrars shall proceed to finish the hearing prior to the certification of the consolidated returns of the election by the election superintendent. If the challenge is based on other grounds, no further action shall be required by the registrars. The election superintendent shall not certify such consolidated returns until such hearing is complete and the registrars have

rendered their decision on the challenge. If the registrars deny the challenge, the superintendent shall proceed to certify the consolidated returns. If the registrars uphold the challenge, the name of the challenged elector shall be removed from the list of electors and the ballot of the challenged elector shall be rejected and not counted and, if necessary, the returns shall be adjusted to remove any votes cast by such elector. The elector making the challenge and the challenged elector may appeal the decision of the registrars in the same manner as provided in subsection (e) of Code Section 21-2-229.

(j) Failure to comply with the provisions of this Code section by the board of registrars shall subject such board to sanctions by the State Election Board.″

**SECTION 17.**

Said chapter is further amended in subsection (b) of Code Section 21-2-232, relating to removal of elector's name from list of electors, by adding a new paragraph to read as follows:

″(3) Once becoming a member of the nongovernmental entity described in subsection (d) of Code Section 21-2-225, the Secretary of State shall obtain regular information from such entity regarding electors who may have moved to another state, died, or otherwise become ineligible to vote in Georgia. The Secretary of State shall use such information to conduct list maintenance on the list of eligible electors.″

**SECTION 18.**

Said chapter is further amended by revising Code Section 21-2-263, relating to reduction in size of, or provision of additional voting equipment or poll workers to, precincts containing more than 2,000 electors when voting in such precincts at previous general election not completed one hour after closing of polls, as follows:

"21-2-263.

(a) If, at the previous general election, a precinct contained more than 2,000 electors and if all those electors desiring to vote had not completed voting one hour following the closing of the polls, the superintendent shall either reduce the size of said precinct so that it shall contain not more than 2,000 electors in accordance with the procedures prescribed by this chapter for the division, alteration, and consolidation of precincts no later than 60 days before the next general election or provide additional voting equipment or poll workers, or both, before the next general election. For administering this Code section, the chief manager of a precinct which contained more than 2,000 electors at the previous general election shall submit a report thereof, under oath, to the superintendent as to the time required for completion of voting by all persons in line at the time the polls were closed. Any such change in the boundaries of a precinct shall conform with the requirements of subsection (a) of Code Section 21-2-261.1.

(b) If, at the previous general election, a precinct contained more than 2,000 electors and if electors desiring to vote on the day of the election had to wait in line for more than one hour before checking in to vote, the superintendent shall either reduce the size of such precinct so that it shall contain not more than 2,000 electors in accordance with the procedures prescribed by this chapter for the division, alteration, and consolidation of precincts no later than 60 days before the next general election or provide additional voting equipment or poll workers, or both, before the next general election. For administering this Code section, the chief manager of a precinct which contained more than 2,000 electors at the previous general election shall submit a report thereof to the superintendent of the reported time from entering the line to checking in to vote. Such wait time shall be measured no fewer than three different times throughout the day (in the morning, at midday, and prior to the close of polls) and such results shall be recorded on a form provided by the Secretary of State. Any such change in the boundaries of a precinct shall conform with the requirements of subsection (a) of Code Section 21-2-261.1."

**SECTION 19.**

Said chapter is further amended by revising subsection (a) of Code Section 21-2-265, relating to duty of superintendent to select polling places, change, petition objecting to proposed change, space for political parties holding primaries, facilities for disabled voters, selection of polling place outside precinct to better serve voters, and restriction on changing polling place on or near date of election, as follows:

″(a) The superintendent of a county or the governing authority of a municipality shall select and fix the polling place within each precinct and may, either on his, her, or its own motion or on petition of ten electors of a precinct, change the polling place within any precinct. Except in case of an emergency or unavoidable event occurring within ten days of a primary or election, which emergency or event renders any polling place unavailable for use at such primary or election, the superintendent of a county or the governing authority of a municipality shall not change any polling place until notice of the proposed change shall have been published for once a week for two consecutive weeks in the legal organ for the county or municipality in which the polling place is located. Additionally, ~~on the first election~~ during the seven days before and on the day of the first election following such change, a notice of such change shall be posted on the previous polling place and at three other places in the immediate vicinity thereof. Each notice posted shall state the location to which the polling place has been moved and shall direct electors to the new location. At least one notice at the previous polling place shall be a minimum of four feet by four feet in size. The occupant or owner of the previous polling place, or his or her agent, shall be notified in writing of such change at the time notice is published in the legal organ.″

**SECTION 20.**

Said chapter is further amended by revising subsections (a) and (b) of Code Section 21-2-266, relating to use of public buildings as polling places, use of portable or movable facilities, and unrestricted access to residential communities, as follows:

"(a) In selecting polling places and advance voting locations, the superintendent of a county or the governing authority of a municipality shall select, wherever practicable and consistent with subsection (d) of Code Section 21-2-265, schoolhouses, municipal buildings or rooms, or other public buildings for that purpose. In selecting polling places and advance voting locations, the superintendent of a county or the governing authority of a municipality shall give consideration to the comfort and convenience those places to be selected will provide to both electors and poll officers. School, county, municipal, or other governmental authorities, upon request of the superintendent of a county or the governing authority of a municipality, shall make arrangements for the use of their property for polling places or advance voting locations; provided, however, that such use shall not substantially interfere with the use of such property for the purposes for which it is primarily intended.

(b) The superintendent of a county or the governing authority of a municipality shall have discretion to procure and provide portable or movable polling facilities of adequate size for any precinct; provided, however, that buses and other readily movable facilities shall only be used in emergencies declared by the Governor pursuant to Code Section 38-3-51 to supplement the capacity of the polling place where the emergency circumstance occurred."

**SECTION 20A.**

Said chapter is further amended by revising subsection (a) of Code Section 21-2-284, relating to form of official primary ballot and attestation regarding receiving value in exchange for vote, as follows:

″(a) In each primary separate official ballots shall be prepared for the political party holding the primary. At the top of each ballot shall be printed in prominent type the words 'OFFICIAL PRIMARY BALLOT OF ______________ PARTY FOR,' followed by the name and designation of the precinct for which it is prepared and the name and date of the primary.″

**SECTION 20B.**

Said chapter is further amended by revising Code Section 21-2-284.1, relating to form of ballot in nonpartisan municipal primaries, as follows:

″21-2-284.1.

In the case of nonpartisan municipal primaries, the form of the official nonpartisan primary ballot shall conform insofar as practicable to the form of the official primary ballot as detailed in Code Section 21-2-284, including the printing of the name and designation of the precinct on the top of the ballot, except that:

(1) The following shall be printed at the top of each ballot in prominent type:

'OFFICIAL NONPARTISAN PRIMARY BALLOT OF

______________________

(Name of Municipality)';

(2) There shall be no name or designation of any political organization nor any words, designation, or emblems descriptive of a candidate's political affiliation printed under or after any candidate's name which is printed on the ballot; and

(3) The incumbency of a candidate seeking election for the public office he or she then holds shall be indicated on the ballot.″

**SECTION 20C.**

Said chapter is further amended by revising subsection (a) of Code Section 21-2-285, relating to form of official election ballot, attestation on receipt of benefit in exchange for vote, and when an election is not required, as follows:

"(a) At the top of each ballot for an election shall be printed in prominent type the words 'OFFICIAL BALLOT,' followed by the name and designation of the precinct for which it is prepared and the name and date of the election."

**SECTION 21.**

Said chapter is further amended by revising Code Section 21-2-285.1, relating to form of ballot, run-off election, and declaration of prevailing candidate in nonpartisan elections, as follows:

"21-2-285.1.

The names of all candidates for offices which the General Assembly has by general law or local Act provided for election in a nonpartisan election shall be printed on each official primary ballot; and insofar as practicable such offices to be filled in the nonpartisan election shall be separated from the names of candidates for party nomination to other offices by being listed last on each ballot, with the top of that portion of each official primary ballot relating to the nonpartisan election to have printed in prominent type the words 'OFFICIAL NONPARTISAN ELECTION BALLOT.' In addition, there shall be a ballot that contains just the official nonpartisan election ballot available for electors who choose not to vote in a party primary. Such ballot shall have printed at the top the name and designation of the precinct. Directions that explain how to cast a vote, how to write in a candidate, and how to obtain a new ballot after the elector spoils his or her ballot shall appear immediately under the caption, as specified by rule or regulation of the State Election Board. Immediately under the directions, the name of each such nonpartisan candidate shall be arranged alphabetically by last name under the title of the office for

which they are candidates and be printed thereunder. The incumbency of a candidate seeking election for the public office he or she then holds shall be indicated on the ballot. No party designation or affiliation shall appear beside the name of any candidate for nonpartisan office. An appropriate space shall also be placed on the ballot for the casting of write-in votes for such offices. In the event that no candidate in such nonpartisan election receives a majority of the total votes cast for such office, there shall be a nonpartisan election runoff between the candidates receiving the two highest numbers of votes; and the names of such candidates shall be placed on the official ballot at the general primary runoff in the same manner as prescribed in this Code section for the nonpartisan election and there shall be a separate official nonpartisan election ~~runoff~~ run-off ballot for those electors who do not choose or are not eligible to vote in the general primary runoff. In the event that only nonpartisan candidates are to be placed on a run-off ballot, the form of the ballot shall be as prescribed by the Secretary of State or election superintendent in essentially the same format as prescribed for the nonpartisan election. Except as provided in subsection (g) of Code Section 21-2-134, the ~~The~~ candidate having a majority of the votes cast in the nonpartisan election or the candidate receiving the highest number of votes cast in the nonpartisan election runoff shall be declared duly elected to such office.″

**SECTION 21A.**

Said chapter is further amended by revising paragraph (3) of subsection (b) of Code Section 21-2-286, relating to printing specifications, numbering, and binding of ballots, as follows:

″(3) Ballots printed by an electronic ballot marker shall be designed as prescribed by the Secretary of State to ensure ease of reading by electors, provided that each ballot shall have the name and designation of the precinct printed at the top.″

**SECTION 21B.**

Said chapter is further amended by revising Code Section 21-2-287, relating to form of absentee ballot, as follows:

"21-2-287.

The form for the absentee ballot shall be in substantially the same form as the official ballots used in the precincts, except it shall be printed with only the name stub and without a number strip and ~~may~~ shall have the precinct name and designation printed or stamped thereon."

**SECTION 22.**

Said chapter is further amended by revising subsection (b) of Code Section 21-2-367, relating to installation of systems, number of systems, and good working order, as follows:

"(b)(1) In each precinct in which optical scanning voting systems are used in a state-wide general election, the county ~~or municipal governing authority, as appropriate,~~ election superintendent shall provide at least one voting booth or enclosure for each 250 electors therein, or fraction thereof.

(2) For any other primary, election, or runoff, the county or municipal election superintendent may provide a greater or lesser number of voting booths or enclosures if, after a thorough consideration of the type of election, expected turnout, the number of electors who have already voted by advance voting or absentee ballot, and other relevant factors that inform the appropriate amount of equipment needed, such superintendent determines that a different amount of equipment is needed or sufficient. Such determination shall be subject to the provisions of Code Section 21-2-263."

**SECTION 23.**

Said chapter is further amended by revising Code Section 21-2-372, relating to ballot description, as follows:

″21-2-372.

Ballots shall be of suitable design, size, and stock to permit processing by a ballot scanner and shall be printed in black ink on clear, white, or colored material. Other than ballots delivered electronically to qualified electors who are entitled to vote by absentee ballot under the federal Uniformed and Overseas Citizens Absentee Voting Act, 52 U.S.C. Section 20301, et seq., the ballots shall be printed on security paper that incorporates features which can be used to authenticate the ballot as an official ballot but which do not make the ballot identifiable to a particular elector.″

**SECTION 23A.**

Said chapter is further amended in Code Section 21-2-379.23, relating to requirements for ballot display for electronic ballot markers, role of Secretary of State, and printed paper ballot controls during recount, by adding a new subsection to read as follows:

″(e) Each ballot printed by an electronic ballot marker shall include the name and designation of the precinct at the top.″

**SECTION 24.**

Said chapter is further amended by revising subsection (c) of Code Section 21-2-379.25, relating to programming for ballot design and style, verification, appointment of custodians, and role of custodians, as follows:

″(c) On or before the third day preceding a primary or election, including special primaries, special elections, and referendum elections, the superintendent shall have each electronic ballot marker tested to ascertain that it will correctly record the votes cast for all offices and on all questions and produce a ballot reflecting such choices of the elector in a manner that

the State Election Board shall prescribe by rule or regulation. Public notice of the time and place of the test shall be made at least five days prior thereto~~; provided, however, that, in the case of a runoff, the public notice shall be made at least three days prior thereto~~. The superintendent of each county or municipality shall publish such notice on the homepage of the county's or municipality's publicly accessible website associated with elections, if the county or municipality maintains a publicly accessible website, and in a newspaper of general circulation in the county or municipality and by posting in a prominent location in the county or municipality. Such notice shall state the date, time, and place or places where preparation and testing of the voting system components for use in the primary or election will commence, that such preparation and testing shall continue from day to day until complete, and that representatives ~~Representatives~~ of political parties and bodies, news media, and the public shall be permitted to observe such tests. The superintendent of the county or municipality shall also provide such notice to the Secretary of State who shall publish on his or her website the information received from superintendents stating the dates, times, and locations for preparation and testing of voting system components. However, such representatives of political parties and bodies, news media, and the public shall not in any manner interfere with the preparation and testing of voting system components. The advertisement in the newspaper of general circulation shall be prominently displayed, shall not be less than 30 square inches, and shall not be placed in the section of the newspaper where legal notices appear.″

**SECTION 25.**

Said chapter is further amended by revising Code Section 21-2-381, relating to making of application for absentee ballot, determination of eligibility by ballot clerk, furnishing of applications to colleges and universities, and persons entitled to make application, as follows:

″21-2-381.

(a)(1)(A) Except as otherwise provided in Code Section 21-2-219 or for advance voting described in subsection (d) of Code Section 21-2-385, not ~~more~~ earlier than ~~180~~ 78 days or less than 11 days prior to the date of the primary or election, or runoff of either, in which the elector desires to vote, any absentee elector may make, either by mail, by facsimile transmission, by electronic transmission, or in person in the registrar's or absentee ballot clerk's office, an application for an official ballot of the elector's precinct to be voted at such primary, election, or runoff. To be timely received, an application for an absentee-by-mail ballot shall be received by the board of registrars or absentee ballot clerk no later than 11 days prior to the primary, election, or runoff. For advance voting in person, the application shall be made within the time period set forth in subsection (d) of Code Section 21-2-385.

(B) In the case of an elector residing temporarily out of the county or municipality or a physically disabled elector residing within the county or municipality, the application for the elector's absentee ballot may, upon satisfactory proof of relationship, be made by such elector's mother, father, grandparent, aunt, uncle, sister, brother, spouse, son, daughter, niece, nephew, grandchild, son-in-law, daughter-in-law, mother-in-law, father-in-law, brother-in-law, or sister-in-law of the age of 18 or over.

(C)(i) Any person applying for an absentee-by-mail ballot shall make application in writing on the form made available by the Secretary of State. In order to confirm the identity of the voter, such form shall require the elector to provide his or her name, date of birth, address as registered, address where the elector wishes the ballot to be mailed, and the number of his or her Georgia driver's license or identification card issued pursuant to Article 5 of Chapter 5 of Title 40. If such elector does not have a Georgia driver's license or identification card issued pursuant to Article 5 of Chapter 5 of Title 40, the elector shall affirm this fact in the manner prescribed in the application and the elector shall provide a copy of a form of identification listed in subsection (c) of Code Section 21-2-417. The form made available by the Secretary of State shall

include a space to affix a photocopy or electronic image of such identification. The Secretary of State shall develop a method to allow secure electronic transmission of such form. The application shall ~~be in writing and shall contain sufficient information for proper identification of the elector; the permanent or temporary address of the elector to which the absentee ballot shall be mailed;~~ also include the identity of the primary, election, or runoff in which the elector wishes to vote; ~~and~~ the name and relationship of the person requesting the ballot if other than the elector; and an oath for the elector or relative to write his or her usual signature with a pen and ink affirming that the elector is a qualified Georgia elector and the facts presented on the application are true. Submitting false information on an application for an absentee ballot shall be a violation of Code Sections 21-2-560 and 21-2-571.

(ii) A blank application for an absentee ballot shall be made available online by the Secretary of State and each election superintendent and registrar, but neither the Secretary of State, election superintendent, board of registrars, other governmental entity, nor employee or agent thereof shall send absentee ballot applications directly to any elector except upon request of such elector or a relative authorized to request an absentee ballot for such elector. No person or entity other than a relative authorized to request an absentee ballot for such elector or a person signing as assisting an illiterate or physically disabled elector shall send any elector an absentee ballot application that is prefilled with the elector's required information set forth in this subparagraph. No person or entity other than the elector, a relative authorized to request an absentee ballot for such elector, a person signing as assisting an illiterate or physically disabled elector with his or her application, a common carrier charged with returning the ballot application, an absentee ballot clerk, a registrar, or a law enforcement officer in the course of an investigation shall handle or return an elector's completed absentee ballot application. Handling a completed absentee ballot application by any person or entity other than as allowed in this subsection shall be

a misdemeanor. Any application for an absentee ballot sent to any elector by any person or entity shall utilize the form of the application made available by the Secretary of State and shall clearly and prominently disclose on the face of the form:

'This is NOT an official government publication and was NOT provided to you by any governmental entity and this is NOT a ballot. It is being distributed by [insert name and address of person, organization, or other entity distributing such document or material].'

(iii) The disclaimer required by division (ii) of this subparagraph shall be:

(I) Of sufficient font size to be clearly readable by the recipient of the communication;

(II) Be contained in a printed box set apart from the other contents of the communication; and

(III) Be printed with a reasonable degree of color contrast between the background and the printed disclaimer.

(D) Except in the case of physically disabled electors residing in the county or municipality or electors in custody in a jail or other detention facility in the county or municipality, no absentee ballot shall be mailed to an address other than the permanent mailing address of the elector as recorded on the elector's voter registration record or a temporary out-of-county or out-of-municipality address. Upon request, electors held in jails or other detention facilities who are eligible to vote shall be granted access to the necessary personal effects for the purpose of applying for and voting an absentee ballot pursuant to this chapter.

(E) Relatives applying for absentee ballots for electors must also sign an oath stating that facts in the application are true.

(F) If the elector is unable to fill out or sign such elector's own application because of illiteracy or physical disability, the elector shall make such elector's mark, and the

person filling in the rest of the application shall sign such person's name below it as a witness.

(G) Any elector meeting criteria of advance age or disability specified by rule or regulation of the State Election Board or any elector who is entitled to vote by absentee ballot under the federal Uniformed and Overseas Citizens Absentee Voting Act, 42 U.S.C. Section 1973ff, et seq., as amended, may request in writing on one application a ballot for a presidential preference primary held pursuant to Article 5 of this chapter and for a primary as well as for any runoffs resulting therefrom and for the election for which such primary shall nominate candidates as well as any runoffs resulting therefrom. If not so requested by such person, a separate and distinct application shall be required for each primary, run-off primary, election, and run-off election. Except as otherwise provided in this subparagraph, a separate and distinct application for an absentee ballot shall always be required for any special election or special primary.

(2) A properly executed registration card submitted under the provisions of subsection (b) of Code Section 21-2-219, if submitted within 180 days of a primary or election in which the registrant is entitled to vote, shall be considered to be an application for an absentee ballot under this Code section, or for a special absentee ballot under Code Section 21-2-381.1, as appropriate.

(3)(A) All persons or entities, other than the Secretary of State, election superintendents, boards of registrars, and absentee ballot clerks, that send applications for absentee ballots to electors in a primary, election, or runoff shall mail such applications only to individuals who have not already requested, received, or voted an absentee ballot in the primary, election, or runoff. Any such person or entity shall compare its mail distribution list with the most recent information available about which electors have requested, been issued, or voted an absentee ballot in the primary, election, or runoff and shall remove the names of such electors from its mail distribution list. A person or entity shall not be liable for any violation of this

subparagraph if such person or entity relied upon information made available by the Secretary of State within five business days prior to the date such applications are mailed.

(B) A person or entity in violation of subparagraph (A) of this paragraph shall be subject to sanctions by the State Election Board which, in addition to all other possible sanctions, may include requiring such person or entity to pay restitution to each affected county or municipality in an amount up to $100.00 per duplicate absentee ballot application that is processed by the county or municipality due to such violation or the actual cost incurred by each affected county or municipality for the processing of such duplicate absentee ballot applications. ~~Reserved.~~

(4) In extraordinary circumstances as described in Code Section 21-2-543.1, the registrar or absentee ballot clerk shall determine if the applicants are eligible to vote under this Code section and shall either mail or issue the absentee ballots for the election for representative in the United States Congress to an individual entitled to make application for absentee ballot under subsection (d) of this Code section the same day any such application is received, so long as the application is received by 3:00 P.M., otherwise no later than the next business day following receipt of the application. Any valid absentee ballot shall be accepted and processed so long as the ballot is received by the registrar or absentee ballot clerk not later than 45 days after the ballot is transmitted to the absent uniformed services voter or overseas voter, but in no event later than 11 days following the date of the election.

(b)(1) Upon receipt of a timely application for an absentee ballot, a registrar or absentee ballot clerk shall enter thereon the date received. The registrar or absentee ballot clerk shall verify the identity of the applicant and determine, in accordance with the provisions of this chapter, if the applicant is eligible to vote in the primary or election involved. In order to ~~be found eligible to vote an absentee ballot by mail~~ verify the identity of the applicant, the registrar or absentee ballot clerk shall compare the ~~identifying information~~

applicant's name, date of birth, and number of his or her Georgia driver's license or identification card issued pursuant to Article 5 of Chapter 5 of Title 40 on the application with the information on file in the registrar's office ~~and, if the application is signed by the elector, compare the signature or mark of the elector on the application with the signature or mark of the elector on the elector's voter registration card~~. If the application does not contain the number of the applicant's Georgia driver's license or identification card issued pursuant to Article 5 of Chapter 5 of Title 40, the registrar or absentee ballot clerk shall verify that the identification provided with the application identifies the applicant. In order to be found eligible to vote an absentee ballot in person at the registrar's office or absentee ballot clerk's office, such person shall show one of the forms of identification listed in Code Section 21-2-417 and the registrar or absentee ballot clerk shall compare the identifying information on the application with the information on file in the registrar's office.

(2) If found eligible, the registrar or absentee ballot clerk shall certify by signing in the proper place on the application and then:

(A) Shall mail the ballot as provided in this Code section;

(B) If the application is made in person, shall issue the ballot to the elector within the confines of the registrar's or absentee ballot clerk's office as required by Code Section 21-2-383 if the ballot is issued during the advance voting period established pursuant to subsection (d) of Code Section 21-2-385; or

(C) May deliver the ballot in person to the elector if such elector is confined to a hospital.

(3) If found ineligible or if the application is not timely received, the clerk or the board of registrars shall deny the application by writing the reason for rejection in the proper space on the application and shall promptly notify the applicant in writing of the ground of ineligibility, a copy of which notification should be retained on file in the office of the board of registrars or absentee ballot clerk for at least one year. However, an absentee

ballot application shall not be rejected solely due to ~~an apparent~~ a mismatch between the ~~signature~~ identifying information of the elector on the application and the ~~signature~~ identifying information of the elector on file with the board of registrars. In such cases, the board of registrars or absentee ballot clerk shall send the elector a provisional absentee ballot with the designation 'Provisional Ballot' on the outer oath envelope and information prepared by the Secretary of State as to the process to be followed to cure the ~~signature~~ discrepancy. If such ballot is returned to the board of registrars or absentee ballot clerk prior to the closing of the polls on the day of the primary or election, the elector may cure the ~~signature~~ discrepancy by submitting an affidavit to the board of registrars or absentee ballot clerk along with a copy of one of the forms of identification enumerated in subsection (c) of Code Section 21-2-417 before the close of the period for verifying provisional ballots contained in subsection (c) of Code Section 21-2-419. If the board of registrars or absentee ballot clerk finds the affidavit and identification to be sufficient, the absentee ballot shall be counted as other absentee ballots. If the board of registrars or absentee ballot clerk finds the affidavit and identification to be insufficient, then the procedure contained in Code Section 21-2-386 shall be followed for rejected absentee ballots.

(4) If the registrar or clerk is unable to determine the identity of the elector from information given on the application or if the application is not complete or if the oath on the application is not signed, the registrar or clerk should promptly ~~write~~ contact the elector in writing to request the necessary additional information and a signed copy of the oath.

(5) In the case of an unregistered applicant who is eligible to register to vote, the clerk or the board shall immediately mail a blank registration card as provided by Code Section 21-2-223, and such applicant, if otherwise qualified, shall be deemed eligible to vote by absentee ballot in such primary or election, if the registration card, properly completed, is returned to the clerk or the board on or before the last day for registering

to vote in such primary or election. ~~If the closing date for registration in the primary or election concerned has not passed, the clerk or registrar shall also mail a ballot to the applicant, as soon as it is prepared and available; and the ballot shall be cast in such primary or election if returned to the clerk or board not later than the close of the polls on the day of the primary or election concerned.~~

(c) In those counties or municipalities in which the absentee ballot clerk or board of registrars provides application forms for absentee ballots, the clerk or board shall provide such quantity of the application form to the dean of each college or university located in that county as said dean determines necessary for the students of such college or university.

(d)(1) A citizen of the United States permanently residing outside the United States is entitled to make application for an absentee ballot from Georgia and to vote by absentee ballot in any election for presidential electors and United States senator or representative in Congress:

(A) If such citizen was last domiciled in Georgia immediately before his or her departure from the United States; and

(B) If such citizen could have met all qualifications, except any qualification relating to minimum voting age, to vote in federal elections even though, while residing outside the United States, he or she does not have a place of abode or other address in Georgia.

(2) An individual is entitled to make application for an absentee ballot under paragraph (1) of this subsection even if such individual's intent to return to Georgia may be uncertain, as long as:

(A) He or she has complied with all applicable Georgia qualifications and requirements which are consistent with 42 U.S.C. Section 1973ff concerning absentee registration for and voting by absentee ballots;

(B) He or she does not maintain a domicile, is not registered to vote, and is not voting in any other state or election district of a state or territory or in any territory or possession of the United States; and

(C) He or she has a valid passport or card of identity and registration issued under the authority of the Secretary of State of the United States or, in lieu thereof, an alternative form of identification consistent with 42 U.S.C. Section 1973ff and applicable state requirements, if a citizen does not possess a valid passport or card of identity and registration.

(e) The State Election Board is authorized to promulgate reasonable rules and regulations for the implementation of paragraph (1) of subsection (a) of this Code section. Said rules and regulations may include provisions for the limitation of opportunities for fraudulent application, including, but not limited to, comparison of voter registration records with death certificates.″

**SECTION 26.**

Said chapter is further amended by revising Code Section 21-2-382, relating to additional sites as additional registrar's office or place of registration for absentee ballots, as follows:

″21-2-382.

(a) Any other provisions of this chapter to the contrary notwithstanding, the board of registrars may establish ~~additional sites as~~ additional registrar's offices or places of registration for the purpose of receiving absentee ballots under Code Section 21-2-381 and for the purpose of ~~voting absentee ballots~~ advance voting under Code Section 21-2-385, provided that any such site is a building that is a branch of the county courthouse, a courthouse annex, a government service center providing general government services, another government building generally accessible to the public, or a ~~location~~ building that is used as an election day polling place, notwithstanding that such ~~location~~ building is not a government building.

(b) Any other provisions of this chapter to the contrary notwithstanding, in all counties of this state having a population of 550,000 or more according to the United States decennial census of 1990 or any future such census, any building that is a branch of the county

Case 1:21-cv-02070-JPB Document 21-1 Filed 06/24/21 Page 48 of 99

courthouse or courthouse annex established within any such county shall be an additional registrar's or absentee ballot clerk's office or place of registration for the purpose of receiving absentee ballots under Code Section 21-2-381 and for the purpose of ~~voting absentee ballots~~ advance voting under Code Section 21-2-385.

(c)(1) A board of registrars or absentee ballot clerk shall establish at least one drop box as a means for absentee by mail electors to deliver their ballots to the board of registrars or absentee ballot clerk. A board of registrars or absentee ballot clerk may establish additional drop boxes, subject to the limitations of this Code section, but may only establish additional drop boxes totaling the lesser of either one drop box for every 100,000 active registered voters in the county or the number of advance voting locations in the county. Any additional drop boxes shall be evenly geographically distributed by population in the county. Drop boxes established pursuant to this Code section shall be established at the office of the board of registrars or absentee ballot clerk or inside locations at which advance voting, as set forth in subsection (d) of Code Section 21-2-385, is conducted in the applicable primary, election, or runoff and may be open during the hours of advance voting at that location. Such drop boxes shall be closed when advance voting is not being conducted at that location. All drop boxes shall be closed when the advance voting period ends, as set forth in subsection (d) of Code Section 21-2-385. The drop box location shall have adequate lighting and be under constant surveillance by an election official or his or her designee, law enforcement official, or licensed security guard. During an emergency declared by the Governor pursuant to Code Section 38-3-51, drop boxes may be located outside the office of the board of registrars or absentee ballot clerk or outside of locations at which advance voting is taking place, subject to the other limitations of this Code section.

(2) The opening slot of a drop box shall not allow ballots to be tampered with or removed and shall be designed to minimize the ability for liquid or other substances that may damage ballots to be poured into the drop box. A drop box shall be labeled

"OFFICIAL ABSENTEE BALLOT DROP BOX" and shall clearly display the signage developed by the Secretary of State pertaining to Georgia law with regard to who is allowed to return absentee ballots and destroying, defacing, or delaying delivery of ballots.

(3) The board of registrars or absentee ballot clerk shall arrange for the collecting and return of ballots deposited at each drop box at the conclusion of each day where advance voting takes place. Collection of ballots from a drop box shall be made by a team of at least two people. Any person collecting ballots from a drop box shall have sworn an oath in the same form as the oath for poll officers set forth in Code Section 21-2-95. The collection team shall complete and sign a ballot transfer form upon removing the ballots from the drop box which shall include the date, time, location, number of ballots, confirmation that the drop box was locked after the removal of the ballots, and the identity of each person collecting the ballots. The collection team shall then immediately transfer the ballots to the board of registrars or absentee ballot clerk, who shall process and store the ballots in the same manner as absentee ballots returned by mail are processed and stored. The board of registrars, absentee ballot clerk, or a designee of the board of registrars or absentee ballot clerk shall sign the ballot transfer form upon receipt of the ballots from the collection team. Such form shall be considered a public record pursuant to Code Section 50-18-70.

(4) At the beginning of voting at each advance location where a drop box is present, the manager of the advance voting location shall open the drop box and confirm on the reconciliation form for that advance voting location that the drop box is empty. If the drop box is not empty, the manager shall secure the contents of the drop box and immediately inform the election superintendent, board of registrars, or absentee ballot clerk, who shall inform the Secretary of State."

**SECTION 27.**

Said chapter is further amended by revising Code Section 21-2-384, relating to preparation and delivery of supplies, mailing of ballots, oath of absentee electors and persons assisting absentee electors, master list of ballots sent, challenges, and electronic transmission of ballots, as follows:

"21-2-384.

(a)(1) The superintendent shall, in consultation with the board of registrars or absentee ballot clerk, prepare, obtain, and deliver before the date specified in paragraph (2) of this subsection an adequate supply of official absentee ballots to the board of registrars or absentee ballot clerk for use in the primary or election or as soon as possible prior to a runoff. Envelopes and other supplies as required by this article may be ordered by the superintendent, the board of registrars, or the absentee ballot clerk for use in the primary or election.

(2) The board of registrars or absentee ballot clerk shall mail or issue official absentee ballots to all eligible applicants not more than ~~49~~ 29 days but not less than ~~45~~ 25 days prior to any presidential preference primary, general primary other than a municipal general primary, general election other than a municipal general election, or special primary or special election in which there is a candidate for a federal office on the ballot; 22 days prior to any municipal general primary or municipal general election; and as soon as possible prior to any runoff. In the case of all other special primaries or special elections, the board of registrars or absentee ballot clerk shall mail or issue official absentee ballots to all eligible applicants within three days after the receipt of such ballots and supplies, but no earlier than 22 days prior to the election; provided, however, that ~~should~~ official absentee ballots shall be issued to any elector of the jurisdiction ~~be permitted to vote by absentee ballot~~ who is entitled to vote by absentee ballot under the federal Uniformed and Overseas Citizen Absentee Voting Act, 52 U.S.C. Section 20301, et seq., as amended, beginning 49 days prior to a federal primary or election~~, all eligible~~

~~applicants of such jurisdiction shall be entitled to vote by absentee ballot beginning 49 days prior to such primary or election~~ and not later than 45 days prior to a federal primary or election. As additional applicants who submitted timely applications for an absentee ballot are determined to be eligible, the board or clerk shall mail or issue official absentee ballots to such additional applicants immediately upon determining their eligibility~~;~~ ~~provided, however, that no absentee ballot shall be mailed by the registrars or absentee ballot clerk on the day prior to a primary or election and provided, further, that no absentee ballot shall be issued on the day prior to a primary or election~~. For all timely received applications for absentee ballots, the board of registrars or absentee ballot clerk shall mail or issue absentee ballots, provisional absentee ballots, and notices of rejection as soon as possible upon determining their eligibility within the time periods set forth in this subsection. During the period for advance voting set forth in Code Section 21-2-385, the board of registrars or absentee ballot clerk shall make such determinations and mail or issue absentee ballots, provisional absentee ballots, and notices of rejection of application within three days after receiving a timely application for an absentee ballot. The board of registrars or absentee ballot clerk shall, within the ~~same~~ time periods specified in this subsection, electronically transmit official absentee ballots to all electors who have requested to receive their official absentee ballot electronically and are entitled to vote such absentee ballot under the federal Uniformed and Overseas Citizens Absentee Voting Act, ~~42 U.S.C. Section 1973ff~~ 52 U.S.C. Section 20301, et seq., as amended.

(3) The date a ballot is voted in the registrar's or absentee ballot clerk's office or the date a ballot is mailed or issued to an elector and the date it is returned shall be entered on the application record therefor.

(4) Notwithstanding any other provision of this chapter, an elector confined in a hospital may make application for an absentee ballot ~~The delivery of an absentee ballot to a person confined in a hospital may be made by the registrar or clerk~~ on the day of a primary or election or during a ~~five-day~~ ten-day period immediately preceding the day

of such primary or election. Such application shall immediately be processed and, if such applicant is determined to be eligible, the board of registrars or absentee ballot clerk may deliver the absentee ballot to such elector.

(5) In the event an absentee ballot which has been mailed by the board of registrars or absentee ballot clerk is not received by the applicant, the applicant may notify the board of registrars or absentee ballot clerk and sign an affidavit stating that the absentee ballot has not been received. The board of registrars or absentee ballot clerk shall then issue a second absentee ballot to the applicant and cancel the original ballot issued. The affidavit shall be attached to the original application. A second application for an absentee ballot shall not be required.

(b) Except for ballots voted within the confines of the registrar's or absentee ballot clerk's office, in addition to the mailing envelope addressed to the elector, the superintendent, board of registrars, or absentee ballot clerk shall provide two envelopes for each official absentee ballot, of such size and shape as shall be determined by the Secretary of State, in order to permit the placing of one within the other and both within the mailing envelope. On the smaller of the two envelopes to be enclosed in the mailing envelope shall be printed the words 'Official Absentee Ballot' and nothing else. ~~On the back of the~~ The larger of the two envelopes to be enclosed within the mailing envelope shall ~~be printed~~ contain the form of oath of the elector and the oath for persons assisting electors, as provided for in Code Section 21-2-409, and the penalties provided for in Code Sections 21-2-568, 21-2-573, 21-2-579, and 21-2-599 for violations of oaths; ~~and on~~ a place for the elector to print his or her name; a signature line; a space for the elector to print the number of his or her Georgia driver's license or identification card issued pursuant to Article 5 of Chapter 5 of Title 40; a space for the elector to mark to affirm that he or she does not have a Georgia driver's license or identification card issued pursuant to Article 5 of Chapter 5 of Title 40; a space for the elector to print his or her date of birth; and a space for the elector to print the last four digits of his or her social security number, if the elector does not have a

Georgia driver's license or state identification card issued pursuant to Article 5 of Chapter 5 of Title 40. The envelope shall be designed so that the number of the elector's Georgia driver's license or identification card issued pursuant to Article 5 of Chapter 5 of Title 40, the last four digits of the elector's social security number, and the elector's date of birth shall be hidden from view when the envelope is correctly sealed. Any person other than the elector who requested the ballot, an authorized person who is assisting the elector entitled to assistance in voting pursuant to Code Section 21-2-409, an absentee ballot clerk, registrar, or law enforcement officer in the course of an investigation who knowingly unseals a sealed absentee ballot envelope shall be guilty of a felony. On the face of such envelope shall be printed the name and address of the board of registrars or absentee ballot clerk. The larger of the two envelopes shall also display the elector's name and voter registration number. The mailing envelope addressed to the elector shall contain the two envelopes, the official absentee ballot, the uniform instructions for the manner of preparing and returning the ballot, in form and substance as provided by the Secretary of State, provisional absentee ballot information, if necessary, and a notice in the form provided by the Secretary of State of all withdrawn, deceased, and disqualified candidates and any substitute candidates pursuant to Code Sections 21-2-134 and 21-2-155 and nothing else. The uniform instructions shall include information specific to the voting system used for absentee voting concerning the effect of overvoting or voting for more candidates than one is authorized to vote for a particular office and information concerning how the elector may correct errors in voting the ballot before it is cast including information on how to obtain a replacement ballot if the elector is unable to change the ballot or correct the error. The uniform instructions shall prominently include specific instructions stating that the elector shall mark his or her ballot in private and sign the oath by writing his or her usual signature with a pen and ink under penalty of false swearing that the elector has not allowed any person to observe the marking of his or her ballot other than an authorized person lawfully assisting the elector if the elector is entitled to assistance, the elector's child under 18 years

of age, or any child under 12 years of age and that the elector will not permit any unauthorized person to deliver or return the voted ballot to the board of registrars. The uniform instructions shall include a list of authorized persons who may deliver or return the voted ballot to the board of registrars on behalf of the elector as provided in subsection (a) of Code Section 21-2-385. The uniform instructions shall include the contact information of the Secretary of State which may be used by the elector to report any unauthorized person requesting to observe the elector voting his or her ballot or the elector's voted ballot or any unauthorized person offering to deliver or return the voted ballot to the board of registrars.

(c)(1) The oaths referred to in subsection (b) of this Code section shall be in substantially the following form:

I, the undersigned, do swear (or affirm) under penalty of false swearing that I am a citizen of the United States and of the State of Georgia; that I possess the qualifications of an elector required by the laws of the State of Georgia; that I am entitled to vote in the precinct containing my residence in the primary or election in which this ballot is to be cast; that I am eligible to vote by absentee ballot; that I have not marked or mailed any other absentee ballot, nor will I mark or mail another absentee ballot for voting in such primary or election; nor shall I vote therein in person; and that I have read and understand the instructions accompanying this ballot; ~~and~~ that I have carefully complied with such instructions in completing this ballot; that I have marked and sealed this ballot in private and have not allowed any unauthorized person to observe the voting of this ballot or how this ballot was voted except those authorized under state and federal law; and that I will not give or transfer this ballot to any person not authorized by law to deliver or return absentee ballots. I understand that the offer or acceptance of money or any other object of value to vote for any particular candidate, list of candidates, issue, or list of issues included in this election constitutes an act of voter fraud and is a felony under Georgia law.

______________________

Signature or Mark of Elector

______________________

Printed Name of Elector

Oath of Person Assisting Elector (if any):

I, the undersigned, do swear (or affirm) that I assisted the above-named elector in marking such elector's absentee ballot as such elector personally communicated such elector's preference to me; and that such elector is entitled to receive assistance in voting under provisions of subsection (a) of Code Section 21-2-409.

This, the ______ day of __________, __________.

__________________________

Signature of Person Assisting Elector

__________________________

Printed Name of Person Assisting Elector

Reason for assistance (Check appropriate square):

☐ Elector is unable to read the English language.

☐ Elector requires assistance due to physical disability.

The forms upon which such oaths are printed shall contain the following information:

Georgia law provides that any person who knowingly falsifies information so as to vote illegally by absentee ballot or who illegally gives or receives assistance in voting, as specified in Code Section 21-2-568 or 21-2-573, shall be guilty of a felony.

(2) In the case of absent uniformed services or overseas voters, if the presidential designee under Section 705(b) of the federal Help America Vote Act promulgates a standard oath for use by such voters, the Secretary of State shall be required to use such oath on absentee ballot materials for such voters and such oath shall be accepted in lieu of the oath set forth in paragraph (1) of this subsection.

(d) Each board of registrars or absentee ballot clerk shall maintain for public inspection a master list, arranged by precincts, setting forth the name and residence of every elector to whom an official absentee ballot has been sent. Absentee electors whose names appear on the master list may be challenged by any elector prior to 5:00 P.M. on the day before ~~the primary or election~~ absentee ballots are to begin being scanned and tabulated.

(e)(1) The election superintendent shall prepare special absentee run-off ballots for general primaries and general elections for use by qualified electors who are entitled to vote by absentee ballot under the federal Uniformed and Overseas Citizens Absentee Voting Act, 52 U.S.C. Section 20301, et seq.

(2) Such special absentee run-off ballots for the general primary shall list the titles of all offices being contested at the general primary and the candidates qualifying for such general primary for each office and shall permit the elector to vote in the general primary runoff by indicating his or her order of preference for each candidate for each office. A separate ballot shall be prepared for each political party, but a qualified elector under this subsection shall be mailed only the ballot of the political party in whose primary such elector requests to vote. The Secretary of State shall prepare instructions for use with such special absentee run-off ballots, including instructions for voting by mail using an electronically transmitted ballot. Such ballot shall be returned by the elector in the same manner as other absentee ballots by such electors who are entitled to vote by absentee ballot under the federal Uniformed and Overseas Citizens Absentee Voting Act, 52 U.S.C. Section 20301, et seq.

(3) Such special absentee run-off ballots for the general election shall list the titles of all offices being contested at the general election and the candidates qualifying for such general election for each office and shall permit the elector to vote in the general election runoff by indicating his or her order of preference for each candidate for each office.

(4) To indicate order of preference for each candidate for each office to be voted on, an elector shall put the numeral '1' next to the name of the candidate who is the elector's first choice for such office, the numeral '2' for the elector's second choice, and so forth, in consecutive numerical order, such that a numeral indicating the elector's preference is written by the elector next to each candidate's name on the ballot. An elector shall not be required to indicate preference for more than one candidate for an office if the elector so chooses.

(5) A special absentee run-off ballot shall be enclosed with each general primary absentee ballot sent to an elector who is entitled to vote by absentee ballot under the federal Uniformed and Overseas Citizens Absentee Voting Act, 52 U.S.C. Section 20301, et seq., along with instructions on how to cast the special absentee run-off ballot and the two envelopes to be used in returning such ballot as provided in subsection (b) of this Code section, provided that the envelopes bear the notation of 'Official Overseas/Military General Primary Run-off Ballot.' An elector shall be sent only the ballot containing the candidates of the political party in whose primary such elector desires to vote.

(6) A special absentee run-off ballot shall be enclosed with each general election absentee ballot sent to an elector entitled to vote by absentee ballot under the federal Uniformed and Overseas Citizens Absentee Voting Act, 52 U.S.C. Section 20301, et seq., along with instructions on how to cast the special absentee run-off ballot and the two envelopes to be used in returning such ballot as provided in subsection (b) of this Code section, provided that the envelopes bear the notation of 'Official Overseas/Military General Election Run-off Ballot.' The State Election Board shall by rule or regulation establish procedures for the transmission of blank absentee ballots by mail and by

electronic transmission for all electors who are entitled to vote by absentee ballot under the federal Uniformed and Overseas Citizens Absentee Voting Act, 52 U.S.C. Section ~~20302~~ 20301, et seq., as amended, and by which such electors may designate whether the elector prefers the transmission of such ballots by mail or electronically, for use in county, state, and federal primaries, elections, and runoffs in this state and, if the Secretary of State finds it to be feasible, for use in municipal primaries, elections, and runoffs. If no preference is stated, the ballot shall be transmitted by mail. The State Election Board shall by rule or regulation establish procedures to ensure to the extent practicable that the procedures for transmitting such ballots shall protect the security and integrity of such ballots and shall ensure that the privacy of the identity and other personal data of such electors who are entitled to vote by absentee ballot under the federal Uniformed and Overseas Citizens Absentee Voting Act, 52 U.S.C. Section ~~20302~~ 20301, et seq., as amended, to whom a blank absentee ballot is transmitted under this Code section is protected throughout the process of such transmission.″

**SECTION 28.**

Said chapter is further amended by revising subsections (a) and (d) of and adding a new subsection to Code Section 21-2-385, relating to procedure for voting by absentee ballot and advance voting, to read as follows:

″(a) At any time after receiving an official absentee ballot, but before the day of the primary or election, except electors who are confined to a hospital on the day of the primary or election, the elector shall vote his or her absentee ballot, then fold the ballot and enclose and securely seal the same in the envelope on which is printed 'Official Absentee Ballot.' This envelope shall then be placed in the second one, on which is printed the form of the oath of the elector; the name and oath of the person assisting, if any; and other required identifying information. The elector shall then fill out, subscribe, and swear to the oath printed on such envelope. In order to verify that the absentee ballot was voted by the

elector who requested the ballot, the elector shall print the number of his or her Georgia driver's license number or identification card issued pursuant to Article 5 of Chapter 5 of Title 40 in the space provided on the outer oath envelope. The elector shall also print his or her date of birth in the space provided in the outer oath envelope. If the elector does not have a Georgia driver's license or state identification card issued pursuant to Article 5 of Chapter 5 of Title 40, the elector shall so affirm in the space provided on the outer oath envelope and print the last four digits of his or her social security number in the space provided on the outer oath envelope. If the elector does not have a Georgia driver's license, identification card issued pursuant to Article 5 of Chapter 5 of Title 40, or a social security number, the elector shall so affirm in the space provided on the outer oath envelope and place a copy of one of the forms of identification set forth in subsection (c) of Code Section 21-2-417 in the outer envelope. Such envelope shall then be securely sealed and the elector shall then personally mail or personally deliver same to the board of registrars or absentee ballot clerk, provided that mailing or delivery may be made by the elector's mother, father, grandparent, aunt, uncle, brother, sister, spouse, son, daughter, niece, nephew, grandchild, son-in-law, daughter-in-law, mother-in-law, father-in-law, brother-in-law, sister-in-law, or an individual residing in the household of such elector. The absentee ballot of a disabled elector may be mailed or delivered by the caregiver of such disabled elector, regardless of whether such caregiver resides in such disabled elector's household. The absentee ballot of an elector who is in custody in a jail or other detention facility may be mailed or delivered by any employee of such jail or facility having custody of such elector. An elector who is confined to a hospital on a primary or election day to whom an absentee ballot is delivered by the registrar or absentee ballot clerk shall then and there vote the ballot, seal it properly, and return it to the registrar or absentee ballot clerk. If the elector registered to vote for the first time in this state by mail and has not previously provided the identification required by Code Section 21-2-220 and votes for the first time by absentee ballot and fails to provide the identification required by

Code Section 21-2-220 with such absentee ballot, such absentee ballot shall be treated as a provisional ballot and shall be counted only if the registrars are able to verify the identification and registration of the elector during the time provided pursuant to Code Section 21-2-419."

"(d)(1) There shall be a period of advance voting that shall commence:

(A) On the fourth Monday immediately prior to each primary or election; and

~~(B) On the fourth Monday immediately prior to a runoff from a general primary;~~

~~(C) On the fourth Monday immediately prior to a runoff from a general election in which there are candidates for a federal office on the ballot in the runoff; and~~

~~(D)~~(B) As soon as possible prior to a runoff from any ~~other~~ general primary or election ~~in which there are only state or county candidates on the ballot in the runoff~~ but no later than the second Monday immediately prior to such runoff

and shall end on the Friday immediately prior to each primary, election, or runoff. Voting shall be conducted ~~during normal business hours~~ beginning at 9:00 A.M. and ending at 5:00 P.M. on weekdays, other than observed state holidays, during such period and shall be conducted on the second ~~Saturday~~ and third Saturdays during the hours of 9:00 A.M. through 5:00 P.M. and, if the registrar or absentee ballot clerk so chooses, the second Sunday, the third Sunday, or both the second and third Sundays prior to a primary or election during ~~the~~ hours ~~of 9:00 A.M. through 4:00 P.M.~~ determined by the registrar or absentee ballot clerk, but no longer than 7:00 A.M. through 7:00 P.M.; provided, however, ~~that in primaries and elections in which there are no federal or state candidates on the ballot, no Saturday voting hours shall be required; and provided, further,~~ that, if such second Saturday is a public and legal holiday pursuant to Code Section 1-4-1, if such second Saturday follows a public and legal holiday occurring on the Thursday or Friday immediately preceding such second Saturday, or if such second Saturday immediately precedes a public and legal holiday occurring on the following Sunday or Monday, such advance voting shall not be held on such second Saturday but shall be held

on the third Saturday prior to such primary or election beginning at 9:00 A.M. and ending at 5:00 P.M. Except as otherwise provided in this paragraph, ~~counties and municipalities~~ the registrars may extend the hours for voting ~~beyond regular business hours~~ to permit advance voting from 7:00 A.M. until 7:00 P.M. and may provide for additional voting locations pursuant to Code Section 21-2-382 to suit the needs of the electors of the jurisdiction at their option; provided, however, that voting shall occur only on the days specified in this paragraph and counties and municipalities shall not be authorized to conduct advance voting on any other days.

(2) The registrars or absentee ballot clerk, as appropriate, shall provide reasonable notice to the electors of their jurisdiction of the availability of advance voting as well as the times, dates, and locations at which advance voting will be conducted. In addition, the registrars or absentee ballot clerk shall notify the Secretary of State in the manner prescribed by the Secretary of State of the times, dates, and locations at which advance voting will be conducted.

(3) The board of registrars shall publish the dates, times, and locations of the availability of advance voting in its jurisdiction on the homepage of the county's publicly accessible website associated with elections or registrations, or if the county does not have such a website, in a newspaper of general circulation, and by posting in a prominent location in the county, no later than 14 days prior to the beginning of the advance voting period for a general primary, special primary, general election, or special election and no later than seven days prior to the beginning of the advance voting period for any run-off election. Any new advance voting locations added after that deadline shall be published in the same manner as soon as possible. The board of registrars shall not remove any advance voting location after the notice of such location is published, except in the case of an emergency or unavoidable event that renders a location unavailable for use. Any changes that are made due to an emergency or unavoidable event after a notice of a location has

been published shall be published as soon as possible in the same manner set forth in this paragraph.

(e) On each day of an absentee voting period, each county board of registrars or municipal absentee ballot clerk shall report for the county or municipality to the Secretary of State and post on the county or municipal website, or if the county or municipality does not maintain such a website, a place of public prominence in the county or municipality, not later than 10:00 A.M. on each business day the number of persons to whom absentee ballots have been issued, the number of persons who have returned absentee ballots, and the number of absentee ballots that have been rejected. Additionally, on each day of an advance voting period, each county board of registrars or municipal absentee ballot clerk shall report to the Secretary of State and post on the county or municipal website, or if the county or municipality does not maintain such a website, a place of public prominence in the county or municipality, not later than 10:00 A.M. on each business day the number of persons who have voted at the advance voting sites in the county or municipality. During the absentee voting period and for a period of three days following a primary, election, or runoff, each county board of registrars or municipal absentee ballot clerk shall report to the Secretary of State and post on the county or municipal website, or if the county or municipality does not maintain such a website, a place of public prominence in the county or municipality, not later than 10:00 A.M. on each business day the number of persons who have voted provisional ballots, the number of provisional ballots that have verified or cured and accepted for counting, and the number of provisional ballots that have been rejected."

**SECTION 29.**

Said chapter is further amended by revising Code Section 21-2-386, relating to safekeeping, certification, and validation of absentee ballots, rejection of ballot, delivery of ballots to

manager, duties of managers, precinct returns, and notification of challenged elector, as follows:

"21-2-386.

(a)(1)(A) The board of registrars or absentee ballot clerk shall keep safely, unopened, and stored in a manner that will prevent tampering and unauthorized access all official absentee ballots received from absentee electors prior to the closing of the polls on the day of the primary or election except as otherwise provided in this subsection.

(B) Upon receipt of each ballot, a registrar or clerk shall write the day and hour of the receipt of the ballot on its envelope. The registrar or clerk shall then compare the number of the elector's Georgia driver's license number or state identification card issued pursuant to Article 5 of Chapter 5 of Title 40 and date of birth entered on the absentee ballot envelope ~~identifying information on the oath~~ with the same information ~~on file in his or her office, shall compare the signature or mark on the oath with the signature or mark on the absentee elector's voter registration card or the most recent update to such absentee elector's voter registration card and application for absentee ballot or a facsimile of said signature or mark taken from said card or application, and shall, if the information and signature appear to be valid and other identifying information appears to be correct,~~ contained in the elector's voter registration records. If the elector has affirmed on the envelope that he or she does not have a Georgia driver's license or state identification card issued pursuant to Article 5 of Chapter 5 of Title 40, the registrar or clerk shall compare the last four digits of the elector's social security number and date of birth entered on the envelope with the same information contained in the elector's voter registration records. The registrar or clerk shall also confirm that the elector signed the oath and the person assisting the elector, if any, signed the required oath. If the elector has signed the elector's oath, the person assisting has signed the required oath, if applicable, and the identifying information entered on the absentee ballot envelope matches the same information contained in the elector's

voter registration record, the registrar or clerk shall so certify by signing or initialing his or her name below the voter's oath. Each elector's name so certified shall be listed by the registrar or clerk on the numbered list of absentee voters prepared for his or her precinct.

(C) If the elector has failed to sign the oath, or if the ~~signature~~ identifying information entered on the absentee ballot envelope does not ~~appear to be valid~~ match the same information appearing in the elector's voter registration record, or if the elector has failed to furnish required information or information so furnished does not conform with that on file in the registrar's or clerk's office, or if the elector is otherwise found disqualified to vote, the registrar or clerk shall write across the face of the envelope 'Rejected,' giving the reason therefor. The board of registrars or absentee ballot clerk shall promptly notify the elector of such rejection, a copy of which notification shall be retained in the files of the board of registrars or absentee ballot clerk for at least two years. Such elector shall have until the end of the period for verifying provisional ballots contained in subsection (c) of Code Section 21-2-419 to cure the problem resulting in the rejection of the ballot. The elector may cure a failure to sign the oath, ~~an invalid signature~~ nonmatching identifying information, or missing information by submitting an affidavit to the board of registrars or absentee ballot clerk along with a copy of one of the forms of identification enumerated in subsection (c) of Code Section 21-2-417 before the close of such period. The affidavit shall affirm that the ballot was submitted by the elector, is the elector's ballot, and that the elector is registered and qualified to vote in the primary, election, or runoff in question. If the board of registrars or absentee ballot clerk finds the affidavit and identification to be sufficient, the absentee ballot shall be counted.

(D) An elector who registered to vote by mail, but did not comply with subsection (c) of Code Section 21-2-220, and who votes for the first time in this state by absentee ballot shall include with his or her application for an absentee ballot or in the outer oath

envelope of his or her absentee ballot either one of the forms of identification listed in subsection (a) of Code Section 21-2-417 or a copy of a current utility bill, bank statement, government check, paycheck, or other government document that shows the name and address of such elector. If such elector does not provide any of the forms of identification listed in this subparagraph with his or her application for an absentee ballot or with the absentee ballot, such absentee ballot shall be deemed to be a provisional ballot and such ballot shall only be counted if the registrars are able to verify current and valid identification of the elector as provided in this subparagraph within the time period for verifying provisional ballots pursuant to Code Section 21-2-419. The board of registrars or absentee ballot clerk shall promptly notify the elector that such ballot is deemed a provisional ballot and shall provide information on the types of identification needed and how and when such identification is to be submitted to the board of registrars or absentee ballot clerk to verify the ballot.

(E) Three copies of the numbered list of voters shall also be prepared for such rejected absentee electors, giving the name of the elector and the reason for the rejection in each case. Three copies of the numbered list of certified absentee voters and three copies of the numbered list of rejected absentee voters for each precinct shall be turned over to the poll manager in charge of counting the absentee ballots and shall be distributed as required by law for numbered lists of voters.

(F) All absentee ballots returned to the board or absentee ballot clerk after the closing of the polls on the day of the primary or election shall be safely kept unopened by the board or absentee ballot clerk and then transferred to the appropriate clerk for storage for the period of time required for the preservation of ballots used at the primary or election and shall then, without being opened, be destroyed in like manner as the used ballots of the primary or election. The board of registrars or absentee ballot clerk shall promptly notify the elector by first-class mail that the elector's ballot was returned too late to be counted and that the elector will not receive credit for voting in the primary

or election. All such late absentee ballots shall be delivered to the appropriate clerk and stored as provided in Code Section 21-2-390.

(G) Notwithstanding any provision of this chapter to the contrary, until the United States Department of Defense notifies the Secretary of State that the Department of Defense has implemented a system of expedited absentee voting for those electors covered by this subparagraph, absentee ballots cast in a primary, election, or runoff by eligible absentee electors who reside outside the county or municipality in which the primary, election, or runoff is held and are members of the armed forces of the United States, members of the merchant marine of the United States, spouses or dependents of members of the armed forces or merchant marine residing with or accompanying such members, or overseas citizens that are postmarked by the date of such primary, election, or runoff and are received within the three-day period following such primary, election, or runoff, if proper in all other respects, shall be valid ballots and shall be counted and included in the certified election results.

(2)(A) Beginning at 8:00 A.M. on the third Monday prior to ~~After the opening of the polls on~~ the day of the primary, election, or runoff, the ~~registrars or absentee ballot clerks~~ election superintendent shall be authorized to open the outer oath envelope ~~on which is printed the oath of the elector~~ of absentee ballots that have been verified and accepted pursuant to subparagraph (a)(1)(B) of this Code section, ~~in such a manner as not to destroy the oath printed thereon; provided, however, that the registrars or absentee ballot clerk shall not be authorized to~~ remove the contents of such outer envelope, ~~or to~~ open the inner envelope marked 'Official Absentee Ballot,' ~~except as otherwise provided in this Code section~~ and scan the absentee ballot using one or more ballot scanners. At least three persons who are registrars, deputy registrars, poll workers, or absentee ballot clerks must be present before commencing; and three persons who are registrars, deputy registrars, or absentee ballot clerks shall be present at all times while the ~~outer~~ absentee ballot envelopes are being opened and the absentee

ballots are being scanned. ~~After opening the outer envelopes, the ballots shall be safely and securely stored until the time for tabulating such ballots.~~ However, no person shall tally, tabulate, estimate, or attempt to tally, tabulate, or estimate or cause the ballot scanner or any other equipment to produce any tally or tabulate, partial or otherwise, of the absentee ballots cast until the time for the closing of the polls on the day of the primary, election, or runoff except as provided in this Code section. Prior to beginning the process set forth in this paragraph, the superintendent shall provide written notice to the Secretary of State in writing at least seven days prior to processing and scanning absentee ballots. Such notice shall contain the dates, start and end times, and location or locations where absentee ballots will be processed and scanned. The superintendent shall also post such notice publicly in a prominent location in the superintendent's office and on the home page of the county election superintendent's website, if the county election superintendent maintains such a website. The Secretary of State shall publish on his or her website the information he or she receives from superintendents stating the dates, times, and locations where absentee ballots will be processed.

(B) The proceedings set forth in this paragraph shall be open to the view of the public, but no person except one employed and designated by the superintendent shall touch any ballot or ballot container. Any person involved in processing and scanning absentee ballots shall swear an oath, in the same form as the oath for poll officers provided in Code Section 21-2-95, prior to beginning the processing and scanning of absentee ballots. The county executive committee or, if there is no organized county executive committee, the state executive committee of each political party and political body having candidates whose names appear on the ballot for such election shall have the right to designate two persons and each independent and nonpartisan candidate whose name appears on the ballot for such election shall have the right to designate one person to act as monitors for such process. In the event that the only issue to be voted upon in an election is a referendum question, the superintendent shall also notify in

writing the chief judge of the superior court of the county who shall appoint two electors of the county to monitor such process. While viewing or monitoring the process set forth in this paragraph, monitors and observers shall be prohibited from:

(i) In any way interfering with the processing or scanning of absentee ballots or the conduct of the election;

(ii) Using or bringing into the room any photographic or other electronic monitoring or recording devices, cellular telephones, or computers;

(iii) Engaging in any form of campaigning or campaign activity;

(iv) Taking any action that endangers the secrecy and security of the ballots;

(v) Touching any ballot or ballot container;

(vi) Tallying, tabulating, estimating, or attempting to tally, tabulate, or estimate, whether partial or otherwise, any of the votes on the absentee ballots cast; and

(vii) Communicating any information that they see while monitoring the processing and scanning of the absentee ballots, whether intentionally or inadvertently, about any ballot, vote, or selection to anyone other than an election official who needs such information to lawfully carry out his or her official duties.

(C) The State Election Board shall promulgate rules requiring reconciliation procedures; prompt and undelayed scanning of ballots after absentee ballot envelopes are opened; secrecy of election results prior to the closing of the polls on the day of a primary, election, or runoff; and other protections to protect the integrity of the process set forth in this paragraph.

(3) A county election superintendent may, in his or her discretion, after 7:00 A.M. on the day of the primary, election, or runoff ~~open the inner envelopes in accordance with the procedures prescribed in this subsection and~~ begin tabulating the absentee ballots. If the county election superintendent chooses to open the inner envelopes and begin tabulating such ballots prior to the close of the polls on the day of the primary, election, or runoff, the superintendent shall notify in writing, at least seven days prior to the primary,

election, or runoff, the Secretary of State of the superintendent's intent to begin the absentee ballot tabulation prior to the close of the polls. The county executive committee or, if there is no organized county executive committee, the state executive committee of each political party and political body having candidates whose names appear on the ballot for such election in such county shall have the right to designate two persons and each independent and nonpartisan candidate whose name appears on the ballot for such election in such county shall have the right to designate one person to act as monitors for such process. In the event that the only issue to be voted upon in an election is a referendum question, the superintendent shall also notify in writing the chief judge of the superior court of the county who shall appoint two electors of the county to monitor such process.

(4) The county election superintendent shall publish a written notice in the superintendent's office of the superintendent's intent to begin the absentee ballot tabulation prior to the close of the polls and publish such notice at least one week prior to the primary, election, or runoff in the legal organ of the county.

(5) The process for opening ~~the inner~~ absentee ballot envelopes, scanning absentee ballots, ~~of~~ and tabulating absentee ballots on the day of a primary, election, or runoff as provided in this subsection shall be ~~a confidential process~~ conducted in a manner to maintain the secrecy of all ballots and to protect the disclosure of any balloting information before 7:00 P.M. on election day. No absentee ballots shall be tabulated before 7:00 A.M. on the day of a primary, election, or runoff.

(6) All persons conducting the tabulation of absentee ballots during the day of a primary, election, or runoff, including the vote review panel required by Code Section 21-2-483, and all monitors and observers shall be sequestered until the time for the closing of the polls. All such persons shall have no contact with the news media; shall have no contact with other persons not involved in monitoring, observing, or conducting the tabulation; shall not use any type of communication device including radios, telephones, and cellular

telephones; shall not utilize computers for the purpose of ~~e-mail~~ email, instant messaging, or other forms of communication; and shall not communicate any information concerning the tabulation until the time for the closing of the polls; provided, however, that supervisory and technical assistance personnel shall be permitted to enter and leave the area in which the tabulation is being conducted but shall not communicate any information concerning the tabulation to anyone other than the county election superintendent; the staff of the superintendent; those persons conducting, observing, or monitoring the tabulation; and those persons whose technical assistance is needed for the tabulation process to operate.

(7) The absentee ballots shall be tabulated in accordance with the procedures of this chapter for the tabulation of absentee ballots. As such ballots are tabulated, they shall be placed into locked ballot boxes and may be transferred to locked ballot bags, if needed, for security. The persons conducting the tabulation of the absentee ballots shall not cause the tabulating equipment to produce any count, partial or otherwise, of the absentee votes cast until the time for the closing of the polls except as otherwise provided in this Code section.

(b) When requested by the superintendent, but not earlier than the third Monday prior to a primary, election, or runoff ~~As soon as practicable after 7:00 A.M. on the day of the primary, election, or runoff, in precincts other than those in which optical scanning tabulators are used~~, a registrar or absentee ballot clerk shall deliver the official absentee ballot of each certified absentee elector, each rejected absentee ballot, applications for such ballots, and copies of the numbered lists of certified and rejected absentee electors to the ~~manager in charge of the absentee ballot precinct of the county or municipality, which shall be located in the precincts containing the county courthouse or polling place designated by the municipal superintendent. In those precincts in which optical scanning tabulators are used, such absentee ballots shall be taken to the tabulation center or other place~~ location designated by the superintendent, and the superintendent or official receiving such absentee

ballots shall issue his or her receipt therefor. ~~Except as otherwise provided in this Code section, in no event shall the counting of the ballots begin before the polls close.~~

(c) The superintendent shall cause the verified and accepted absentee ballots to be opened and tabulated as provided in this Code section. A ~~Except as otherwise provided in this Code section, after the close of the polls on the day of the primary, election, or runoff, a~~ manager shall then open the outer envelope in such manner as not to destroy the oath printed thereon and shall deposit the inner envelope marked 'Official Absentee Ballot' in a ballot box reserved for absentee ballots. In the event that an outer envelope is found to contain an absentee ballot that is not in an inner envelope, the ballot shall be sealed in an inner envelope, initialed and dated by the person sealing the inner envelope, and deposited in the ballot box and counted in the same manner as other absentee ballots, provided that such ballot is otherwise proper. Such manager with two assistant managers, appointed by the superintendent, with such clerks as the manager deems necessary shall count the absentee ballots following the procedures prescribed by this chapter for other ballots, insofar as practicable~~, and prepare an election return for the county or municipality showing the results of the absentee ballots cast in such county or municipality~~.

(d) All absentee ballots shall be counted and tabulated in such a manner that returns may be reported by precinct; and separate returns shall be made for each precinct in which absentee ballots were cast showing the results by each precinct in which the electors reside. The superintendent shall utilize the procedures set forth in this Code section to ensure that the returns of verified and accepted absentee ballots cast are reported to the public as soon as possible following the closing of the polls on the day of the primary, election, or runoff. Failure to utilize these procedures to ensure that the returns of verified and accepted absentee ballots are reported as soon as possible following the close of polls shall subject the superintendent to sanctions by the State Election Board. If a superintendent fails to report the returns of verified and accepted absentee ballots by the day following the

election at 5:00 P.M., the State Election Board may convene an independent performance review board pursuant to Code Section 21-2-107.

(e) If an absentee elector's right to vote has been challenged for cause, a poll officer shall write 'Challenged,' the elector's name, and the alleged cause of challenge on the outer envelope and shall deposit the ballot in a secure, sealed ballot box; and it shall be counted as other challenged ballots are counted. Where direct recording electronic voting systems are used for absentee balloting and a challenge to an elector's right to vote is made prior to the time that the elector votes, the elector shall vote on a paper or optical scanning ballot and such ballot shall be handled as provided in this subsection. The board of registrars or absentee ballot clerk shall promptly notify the elector of such challenge.

(f) It shall be unlawful at any time prior to the close of the polls for any person to disclose or for any person to receive any information regarding the results of the tabulation of absentee ballots except as expressly provided by law.″

**SECTION 30.**

Said chapter is further amended in Code Section 21-2-390, relating to delivery of election materials to clerk of superior court or city clerk after primary or election and accounting for ballots by registrars or municipal absentee ballot clerks, by designating the existing text as subsection (a) and adding a new subsection to read as follows:

″(b) The Secretary of State shall be authorized to inspect and audit the information contained in the absentee ballot applications or envelopes at his or her discretion at any time during the 24 month retention period. Such audit may be conducted state wide or in selected counties or cities and may include the auditing of a statistically significant sample of the envelopes or a full audit of all of such envelopes. For this purpose, the Secretary of State or his or her authorized agents shall have access to such envelopes in the custody of the clerk of superior court or city clerk.″

**SECTION 31.**

Said chapter is further amended in Code Section 21-2-403, relating to time for opening and closing of polls, by redesignating the existing text as subsection (a) and adding a new subsection to read as follows:

"(b) Poll hours at a precinct may be extended only by order of a judge of the superior court of the county in which the precinct is located upon good cause shown by clear and convincing evidence that persons were unable to vote at that precinct during a specific period or periods of time. Poll hours shall not be extended longer than the total amount of time during which persons were unable to vote at such precinct. Any order extending poll hours at a precinct beyond 9:00 P.M. shall be by written order with specific findings of fact supporting such extension."

**SECTION 32.**

Said chapter is further amended by revising subsections (c) and (e) of Code Section 21-2-408, relating to poll watchers, designation, duties, removal for interference with election, reports by poll watchers of infractions or irregularities, and ineligibility of candidates to serve as poll watchers, as follows:

"(c) In counties or municipalities using direct recording electronic (DRE) voting systems or optical scanning voting systems, each political party may appoint two poll watchers in each primary or election, each political body may appoint two poll watchers in each election, each nonpartisan candidate may appoint one poll watcher in each nonpartisan election, and each independent candidate may appoint one poll watcher in each election to serve in the locations designated by the superintendent within the tabulating center. Such designated locations shall include the check-in area, the computer room, the duplication area, and such other areas as the superintendent may deem necessary to the assurance of fair and honest procedures in the tabulating center. The locations designated by the superintendent shall ensure that each poll watcher can fairly observe the procedures set

forth in this Code section. The poll watchers provided for in this subsection shall be appointed and serve in the same manner as other poll watchers."

"(e) No person shall be appointed or be eligible to serve as a poll watcher in any primary or election in which such person is a candidate. No person shall be eligible to serve as a poll watcher unless he or she has completed training provided by the political party, political body, or candidate designating the poll watcher. Upon request, the Secretary of State shall make available material to each political party, political body, or candidate that can be utilized in such training but it shall be the responsibility of the political party, political body, or candidate designating the poll watcher to instruct poll watchers in their duties and in applicable laws and rules and regulations. Each political party, political body, or candidate shall, in their written designation of poll watchers, certify under oath that the named poll watchers have completed the training required by this Code section."

**SECTION 33.**

Said chapter is further amended by revising subsections (a) and (e) of Code Section 21-2-414, relating to restrictions on campaign activities and public opinion polling within the vicinity of a polling place, cellular phone use prohibited, prohibition of candidates from entering certain polling places, and penalty, as follows:

"(a) No person shall solicit votes in any manner or by any means or method, nor shall any person distribute or display any campaign material, nor shall any person give, offer to give, or participate in the giving of any money or gifts, including, but not limited to, food and drink, to an elector, nor shall any person solicit signatures for any petition, nor shall any person, other than election officials discharging their duties, establish or set up any tables or booths on any day in which ballots are being cast:

(1) Within 150 feet of the outer edge of any building within which a polling place is established;

(2) Within any polling place; or

(3) Within 25 feet of any voter standing in line to vote at any polling place.

These restrictions shall not apply to conduct occurring in private offices or areas which cannot be seen or heard by such electors."

"(e) This Code section shall not be construed to prohibit a poll officer from distributing materials, as required by law, which are necessary for the purpose of instructing electors or from distributing materials prepared by the Secretary of State which are designed solely for the purpose of encouraging voter participation in the election being conducted or from making available self-service water from an unattended receptacle to an elector waiting in line to vote."

**SECTION 34.**

Said chapter is further amended by revising subsections (a) and (b) of Code Section 21-2-418, relating to provisional ballots, as follows:

"(a) If a person presents himself or herself at a polling place, absentee polling place, or registration office in his or her county of residence in this state for the purpose of casting a ballot in a primary or election stating a good faith belief that he or she has timely registered to vote in such county of residence in such primary or election and the person's name does not appear on the list of registered electors, the person shall be entitled to cast a provisional ballot in his or her county of residence in this state as provided in this Code section. If the person presents himself or herself at a polling place in the county in which he or she is registered to vote, but not at the precinct at which he or she is registered to vote, the poll officials shall inform the person of the polling location for the precinct where such person is registered to vote. The poll officials shall also inform such person that any votes cast by a provisional ballot in the wrong precinct will not be counted unless it is cast after 5:00 P.M. and before the regular time for the closing of the polls on the day of the primary, election, or runoff and unless the person executes a sworn statement, witnessed

by the poll official, stating that he or she is unable to vote at his or her correct polling place prior to the closing of the polls and giving the reason therefor.

(b) Such person voting a provisional ballot shall complete an official voter registration form and a provisional ballot voting certificate which shall include information about the place, manner, and approximate date on which the person registered to vote. The person shall swear or affirm in writing that he or she previously registered to vote in such primary or election, is eligible to vote in such primary or election, has not voted previously in such primary or election, and meets the criteria for registering to vote in such primary or election. If the person is voting a provisional ballot in the county in which he or she is registered to vote but not at the precinct in which he or she is registered to vote during the period from 5:00 P.M. to the regular time for the closing of the polls on the day of the primary, election, or runoff, the person shall execute a sworn statement, witnessed by the poll official, stating that he or she is unable to vote at his or her correct polling place prior to the closing of the polls and giving the reason therefor. The form of the provisional ballot voting certificate shall be prescribed by the Secretary of State. The person shall also present the identification required by Code Section 21-2-417."

**SECTION 35.**

Said chapter is further amended by revising Code Section 21-2-419, relating to validation of provisional ballots and reporting to Secretary of State, as follows:

"21-2-419.

(a) A person shall cast a provisional ballot on the same type of ballot that is utilized by the county or municipality. Such provisional ballot shall be sealed in double envelopes as provided in Code Section 21-2-384 and shall be deposited by the person casting such ballot in a secure, sealed ballot box.

(b) At the earliest time possible after the casting of a provisional ballot, but no later than the day after the primary or election in which such provisional ballot was cast, the board

of registrars of the county or municipality, as the case may be, shall be notified by the election superintendent that provisional ballots were cast in the primary or election and the registrars shall be provided with the documents completed by the person casting the provisional ballot as provided in Code Section 21-2-418. Provisional ballots shall be securely maintained by the election superintendent until a determination has been made concerning their status. The board of registrars shall immediately examine the information contained on such documents and make a good faith effort to determine whether the person casting the provisional ballot was entitled to vote in the primary or election. Such good faith effort shall include a review of all available voter registration documentation, including registration information made available by the electors themselves and documentation of modifications or alterations of registration data showing changes to an elector's registration status. Additional sources of information may include, but are not limited to, information from the Department of Driver Services, Department of Family and Children Services, Department of Natural Resources, public libraries, or any other agency of government including, but not limited to, other county election and registration offices.

(c)(1) If the registrars determine after the polls close, but not later than three days following the primary or election, that the person casting the provisional ballot timely registered to vote and was eligible and entitled to vote <u>in the precinct in which he or she voted</u> in such primary or election, the registrars shall notify the election superintendent and the provisional ballot shall be counted and included in the county's or municipality's certified election results.

(2) If the registrars determine after the polls close, but not later than three days following the primary or election, that the person voting the provisional ballot timely registered and was eligible and entitled to vote in the primary or election but voted in the wrong precinct, then the board of registrars shall notify the election superintendent <u>only if such person voted between the hours of 5:00 P.M. and the regular time for the closing of the polls on the day of the primary, election, or runoff and provided the sworn statement</u>

required by subsection (b) of Code Section 21-2-418. The superintendent shall count such person's votes which were cast for candidates in those races for which the person was entitled to vote but shall not count the votes cast for candidates in those races in which such person was not entitled to vote. The superintendent shall order the proper election official at the tabulating center or precinct to prepare an accurate duplicate ballot containing only those votes cast by such person in those races in which such person was entitled to vote for processing at the tabulating center or precinct, which shall be verified in the presence of a witness. Such duplicate ballot shall be clearly labeled with the word 'Duplicate,' shall bear the designation of the polling place, and shall be given the same serial number as the original ballot. The original ballot shall be retained and the sworn statement required by subsection (b) of Code Section 21-2-418 shall be transmitted to the Secretary of State with the certification documents required by paragraph (4) of subsection (a) of Code Section 21-2-497 and such statement shall be reviewed by the State Election Board.

(3) If the registrars determine that the person casting the provisional ballot did not timely register to vote or was not eligible or entitled to vote in the precinct in which he or she voted in such primary or election or shall be unable to determine within three days following such primary or election whether such person timely registered to vote and was eligible and entitled to vote in such primary or election, the registrars shall so notify the election superintendent and such ballot shall not be counted. The election superintendent shall mark or otherwise document that such ballot was not counted and shall deliver and store such ballots with all other ballots and election materials as provided in Code Section 21-2-500.

(d)(1) At the earliest time possible after a determination is made regarding a provisional ballot, the board of registrars shall notify in writing those persons whose provisional ballots were not counted that their ballots were not counted because of the inability of the registrars to verify that the persons timely registered to vote or other proper reason. The

registrars shall process the official voter registration form completed by such persons pursuant to Code Section 21-2-418 and shall add such persons to the electors list if found qualified.

(2) At the earliest time possible after a determination is made regarding a provisional ballot, the board of registrars shall notify in writing those electors who voted in the wrong precinct and whose votes were partially counted of their correct precinct.

(e) The board of registrars shall complete a report in a form designated by the Secretary of State indicating the number of provisional ballots cast and counted in the primary or election.″

**SECTION 36.**

Said chapter is further amended in Part 1 of Article 11, relating to general provisions regarding preparation for and conduct of primaries and elections, by adding new Code sections to read as follows:

″21-2-420.

(a) After the time for the closing of the polls and the last elector voting, the poll officials in each precinct shall complete the required accounting and related documentation for the precinct and shall advise the election superintendent of the total number of ballots cast at such precinct and the total number of provisional ballots cast. The chief manager and at least one assistant manager shall post a copy of the tabulated results for the precinct on the door of the precinct and then immediately deliver all required documentation and election materials to the election superintendent. The election superintendent shall then ensure that such ballots are processed, counted, and tabulated as soon as possible and shall not cease such count and tabulation until all such ballots are counted and tabulated.

(b) The election superintendent shall ensure that each precinct notifies the election superintendent of the number of ballots cast and number of provisional ballots cast as soon as possible after the time for the closing of the polls and the last elector votes. The election

superintendent shall post such information publicly. The State Election Board shall promulgate rules and regulations regarding how such information shall be publicly posted to ensure transparency, accuracy, and security.

21-2-421.

(a) As soon as possible but not later than 10:00 P.M. following the close of the polls on the day of a primary, election, or runoff, the election superintendent shall report to the Secretary of State and post in a prominent public place the following information:

(1) The number of ballots cast at the polls on the day of the primary, election, or runoff, including provisional ballots cast;

(2) The number of ballots cast at advance voting locations during the advance voting period for the primary, election, or runoff; and

(3) The total number of absentee ballots returned to the board of registrars by the deadline to receive such absentee ballots on the day of the primary, election, or runoff.

(b) Upon the completion of the report provided for in subsection (a) of this Code section, the election superintendent shall compare the total number of ballots received as reported in subsection (a) of this Code section and the counting of the ballots in the primary, election, or runoff minus any rejected and uncured absentee ballots, uncounted provisional ballots, and any other uncounted ballots, with the total number of ballots cast in the primary, election, or runoff. The results of such comparison and all explanatory materials shall be reported to the Secretary of State. The reason for any discrepancy shall be fully investigated and reported to the Secretary of State."

**SECTION 37.**

Said chapter is further amended by revising subsections (a) and (d) of Code Section 21-2-437, relating to procedure as to count and return of votes generally and void ballots, as follows:

"(a) After the polls close and as soon as all the ballots have been properly accounted for and those outside the ballot box as well as the voter's certificates, numbered list of voters, and electors list have been sealed, the poll officers shall open the ballot box and take therefrom all ballots contained therein. In primaries in which more than one ballot box is used, any ballots or stubs belonging to another party holding its primary in the same polling place shall be returned to the ballot box for the party for which they were issued. In primaries, separate tally and return sheets shall be prepared for each party, and separate poll officers shall be designated by the chief manager to count and tally each party's ballot. Where the same ballot box is being used by one or more parties, the ballots and stubs shall first be divided by party before being tallied and counted. The ballots shall then be counted one by one and a record made of the total number. Then the chief manager, together with such assistant managers and other poll officers as the chief manager may designate, under the scrutiny of one of the assistant managers and in the presence of the other poll officers, shall read aloud the names of the candidates marked or written upon each ballot, together with the office for which the person named is a candidate, and the answers contained on the ballots to the questions submitted, if any; and the other assistant manager and clerks shall carefully enter each vote as read and keep account of the same in ink on a sufficient number of tally papers, all of which shall be made at the same time. All ballots, after being removed from the box, shall be kept within the unobstructed view of all persons in the voting room until replaced in the box. No person, while handling the ballots, shall have in his or her hand any pencil, pen, stamp, or other means of marking or spoiling any ballot. The poll officers shall immediately proceed to canvass and compute the votes cast and shall not adjourn or postpone the canvass or computation until it shall have been fully completed~~, except that, in the discretion of the superintendent, the poll officers may stop the counting after all contested races and questions are counted, provided that the results of these contested races and questions are posted for the information of the public outside~~

~~the polling place and the ballots are returned to the ballot box and deposited with the superintendent until counting is resumed on the following day~~."

"(d) Any ballot marked so as to identify the voter shall be void and not counted, except a ballot cast by a challenged elector whose name appears on the electors list; such challenged vote shall be counted as prima facie valid but may be voided in the event of an election contest. Any ballot marked by anything but pen or pencil shall be void and not counted. Any erasure, mutilation, or defect in the vote for any candidate shall render void the vote for such candidate but shall not invalidate the votes cast on the remainder of the ballot, if otherwise properly marked. If an elector shall mark his or her ballot for more persons for any nomination or office than there are candidates to be voted for such nomination or office, or if, for any reason, it may be impossible to determine his or her choice for any nomination or office, his or her ballot shall not be counted for such nomination or office; but the ballot shall be counted for all nominations or offices for which it is properly marked. Unmarked ballots or ballots improperly or defectively marked so that the whole ballot is void shall be set aside and shall be preserved with other ballots. In primaries, votes cast for candidates who have died, withdrawn, or been disqualified shall be void and shall not be counted. Except as provided in subsection (g) of Code Section 21-2-134 regarding nonpartisan elections, in ~~In~~ elections, votes for candidates who have died or been disqualified shall be void and shall not be counted."

**SECTION 38.**

Said chapter is further amended by revising subsection (a) of Code Section 21-2-438, relating to ballots identifying voter, not marked, or improperly marked declared void, as follows:

"(a) Any ballot marked so as to identify the voter shall be void and not counted, except a ballot cast by a challenged elector whose name appears on the electors list; such challenged vote shall be counted as prima facie valid but may be voided in the event of an election contest. Any ballot marked by anything but pen or pencil shall be void and not counted.

Any erasure, mutilation, or defect in the vote for any candidate shall render void the vote for such candidate but shall not invalidate the votes cast on the remainder of the ballot, if otherwise properly marked. If an elector shall mark his or her ballot for more persons for any nomination or office than there are candidates to be voted for such nomination or office, or if, for any reason, it may be impossible to determine his or her choice for any nomination or office, his or her ballot shall not be counted for such nomination or office; but the ballot shall be counted for all nominations or offices for which it is properly marked. Ballots not marked or improperly or defectively marked so that the whole ballot is void~~,~~ shall be set aside and shall be preserved with the other ballots. In primaries, votes cast for candidates who have died, withdrawn, or been disqualified shall be void and shall not be counted. Except as provided in subsection (g) of Code Section 21-2-134 regarding nonpartisan elections, in ~~In~~ elections, votes for candidates who have died or been disqualified shall be void and shall not be counted.″

**SECTION 38A.**

Said chapter is further amended by revising subsection (a) of Code Section 21-2-480, relating to caption for ballots, party designations, and form and arrangement, as follows:

″(a) At the top of each ballot for an election in a precinct using optical scanning voting equipment shall be printed in prominent type the words 'OFFICIAL BALLOT,' followed by the name and designation of the precinct for which it is prepared and the name and date of the election.″

**SECTION 38B.**

Said chapter is further amended by revising Code Section 21-2-482, relating to absentee ballots for precincts using optical scanning voting equipment, as follows:

″21-2-482.

Ballots in a precinct using optical scanning voting equipment for voting by absentee electors shall be prepared sufficiently in advance by the superintendent and shall be delivered to the board of registrars as provided in Code Section 21-2-384. Such ballots shall be marked 'Official Absentee Ballot' and shall be in substantially the form for ballots required by Article 8 of this chapter, except that in counties or municipalities using voting machines, direct recording electronic (DRE) units, or ballot scanners, the ballots may be in substantially the form for the ballot labels required by Article 9 of this chapter or in such form as will allow the ballot to be machine tabulated. Every such ballot shall have printed on the face thereof the following:

'I understand that the offer or acceptance of money or any other object of value to vote for any particular candidate, list of candidates, issue, or list of issues included in this election constitutes an act of voter fraud and is a felony under Georgia law.'

The form for either ballot shall be determined and prescribed by the Secretary of State and shall have printed at the top the name and designation of the precinct.″

**SECTION 39.**

Said chapter is further amended by revising subsection (f) of Code Section 21-2-483, relating to counting of ballots, public accessibility to tabulating center and precincts, execution of ballot recap forms, and preparation of duplicate ballots, as follows:

″(f) If it appears that a ballot is so torn, bent, or otherwise defective that it cannot be processed by the tabulating machine, the superintendent, in his or her discretion, may order ~~the proper election official at the tabulating center or precinct~~ a duplication panel to prepare a true duplicate copy for processing ~~with the ballots of the same polling place, which shall be verified in the presence of a witness~~. In a partisan election, the duplication panel shall be composed of the election superintendent or a designee thereof and one person appointed by the county executive committee of each political party having candidates whose names appear on the ballot for such election, provided that, if there is no organized county

executive committee for a political party, the person shall be appointed by the state executive committee of the political party. In a nonpartisan election or an election involving only the presentation of a question to the electors, the duplication panel shall be composed of the election superintendent or a designee thereof and two electors of the county or municipality. In the case of a nonpartisan county or municipal election or an election involving only the presentation of a question to the electors, the two elector members of the panel shall be appointed by the chief judge of the superior court of the county or municipality in which the election is held. In the case of a municipality which is located in more than one county, the two elector members of the panel shall be appointed by the chief judge of the superior court of the county in which the city hall of the municipality is located. The election superintendent may create multiple duplication panels to handle the processing of such ballots more efficiently. All duplicate ballots shall be clearly labeled by the word 'duplicate,' shall bear the designation of the polling place, and shall ~~be given the same serial number as the defective ballot~~ contain a unique number that will allow such duplicate ballot to be linked back to the original ballot. The defective ballot shall be retained."

**SECTION 40.**

Said chapter is further amended by revising Code Section 21-2-492, relating to computation and canvassing of returns, notice of when and where returns will be computed and canvassed, blank forms for making statements of returns, and swearing of assistants, as follows:

"21-2-492.

The superintendent shall arrange for the computation and canvassing of the returns of votes cast at each primary and election at his or her office or at some other convenient public place at the county seat or municipality following the close of the polls on the day of such primary or election with accommodations for those present insofar as space permits. An interested candidate or his or her representative shall be permitted to keep or check his or

her own computation of the votes cast in the several precincts as the returns from the same are read, as directed in this article. The superintendent shall give at least one week's notice prior to the primary or election by publishing same in a conspicuous place in the superintendent's office, of the ~~time and~~ place ~~when and~~ where he or she will commence and hold his or her sessions for the computation and canvassing of the returns; and he or she shall keep copies of such notice posted in his or her office during such period. The superintendent shall procure a sufficient number of blank forms of returns made out in the proper manner and headed as the nature of the primary or election may require, for making out full and fair statements of all votes which shall have been cast within the county or any precinct therein, according to the returns from the several precincts thereof, for any person voted for therein, or upon any question voted upon therein. The assistants of the superintendent in the computation and canvassing of the votes shall be first sworn by the superintendent to perform their duties impartially and not to read, write, count, or certify any return or vote in a false or fraudulent manner.″

**SECTION 41.**

Said chapter is further amended by revising subsections (a) and (k) of Code Section 21-2-493, relating to computation, canvassing, and tabulation of returns, investigation of discrepancies in vote counts, recount procedure, certification of returns, and change in returns, and adding a new subsection to read as follows:

″(a) The superintendent shall, ~~at or before 12:00 Noon~~ after the close of the polls on the day ~~following the~~ of a primary or election, at his or her office or at some other convenient public place at the county seat or in the municipality, of which due notice shall have been given as provided by Code Section 21-2-492, publicly commence the computation and canvassing of the returns and continue ~~the same~~ until all absentee ballots received by the close of the polls, including those cast by advance voting, and all ballots cast on the day of the primary or election have been counted and tabulated and the results of such

tabulation released to the public and, then, continuing with provisional ballots as provided in Code Sections 21-2-418 and 21-2-419 and those absentee ballots as provided in subparagraph (a)(1)(G) of Code Section 21-2-386 from day to day until completed. For this purpose, the superintendent may organize his or her assistants into sections, each of ~~which~~ whom may simultaneously proceed with the computation and canvassing of the returns from various precincts of the county or municipality in the manner provided by this Code section. Upon the completion of such computation and canvassing, the superintendent shall tabulate the figures for the entire county or municipality and sign, announce, and attest the same, as required by this Code section."

"(j.1) The Secretary of State shall create a pilot program for the posting of digital images of the scanned paper ballots created by the voting system.

(k) As the returns from each precinct are read, computed, and found to be correct or corrected as aforesaid, they shall be recorded on the blanks prepared for the purpose until all the returns from the various precincts which are entitled to be counted shall have been duly recorded; then they shall be added together, announced, and attested by the assistants who made and computed the entries respectively and shall be signed by the superintendent. The consolidated returns shall then be certified by the superintendent in the manner required by this chapter. Such returns shall be certified by the superintendent not later than 5:00 P.M. on the ~~second Friday~~ Monday following the date on which such election was held and such returns shall be immediately transmitted to the Secretary of State~~; provided, however, that such certification date may be extended by the Secretary of State in his or her discretion if necessary to complete a precertification audit as provided in Code Section 21-2-498~~."

**SECTION 42.**

Said chapter is further amended by revising Code Section 21-2-501, relating to number of votes required for election, as follows:

"21-2-501.

(a)(1) Except as otherwise provided in this Code section, no candidate shall be nominated for public office in any primary or special primary or elected to public office in any election or special election or shall take or be sworn into such elected public office unless such candidate shall have received a majority of the votes cast to fill such nomination or public office. In instances where no candidate receives a majority of the votes cast, a run-off primary, special primary runoff, run-off election, or special election runoff between the candidates receiving the two highest numbers of votes shall be held. Unless such date is postponed by a court order, such ~~run-off primary, special primary runoff, run-off election, or special election~~ runoff shall be held ~~as provided in this subsection.~~

~~(2) In the case of a runoff from a general primary or a special primary or special election held in conjunction with a general primary, the runoff shall be held on the Tuesday of the ninth week following such general primary.~~

~~(3) In the case of a runoff from a general election for a federal office or a runoff from a special primary or special election for a federal office held in conjunction with a general election, the runoff shall be held on the Tuesday of the ninth week following such general election.~~

~~(4) In the case of a runoff from a general election for an office other than a federal office or a runoff from a special primary or special election for an office other than a federal office held in conjunction with a general election, the runoff shall be held~~ on the twenty-eighth day after the day of holding the preceding general or special primary or general or special election.

~~(5) In the case of a runoff from a special primary or special election for a federal office not held in conjunction with a general primary or general election, the runoff shall be held on the Tuesday of the ninth week following such special primary or special election.~~

~~(6) In the case of a runoff from a special primary or special election for an office other than a federal office not held in conjunction with a general primary or general election, the runoff shall be held on the twenty-eighth day after the day of holding the preceding special primary or special election; provided, however, that, if such runoff is from a special primary or special election held in conjunction with a special primary or special election for a federal office and there is a runoff being conducted for such federal office, the runoff from the special primary or special election conducted for such other office may be held in conjunction with the runoff for the federal office.~~

~~(7)~~(2) If any candidate eligible to be in a runoff withdraws, dies, or is found to be ineligible, the remaining candidates receiving the two highest numbers of votes shall be the candidates in the runoff.

~~(8)~~(3) The candidate receiving the highest number of the votes cast in such run-off primary, special primary runoff, run-off election, or special election runoff to fill the nomination or public office sought shall be declared the winner.

~~(9)~~(4) The name of a write-in candidate eligible for election in a runoff shall be printed on the election or special election run-off ballot in the independent column.

~~(10)~~(5) The run-off primary, special primary runoff, run-off election, or special election runoff shall be a continuation of the primary, special primary, election, or special election for the particular office concerned. Only the electors who ~~were~~ are duly registered to vote and not subsequently deemed disqualified to vote in the ~~primary, special primary, election, or special election~~ runoff for candidates for that particular office shall be entitled to vote therein, and only those votes cast for the persons designated as candidates in such run-off primary, special primary runoff, run-off election, or special election runoff shall be counted in the tabulation and canvass of the votes cast. No elector shall vote in a run-off primary or special primary runoff in violation of Code Section 21-2-224.

(b) For the purposes of this subsection, the word 'plurality' shall mean the receiving by one candidate alone of the highest number of votes cast. If the municipal charter or ordinances

of a municipality as now existing or as amended subsequent to September 1, 1968, provide that a candidate may be nominated or elected by a plurality of the votes cast to fill such nomination or public office, such provision shall prevail. Otherwise, no municipal candidate shall be nominated for public office in any primary or elected to public office in any election unless such candidate shall have received a majority of the votes cast to fill such nomination or public office.

(c) In instances in which no municipal candidate receives a majority of the votes cast and the municipal charter or ordinances do not provide for nomination or election by a plurality vote, a run-off primary or election shall be held between the candidates receiving the two highest numbers of votes. Such runoff shall be held on the twenty-eighth day after the day of holding the first primary or election, unless such run-off date is postponed by court order.~~; provided, however, that, in the case of a runoff from a municipal special election that is held in conjunction with a special election for a federal office and not in conjunction with a general primary or general election, the municipality may conduct such runoff from such municipal special election on the date of the special election runoff for the federal office. Only the electors entitled to vote in the first primary or election shall be entitled to vote in any run-off primary or election resulting therefrom; provided, however, that no~~ No elector shall vote in a run-off primary in violation of Code Section 21-2-216. The run-off primary or election shall be a continuation of the first primary or election, and only those votes cast for the candidates receiving the two highest numbers of votes in the first primary or election shall be counted. No write-in votes may be cast in such a primary, run-off primary, or run-off election. If any candidate eligible to be in a runoff withdraws, dies, or is found to be ineligible, the remaining candidates receiving the two highest numbers of votes shall be the candidates in such runoff. The municipal candidate receiving the highest number of the votes cast in such run-off primary or run-off election to fill the nomination or public office sought shall be declared the winner. The municipality shall give written

notice to the Secretary of State of such runoff as soon as such municipality certifies the preceding primary, special primary, election, or special election.

(d) The name of a municipal write-in candidate eligible for election in a municipal runoff shall be printed on the municipal run-off election ballot in the independent column.

(e) In all cities having a population in excess of 100,000 according to the United States decennial census of 1980 or any future such census, in order for a municipal candidate to be nominated for public office in any primary or elected to public office in any municipal election, he or she must receive a majority of the votes cast.

(f) Except for presidential electors, to be elected to public office in a general election, a candidate must receive a majority of the votes cast in an election to fill such public office. To be elected to the office of presidential electors, no slate of candidates shall be required to receive a majority of the votes cast, but that slate of candidates shall be elected to such office which receives the highest number of votes cast.″

**SECTION 43.**

Said chapter is further amended by revising Code Section 21-2-540, relating to conduct of special elections generally, as follows:

″21-2-540.

(a)(1) Every special primary and special election shall be held and conducted in all respects in accordance with the provisions of this chapter relating to general primaries and general elections; and the provisions of this chapter relating to general primaries and general elections shall apply thereto insofar as practicable and as not inconsistent with any other provisions of this chapter. All special primaries and special elections held at the time of a general primary, as provided by Code Section 21-2-541, shall be conducted by the poll officers by the use of the same equipment and facilities, insofar as practicable, as are used for such general primary. All special primaries and special elections held at the time of a general election, as provided by Code Section 21-2-541, shall be conducted

by the poll officers by the use of the same equipment and facilities, ~~so far~~ insofar as practicable, as are used for such general election.

(2) If a vacancy occurs in a partisan office to which the Governor is authorized to appoint an individual to serve until the next general election, a special primary shall precede the special election.

(b) At least 29 days shall intervene between the call of a special primary and the holding of same, and at least 29 days shall intervene between the call of a special election and the holding of same. The period during which candidates may qualify to run in a special primary or a special election shall remain open for a minimum of two and one-half days. Special primaries and special elections which are to be held in conjunction with the presidential preference primary, a state-wide general primary, or state-wide general election shall be called at least 90 days prior to the date of such presidential preference primary, state-wide general primary, or state-wide general election; provided, however, that this requirement shall not apply to special primaries and special elections held on the same date as such presidential preference primary, state-wide general primary, or state-wide general election but conducted completely separate and apart from such state-wide general primary or state-wide general election using different ballots or voting equipment, facilities, poll workers, and paperwork. ~~Notwithstanding any provision of this subsection to the contrary, special elections which are to be held in conjunction with the state-wide general primary or state-wide general election in 2014 shall be called at least 60 days prior to the date of such state-wide general primary or state-wide general election.~~

(c)(1) Notwithstanding any other provision of law to the contrary, a special primary or special election to fill a vacancy in a county or municipal office shall be held only on one of the following dates which is at least 29 days after the date of the call for the special election:

(A) In odd-numbered years, any such special primary or special election shall only be held on:

(i) The third Tuesday in March;

(ii) The third Tuesday in June;

(iii) The third Tuesday in September; or

(iv) The Tuesday after the first Monday in November; and

(B) In even-numbered years, any such special primary or special election shall only be held on:

(i) The third Tuesday in March; provided, however, that in the event that a special primary or special election is to be held under this provision in a year in which a presidential preference primary is to be held, then any such special primary or special election shall be held on the date of and in conjunction with the presidential preference primary;

(ii) The date of the general primary; or

(iii) The Tuesday after the first Monday in November;

provided, however, that, in the event that a special primary or special election to fill a federal or state office on a date other than the dates provided in this paragraph has been scheduled and it is possible to hold a special primary or special election to fill a vacancy in a county, municipal, or school board office in conjunction with such special primary or special election to fill a federal or state office, the special primary or special election to fill such county, municipal, or school board office may be held on the date of and in conjunction with such special primary or special election to fill such federal or state office, provided all other provisions of law regarding such primaries and elections are met.

(2) Notwithstanding any other provision of law to the contrary, a special election to present a question to the voters shall be held only on one of the following dates which is at least 29 days after the date of the call for the special election:

(A) In odd-numbered years, any such special election shall only be held on the third Tuesday in March or on the Tuesday after the first Monday in November; and

(B) In even-numbered years, any such special election shall only be held on:

(i) The date of and in conjunction with the presidential preference primary if one is held that year;

(ii) The date of the general primary; or

(iii) The Tuesday after the first Monday in November.

(3) The provisions of this subsection shall not apply to:

(A) Special elections held pursuant to Chapter 4 of this title, the 'Recall Act of 1989,' to recall a public officer or to fill a vacancy in a public office caused by a recall election; and

(B) Special primaries or special elections to fill vacancies in federal or state public offices.

(d) Except as otherwise provided by this chapter, the superintendent of each county or municipality shall publish the call of the special primary or special election.

(e)(1) Candidates in special elections for partisan offices that are not preceded by special primaries shall be listed alphabetically on the ballot and may choose to designate on the ballot their party affiliation. The party affiliation selected by a candidate shall not be changed following the close of qualifying.

(2) Candidates in special primaries shall be listed alphabetically on the ballot.″

**SECTION 44.**

Said chapter is further amended by revising subsection (b) of Code Section 21-2-541, relating to holding of special primary or election at time of general primary or election and inclusion of candidates and questions in special primary or election on ballot, as follows:

″(b) If the times specified for the closing of the registration list for a special primary or special election are the same as those for a general primary or general election, the candidates and questions in such special primary or special election shall be included on the ballot for such general primary or general election. In such an instance, the name of

the office and the candidates in such special primary or special election shall appear on the ballot in the position where such names would ordinarily appear if such contest was a general primary or general election.″

**SECTION 45.**

Said chapter is further amended by revising Code Section 21-2-542, relating to special election for United States senator vacancy and temporary appointment by Governor, as follows:

″21-2-542.

Whenever a vacancy shall occur in the representation of this state in the Senate of the United States, such vacancy shall be filled for the unexpired term by the vote of the electors of the state at a special primary to be held at the time of the next general primary followed by a special election to be held at the time of the next November state-wide general election, occurring at least 40 days after the occurrence of such vacancy; and it shall be the duty of the Governor to issue his or her proclamation for such special primary and special election. Until such time as the vacancy shall be filled by an election as provided in this Code section, the Governor may make a temporary appointment to fill such vacancy.″

**SECTION 46.**

Said chapter is further amended in Article 14, relating to special elections and primaries generally and municipal terms of office, by adding a new Code section to read as follows:

″21-2-546.

Notwithstanding any other law to the contrary, in each county in this state in which there is a civil and magistrate court established by local Act of the General Assembly, vacancies in the office of chief judge of such court caused by death, retirement, resignation, or otherwise shall be filled by the appointment of a qualified person by the Governor to serve

until a successor is duly elected and qualified and until January 1 of the year following the next general election which is more than six months following such person's appointment.″

**SECTION 47.**

Said chapter is further amended by revising subsection (a) of Code Section 21-2-568, relating to entry into voting compartment or booth while another voting, interfering with elector, inducing elector to reveal or revealing elector's vote, and influencing voter while assisting, as follows:

″(a) Any person who knowingly:

(1) Goes into the voting compartment or voting machine booth while another is voting or marks the ballot or registers the vote for another, except in strict accordance with this chapter;

(2) Interferes with any elector marking his or her ballot or registering his or her vote;

(3) Attempts to induce any elector ~~before depositing his or her ballot~~ to show how he or she marks or has marked his or her ballot; ~~or~~

(4) Discloses to anyone how another elector voted, without said elector's consent, except when required to do so in any legal proceeding; or

(5) Accepts an absentee ballot from an elector for delivery or return to the board of registrars except as authorized by subsection (a) of Code Section 21-2-385

shall be guilty of a felony.″

**SECTION 48.**

Said chapter is further amended in Article 15, relating to miscellaneous offenses, by adding new Code sections to read as follows:

″21-2-568.1.

(a) Except while providing authorized assistance in voting under Code Section 21-2-409 and except for children authorized to be in the enclosed space under subsection (f) of Code

Section 21-2-413, no person shall intentionally observe an elector while casting a ballot in a manner that would allow such person to see for whom or what the elector is voting.

(b) Any person who violates the provisions of subsection (a) of this Code section shall be guilty of a felony.

21-2-568.2.

(a) It shall be illegal for any person to use photographic or other electronic monitoring or recording devices, cameras, or cellular telephones, except as authorized by law, to:

(1) Photograph or record the face of an electronic ballot marker while a ballot is being voted or while an elector's votes are displayed on such electronic ballot marker; or

(2) Photograph or record a voted ballot.

(b) Any person who violates subsection (a) of this Code section shall be guilty of a misdemeanor.″

**SECTION 49.**

Chapter 35 of Title 36 of the Official Code of Georgia Annotated, relating to home rule powers, is amended by revising subsection (a) of Code Section 36-35-4.1, relating to reapportionment of election districts for municipal elections, as follows:

″(a) Subject to the limitations provided by this Code section, the governing authority of any municipal corporation is authorized to reapportion the election districts from which members of the municipal governing authority are elected following publication of the United States decennial census of 1980 or any future such census. Such reapportionment of districts shall be effective for the election of members to the municipal governing authority at the next regular general municipal election following the publication of the decennial census; provided, however, that, if the publication of the decennial census occurs within 120 days of the next general or special municipal election, such reapportionment of

districts shall be effective for any subsequent special election and the subsequent general municipal election."

**SECTION 50.**

Title 50 of the Official Code of Georgia Annotated, relating to state government, is amended by revising subsection (b) of Code Section 50-13-4, relating to procedural requirements for adoption, amendment, or repeal of rules, emergency rules, limitation on action to contest rule, and legislative override, as follows:

"(b) If any agency finds that an imminent peril to the public health, safety, or welfare, including but not limited to, summary processes such as quarantines, contrabands, seizures, and the like authorized by law without notice, requires adoption of a rule upon fewer than 30 days' notice and states in writing its reasons for that finding, it may proceed without prior notice or hearing or upon any abbreviated notice and hearing that it finds practicable to adopt an emergency rule. Any such rule adopted relative to a public health emergency shall be submitted as promptly as reasonably practicable to the House of Representatives and Senate Committees on Judiciary, provided that any such rule adopted relative to a state of emergency by the State Election Board shall be submitted as soon as practicable but not later than 20 days prior to the rule taking effect. Any emergency rule adopted by the State Election Board pursuant to the provisions of this subsection may be suspended upon the majority vote of the House of Representatives or Senate Committees on Judiciary within ten days of the receipt of such rule by the committees. The rule may be effective for a period of not longer than 120 days but the adoption of an identical rule under paragraphs (1) and (2) of subsection (a) of this Code section is not precluded; provided, however, that such a rule adopted pursuant to discharge of responsibility under an executive order declaring a state of emergency or disaster exists as a result of a public health emergency, as defined in Code Section 38-3-3, shall be effective for the duration of the emergency or disaster and for a period of not more than 120 days thereafter."

**SECTION 51.**

Said title is further amended in Code Section 50-18-71, relating to right of access to public records, timing, fees, denial of requests, and impact of electronic records, by adding a new subsection to read as follows:

"(k) Scanned ballot images created by a voting system authorized by Chapter 2 of Title 21 shall be public records subject to disclosure under this article."

**SECTION 52.**

(a) Sections 21, 23, 25, 27, 28, and 29 of this Act shall become effective on July 1, 2021.

(b) All other sections of this Act shall become effective upon its approval by the Governor or upon its becoming law without such approval.

**SECTION 53.**

All laws and parts of laws in conflict with this Act are repealed.