UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

COALITION FOR GOOD
GOVERNANCE et al.,

        Plaintiffs,

    v.

BRIAN KEMP et al.,

        Defendants.

CIVIL ACTION NO.
1:21-cv-02070-JPB

## ORDER

Before the Court is Plaintiffs Coalition for Good Governance, Adam Shirley, Ernestine Thomas-Clark, Antwan Lang, Patricia Pullar, Judy McNichols, Jackson County Democratic Committee, Georgia Advancing Progress Political Action Committee, Ryan Graham, Rhonda Martin, Jeanne Dufort, Aileen Nakamura, Elizabeth Throop and Bradley Friedman's (collectively "Plaintiffs") Motion for Preliminary Injunction ("Motion").  ECF No. 15.  After due consideration of the Motion, the Court finds as follows:

## I.    BACKGROUND

Plaintiffs filed this action seeking a declaration that certain provisions of Georgia Senate Bill 202 ("SB 202") violate the United States Constitution and/or

the Voting Rights Act.  Defendant Brian Kemp signed SB 202 into law on March

25, 2021.

In their Motion, filed on June 14, 2021, Plaintiffs asked the Court to issue a

preliminary injunction barring the implementation of the following sections of SB

202:

**(i)      O.C.G.A. § 21-2-568.1 (the "Observation Rule")**

The Observation Rule prohibits a person from "intentionally
observ[ing] an elector while casting a ballot in a manner that would
allow such person to see for whom or what the elector is voting."

**(ii)      O.C.G.A. § 21-2-568.2 (the "Photography Rule")**

The Photography Rule prohibits the use of "photographic or other
electronic monitoring or recording devices" to (i) "[p]hotograph or
record the face of an electronic ballot marker while a ballot is being
voted or while an elector's votes are displayed on such electronic
ballot marker" or (ii) "[p]hotograph or record a voted ballot."

**(iii)      O.C.G.A. § 21-2-386(a)(2)(B)(vii) (the "Communication Rule")**

The Communication Rule prohibits election "monitors" and
"observers" from communicating (while they are viewing or
monitoring the absentee ballot opening and scanning process) "any
information that they see . . . about any ballot, vote, or selection to
anyone other than an election official."

**(iv)      O.C.G.A. § 21-2-386(a)(2)(A) and (a)(2)(B)(vi) (the "Tally Rule")**

The Tally Rule prohibits a person from "tally[ing], tabulat[ing],
estimat[ing], or attempt[ing] to tally, tabulate, or estimate or cause the
ballot scanner or any other equipment to produce any tally or tabulate,
partial or otherwise, of the absentee ballots cast" until the closing of
the polls on the day of the election.  "Monitors" and "observers" are

similarly prohibited from taking such action while they are viewing or monitoring the absentee ballot opening and scanning process.

**(v)     O.C.G.A. § 21-2-381(a)(1)(A) (the "Ballot Application Rule")**

The Ballot Application Rule provides that an application for an absentee ballot must be made "not earlier than 78 days or less than 11 days prior to the date of the primary or election, or runoff of either, in which the elector desires to vote."

The Observation and Photography Rules became effective on March 25, 2021, and the remaining challenged rules became effective on July 1, 2021.

Plaintiffs sought expedited consideration of their Motion in light of the upcoming runoff elections scheduled for July 13, 2021.  The underlying elections occurred on June 15, 2021.  The Motion is fully briefed, and the Court heard oral argument on the Motion on July 1, 2021.

Plaintiffs challenge the specified rules on one or more of the following grounds:  undue burden on the right to vote; abridgement of free speech; and void for vagueness.[1]  They conclude that the rules "are plainly unconstitutional" and "will continue to cause irreparable harm by violating the[ir] rights . . . under the First Amendment and the Due Process Clause of the Fourteenth Amendment." Pls.' Mot. 4, ECF No. 15.

---

[1] All rules, except the Ballot Application Rule, provide for criminal penalties ranging from a misdemeanor to a felony.

Defendants Brian Kemp, Brad Raffensperger, Rebecca N. Sullivan, Anh Le, Matthew Mashburn and Sara Ghazal (collectively "State Defendants") and Intervenor Defendants the Republican National Committee, National Republican Senatorial Committee, National Republican Congressional Committee and Georgia Republican Party, Inc. (collectively "Intervenor Defendants") oppose the Motion on the merits and further contend that this Court may not issue an injunction that would change the rules of an election while the election is underway.  They also assert that Plaintiffs failed to exercise diligence in bringing their claims because the dates for the underlying elections were set on April 30, and yet Plaintiffs waited until the eve of the elections to seek relief.

## II.   <u>DISCUSSION</u>

A plaintiff seeking preliminary injunctive relief must show the following:

> (1) a substantial likelihood that he will ultimately prevail on the merits; (2) that he will suffer irreparable injury unless the injunction issues; (3) that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause to the opposing party; and (4) that the injunction, if issued, would not be adverse to the public interest.

*Sofarelli v. Pinellas Cnty.*, 931 F.2d 718, 723-24 (11th Cir. 1991).  "In this circuit, a preliminary injunction is [considered] an extraordinary and drastic remedy not to be granted unless the movant clearly establish[es] the burden of persuasion as to **each** of the four prerequisites."  *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir.

2000) (internal punctuation omitted) (emphasis added).  Granting a preliminary injunction is therefore the exception rather than the rule.  *See id.*

Additionally, the election context presents supplemental considerations under *Purcell v. Gonzalez* that a court must weigh in determining whether to issue an injunction.  549 U.S. 1 (2006).  The Court turns to the *Purcell* question first.

### *Purcell* Analysis

The Supreme Court has recognized that while it would be "the unusual case" in which a court would not act to prevent a constitutional violation, "under certain circumstances, such as where an impending election is imminent and a [s]tate's election machinery is already in progress, equitable considerations might justify a court in withholding the granting of immediately effective relief."  *Reynolds v. Sims*, 377 U.S. 533, 585 (1964).  Although the election in *Reynolds* was not imminent, and that case does not necessarily have broad application to cases like the one at bar, *Reynolds* helped further the principle of exercising judicial restraint where an injunction could hamper the electoral process.

In subsequent opinions, the Supreme Court identified specific factors that could militate against granting election-related injunctive relief close to election day.  For example, in *Fishman v. Schaffer*, the court focused on factors such as unnecessary delay in commencing a suit and relief that would "have a chaotic and

5

disruptive effect upon the electoral process" as grounds for denying a motion for injunctive relief close to an election.  429 U.S. 1325, 1330 (1976).

This principle of restraint has continued to develop over the years, and the Supreme Court's more recent opinion in *Purcell* is now frequently cited for the proposition that a court should ordinarily decline to issue an injunction—especially one that changes existing election rules—when an election is imminent.  549 U.S. at 5–6.  The *Purcell* court reasoned that such a change could be inappropriate because it could result in "voter confusion and [the] consequent incentive to remain away from the polls."  *Id*.  The Supreme Court has reiterated this directive on many occasions.  *See, e.g.*, *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 140 S. Ct. 1205, 1207 (2020) ("This Court has repeatedly emphasized that lower federal courts should ordinarily not alter the election rules on the eve of an election.").  *See also New Ga. Project v. Raffensperger*, 976 F.3d 1278, 1283 (11th Cir. 2020) (finding that an injunction "at the last minute" would "violate *Purcell's* well-known caution against federal courts mandating new election rules").

As an initial matter, the Court notes that Plaintiffs are correct that despite the decisive language in *Purcell* and its progeny, *Purcell* does not function as the bright line rule Defendants propose.  *Cf. Riley v. Kennedy*, 553 U.S. 406, 426 (2008) (noting that "practical considerations ***sometimes*** require courts to allow

elections to proceed despite pending legal challenges") (emphasis added); *People First of Ala. v. Sec'y of State for Ala.*, 815 F. App'x 505, 514 (11th Cir. 2020) (Rosenbaum, R., and Pryor, J., concurring) (stating that "*Purcell* is not a magic wand that defendants can wave to make any unconstitutional election restriction disappear so long as an impending election exists"); *Namphy v. DeSantis*, 493 F. Supp. 3d 1130 (N.D. Fla. 2020) (noting that *Purcell* did not "create a per se rule" prohibiting the issuance of an injunction against voting laws on the eve of an election).

Similarly, the Court is not persuaded by Plaintiffs' argument for a bright line exception to *Purcell* because they have alleged First Amendment harm.  Plaintiffs have not provided authority, nor is the Court aware of any, that would support this interpretation of the law.

Weighing the *Purcell* considerations here, the Court finds that the timing of Plaintiffs' Motion presents a significant problem with respect to the July 13, 2021 elections.  This is the case because the underlying elections have already occurred, and Plaintiffs seek an order that would mandate different rules for the related runoff elections.  In other words, the proposed injunction conflicts with *Purcell*'s guidance because it would change the election administration rules for elections that are already underway.

Plaintiffs' response that State Defendants are ill-prepared to administer the new rules does not change the fact that election administrators have prepared to implement the challenged rules, have implemented them at least to some extent and now would have to grapple with a different set of rules in the middle of the election.

Further, even if there is some merit to Plaintiffs' argument that State Defendants overstate the election disruption risk where Plaintiffs seek only to prevent the enforcement of criminal statutes in an area that the state already regulates sufficiently, this argument ignores the Ballot Application Rule, which is not a criminal statute and does affect the administration of the election.  The other challenged rules also impact election processes, including how election observers and monitors may discharge their oversight responsibilities while the election is ongoing.

Finally, Plaintiffs waited almost three months after SB 202 passed and until the eve before the underlying election to file their Motion.  Notwithstanding the expedited briefing and argument schedule, we are at the juncture where all of the challenged provisions are already the law.  Therefore, an injunction would not merely preserve the status quo; rather, it would change the law in the ninth inning. Because "a party requesting a preliminary injunction must generally show

reasonable diligence," Plaintiffs' delay also weighs against issuing an injunction. *Benisek v. Lamone*, 138 S. Ct. 1942, 1944 (2018).

For all these reasons, the Court finds that the *Purcell* risks are clear in this case and militate against granting Plaintiffs' Motion with respect to the July 13, 2021 elections.

**Preliminary Injunction Analysis**

Since Plaintiffs seek injunctive relief related to an election, the Court begins its analysis with the third and fourth prongs of the preliminary injunction standard, which bear on the *Purcell* considerations.  In a nutshell, the Court must weigh (i) whether State Defendants' interests in conducting an orderly and efficient election and generally preserving the integrity of the electoral process outweigh the threat of injury to Plaintiffs and (ii) whether an injunction would be adverse to the public's identical interests.  *See Sofarelli*, 931 F.2d at 723-24.  These factors are intertwined because "the real question posed . . . is how injunctive relief at [the] eleventh-hour would impact the public interest in an orderly and fair election, with the fullest voter participation possible and an accurate count of the ballots cast." *Curling v. Kemp*, 334 F. Supp. 3d 1303, 1326 (N.D. Ga. 2018).  Courts therefore consider them in "tandem."  *See*, *e.g.*, *id*. (merging the analysis of the third and fourth prongs of the preliminary injunction test).  *See also Black Voters Matter*

9

*Fund v. Raffensperger*, No. 1:20-CV-01489-AT, 2020 WL 2079240, at *2 (N.D. Ga. Apr. 30, 2020) (same); *Martin v. Kemp*, No. 1:18-CV-4776-LMM, 2018 WL 10509489, at *3 (N.D. Ga. Nov. 2, 2018) (same).

The Court certainly appreciates the gravity of the First and Fourteenth Amendment harms Plaintiffs have alleged.  Our nation has "'a profound . . . commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open." *Anderson v. Celebrezze*, 460 U.S. 780, 794 (1983).  "It is [also] beyond cavil that 'voting is of the most fundamental significance under our constitutional structure.'" *Burdick v. Takushi*, 504 U.S. 428, 433 (1992).

However, the Court finds that the significant *Purcell* concerns in this case with respect to the July 13, 2021 runoff elections, including the risk of disrupting the administration of an ongoing election, outweigh the alleged harm to Plaintiffs at this time.  For the same reasons, an injunction would not serve the public's interest.  Therefore, Plaintiffs cannot satisfy the third and fourth prongs of the preliminary injunction test with respect to that election.

Given that a movant must satisfy "each" of the four prerequisites for a preliminary injunction in order to obtain relief (*Siegel*, 234 F.3d at 1176), and Plaintiffs have failed to meet at least two of the prerequisites, the Court need not address the remaining prerequisites and concludes that Plaintiffs are not entitled to

an injunction with respect to the July 13, 2021 elections. *See Black Voters Matter Fund*, 2020 WL 2079240, at *5 (declining to reach the first and second prongs of the preliminary injunction standard and finding that the plaintiffs' failure to satisfy the third and fourth prongs required "denial of relief"); *Martin*, 2018 WL 10509489, at *3 (finding that a preliminary injunction was not appropriate where the plaintiffs "failed to meet their burden in establishing the third and fourth prongs of the preliminary injunction standard"). The Court reserves judgment regarding the propriety of relief as to future elections and will issue a separate order on this question at a later date.[2]

Accordingly, Plaintiffs' Motion (ECF No. 15) is **DENIED** with respect to the July 13, 2021 elections.[3]

**SO ORDERED** this 7th day of July, 2021.

_____
J. P. BOULEE
United States District Judge

---

[2] The Court is aware of Plaintiffs' Motion for Leave to File Post-Hearing Brief, filed on July 2, 2021, and will grant that motion and issue a respective briefing schedule separately.

[3] The Court declines to consider the preliminary issue of Plaintiffs' standing at this time because they have not demonstrated a right to the relief they currently seek, and State Defendants have indicated that they intend to file a motion to dismiss that will address standing.