UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

COALITION FOR GOOD
GOVERNANCE, et al.,

        Plaintiffs,

    v.

BRIAN KEMP, in his official capacity
as Governor of the State of Georgia, et
al.,

        Defendants.

CIVIL ACTION NO.
1:21-cv-02070-JPB

## **ORDER**

Before the Court are the following motions:

1. Defendants Brian Kemp, Brad Raffensperger, Rebecca Sullivan, Anh
   Le, Matthew Mashburn and Sara Ghazal's (collectively "State
   Defendants") Motion to Dismiss Plaintiffs' First Amended Complaint
   (ECF No. 41); and

2. Defendants Republican National Committee, National Republican
   Senatorial Committee, National Republican Congressional Committee
   and Georgia Republican Party, Inc.'s (collectively "Intervenor
   Defendants") Motion to Dismiss the Amended Complaint (ECF No.
   42).[1]

Having fully considered the papers filed therewith, the Court finds as follows:

---

[1] State Defendants and Intervenor Defendants are collectively referred to as
"Defendants."

## I.   <u>BACKGROUND</u>

Plaintiffs Coalition for Good Governance, Adam Shirley, Ernestine Thomas-Clark, Antwan Lang, Patricia Pullar, Judy McNichols, Jackson County Democratic Committee, Georgia Advancing Progress Political Action Committee, Ryan Graham, Rhonda Martin, Jeanne Dufort, Aileen Nakamura, Elizabeth Throop and Bradley Friedman (collectively "Plaintiffs")[2] filed this action seeking injunctive and declaratory relief with respect to certain provisions of Georgia Senate Bill 202 ("SB 202").[3]  Governor Brian Kemp signed SB 202 into law on March 25, 2021, and the challenged provisions regulate election-related processes and activities ranging from absentee ballot voting to election monitoring.

Plaintiffs seek relief regarding the following sections of SB 202:

- **O.C.G.A. § 21-2-568.1 (the "Observation Rule")**

  The Observation Rule prohibits a person from "intentionally observ[ing] an elector while casting a ballot in a manner that would allow such person to see for whom or what the elector is voting."

- **O.C.G.A. § 21-2-568.2 (the "Photography Rules")**

  The Photography Rules proscribe the use of photographic or other electronic monitoring or recording devices (i) to "[p]hotograph or record

---

[2] Plaintiffs Adam Shirley, Ernestine Thomas-Clark, Antwan Lang, Patricia Pullar and Judy McNichols bring certain claims in their capacity as members of their respective county boards and are thus referred to as the "Board Member Plaintiffs" in those contexts.

[3] Plaintiffs amended their Complaint on June 11, 2021.

the face of an electronic ballot marker while a ballot is being voted or while an elector's votes are displayed on such electronic ballot marker"; or (ii) to "[p]hotograph or record a voted ballot."

- **O.C.G.A. § 21-2-386(a)(2)(B)(vii) (the "Communication Rule")**

  The Communication Rule precludes election "monitors" and "observers" from "[c]ommunicating any information that they see while monitoring the processing and scanning of . . . absentee ballots . . . to anyone other than an election official who needs such information to lawfully carry out his or her official duties."

- **O.C.G.A. §§ 21-2-386(a)(2)(A) and (a)(2)(B)(vi) (the "Tally Rules")**

  The Tally Rules prohibit persons from tallying the absentee ballots cast, attempting to do so or causing a ballot scanner or any other equipment to produce any such tally prior to polls closing on the day of the primary, election or runoff.

- **O.C.G.A. § 21-2-381(a)(1)(A) (the "Ballot Application Rule")**

  The Ballot Application Rule provides that an application for an absentee ballot must be submitted "not earlier than 78 days or less than 11 days prior to the date of the primary or election, or runoff of either, in which the elector desires to vote."

- **O.C.G.A. § 21-2-33.2(c), (f) (the "Suspension Rule")**

  The Suspension Rule allows the State Election Board ("SEB") to "suspend the [local election] superintendent or board of registrars" for specified conduct, such as committing three violations of SEB rules.

- **O.C.G.A. § 21-2-381(a)(1)(C)(i), (b)(1) (the "Voter ID Rule")**

  The Voter ID Rule eliminates a signature matching requirement for absentee ballots and permits a registrar or absentee ballot clerk to verify a voter's identity based on the voter's name, date of birth and Georgia driver's license or identification card number.

Plaintiffs oppose these rules on the following grounds:  procedural and substantive due process, undue burden on the right to vote, equal protection, voter intimidation and abridgement of free speech.

## II.    **DISCUSSION**

State Defendants seek dismissal of the Amended Complaint on standing grounds and on the merits, and Intervenor Defendants challenge Plaintiffs' claims on the merits only.

The Court will address the standing question first.  *See Cuban Am. Bar Ass'n v. Christopher*, 43 F.3d 1412, 1422 (11th Cir. 1995) (stating that the Court is obligated "'to ensure it is presented with the kind of concrete controversy upon which its constitutional grant of authority is based'" (quoting *Hallandale Professional Fire Fighters Local 2238 v. City of Hallandale*, 922 F.2d 756, 759 (11th Cir. 1991))).

### A.    Standing[4]

To satisfy standing requirements under Article III of the United States

Constitution, a plaintiff must show:

> (1) it has suffered an "injury in fact" that is (a) concrete and
> particularized and (b) actual or imminent, not conjectural or
> hypothetical; (2) the injury is fairly traceable to the challenged action
> of the defendant; and (3) it is likely, as opposed to merely speculative,
> that the injury will be redressed by a favorable decision."

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180-

81 (2000) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)).  These

requirements ensure federal courts adjudicate only actual "cases" and

"controversies."[5]  *A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*, 925

F.3d 1205, 1210 (11th Cir. 2019).

---

[4] Standing is jurisdictional, *see Cone Corp. v. Fla. Dep't of Transp.*, 921 F.2d 1190, 1203 n.42 (11th Cir. 1991), and a motion to dismiss for lack of standing can rest on either a facial or factual challenge to the complaint, *see Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008).  In evaluating a facial challenge, a court considers only the allegations in the complaint and accepts them as true, whereas in a factual challenge, a court considers matters outside the pleadings, such as testimony and affidavits.  *See Morrison v. Amway Corp.*, 323 F.3d 920, 924 n.5 (11th Cir. 2003).  Here, State Defendants refer to the standard for bringing a factual challenge, *see* State Defs.' Br. 8, ECF No. 41-1, and Plaintiffs cite the preliminary injunction record in their response to State Defendants' motion, *see* Pls.' Br. 2, ECF No. 45.  Therefore, the Court will evaluate State Defendants' standing argument as a factual challenge and will consider matters outside the Amended Complaint, including the preliminary injunction record.

[5] "Where only injunctive relief is sought, only one plaintiff with standing is

### 1. Injury[6]

State Defendants challenge the standing of both the individual and organization plaintiffs to bring this suit.

#### a. Individual Plaintiffs

"When an individual is subject to [the threatened enforcement of a law], an actual arrest, prosecution, or other enforcement action is not a prerequisite to challenging the law." *Wollschlaeger v. Governor of Fla.*, 848 F.3d 1293, 1304 (11th Cir. 2017) (alteration in original) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)). "The plaintiff's own action (or inaction) in failing to violate [a] law eliminates the imminent threat of prosecution, but

---

required." *Gwinnett Cnty. NAACP v. Gwinnett Cnty. Bd. of Registration & Elections*, 446 F. Supp. 3d 1111, 1118 (N.D. Ga. 2020) (quoting *Martin v. Kemp*, 341 F. Supp. 3d 1326, 1333 (N.D. Ga. 2018)); *see also, e.g.*, *Watt v. Energy Action Educ. Found.*, 454 U.S. 151, 160 (1981) (finding that it was not necessary to consider the standing of other plaintiffs where standing was established as to one plaintiff); *Glassroth v. Moore*, 335 F.3d 1282, 1293 (11th Cir. 2003) ("Having concluded that those two plaintiffs have standing, we are not required to decide whether the other plaintiff, the one who has not altered his behavior . . . , has standing."). However, standing must be shown with respect to *each* claim. *See Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1124 (11th Cir. 2019). Therefore, the Court will only decide whether at least one plaintiff has shown standing for each claim.

[6] State Defendants address only the injury prong of the standing analysis and do not address the traceability and redressability prongs. Therefore, they have waived their arguments as to traceability and redressability. *See Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012) (stating that "the failure to make arguments and cite authorities in support of an issue waives it").

nonetheless does not eliminate Article III jurisdiction."  *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 129 (2007).  Indeed, "'the very purpose of the Declaratory Judgment Act'" is to address "[t]he dilemma posed by . . . putting the challenger to the choice between abandoning his rights or risking prosecution."  *Id*. (quoting *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 152 (1967)).  Therefore, courts allow a plaintiff to bring a pre-enforcement suit "when he has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution." *Wollschlaeger*, 848 F.3d at 1304 (internal punctuation omitted) (quoting *Driehaus*, 573 U.S. at 159 ).  This type of injury is not considered too remote or speculative for standing purposes.  *See id*. at 1305.

In *Wollschlaeger*, the Eleventh Circuit Court of Appeals found that the plaintiff doctors had demonstrated an injury sufficient for the purposes of standing where they sought to challenge a new statute that prohibited them from discussing firearm safety with their patients, although they had ceased those discussions as a result of the statute's enactment.  *Id*.  The court explained that "[w]here the 'alleged danger' of legislation is 'one of self-censorship,' harm 'can be realized even without an actual prosecution.'"  *Id*. at 1305 (quoting *Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383, 393 (1988)).

However, there must be a credible threat of prosecution. *See Am. Booksellers Ass'n*, 484 U.S. at 393 (stating that the court was "not troubled" by a pre-enforcement suit because the plaintiffs alleged "an actual and well-founded fear that the [respective] law [would] be enforced against them"). This requirement can be satisfied where the government has not disavowed prosecuting persons who violate the challenged legislation. *See, e.g.*, *Holder v. Humanitarian L. Project*, 561 U.S. 1, 16 (2010) (finding a credible threat of prosecution existed because the government did not indicate it would forego prosecuting the plaintiffs if they violated the statute).

Here, the record shows that individual plaintiffs have changed or intend to change their behavior in response to SB 202 or are otherwise impacted by its provisions. For example, Plaintiff Jeanne Dufort ("Dufort"), a poll watcher, member of the Vote Review Panel of Morgan County and vocal critic of Georgia's election system, testified that the challenged provisions will deter or prohibit her from voting in person, requesting an absentee ballot or serving as a poll watcher or election monitor. *See* Dufort Decl. ¶¶ 21-22, ECF No. 15-4; Am. Compl. ¶¶ 253-67, ECF No. 14. Plaintiff Bradley Friedman ("Friedman"), host of a nationally syndicated radio show that addresses election security, testified that SB 202's restrictions will limit his show's news reporting activities for upcoming elections.

*See* Friedman Decl. ¶ 8, ECF No. 15-5.  Plaintiff Aileen Nakamura ("Nakamura") is a Fulton County voter who, among other things, alleges that she has repeatedly encountered difficulty in obtaining an absentee ballot in a timely manner.  Am. Compl. ¶¶ 268, 278, ECF No. 14.  She fears that she may have to quarantine unexpectedly due to her underlying health conditions and the COVID-19 pandemic.  *Id*. ¶ 279.  In that circumstance, Nakamura asserts that SB 202's narrowed ballot application window, particularly for runoff elections, will prevent her from voting.  *Id*. ¶¶ 278-79.  As such, the various alleged injuries in this case, which include self-censorship and foregoing participation in the election process, are concrete and may have happened for those plaintiffs who changed their behavior for elections that already occurred.[7]

With respect to the challenged provisions that carry a criminal penalty, at least Dufort has demonstrated a credible threat and fear of prosecution because SB 202 is the law, and the record reflects evidence of pending complaints against poll watchers for election monitoring activities not related to SB 202.  Marks Decl. ¶ 11, ECF No. 15-3.  Notably, State Defendants do not refute Plaintiffs' contention that any alleged violations of SB 202 will be "vigorously" prosecuted.

---

[7] The record does not reflect whether the respective plaintiffs did, in fact, change their behavior.

9

Accordingly, Dufort, Friedman and Nakamura have sufficiently alleged injuries for standing purposes.

Board Member Plaintiff Adam Shirley ("Shirley"), who is a member of the Athens-Clarke County Board, alleges that he is in danger of losing his property interest in his board tenure and the accompanying compensation without due process.[8]  Am. Compl. ¶¶ 164-67, ECF No. 14.  He maintains that his board is under the threat of removal pursuant to the Suspension Rule because the board has already committed the number of violations of SEB rules necessary to trigger the Suspension Rule.[9]  *Id*.  Plaintiffs report that the government has begun proceedings under the Suspension Rule against the Fulton County Board of Registration and Elections.  *See* Pls.' Br. 20, ECF No. 45.

In light of the allegations of the Athens-Clarke County Board's existing rule violations and the government's ongoing enforcement of the Suspension Rule, the threat of removal of the Board and Shirley's accompanying loss of his interest in his board tenure are concrete and not conjectural.  Therefore, Shirley has alleged an injury for standing purposes.

---

[8] Defendants question whether Shirley has a protected interest in his board seat, but as stated in section II(B)(1), *infra*, Shirley has sufficiently alleged such an interest.
[9] Shirley also alleges that he will be injured by certain other SB 202 provisions in his capacity as a voter.  Am. Compl. ¶¶ 168-73, ECF No. 14.

State Defendants' reliance on *Clapper v. Amnesty International USA*, 568 U.S. 398 (2013), to challenge Plaintiffs' standing is misplaced.  Unlike here, the plaintiffs in *Clapper* lacked knowledge of the government's enforcement practices and failed to provide a credible basis for their fear of prosecution.  *Id*. at 411.

Similarly, the opinions in *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983), and *Tsao v. Captiva MVP Restaurant Partners, LLC*, 986 F.3d 1332 (11th Cir. 2021), which State Defendants cite as additional reasons to find that Plaintiffs lack standing in this case, do not require a different result.  *Lyons* did not concern a pre-enforcement challenge to legislation and rather involved a police restraint method that could be employed by officers at their discretion.  *See* 461 U.S. at 98.  *Tsao* involved an "insubstantial," "non-imminent" and general threat of identity theft as a result of a data breach.  986 F.3d at 1345.  These cases are thus quite different from the instant pre-enforcement challenge of SB 202.

In sum, the Court is satisfied that at least some individual plaintiffs have demonstrated an actual injury and a credible threat of prosecution for the purposes of standing to challenge the specified rules.[10]

---

[10] As Plaintiffs' Amended Complaint shows, these alleged injuries are "arguably affected" with constitutional interests.  *Wollschlaeger*, 848 F.3d at 1304 (internal punctuation and citation omitted).

### b.    Organization Plaintiffs

"'[A]n organization has standing to sue on its own behalf if the defendant's illegal acts impair [the organization's] ability to engage in its projects by forcing [it] to divert resources to counteract those illegal acts.'" *Common Cause/Georgia v. Billups*, 554 F.3d 1340, 1350 (11th Cir. 2009) (quoting *Fla. State Conf. of NAACP v. Browning*, 522 F.3d 1153, 1165 (11th Cir. 2008)).  In *Common Cause/Georgia*, the Eleventh Circuit found that the plaintiff had established an injury sufficient to challenge a Georgia voting statute because the plaintiff planned to divert resources from its regular voter registration, mobilization and education activities to a campaign to educate and assist voters in complying with the new voter photo identification requirement under the challenged statute. *See id.*  The court reasoned that this diversion constituted an adequate injury because it would cause the organization's noneconomic goals to suffer. *See id*. at 1350-51.  Courts have found that a sufficient injury is demonstrated for standing purposes even when the diversion of resources is only "reasonably anticipate[d]." *E.g.*, *Ga. Latino All. for Hum. Rts. v. Governor of Ga.*, 691 F.3d 1250, 1260 (11th Cir. 2012) (alteration in original) (internal punctuation and citation omitted).

In this case, the Amended Complaint alleges that Plaintiff Georgia Advancing Progress Political Action Committee ("GAPPAC") has diverted and

will continue to divert resources away from key activities as a result of SB 202.

Am. Compl. ¶ 224, ECF No. 14.  For example, GAPPAC asserts that SB 202 has

forced it to divert resources from its core activities of candidate and issue advocacy

and translating voting materials into multiple languages for members of the public

to now undertaking education campaigns to explain the requirements of SB 202.

*Id.* ¶¶ 222, 225-27.

Plaintiff Coalition for Good Governance ("CGG") likewise testified that it is

diverting resources to provide advice to its members regarding how to navigate SB

202's requirements.  Marks Decl. ¶ 13, ECF No. 15-3.  It relayed that the

challenged provisions have diminished its core activities of monitoring absentee

ballot processing because, among other things, it is now prohibited from reporting

the election integrity issues it uncovers.  *Id.* ¶ 27.  For example, Marilyn Marks,

Executive Director of CGG, testified that she has recorded video and reported

ballot tabulation issues in the past but intends to curtail her election monitoring

activities in light of SB 202's provisions.  *Id.* ¶¶ 27, 33.

Based on these allegations, some of which are analogous to those asserted by

the organization plaintiff in *Common Cause/Georgia*, the Court finds that

GAPPAC and CGG have alleged a diversion of resources that is sufficient to show an injury for standing purposes.[11]  *See Common Cause/Georgia*, 554 F.3d at 1350.

The Court is not persuaded by State Defendants' argument that the organization plaintiffs lack standing because their alleged diversion of resources is too speculative and not different in nature from their current work.  *See* State Defs.' Br. 12-15, ECF No. 41-1.  In *Common Cause/Georgia*, the court noted that one of the plaintiffs was "actively involved in voting activities" and planned to divert resources "to educate and assist voters" in complying with the challenged voting identification requirements.  *Common Cause/Georgia*, 554 F.3d at 1350.  In finding that standing was established there, the court focused on the ***diversion*** of resources—the shifting of resources from one activity to another—as the essence of the inquiry and did not mention, much less impose, the counterintuitive requirement that the new activities must further a different purpose within the organization.  *Id*.  And, as stated above, a reasonably anticipated diversion of resources suffices.

Even the court in *Common Cause Indiana v. Lawson*, which County Defendants cite in support of their position, had a "hard time imagining" why "an

---

[11] Notwithstanding this decision, Plaintiffs will be expected to prove at trial that they have indeed suffered an injury to be entitled to relief.  *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 n.21 (1982).

organization would undertake any additional work if that work had nothing to do with its mission." 937 F.3d 944, 955 (7th Cir. 2019).  In the end, the *Common Cause Indiana* court concluded that the voting advocacy organizations had established an injury for standing purposes by showing that they planned to expand voter education programs, among other things, to counter the effects of the challenged statute.[12]  *Id*.

For all of these reasons, the Court finds that the Article III standing requirements to bring this suit are met.[13]

### B.   Failure to State a Claim

Having resolved the threshold standing issue, the Court now turns to State and Intervenor Defendants' arguments that the Amended Complaint fails to state a claim upon which relief may be granted.

In evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court "accept[s] the allegations in the complaint as true and constru[es]

---

[12] Another case State Defendants cite in support of their argument—*Georgia Ass'n of Latino Elected Officials, Inc. v. Gwinnett County Board of Registration and Elections*, 499 F. Supp. 3d 1231, 1240 (N.D. Ga. 2020)—is on appeal to the Eleventh Circuit.

[13] At least Shirley has shown standing as to Count I; at least Dufort has shown standing as to Counts II–VI; at least Friedman and/or CGG have shown standing as to Counts VII–X; and at least Dufort and/or Nakamura have shown standing as to Counts XI–XIV.

them in the light most favorable to the plaintiff."[14]  *Traylor v. P'ship Title Co.*, 491

F. App'x 988, 989 (11th Cir. 2012).  However, "a plaintiff's obligation to provide

the grounds of his entitlement to relief requires more than labels and conclusions,

and a formulaic recitation of the elements of a cause of action will not do."  *Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal punctuation and citation

omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (stating that a

complaint does not suffice "if it tenders 'naked assertions' devoid of 'further

factual enhancement'" (alteration omitted) (quoting *Twombly*, 550 U.S. at 557)).

Moreover, "[f]actual allegations must be enough to raise a right to relief

above the speculative level."  *Twombly*, 550 U.S. at 555.  "This standard does not

require a party to plead facts with such particularity to establish a significant

probability that the facts are true, rather, it requires a party's pleading of facts to

give rise to a 'reasonable expectation that discovery will reveal evidence

[supporting the claim].'"  *Burch v. Remington Arms Co.*, No. 2:13-cv-00185, 2014

WL 12543887, at *2 (N.D. Ga. May 6, 2014) (alteration in original) (quoting

---

[14] A court is limited to reviewing what is alleged "'within the four corners of the
complaint.'"  *Hayes v. U.S. Bank Nat'l Ass'n*, 648 F. App'x 883, 887 (11th Cir.
2016) (quoting *Bickley v. Caremark RX, Inc.*, 461 F.3d 1325, 1329 n.7 (11th Cir.
2006)).  If the court accepts matters outside the complaint, it "must convert the
motion to dismiss into one for summary judgment."  *Prop. Mgmt. & Invs., Inc. v.
Lewis*, 752 F.2d 599, 604 (11th Cir. 1985).

*Twombly*, 550 U.S. at 556); *see also Twombly*, 550 U.S. at 570 (dismissing complaint because the plaintiffs did not state facts sufficient to "nudge[] their claims across the line from conceivable to plausible").

At bottom, the complaint must contain more than "an unadorned, the-defendant-unlawfully-harmed-me accusation," *Iqbal*, 556 U.S. at 678, and must "'plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged,'" *Traylor*, 491 F. App'x at 990 (quoting *Speaker v. U.S. Dep't of Health & Hum. Servs.*, 623 F.3d 1371, 1380 (11th Cir. 2010)).

The Court will now address the question of whether Plaintiffs have satisfied their pleading burden with respect to each count of the Amended Complaint.

### 1.    Count I (procedural due process under the Fourteenth Amendment)

The Board Member Plaintiffs allege that the Suspension Rule violates their right to procedural due process.  Specifically, they allege that they are at risk of being improperly deprived of their protected property interest in their respective county board seats because the Suspension Rule does not provide a pre-deprivation notice and hearing and a "meaningful" post-deprivation remedy.  Am. Compl. ¶¶ 368-69, ECF No. 14.  The Board Member Plaintiffs further assert that the

Suspension Rule improperly allows the removal of an entire board based on the action or inaction of individual members. *Id*. ¶ 370.

State Defendants do not dispute that the Board Member Plaintiffs have a protected interest in their board tenure. Rather, they contend that the Board Member Plaintiffs cannot show that the government has acted against them or that the Suspension Rule's procedures are "constitutionally inadequate." State Defs.' Br. 26-28, ECF No. 41-1. State Defendants also argue that the Suspension Rule does not violate due process because it "cannot be invoked cavalierly," and it advances the goal of the legislature in achieving uniformity in election administration. State Defs.' Reply Br. 15, ECF No. 47.

Intervenor Defendants, on the other hand, argue that the Board Member Plaintiffs do not have a protected interest in their seats because the seats are created, and can thus be eliminated, by statute. Intervenor Defs.' Br. 4-5, ECF No. 42-1. Intervenor Defendants, however, appear to concede that the Board Member Plaintiffs have sufficiently alleged state action in this case. *Id*. at 5. Like State Defendants, they contend that the Suspension Rule provides "more than enough process." *Id*.

A procedural due process violation requires proof of three elements: "'a deprivation of a constitutionally-protected liberty or property interest; state action;

and constitutionally inadequate process.'"[15]  *Doe v. Fla. Bar*, 630 F.3d 1336, 1342

(11th Cir. 2011) (quoting *Cryder v. Oxendine*, 24 F.3d 175, 177 (11th Cir. 1994)).

Property interests are created by "existing rules or understandings that stem

from an independent source such as state law." *Bd. of Regents of State Colls. v.*

*Roth*, 408 U.S. 564, 577 (1972).  However, "'minimum [procedural] requirements

[are] a matter of federal law'" and "'are not diminished by the fact that the [s]tate

may have specified its own procedures . . . [as] preconditions to adverse official

action.'"  *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985) (first

two alterations in original) (quoting *Vitek v. Jones*, 445 U.S. 480, 491 (1980)).

Simply put, the right to due process exists "'not by legislative grace, but by

constitutional guarantee.'"  *Id*. (quoting *Arnett v. Kennedy*, 416 U.S. 134, 167

(1974)).  Thus, once the legislature elects to confer certain interests, it may not

authorize the deprivation of such interests without appropriate procedural

safeguards.  *See id*.

Constitutionally adequate process is "a guarantee of fair procedure."

*Zinermon v. Burch*, 494 U.S. 113, 125 (1990).  Thus, determining whether a

constitutional violation has occurred requires an analysis of what process the state

---

[15] The Court will not address the state action prong because it is clearly satisfied
where, as here, the enforcement of a state statute is at issue.

provides under the circumstances.  *See id.* at 126.  This means that due process cannot be "'a technical conception with a fixed content unrelated to time, place and circumstances.'"  *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976) (quoting *Cafeteria Workers v. McElroy*, 367 U.S. 886, 895 (1961)); *see also Zinermon*, 494 U.S. at 127 (emphasizing that due process "is a flexible concept that varies with the particular situation").  Instead, a court must weigh:

> [f]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335.

Here, the Board Member Plaintiffs plausibly allege that they have a protected interest in their board seats and that the Suspension Rule threatens to take away that interest without an adequate opportunity to be heard.  Therefore, the Amended Complaint sufficiently states a procedural due process violation.

Intervenor Defendants' argument that the Board Member Plaintiffs do not have a protected interest in their board seat because the seats are created and eliminated by statute "misconceives the constitutional guarantee" of due process.  *Loudermill*, 470 U.S. at 541.  A property interest does not fall outside due process

protection simply because it can be extinguished by statute.  As the Supreme Court of the United States explained in *Loudermill*, once a protected interest is conferred by statute, any procedure for eliminating such interest must comport with minimum due process requirements under federal law.  *See id*.

On a related note, the answer to the question of whether a deprivation of the Board Member Plaintiffs' alleged interests in their tenure would comport with due process cannot depend exclusively on the provisions of SB 202 or any other statute.  *See id*.  To the contrary, the Court must look at the particular circumstances of this case and weigh the factors set out in *Mathews*.

Importantly, the necessary inquiry does not hinge, as State Defendants urge, on opinions in other cases, which may or may not be analogous.  Since a proper analysis of the issues requires reference to facts not stated in the Amended Complaint, the Board Member Plaintiffs' procedural due process claim cannot be resolved on a motion to dismiss.

Defendants further argue that even if the Board Member Plaintiffs could show that the Suspension Rule violates procedural due process in some way, they cannot meet the standard for bringing a facial challenge to the rule.  As Defendants point out, facial challenges to legislation are disfavored.  *See Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450 (2008).  Generally, a plaintiff

who brings a facial challenge must show that "'no set of circumstances'" exists under which the law would be constitutional or that the statute lacks a "'plainly legitimate sweep.'"[16] *Id*. at 449 (citation omitted).  Neither standard, however, requires dismissal of this claim.

Although the Board Member Plaintiffs do not explicitly allege that the Suspension Rule is unconstitutional in all respects or that it lacks a plainly legitimate sweep, such an allegation is implied by the lack of qualification or limitation in their allegation that the rule fails to provide the required due process. *See Traylor*, 491 F. App'x at 989 (stating that at the motion to dismiss stage, the court construes the allegations in the light most favorable to the plaintiff).  To the extent it is even feasible to identify the universe of potential applications of the Suspension Rule and show how each application is unconstitutional, the Court is

---

[16] "Which standard applies in a typical case is a matter of dispute . . . ." *United States v. Stevens*, 559 U.S. 460, 472 (2010); *see also Wash. State Grange*, 552 U.S. at 449 (noting that some members of the Supreme Court have "criticized" the "no set of circumstances" formulation of the standard but that all agree on the "plainly legitimate sweep" language).  The Eleventh Circuit has similarly recognized the disagreement regarding "exactly how high the threshold for facial invalidation should be set." *Fla. League of Pro. Lobbyists, Inc. v. Meggs*, 87 F.3d 457, 459 (11th Cir. 1996) (affirming summary judgment because the statute satisfied either standard).  In any event, a recent Supreme Court case has confirmed that a plaintiff could satisfy ***either*** test.  *See Ams. for Prosperity Found. v. Bonta*, 141 S. Ct. 2373, 2387 (2021); *see also Sweet v. McNeil*, No. 4:08-CV-17, 2009 WL 903291, at *2 (N.D. Fla. Mar. 31, 2009) (electing to use the "plainly legitimate sweep" standard).

not convinced that the Board Member Plaintiffs are required to do so at the pleading stage. *See All. of Auto. Mfrs., Inc. v. Jones*, 897 F. Supp. 2d 1241, 1260 (N.D. Fla. 2012) (declining to dismiss because even if the statute could be constitutionally applied in certain circumstances, the plaintiff was "not required to negate all such applications at [the motion to dismiss] stage" and was "required only to state a plausible claim that the statute is facially unconstitutional"); *see generally Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1260 (11th Cir. 2015) (noting that Federal Rule of Civil Procedure 8 requires only a short and plain statement showing that the plaintiff is entitled to relief and providing fair notice to the defendant of the nature of the claim and the grounds upon which it rests). Indeed, inherent in the language of the "plainly legitimate sweep" standard, which the Supreme Court has confirmed can be used in place of the "no set of circumstances" standard, is the idea that a facial challenge could be valid even if there are some circumstances in which the law is constitutional. *See Washington v. Glucksberg*, 521 U.S. 702, 740 n.7 (1997) (Stevens, J., concurring) (noting that under the more "lenient" "plainly legitimate sweep" standard, a plaintiff establishes only that the invalid applications of a statute are "substantial" in relation to the statute's plainly legitimate sweep).

Moreover, in seeking dismissal of this claim based on the "no set of circumstances" standard, Defendants argue that Plaintiffs fail to meet the standard, but they do not point to ***relevant*** circumstances where the rule would be constitutional.  For example, State Defendants merely assert that the Suspension Rule would be constitutional in counties whose elections are not run by boards. *See* State Defs.' Reply Br. 15, ECF No. 47.  However, in determining whether a challenged law is unconstitutional in all its applications, courts focus on "'the group for whom the law is a restriction, not the group for whom the law is irrelevant.'"  *City of Los Angeles v. Patel*, 576 U.S. 409, 418 (2015) (quoting *Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833, 894 (1992)).  Because the Suspension Rule would be inapplicable in counties were elections are not run by a board, State Defendants cannot use such example to show constitutionality.[17]

For all these reasons, the Court declines to dismiss Count I of the Amended Complaint.

---

[17] Intervenor Defendants also assert that the Board Member Plaintiffs' due process claims cannot support a facial challenge because they are merely hypothetical. Intervenor Defs.' Reply Br. 6, ECF No. 48.  Since the Court has already found, albeit for standing purposes, that the Board Member Plaintiffs' alleged injury and the threat of their removal are concrete and not conjectural, Intervenor Defendants' argument does not warrant dismissal of the claim.

2.    **Count II (violation of substantive due process under the Fourteenth Amendment)**

Plaintiffs allege that the Suspension Rule violates their substantive due process rights because it implicates the very integrity of the electoral process.  Am. Compl. ¶ 376, ECF No. 14.  They claim that the Suspension Rule's grant of authority to the SEB to determine and change the election management bodies of Georgia counties violates the Georgia Constitution because it constitutes an improper delegation of a legislative function to the executive branch.  *Id*. ¶ 381. Plaintiffs conclude that the Suspension Rule fundamentally threatens the electoral process because by allowing the SEB to remove county election superintendents and remove (but not replace) county boards of registrar, significant decisions regarding the electoral process will be impacted, and in the case of boards of registrar, there would remain no entity responsible for administering the voter registration and absentee ballot voting process.  *See id*. ¶ 385-87.

State Defendants counter that Plaintiffs' claim is barred by the Eleventh Amendment because while "styled as a substantive due process claim," it amounts to merely a claim that the Suspension Rule violates the Georgia constitution.  State Defs.' Br. 28-29, ECF No. 41-1.

Intervenor Defendants similarly argue that "Plaintiffs cannot plead around the Eleventh Amendment by slapping a federal label on a claim that turns entirely

25

on state law." Intervenor Defs.' Br. 7, ECF No. 42-1.  They point out that

circumstances where violations of state law amount to substantive due process

violations are rare, and in the context of voting rights, the state law violation must

cause a fundamental unfairness that undermines the very integrity of the electoral

process.  Intervenor Defs.' Reply Br. 8, ECF No. 48.  In Intervenor Defendants'

view, the removal of a county board of registrar does not rise to the requisite level

of unfairness and therefore does not implicate substantive due process.  *Id*.

Intervenor Defendants further argue that even if Plaintiffs can show the

requisite level of breakdown in the electoral process, they cannot show that such

breakdown occurs in all instances, as required for a facial challenge.  *Id.*

The Eleventh Amendment bars suits against a state brought by its citizens in

federal court.  *See Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1336 (11th

Cir. 1999).  However, an exception to this rule exists, pursuant to the Supreme

Court's decision in *Ex parte Young*, 209 U.S. 123 (1908), for plaintiffs who seek

prospective relief for an ongoing violation of federal law.  *See Papasan v. Allain*,

478 U.S. 265, 277-78 (1986).  In determining whether the *Ex parte Young*

exception applies, a court conducts only a "straightforward inquiry" into the

complaint's allegations and does not analyze the merits of the claim.  *Verizon Md.,
Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 645-46 (2002).

A state law violates federal substantive due process rights if its implementation "constitutes a deprivation of federally protected rights." *Duncan v. Poythress*, 657 F.2d 691, 700 (5th Cir. Unit B Sept. 1981). In the voting context, such deprivation occurs where there is "a fundamental breakdown of the democratic system," *id*. at 704, or where "the fundamental fairness of the electoral process" is "seriously undermine[d]," *id*. at 700.

In this case, the Amended Complaint alleges that, given the role of county boards of registrar in facilitating the absentee voting process, removing a board without replacing it constitutes a serious deprivation of the right to vote and fundamentally threatens the integrity of the electoral process. These allegations are sufficient to state a claim for a federal substantive due process violation. It therefore follows that the *Ex parte Young* exception applies to State Defendants' Eleventh Amendment immunity defense.[18]

Intervenor Defendants' arguments to the contrary, which largely constitute an attack on the merits of the allegations, are not appropriate at this stage of the litigation.[19] As with Plaintiffs' procedural due process claim, the Court

---

[18] Defendants do not dispute that the Amended Complaint seeks prospective relief, which is the other requirement for invoking the *Ex parte Young* doctrine.

[19] State Defendants do not contest whether Plaintiffs can bring a facial challenge under Count II. Intervenor Defendants focus on their assertion that the Board Member Plaintiffs do not have a protected property interest in their board seats.

acknowledges that facial challenges to legislation are disfavored but finds, for the same reasons stated above, that the lack of an explicit allegation that the Suspension Rule is unconstitutional in all respects or lacks a plainly legitimate sweep is not fatal to Plaintiffs' claim.

For these reasons, the Court declines to dismiss Count II of the Amended Complaint.

### 3. Counts III, IV, XI and XII (undue burden on the right to vote under the Fourteenth Amendment)

Plaintiffs allege that the Suspension, Observation, Voter ID and Ballot Application Rules place an undue burden on the right to vote.

In particular, Plaintiffs allege that the Suspension Rule imposes an undue burden on the right to vote because it permits the SEB to remove, but not replace, a county board of registrar, which means that there will remain no entity responsible for issuing and accepting absentee ballots. Am. Compl. ¶¶ 393-95, ECF No. 14.

At the heart of Plaintiffs' challenge to the Observation Rule is the allegation that given the normal layout of polling stations and the size and brightness of voting touchscreens, citizens who vote in person may inadvertently view other

---

However, that argument, which was more appropriately offered in response to the allegations in Count I, is not applicable under Count II. Plaintiffs' substantive due process claim under Count II is based on the impact on *voting rights* resulting from the alleged breakdown of the electoral process.

voters' electronic ballots and could thereby be improperly accused of (and penalized for) violating the Observation Rule.  *Id*. ¶¶ 400-01, 405.

Plaintiffs oppose the Voter ID Rule, which eliminates the signature matching requirement for absentee ballots, on the grounds that it will allow an unauthorized person to request and vote another person's absentee ballot and thus prevent the rightful voter from voting.[20]  *Id*. ¶¶ 458-59.

Plaintiffs assert that the Ballot Application Rule's narrowing of the absentee ballot application window impinges on, and in certain circumstances denies, the right to vote because the shorter timeframe creates conflicts for voters who rely on the absentee ballot voting mechanism due to age, health or other reasons.  *Id*. ¶¶ 465-67.  They also allege that depending on how long it takes to certify the underlying election, voters may altogether be foreclosed from voting by absentee ballot during runoff elections.  *Id*. ¶ 469.

The bottom line of State Defendants' response to Plaintiffs' voting claims is that the challenged provisions impose "no burden whatsoever on the right to vote" and that "the government interests in uniformity and a well-run election system . . . more than justif[y]" the rules.  State Defs.' Br. 33-34, ECF No. 41-1.

---

[20] Plaintiffs claim that this is likely to happen due to prior data breaches of the Secretary of State's servers that compromised the same information now used to verify voters' identity.  Am. Compl. ¶¶ 458-59, ECF No. 14.

Intervenor Defendants argue that because the challenged provisions regulate only absentee voting, "the right to vote is not at stake here."  Intervenor Defs.' Br. 8-9, ECF No. 42-1 (internal punctuation omitted).  They also contend that "[t]he only burdens that Plaintiffs assert are legally 'irrelevant' because they are 'special burden[s] on some voters,' not categorical burdens on all voters."  *Id*. at 13.

In resolving an undue burden on voting claim, a court must:  (i) "consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate"; (ii) "identify and evaluate the precise interests put forward by the [s]tate as justifications for the burden imposed by its rule"; (iii) "determine the legitimacy and strength of each of those interests"; and (iv) "consider the extent to which those interests make it necessary to burden the plaintiff's rights."  *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983).  The analysis is not a "litmus-paper test" and instead requires a "'flexible'" approach.  *Common Cause/Georgia v. Billups*, 554 F.3d 1340, 1352 (11th Cir. 2009) (citation omitted).  If a court finds that a plaintiff's voting rights "are subjected to severe restrictions, the [respective] regulation must be narrowly drawn to advance a state interest of compelling importance.  But when [the law] imposes only reasonable, nondiscriminatory restrictions . . . , the [s]tate's important regulatory interests are generally sufficient

to justify the restrictions." *Burdick v. Takushi*, 504 U.S. 428, 434 (1992) (internal punctuation and citation omitted).

Here, the Amended Complaint contains detailed allegations of burdens that Plaintiffs assert the challenged provisions will impose on Georgia voters. Plaintiffs also maintain that there are no legitimate state interests that would support such burdens. *Anderson* and *Burdick* do not require more from Plaintiffs at the motion to dismiss stage. And State and Intervenor Defendants' weighing of the alleged burden on voters, which relies on facts not asserted in the Amended Complaint, is not appropriate at this time.

The Court also declines Intervenor Defendants' suggestion to forego the undue burden analysis the Supreme Court developed in *Anderson* and *Burdick* and summarily dispose of Plaintiffs' voting rights claims. The Court does not read *McDonald v. Board of Election Commissioners*, 394 U.S. 802, 807-08 (1969), which states that there is no right to an absentee ballot, to require such an outcome. As set forth above, the *Anderson-Burdick* framework requires the Court to evaluate the type of burden imposed by the challenged provisions and apply the corresponding level of review. "Only after weighing [the designated] factors is the reviewing court in a position to decide whether the challenged provision is unconstitutional." *Anderson*, 460 U.S. at 789.

31

For all these reasons, the Court declines to dismiss Counts III, IV, XI and XII of the Amended Complaint.

### 4.     Counts V, VIII and X (due process—void for vagueness—under the Fourteenth Amendment)

Plaintiffs allege that the Observation, Tally and Photography Rules violate the due process requirements of the Fourteenth Amendment because they are impermissibly vague.

Plaintiffs assert that the Observation Rule encourages arbitrary and discriminatory enforcement of its provisions because it does not set a clear standard for what conduct is prohibited.  For example, Plaintiffs contend that the layout of polling stations and the size of the voting touchscreens may cause voters walking through a polling station to inadvertently view other voters' ballots and thereby risk being accused of violating the Observation Rule.  Am. Compl. ¶ 412-13, ECF No. 14.

Plaintiffs contend that the Tally Rules are vague and similarly encourage arbitrary and discriminatory enforcement because their provisions are not defined such that ordinary people can understand the scope of acceptable conduct.  *Id*. ¶¶ 436-39.  For example, Plaintiffs maintain that the Tally Rules "criminalize[] the act of thinking about or attempting to think about a tally or tabulation, without the

requirement of any external manifestation or communication of such thoughts." *Id.* ¶ 437.

Plaintiffs allege that the Photography Rules are impermissibly vague in their use of terms such as "recording" and "voted ballot" because the scope of such terms "may ensnare citizens conducting routine activities." *Id.* ¶¶ 451-53

State Defendants' general response to all of these allegations is that Plaintiffs' interpretation of the challenged rules is flawed and that the rules are "clear" in what they prohibit. *See* State Defs.' Br. 34-38, ECF No. 41-1. Intervenor Defendants do not address these claims.

The void for vagueness doctrine generally encompasses "at least two connected but discrete due process concerns:  first, that regulated parties should know what is required of them so they may act accordingly; second, precision and guidance are necessary so that those enforcing the law do not act in an arbitrary or discriminatory way." *Wollschlaeger*, 848 F.3d at 1320 (quoting *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012)); *see also Kolender v. Lawson*, 461 U.S. 352, 357 (1983) (stating that the vagueness doctrine "requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement").

Nevertheless, the Supreme Court has cautioned that "[t]he root of the vagueness doctrine is a rough idea of fairness." *Colten v. Kentucky*, 407 U.S. 104, 110 (1972).  Therefore, "[i]t is not a principle designed to convert into a constitutional dilemma the practical difficulties in drawing criminal statutes both general enough to take into account a variety of human conduct and sufficiently specific to provide fair warning that certain kinds of conduct are prohibited." *Id.*

Here, Plaintiffs have satisfied their pleading burden by alleging that the language of the challenged rules does not clearly establish what constitutes compliance and may thus encourage arbitrary and discriminatory enforcement. State Defendants' explanations of why the challenged rules should not be viewed as vague question the merits of Plaintiffs' allegations and cannot serve as the basis for dismissing Plaintiffs' claims at the pleading stage.

For these reasons, the Court declines to dismiss Counts V, VIII and X of the Amended Complaint.

### 5.  Count VI (unlawful voter intimidation under 52 U.S.C. § 10307(b))

Plaintiffs allege that the Observation Rule violates § 11 of the Voting Rights Act ("VRA"), 52 U.S.C. § 10307(b), because it "unlawfully intimidates" citizens who are exercising their right to vote.  Plaintiffs explain that intimidation results from law enforcement officials' authority to charge voters "arbitrarily and

capriciously" with the felony of intentionally observing another elector's screen and from ordinary citizens' ability to accuse voters of doing the same. Am. Compl. ¶¶ 418-20, ECF No. 14.

State Defendants argue that Plaintiffs' claim is not viable because § 10307(b) does not provide a private cause of action. *See* State Defs.' Br. 32, ECF No. 41-1. State Defendants' position rests on (i) cases broadly stating that private rights of action to enforce federal law must be created by Congress; (ii) a concurring opinion in *Brnovich v. Democratic National Committee*, 141 S. Ct. 2321, 2350 (2021) (Gorsuch, J., concurring), which notes that the Supreme Court has assumed—without deciding—that an implied right of action exists under the VRA; and (iii) a dissenting opinion in *Alabama State Conference of the NAACP v. Alabama*, 949 F.3d 647, 656-57 (11th Cir. 2020) (Branch, J., dissenting), *vacated as moot*, 141 S. Ct. 2618 (2021), which argues that the VRA did not abrogate sovereign immunity.

State Defendants also argue that even if § 10307(b) provides a private cause of action, Plaintiffs have failed to state a claim because the allegation of intimidation is too speculative. Intervenor Defendants do not address this count of the Amended Complaint.

Under § 10307(b), "[n]o person, whether acting under color of law or otherwise, shall intimidate, threaten, or coerce, or attempt to intimidate, threaten, or coerce any person for voting or attempting to vote."  Taking as true Plaintiffs' allegation that the Observation Rule could be "invoked to selectively criminalize mere entry into a polling place," Am. Compl. ¶ 418, ECF No. 14, the Court finds that Plaintiffs have stated a plausible claim for relief under § 10307(b).

State Defendants have not cited any precedent that directly supports their contention that there is no private cause of action under § 10307(b).  Dismissal of this claim cannot be based on a dissenting opinion on an open question of law or the general (and uncontroversial) principle that a private party cannot enforce federal law absent authority from Congress.  Significantly, the *Brnovich* opinion confirms that the Supreme Court has assumed that an implied right of action exists under the VRA.

For these reasons, the Court declines to dismiss Count VI of the Amended Complaint.

### 6.    Counts VII and IX (freedom of speech under the First Amendment)

Plaintiffs allege that the Communication and Photography Rules violate the First Amendment because they constitute prior restraints on speech.

Plaintiffs assert that the Communication Rule violates the First Amendment

because it prohibits election monitors and observers from communicating information regarding the election monitoring process, including instances of "scanning machine malfunctions, unsecured ballots, mishandling of ballots, or improperly rejected ballots."  Am. Compl. ¶¶ 428-29, ECF No. 14.

Plaintiffs allege that the Photography Rules' ban on photographing ballots criminalizes constitutionally protected speech, including election press coverage that has been routine for over 100 years.  *Id*. ¶¶ 444-45.

State Defendants counter that because a polling area (one of the places where the rules would apply) is a nonpublic forum, a lower standard of review is appropriate.  State Defs.' Br. 36-37, ECF No. 41-1.  They conclude that the challenged rules pass muster under that lower standard because they further the "significant government interest in upholding the secrecy of the ballot and the integrity of elections."  *Id*.

State Defendants also argue that the challenged rules should be evaluated as a regulation of elections (under the *Anderson-Burdick* framework), not as a law impacting speech.  *Id*. at 37.  They maintain that the rules are similarly constitutional under the *Anderson-Burdick* framework.  Intervenor Defendants do not address Plaintiffs' speech claims.

The First Amendment prohibits the enactment of laws that abridge the freedom of speech.  *See* U.S. Const. amend. I.  Therefore, governments typically "ha[ve] no power to restrict expression because of its message, its ideas, its subject matter, or its content."  *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015) (quoting *Police Dep't of Chi. v. Mosley*, 408 U.S. 92, 95 (1972)).

Regulation of speech based on the topic discussed or the idea or message expressed is presumptively unconstitutional and may be justified only if the government proves that the regulation is narrowly tailored to serve compelling state interests.  *See id*. at 165 (stating that "[a] law that is content based on its face is subject to strict scrutiny regardless of the government's benign motive, content-neutral justification, or lack of 'animus toward the ideas contained' in the regulated speech" (quoting *Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 429 (1993))).

However, the Supreme Court has "long recognized that the government may impose some content-based restrictions on speech in nonpublic forums, including restrictions that exclude political advocates and forms of political advocacy."[21]

---

[21] A nonpublic forum is "a space that 'is not by tradition or designation a forum for public communication.'"  *Minn. Voters All. v. Mansky*, 138 S. Ct. 1876, 1885 (2018) (quoting *Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*, 460 U.S. 37, 46 (1983)).

*Minn. Voters All. v. Mansky*, 138 S. Ct. 1876, 1885-86 (2018).  Restrictions on speech in nonpublic forums undergo a more limited review and are deemed constitutional as long as they are "'reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view.'"  *Id*. at 1885 (quoting *Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*, 460 U.S. 37, 46 (1983)).  Thus, where the regulation of speech in a nonpublic forum is content-based but neutral as to viewpoint, "there is no requirement of narrow tailoring."  *Id*. at 1888.

As an initial matter, State Defendants do not offer any binding authority for the proposition that the challenged rules should be evaluated under the *Anderson-Burdick* voting rights framework and not under the traditional First Amendment framework.  The sole case they cite, *Lichtenstein v. Hargett*, 489 F. Supp. 3d 742, 777 (M.D. Tenn. 2020), does not support their argument.  In determining the appropriate inquiry in *Lichtenstein*, the court simply noted that the *Anderson-Burdick* framework would be applicable if the challenged provision restricted "expressive ***activity***" but did not restrict "core political speech."  *Id*. (emphasis added).  That opinion is not applicable here because Plaintiffs allege that the challenged rules implicate speech, not merely expressive activity.  As such, the Court will proceed with a First Amendment analysis.

Accepting as true Plaintiffs' allegations that the challenged rules prohibit certain communications or limit photography of ballots,[22] and construing those allegations in the light most favorable to Plaintiffs, the Court finds that Plaintiffs have plausibly alleged that the challenged rules impinge on speech in some way. Determining the type of forum where the rules would apply and selecting the appropriate level of review requires the type of substantive merits inquiry that is not appropriate on a motion to dismiss.

For all these reasons, the Court declines to dismiss Counts VII and IX of the Amended Complaint.

### 7.   Counts XIII and XIV (discrimination under the Equal Protection Clause)

Plaintiffs allege that the Ballot Application Rule violates the Equal Protection Clause because it narrows the ballot application window and thus prevents certain classes of voters from exercising their right to vote.  *See* Am. Compl. ¶ 475, ECF No. 14.  The identified classes of impacted voters include "voters wishing to exercise their right to vote a secret ballot;" voters who are

---

[22] The Eleventh Circuit has recognized that the right to photograph or videotape is protected by the First Amendment.  *See, e.g.*, *Smith v. City of Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000) (agreeing that the plaintiffs had a First Amendment right to photograph and videotape police conduct, subject to reasonable restrictions); *Blackston v. Alabama*, 30 F.3d 117, 120 (11th Cir. 1994) (recognizing a First Amendment right to tape record a public meeting).

"intimidated" by the risk of violating the Observation Rule; "voters who encounter unforeseen medical, employment, or civic duty obligations after the 11-day deadline;" and voters who are quarantined due to a COVID-19 infection or are at a high risk of contracting same. *Id.* ¶ 476. Plaintiffs also state that the Ballot Application Rule presents an "arbitrary and disparate risk" of disenfranchising certain voters because, among other things, there is no hardship waiver of the deadline for unforeseen emergencies. *Id.* ¶¶ 115, 481.

State Defendants' brief does not explicitly address the issue of unequal treatment, which is at the heart of Plaintiffs' equal protection allegations. Instead, State Defendants contend that the claims must be evaluated under the *Anderson-Burdick* framework, and they focus on whether the Ballot Application Rule burdens the right to vote. State Defs.' Br. 39-40, ECF No. 41-1. State Defendants conclude that the Ballot Application Rule is constitutional under the *Anderson-Burdick* standard because the burden imposed on voting rights "is extremely light"; other states have similar deadlines; the state's interest "far outweighs" any potential burden; and Georgia provides many other voting options. *Id.*

Intervenor Defendants argue that the Ballot Application Rule does not violate the constitution because there is no right to vote absentee. In their view, the

"availability of in-person voting makes SB 202's regulations of absentee voting irrelevant, constitutionally speaking." Intervenor Defs.' Br. 12, ECF No. 42-1.

In *McDonald*, pretrial inmates in Illinois claimed that the state violated the Equal Protection Clause by not providing them with absentee ballots. *See McDonald*, 394 U.S. at 803. Noting that the key issue was a claimed right to receive an absentee ballot, not the right to vote, the Supreme Court ultimately affirmed the district court's dismissal of the claim on summary judgment. *Id*. at 806. The Supreme Court explained that "there is nothing to show that a judicially incapacitated, pretrial detainee is absolutely prohibited from exercising the franchise." *Id*. at 809. It also found that denying absentee ballots to that class of voters was not arbitrary, "particularly in view of the many other classes of Illinois citizens not covered by the absentee provisions, for whom voting may be extremely difficult, if not practically impossible." *Id*. at 809-10.

Here, Plaintiffs' general allegation is that the Ballot Application Rule improperly treats similarly situated citizens differently, resulting in unequal access to voting opportunities. These allegations must be taken as true and viewed in the light most favorable to Plaintiffs. Under that lens, the allegations are sufficient to state a claim for relief under the Equal Protection Clause.

At this stage, the Court evaluates only the sufficiency of the allegations and therefore cannot reach State and Intervenor Defendants' merits arguments that the absentee ballot application deadline is reasonable or that the identified classes of voters are not absolutely prohibited from voting given other available options.

For these reasons, the Court declines to dismiss Counts XIII and XIV of the Amended Complaint.

## III.  CONCLUSION

Based on the foregoing analysis, the Court **DENIES** Defendants' motions to dismiss (ECF Nos. 41, 42).[23]

**SO ORDERED** this 9th day of December, 2021.

J. P. BOULEE
United States District Judge

---

[23] The Court declines to dismiss the Amended Complaint on shotgun pleading grounds.  While the Amended Complaint contains some of the hallmarks of a shotgun pleading, including verbosity and adopting the allegations of preceding counts, dismissal is appropriate "where 'it is *virtually impossible* to know which allegations of fact are intended to support which claim(s) for relief.'"  *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1325 (11th Cir. 2015) (citation omitted).  Defendants' robust response to the Amended Complaint indicates that is not the case here.