IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| COALITION FOR GOOD GOVERNANCE, et al., <br><br>Plaintiffs, <br><br> v. <br><br> BRIAN KEMP, et al., <br><br> Defendants. | Civil Action No. 21-cv-02070-JPB |

**BRIEF IN SUPPORT OF PLAINTIFFS' MOTION
FOR LEAVE TO AMEND**

**Introduction and Summary**

Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, Plaintiffs have moved for leave to file a First Amendment to Amended Complaint to add Count XV, which is a First Amendment challenge to Tally Rules, O.C.G.A. § 21-2-386(a)(2)(A) & (B)(vi).[1] New Count XV is added as an amended to the Amended Complaint because, under Local Rule 15.1, "reproduction of the entire pleading as amended would be unduly burdensome." The proposed First Amendment to the Amended Complaint is attached to the Motion as Exhibit A.

---

[1] Tally Rules 1 and 2 were called "Estimating Ban A" and "Estimating Ban B" in Plaintiffs' Complaints and Briefs.

SB 202 contains two "Tally Rules" prohibiting the tallying, tabulating, or estimating of "absentee ballots cast" (Tally Rule 1) or "votes on the absentee ballots cast" (Tally Rule 2) during pre-Election Day absentee ballot processing.[2] The two "Tally Rules" are found in O.C.G.A. § 21-2-386(a)(2), which governs the wide-ranging activities that must be open to the public taking place in the absentee mail ballot processing facilities up until 7 am on Election Day.[3] Plaintiffs originally challenged the Tally Rules as void for vagueness under the Due Process Clause because, among other reasons, they criminalize "pure thought." Plaintiffs did not originally challenge the Tally Rules under the First Amendment because Plaintiffs did not read the Tally Rules as prohibiting or restricting communications. In its Order on Plaintiffs' Motion for Preliminary Injunction, however, the Court rejected Plaintiffs' reading of the Tally Rules, holding that "objective conduct, rather than mere thought, would be necessary for enforcement," and noting in a footnote that Plaintiffs "mentioned but did not develop and argument that

---

[2] The Tally Rule provisions of SB 2020, O.C.G.A. § 21-2-386(a)(2)(A) & (B)(vi), relate to the processing of absentee mail ballots from the third Monday prior to Election Day until 7 AM on Election Day. Long-existing statutes, codified at O.C.G.A. § 21-2-386(a)(5) & (6), provide different regulations for the same activities beginning at 7 AM on Election Day.

[3] Such activities include, but are not limited to, removing ballots from envelopes, inspecting ballots for damage, manual duplication of damaged ballots, verifying the validity of the ballot style, documenting ballot accounting controls, documenting and verifying chain of custody of ballots and envelopes, scanning and tabulation of ballots, and securing ballots when not in active use.

prohibiting communications regarding ballot estimates would implicate the First Amendment." (ECF No. 49 at 34-35). Based on the Court's ruling, Plaintiffs now seek leave to bring a First Amendment challenge to the Tally Rules.

### A. Need for Amendment

The need to add a First Amendment challenge to the Tally Rules arises out of this Court's interpretation of Tally Rules in its August 20, 2021 Order denying in part and granting in part Plaintiffs' Motion for Preliminary Injunction (ECF No. 49). In their First Amended Complaint filed on June 11, 2021, and in their Motion for Preliminary Injunction filed on June 14, 2021, Plaintiffs made a Due Process void-for-vagueness challenge to the Tally Rules. (ECF No. 14 at ¶¶ 436 to 442; ECF No. 15-1 at 16 – 19). Plaintiffs did not raise a First Amendment challenge to the Tally Rules because Plaintiffs read the Tally Rules as not restricting speech. Instead, the Tally Rules, as enacted, criminalize the acts of tallying, tabulating, or estimating, or attempting to do so. One of the grounds for Plaintiffs' Due Process challenge was that the statutes criminalize pure thought; the crime was complete without any overt action of any kind. Plaintiffs' interpretation of the Tally Rules was further supported by the existence of another rule – the "Communications Rule" – which immediately follows Tally Rule 2 and expressly prohibits "[c]ommunicating any information" seen "while monitoring the processing and

scanning of the absentee ballots." O.C.G.A. § 21-2-386(a)(2)(B)(vi).  If the Tally Rules prohibited more than pure thought, and extended to communicating those thoughts, then they would prohibit the same conduct as the Communications Rule, rendering the Tally Rules "mere surplusage." *Slakman v. Cont'l Cas. Co.,* 277 Ga. 189, 190 (2002) ("we apply the fundamental rules of statutory construction that require us to construe a statute according to its terms, to give words their plain and ordinary meaning, and to avoid a construction that makes some language mere surplusage").

In its Order, however, the Court rejected Plaintiffs' reading of the statute. The Court stated that "writing down a tally or estimate of the number of ballots case is an observable act that would violate the rules." (Doc. 49 at 34).  The Court continued:

> And such objective conduct, rather than mere mental thought, would be necessary for enforcement. *See United States v. Oviedo,* 525 F.2d 881, 884 (5th Cir. 1976) (holding that our jurisprudence does not permit the punishment of a person's "thoughts, desires, or motives, through indirect evidence, without reference to any objective fact.").

(Doc. 49 at 34-35).  Thus, as interpreted by the Court, the Tally Rules may criminalize objective conduct that manifests tallying, tabulating or estimating, including recording tallies, tabulations or estimates or communicating them to others.  This conduct implicates the First Amendment.

Indeed, the Court anticipated this issue in footnote 19 to the passage quoted above:

> Plaintiffs mentioned but did not develop an argument that prohibiting communications regarding ballot estimates would implicate the First Amendment, so the Court does not address it.

(Doc. 49 at n. 19).

The State Defendants may contend that Plaintiffs should have anticipated this reading of the Tally Rules and brought a First Amendment claim initially. Though Plaintiffs understand and respect the Court's reasoning to the contrary, Plaintiffs' interpretation of the statute was not unreasonable under Georgia law.[4]

In any event, under the liberal standards of Rule 15, leave should be granted to allow Plaintiffs to assert the claim based on the Court's interpretation of the law.

### B. Strength of the Amended Claim on the Merits

---

[4] *See also Deal v. Coleman,* 294 Ga. 170, 172 (2013) ("When we consider the meaning of a statute, 'we must presume that the General Assembly meant what it said and said what it meant.'"). The inclusion of language addressing communications in the Communications Rule, which directly follows Tally Rule 2 at subsection (vii) of O.C.G.A. § 21-2-386(a)(2)(B), and its omission in Tally Rule 2 itself, is presumed to be intentional on the part of the Legislature under the doctrine of expressio unius est exclusio alterius. *Truist Bank v. Stark,* 359 Ga. App. 116, 854 S.E.2d 784, 786 (2021) ("Under the statutory interpretation doctrine of expressio unius est exclusio alterius, where [the General Assembly] includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that [the General Assembly] acts intentionally and purposely in the disparate inclusion or exclusion.").

Although the potential merit of a proposed amendment is not necessarily germane to a determination whether to grant leave to amend, the added First Amendment challenge to the Tally Rules is particularly strong in light of this Court's ruling on Plaintiffs' other First Amendment Claims.  The Court has already found that Plaintiffs have standing to challenge the Tally Rules and that the State Defendants' threshold arguments (redressability, etc.) are meritless.  On the merits, the Tally Rules are content-based: they criminalize speech about estimating, tabulation, and tallying of absentee ballots cast (Tally Rule 1) or votes on the absentee ballots cast (Tally Rule 2), and not speech about other matters.  In this respect, they are no different that the Communications Rule, which this Court found to be content-based.  *See* Order, ECF No. 49 at 18.  They are therefore presumptively unconstitutional: "Content-based laws—those that target speech based on its communicative content—are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests."  *Reed v. Town of Gilbert, Ariz.,* 575 U.S, 155, 163 (2015).  *See also Consol. Edison Co. v. Public Service Comm'n,* 447 U.S. 530, 537 (1980) (even if viewpoint neutral, content-based restrictions are presumptively unconstitutional).

Tally Rule 1 is particularly suspect because, unlike the Communications Rule (and Tally Rule 2), Tally Rule 1 restricts speech *anywhere*. The lower standard of review that would apply to restrictions on speech in non-public forums, and which the Court applied to the Communications Rule, has no applicability to Tally Rule 1. *Compare Minn. Voters All. V. Mansky,* 138 S. Ct. 1876, 1886 (2018); Order, ECF No. 49 at 16-17.

Tally Rule 1, therefore, is subject to strict scrutiny: it "may be justified only if the government proves that the regulation is narrowly tailored to serve compelling state interests." *Id.,* ECF No. 49 at 16 (citing *Reed,* 576 U.S. at 165). Again, Tally Rule 1 makes it a misdemeanor for any person to tally, tabulate or estimate the "absentee ballots cast until the time for the closing of the polls." O.C.G.A. § 21-2-386(a)(2)(A). The key phrase here is "absentee ballots cast," which does *not* mean "*votes* cast," "*vote* tallies" or "*vote* counts." The number of absentee ballots cast – the subject of Tally Rule 1 - includes the number of absentee ballots that are in various stages of processing and counting. "Votes cast," "vote tallies," or "vote counts," on the other hand, refers to how many votes a particular candidate or a particular proposition has received. Plaintiffs completely agree that the State has a compelling interest in prohibiting anyone from tabulating, tallying, or even *knowing,* and an even stronger interest in

preventing anyone from *disclosing,* any *vote* counts or trends prior to the closing of the polls on Election Day.   On the other hand, the State has no interest in restricting information about the number of absentee ballots cast or in processing; this is public information that is routinely the subject of public and official oversight and legitimate press coverage.

Tally Rule 2 is different than Tally Rule 1 in important respects.  First, as noted above, it prohibits the tallying, tabulating and estimating of "*votes on* the absentee ballots cast," not the "absentee ballots cast," which is prohibited by Tally Rule 1.  Unlike Tally Rule 1, Tally Rule 2 only restricts activities while the monitors and observers are monitoring and observing within the Ballot Counting Room.[5]  Plaintiffs fully agree that the disclosure of information about tallies of contests, including vote tally estimates and trends that a monitor or observer obtains observing the processing of absentee ballots before the close of the polls, should be prohibited.  *See* Amended Complaint, ECF No. 14 at ¶ 428).  Yet the objective conduct that Tally Rule 2 might be read to criminalize extends beyond the disclosure of such vote count information to others (already criminalized by the Communications Rule) to the mere recording (during the monitoring or observing

---

[5] Tally Rule 2 is in the same section as the Communications Rule, which this Court held only applied to speech occurring while the monitors and observers were monitoring or observing in the Ballot Counting Room.  (ECF No. 49 at 18-19).

8

before the close of the polls) by a monitor or observer of tallies, tabulations or estimates of "votes on the absentee ballots cast." To be sure, describing exactly what Tally Rule 2 does and does not criminalize is difficult if not impossible, providing further support for Plaintiffs' void for vagueness claim. In any event, however, the State has no justification for criminalizing such conduct, particularly given the First Amendment implications of doing so. *See Reed,* 576 U.S. at 165.

### C. Timeliness and Lack of Prejudice

This Motion for Leave to Amend is timely brought and Defendants will suffer no prejudice from the granting of leave. Discovery has not begun and Defendants have ample time to answer and otherwise defend the claim.

### D.  Not a Shotgun Pleading

Anticipating the Defendants' semi-automatic argument,[6] Plaintiffs show that the First Amendment to the Amended Complaint, like the prior two complaints, is not a shotgun pleading. The First Amendment complies with each of the pleading requirements set forth by the Eleventh Circuit in the seminal "shotgun pleading" case, *Weiland v. Palm Beach County Sheriff's Office,* 792 F.3d 1313, 1323-1324

---

[6] In their Motion to Dismiss, Defendants argued that the Amended Complaint is "an improper shotgun pleading." (ECF No. 41-1 at 3).  Defendants, ironically, did not support this statement with citations to the record or caselaw.   Defendants made the same unsuccessful argument repeatedly in *Curling v. Raffensperger,* No. 17-cv-02989-AT, ECF No. 234-1 at 14; ECF No. 645-1 at 20.

(11th Cir. 2015). The count does *not* replead all the prior allegations, but instead carefully selects those prior allegations (Paragraphs 1 through 365) that are germane to the count. The same is true for the Amended Complaint. (ECF No. 14 at, *e.g.,* ¶ 392 (incorporating paragraphs 1 to 365 and 376 to 391); ¶ 464 (incorporating paragraphs 1 to 365 and 458 to 463). The First Amendment to the Amended Complaint, like the two prior complaints, also does not commit the other "mortal" and "venial" sins identified by the *Weiland* court, such as not identifying the parties to a count, not having separate counts for separate causes of action, or including extraneous allegations.

For the foregoing reasons, Plaintiffs should be granted leave to file the First Amendment to the Amended Complaint.

Respectfully submitted this 7th day of February, 2022.

| | |
|---|---|
| */s/ Bruce P. Brown* | */s/ Cary Ichter* |
| Bruce P. Brown | Cary Ichter |
| Georgia Bar No. 064460 | Georgia Bar No. 382515 |
| BRUCE P. BROWN LAW LLC | ICHTER DAVIS LLC |
| 1123 Zonolite Rd. NE | 3340 Peachtree Road NE |
| Suite 6 | Suite 1530 |
| Atlanta, Georgia 30306 | Atlanta, Georgia 30326 |
| (404) 386-6856 | (404) 869-7600 |
| bbrown@brucepbrownlaw.com | CIchter@Ichterdavis.com |

| | |
|---|---|
| */s/ Greg K. Hecht* | */s/Shea E. Roberts* |
| Greg K. Hecht | Shea E. Roberts |
| Georgia Bar No. 003860 | Georgia Bar No. 608874 |
| HECHT WALKER, P.C. | GIACOMA ROBERTS & DAUGHDRILL LLC |
| Suite B | 945 East Paces Rd. |
| Stockbridge, Georgia 30281 | Suite 2750 |
| (404) 348-4881 | Atlanta, Georgia 30326 |
| greg@hmhwlaw.com | (404) 924-2850 |
| | sroberts@grdlegal.com |

## CERTIFICATE OF SERVICE AND CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 5.1

Pursuant to N.D. Ga. L.R. 5.1(C), I certify that the foregoing was prepared using Times New Roman 14 font. I electronically filed this using CM/ECF, thus electronically serving all counsel of record.

This 7th day of February, 2022.

> */s/ Bruce P. Brown*
> Bruce P. Brown
> Georgia Bar No. 064460
> BRUCE P. BROWN LAW LLC
> 1123 Zonolite Rd. NE
> Suite 6
> Atlanta, Georgia 30306
> (404) 386-6856
> bbrown@brucepbrownlaw.com