IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **COALITION FOR GOOD GOVERNANCE, et al.,**<br><br>**Plaintiffs,**<br><br>v.<br><br>**BRIAN KEMP, et al.,**<br><br>**Defendants.** | Civil Action No. 21-cv-02070-JPB |

### PLAINTIFFS' MOTION FOR PERMANENT INJUNTION AND FINAL JUDGMENT ON PHOTOGRAPHY RULE II CLAIM AND FOR VOLUNTARY DISMISSAL OF THE REMAINING CLAIMS WITHOUT PREJUDICE

Pursuant to Rules 41(a)(2), 54(b), and 65 of the Federal Rules of Civil Procedure, Plaintiffs move to convert the preliminary injunction granted by the Court as to the Photography Rule II Claim, as hereafter defined, into a permanent injunction, to enter final judgment with respect to such claim, and to dismiss Plaintiffs' remaining claims without prejudice. In the alternative to dismissal, Plaintiffs move to stay the case until March 1, 2023.

For purposes of this Motion, the "Photography Rule II Claim" is Plaintiffs' challenge to the provisions of O.C.G.A. § 21-2-568.2 that proscribe the use of

1

photographic or other electronic monitoring or recording devices to "[p]hotograph or record a voted ballot."[1]

I. **Introduction and Summary**

In this Motion, Plaintiffs seek to dismiss their case without prejudice after obtaining final judgment on their Photography Rule II Claim. On August 20, 2021, this Court granted Plaintiffs' Motion for Preliminary Injunction on the Photography Rule II Claim, holding that the rule constituted content-based regulation of speech that was not "narrowly tailored to serve a compelling state interest." (ECF 49 at 22). As explained in Part II, the Court's ruling on Plaintiff's Motion for Preliminary Injunction should be converted to a permanent injunction without an evidentiary hearing because there are no remaining "triable issues of fact." *United States v. McGee,* 714 F.2d 607, 613 (6th Cir.1983). As explained in Part III, once the permanent injunction is granted, the Court may then enter final judgment on the claim under Rule 54(b).

As explained in Part IV, Plaintiffs' motion for dismissal of the remaining claims without prejudice is governed by Rule 41(a)(2). The Court enjoys broad

---

[1] Photography Rule I proscribes the use of photographic or other electronic monitoring or recording devices to "[p]hotograph or record the face of an electronic ballot marker while a ballot is being voted or while an elector's votes are displayed on such electronic ballot marker." O.C.G.A. § 21-2-568.2. Plaintiffs do not challenge Photography Rule I.

discretion in determining whether to allow a voluntary dismissal under Rule 41(a)(2). *McCants v. Ford Motor Co., Inc.,* 781 F.2d 855, 857 (11th Cir.1986). "[I]n most cases, a voluntary dismissal should be granted unless the defendant will suffer clear legal prejudice, *other than the mere prospect of a subsequent lawsuit,* as a result." *Id.* at 856–57 (emphasis in original).  Other than the "mere prospect of a subsequent lawsuit," Defendants will suffer no legal prejudice as a result of the dismissal without prejudice of the remaining claims in this case.

## II.    Motion for Permanent Injunction

Given that Plaintiffs mounted a facial attack to enjoin the enforcement of a statute, the terms of which are not in dispute, the Court's Order granting Plaintiffs' Motion for Preliminary Injunction may be converted to a permanent injunction without an additional hearing because there are no material facts in dispute and the unconstitutionality of the rule on its face has now been established as a matter of law.   It is well-settled that the standard for a permanent injunction is essentially the same as a preliminary injunction, with the exception that the plaintiff must show actual success rather than a likelihood of success on the merits.  *Amoco Prod. Co. v. Village of Gambell,* 480 U.S. 531, 546 n. 12 (1987).   With respect to the procedure for converting a preliminary injunction into a permanent injunction, the

law also is well-settled: "Courts recognize that if 'there is no triable issue of fact, [a] court may convert a preliminary injunction to a permanent injunction without an evidentiary hearing.' *United States v. Prater,* 2005 WL 2715401, *5 (M.D.Fla.) (unpublished opinion) (citing *United States v. McGee,* 714 F.2d 607, 613 (6th Cir.1983)) (other citations omitted)." *Citibank (S. Dakota) N.A. v. Nat'l Arb. Council, Inc.,* 20006 WL 2691528 at * 4 (M.D. Fla. Sept. 19, 2006).

### A. Actual Success on the Merits

Photography Rule II makes it a misdemeanor to use "photographic or other electronic monitoring or recording devices to . . . (ii) '[p]hotograph or record a voted ballot.'" (ECF 49 at 2) (quoting O.C.G.A. § 21-2-568.2)). Unlike Photograph Rule I, which applies only to voting locations while people are voting, *see infra* note 1, Photograph Rule II criminalizes photography of a voted ballot anywhere and at any time. Thus, the rule criminalizes what has been for at least a century a staple of press coverage of American elections. *See* Doc. 15-2 at 2-3 (photographs of Presidents Reagan, George W. Bush, Taft, and Eisenhower, and Dr. Martin Luther King Jr., with voted ballots).

As this Court found in its Order on Plaintiffs' Motion for Preliminary Injunction, Photography Rule II is presumptively unconstitutional on its face because it is explicitly content-based: it prohibits photographs based upon the

information that they capture.  As a content-based restriction on speech, Photography Rule II may be "justified only if the government proves that the regulation is narrowly tailored to serve compelling state interests."  (Doc. 49 at 16 (citing *Reed v. Town of Gilbert,* 576 U.S. 155, 163 (2015)).  This burden has not and cannot be met. The Court explained:

> Even if the Court accepts State Defendants' argument that Photography Rule II serves the compelling interests of preserving ballot secrecy and preventing fraud, they have neither argued that it is narrowly tailored to serve those interests nor rebutted Plaintiffs' assertion that the rule is a blanket prohibition on recording any voted ballot under any circumstances.
>
> By comparison, the Alabama election statute, which State Defendants offer as an analogous regulation, reflects tailoring that is not evident here.  For example, that statute focuses on photography at a polling place and provides carveouts, including for photography of a voter's own ballot.  *See* Ala. Code § 17-9-50.1.

(ECF 49 at 22-23).  Based on the foregoing analysis, the Court found that Plaintiffs were "substantially likely" to succeed on the merits of their First Amendment challenge to Photography Rule II and enjoined the State Defendants "from enforcing Photography Rule II until further order of the Court."  (*Id.* 39).

Photography Rule II is a textbook example of an unconstitutional, content-based restriction on speech.  As Judge Grant wrote for the Court in *Otto v. City of Boca Raton,* 981 F.3d 854, 862 (11th Cir. 2020):

> Few categories of regulation have been as disfavored as content-based speech restrictions, which are "presumptively invalid." *R.A.V. v. City of St. Paul*, 505 U.S. 377, 382, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992). That's because, "above all else, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Mosley*, 408 U.S. at 95, 92 S.Ct. 2286. So regulations that are grounded in the content of speech, and that allow the government "to discriminate on the basis of the content" of that speech, "cannot be tolerated under the First Amendment." *Simon & Schuster, Inc. v. Members of the New York State Crime Victims Bd.*, 502 U.S. 105, 116, 112 S. Ct. 501, 116 L.Ed.2d 476 (1991) (quotation omitted).

The State Defendants have never (and will never be able to) articulate a compelling interest in criminalizing all photography of voted ballots. Scanned ballot images are public records under Georgia law, O.C.G.A. § 50-18-71(k); criminalizing the photography of such records is directly contrary to the express legislative intent that individual voting artifacts are to be memorialized and preserved.  O.C.G.A. § 50-18-70 ("public access to public records should be encouraged to foster confidence in government and so that the public can evaluate the expenditure of public funds and the efficient and proper functioning of its institutions.")  Moreover, even if State Defendants could identify a compelling interest, Photography Rule II's blanket prohibition would still not be narrowly tailored to serve any conceivably valid interest.

Plaintiffs are entitled to convert this preliminary relief into a permanent injunction because no additional facts will save Photography Rule II and a trial "would be a useless formality." *Standard Oil Co. v. Lopeno Gas Co.,* 240 F.2d 504, 509-510 (5th Cir. 1957).[2]

### B. Irreparable Harm

As to irreparable harm, the Court held: "it is well-settled that '[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.' *Elrod v. Burns,* 427 U.S. 347, 373 (1976))." (ECF 49 at 36). Irreparable harm from the rule is thus conclusively established.

### C. Balance of Equities and Public Interest

As the Court observed, the considerations of the balance of equities and of the public interest merge when it is the government opposing the entry of injunctive relief. (ECF 49 at 37). The Court found that the threatened injury to

---

[2] In *Standard Oil,* the plaintiff moved for a preliminary injunction, but the District Court granted a permanent injunction. The Fifth Circuit conceded that ordinarily the District Court should not have granted a permanent injunction when the motion was for a preliminary injunction, but nevertheless affirmed because "[t]here appear to be no material issues of fact."

> The dispute centers entirely about the validity and construction of a written contract. The district court decided those disputed questions of law, and, as we have indicated, it decided them correctly. Nothing more remained to be tried. Under such circumstances, a reversal would be a useless formality.

240 F.2d at 510.

Plaintiffs outweighed any governmental or public interest, particularly in light of the existence of other state statutes, namely O.C.G.A. § 21-2-579(1), "which prohibits viewers from allowing their ballots to be seen for fraudulent purposes," and O.C.G.A. § 21-2-413(e), "which generally bans photography in a polling place." (ECF 49 at 38).

As to the public interest: "As the Supreme Court has stated, '[t]he First Amendment, in particular, serves significant societal interests.'" *Speech First, Inc. v. Cartwright,* 32 F.4th 1110, 1128 (11th Cir. 2022) (quoting *First Nat'l Bank of Bos. v. Bellotti*, 435 U.S. 765, 776 (1978)); *see also Democratic Exec. Comm. of Fla. v. Lee*, 915 F.3d 1312, 1327 (11th Cir. 2019) ("[T]he public interest is served when constitutional rights are protected.").

In sum, since there remain no "triable issue of fact," *McGee,* 714 F.2d at 613, with respect to any of the four elements required for the granting of injunctive relief, Plaintiffs are entitled to permanent injunctive relief against the State Defendants' enforcement of Photography Rule II.

### III. Final Judgment on Photography Rule II Permanent Injunction

If the Court decides, as it should, that Photography Rule II should be permanently enjoined, then there are at least two procedural vehicles for making that ruling a final judgment. First, the Court could enter judgment on just this part

of the case under Rule 54(b) by making an express determination "that there is no just reason for delay." Second, if the Court grants Plaintiffs' motion to voluntarily dismiss all the other claims without prejudice, since the Photography Rule II claim would the only undismissed claim left in the case, the Court could then enter final judgment on the entire case without a Rule 54(b) determination.[3]

## IV. Motion for Voluntary Dismissal

Under Rule 41(a)(2), "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." In this Circuit, a district court enjoys broad discretion in determining whether to allow a voluntary dismissal under Rule 41(a)(2). *McCants v. Ford Motor Co., Inc.,* 781 F.2d 855, 857 (11th Cir.1986). "[I]n most cases, a voluntary dismissal should be granted unless the defendant will suffer clear legal prejudice, *other than the mere prospect of a subsequent lawsuit,* as a result." *Id.* at 856–57 (emphasis in original).

In case after case, the Eleventh Circuit has affirmed the granting of a motion for voluntary dismissal even where the defendants might lose some advantageous procedural circumstance. *Goodwin v. Reynolds,* 757 F.3d 1216, 1222 (11th Cir. 2014) (affirming granting of motion for dismissal, stating: "[T]here is also no

---

[3] The Court could also sever the Photography Rule II claim from the rest of the case under Rule 21, creating two cases, and then enter final judgment in the Photography Rule II case.

9

indication that Defendants suffered any prejudice from the dismissal, other than the loss of their preferred federal forum"); *Pontenberg v. Boston Scientific Corp.,* 252 F.3d 1253, 1259 (11th Cir. 2001) (affirming granting of motion for dismissal after summary judgment motion fully briefing, stating: "Under our circuit precedent, delay alone, in the absence of bad faith, is insufficient to justify a dismissal with prejudice, even where a fully briefed summary judgment motion is pending.").

Further, denying a motion for voluntary dismissal merely because of "the annoyance of a second litigation" has been held to be an abuse of discretion. *Holiday Queen Land Corp. v. Baker,* 489 F.2d 1031, 1032 (5th Cir. 1974) (reversing District Court's denial of motion for dismissal, stating: "Had the court granted a voluntary dismissal, INA faced only the annoyance of a second litigation upon the same subject matter.").

Plaintiffs frankly have been compelled to request voluntary dismissal for the same reasons they articulated as justifications for their Motion to Stay: a lack of attorney staffing resources to prosecute this case will exist for the foreseeable future because of unanticipated and massive ongoing commitments involving the same lead counsel in the substantially more advanced litigation of *Curling v. Raffensperger,* No. 17-cv-02989-AT (N.D. Ga.). Plaintiff Coalition for Good Governance and its counsel remain extremely active in the discovery of the illegal

copying and distibution of Georgia's voting system software initiated in Coffee County, Georgia. In addition, in the 2022 election cycle expected to continue through December runoffs, Plaintiffs' Executive Director and volunteers will be fully dedicated to essential election observation and oversight work, including collecting additional evidence relating to the implementation of SB 202. This Court denied Plaintiffs' request for a stay previously made on these grounds, but that request was brought in good faith and the practical reality is that Plaintiffs' ability to litigate this case at this time has not improved. Accordingly, Plaintiffs must of necessity obtain a dismissal without prejudice in order to avoid prejudicing their claims by proceeding with insufficient currently available resources to properly vindicate their claims on the merits.

Plaintiffs' rationale is here offered by way of an explanation only, not because it is properly considered as a factor in whether the requested dismissal should be granted. On the contrary, under the cases, the basis for a plaintiff's decision to move for dismissal (absent bad faith), is not a relevant consideration when deciding whether to grant a Rule 41 dismissal: instead, the only proper focus is upon the prejudice to the defendants.

The cases show that *after* summary judgment has been fully briefed, whether the plaintiff's motion for voluntary dismissal should be granted is a closer call, but

even that late in the case the Eleventh Circuit has affirmed the granting of a motion for voluntary dismissal.  *Pontenberg,* 252 F.3d at 1259.  Instructive by comparison is *McBride v. JLG Indus. Inc.,* 189 F. App'x 876, 877 (11th Cir. 2006), a rare case in which the motion for voluntary dismissal was denied.  In *McBride,* not only had the summary judgment motion been fully briefed, but the plaintiff in his motion for dismissal "conceded that he could not survive the motion for summary judgment." Nothing like the *McBride* circumstance exists here.

Indeed, in this case, no summary judgment motion has been—or is even close to being—filed.  Rather, discovery is still ongoing, and the Defendants have only noticed, but not yet taken, depositions.  Because Defendants will suffer no costs or inconvenience if the voluntary dismissal is granted, much less any "clear legal prejudice," Plaintiffs' Motion for Voluntary Dismissal (of all claims apart from the Photography Rule II Claim) should be granted.

## V.    Alternative Motion to Stay

In the alternative to dismissal, Plaintiffs move to stay the case until March 1, 2023, largely for the reasons set forth above and in Plaintiffs' September 13, 2022 Motion to Stay (Doc. 85).  District courts have broad discretion to grant stays, particularly if they are not of "immoderate" duration.  *Center for Biological Diversity v. DeSantis,* No. 8:21-CV-1521, 2022 WL 899677, at *7 (M.D. Fla.

March 28, 2022) (holding that the defendants' proposed six-month stay was "a reasonable timeframe"); *see also Johnson v. Bd. of Regents of Univ. of Ga.*, 263 F.3d 1234, 1269 (11th Cir. 2001) ("we accord district courts broad discretion over the management of pre-trial activities, including discovery and scheduling"); *Barnes v. CS Marketing LLC,* 430 F.Supp. 3d 1309, 1311 (S.D. Fla. 2020) (same).

Therefore, if the Court does not grant Plaintiffs' motion for voluntary dismissal, Plaintiffs move that the case be stayed until March 1, 2023.

Respectfully submitted this 22rd day of October, 2022.

| | |
|---|---|
| */s/ Bruce P. Brown* <br> Bruce P. Brown <br> Georgia Bar No. 064460 <br> BRUCE P. BROWN LAW LLC <br> 1123 Zonolite Rd. NE <br> Suite 6 <br> Atlanta, Georgia 30306 <br> (404) 881-0700 <br> bbrown@brucepbrownlaw.com | */s/ Cary Ichter* <br> Cary Ichter <br> Georgia Bar No. 382515 <br> ICHTER DAVIS LLC <br> 3340 Peachtree Road NE <br> Suite 1530 <br> Atlanta, Georgia 30326 <br> (404) 869-7600 <br> CIchter@Ichterdavis.com |
| */s/ Greg K. Hecht* <br> Greg K. Hecht <br> Georgia Bar No. 003860 <br> HECHT WALKER, P.C. <br> 205 Corporate Center Dr. <br> Suite B <br> Stockbridge, Georgia 30281 <br> (404) 348-4881 <br> greg@hmhwlaw.com | */s/Shea E. Roberts* <br> Shea E. Roberts <br> Georgia Bar No. 608874 <br> GIACOMA ROBERTS & DAUGHDRILL LLC <br> 945 East Paces Rd., Suite 2750 <br> Atlanta, Georgia 30326 <br> (404) 924-2850 <br> sroberts@grdlegal.com |

# CERTIFICATE OF SERVICE AND CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 5.1

Pursuant to N.D. Ga. L.R. 5.1(C), I certify that the foregoing was prepared using Times New Roman 14 font. I electronically filed this using CM/ECF, thus electronically serving all counsel of record.

This 22rd day of October, 2022.

>*/s/ Bruce P. Brown*
>Bruce P. Brown
>Georgia Bar No. 064460
>BRUCE P. BROWN LAW LLC
>1123 Zonolite Rd. NE
>Suite 6
>Atlanta, Georgia 30306
>(404) 386-6856
>bbrown@brucepbrownlaw.com