IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| COALITION FOR GOOD GOVERNANCE, *et al.*<br><br>*Plaintiffs*,<br><br>v.<br><br>BRIAN KEMP, in his official capacity as Governor of the State of Georgia, *et al.*,<br><br>*Defendants*. | Civil Action No.:<br>1:21-CV-02070-JPB |

**DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS**

Defendants Brian Kemp, in his official capacity as the Governor of the State of Georgia; Brad Raffensperger, in his official capacity as Secretary of State of Georgia; and Sara Tindall Ghazal, Janice Johnston, Edward Lindsey, and Matthew Mashburn, in their official capacities as members of the State Election Board (collectively, "Defendants") pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.1 submits this Statement of Material Facts as to Which There is No Genuine Issue to be Tried.

1.  SB 202 provided the State Election Board (SEB) the ability, after notice and a hearing, to temporarily suspend election superintendents after

they committed multiple violations of the law over multiple election cycles. O.C.G.A. § 21-2-33.2.

2. Since the adoption of SB 202 in 2021, none of the counties where the Board Member Plaintiffs serve (currently or previously) were subjected to an investigation or performance review. Declaration of Ryan Germany ("Germany Dec."), attached as Ex. A, ¶¶ 4–6.

3. The only county election officials who have undergone a performance review are the members of the Fulton County Board of Elections and Registration and staff. Germany Dec., ¶¶ 4–6; Fulton Performance Review Board Report ("Fulton Report"), attached as Ex. 1 to Germany Dec.; Excerpts of Response to Interrogatories, attached as Ex. B, Nos. 1–2.

4. The Fulton County Performance Review was initiated by members of the General Assembly in the local legislative delegation. Fulton Report, p. 5.

5. The three-member Review Board personally observed "pre-election, Election Day, and post-election processes at Fulton County in both the 2021 municipal elections and the 2022 general and runoff elections." *Id.* at 6.

6. Those observations included at least four visits to the Fulton County Election Processing Center and at least 16 visits to different election day polling place and advance-voting locations. *Id.*

7. The Review Board also worked with the Carter Center to observe Fulton County elections in November 2022 to assist with its review. *Id*.

8. The Review Board conducted formal interviews with staff and members of the Fulton County Board of Elections, reviewed procedures, and coordinated with the Secretary's office for its review. *Id*. at 7.

9. When it issued its report, the Review Board confirmed that, in prior years "disorganization and a lack of a sense of urgency in resolving issues plagued Fulton County elections." *Id*. at 1.

10. The Review Board also recognized the improvement in election administration in Fulton County from 2020 through 2022, at least in part because of the incentives created by the Performance Review itself. *Id*. at 18.

11. The Review Board did not recommend any Fulton officials be suspended under the Suspension Rule. *Id*. at 18–19.

12. The SEB did not suspend the Fulton officials. Germany Dec., ¶¶ 7–8.

13. The SEB has not announced any plans for conducting additional performance reviews. Germany Dec., ¶¶ 7–8.

14. The SEB is not considering suspension of additional county election officials, including the Board Member Plaintiffs here. Germany Dec., ¶¶ 7–8.

15. SB 202 added a provision making it a felony to engage in the *intentional* observation of an elector casting a ballot "in a manner that would allow such person *to see for whom or what the elector is voting*." SB 202 (Ex. D) at 95:2448–2454 (emphasis added).

16. The Secretary of State provided guidance to counties on proper precinct layout, and county election officials are ultimately responsible for the setup of voting machines in ways that comply with Georgia law. Declaration of Blake Evans, attached as Ex. C ("Evans Dec."), ¶ 3 and Ex. 1.

17. Following the 2020 election, some counties were repeatedly asked how many votes the had left to tabulate that they could not answer in a timeline fashion. Germany Dec., ¶ 9.

18. Posting election results quickly is one of the best things that election officials can do to generate confidence in the outcome of an election. Germany Dec., ¶ 9.

19. Prior to SB 202, early scanning of absentee ballots could only be performed by a sequestered group of individuals beginning at 7:00 a.m. on Election Day itself, so there was no danger of those individuals leaving to report vote totals or estimates during that single-day process. O.G.C.A. § 21-2-386(a)(2) (2019); Germany Dec., ¶ 13.

20. To mitigate the risk that early vote counts would be disclosed during early scanning in the weeks before an election, the legislature designed a process that ensured that information about the scanning process would not be publicized prior to the final close of the polls. Germany Dec., ¶¶ 11, 12, 14.

21. SB 202 permits only election officials to handle absentee ballots, requires individuals involved to swear an oath, and places several requirements on observers to avoid disclosure of vote counts. SB 202 at 39:965–40:981; 66:1687–1690; 67:1698–1712; Germany Dec., ¶ 15.

22. The early scanning provisions of SB 202 closely track the emergency SEB rules that were used throughout 2020 for early scanning of ballots. Germany Dec., ¶ 10.

23. The Communication Rule only applies to "any ballot, vote or selection" during the viewing or monitoring of the absentee-ballot scanning process. Germany Dec., ¶ 16.

24. The absentee-ballot scanning process occurs in a room that also has other specific requirements about the use of recording devices and other equipment. Germany Dec, ¶ 17.

25. Maintaining the secrecy of that absentee-ballot scanning process is critical to preserving the integrity of the election process by ensuring vote

totals are not disclosed while other voters are still voting or have yet to vote. Germany Dec., ¶ 18.

26. The Tally Rules protect the integrity of the election process by ensuring that counting votes or estimates about vote totals do not take place prior to the conclusion of the voting process. Germany Dec., ¶ 19.

27. If officials were enjoined from enforcing these two provisions, individuals would be free to share information about the early-scanning process with the general public and with candidates. Germany Dec., ¶¶ 20–22.

28. Having information about early scanning totals shared with the general public and with candidates would undermine the integrity of the election process. Germany Dec., ¶¶ 20–22.

29. The Photography Rules can prevent vote-buying schemes that require a voter to show proof of their vote to the person paying them and also prevent others from pressuring voters to show for whom they voted. Germany Dec., ¶ 23.

30. The Photography Rules protect individuals from being subjected to outside pressure as a result of the votes they cast and ensures ballot secrecy. Germany Dec, ¶¶ 24–26; Ga. Const. Art. II, § I, ¶ I (guarantee of secret ballot).

31. The Photography Rules ensure that photographic images of a voter's ballot are not stored in ways that can connect the ballot to the voter,

preserving the voter's privacy, ballot secrecy, and the integrity of the election. Germany Dec., ¶ 27.

32. Patricia Pullar is no longer serving on an election board. Deposition of Patricia Pullar [Doc. 122] ("Pullar Dep."), 24:18–25:1.

33. There are no performance reviews or other pending action related to the Suspension Rules against Athens-Clarke, Coffee, Chatham, Clayton, and Jackson Counties. Germany Dec., ¶¶ 7–8.

34. None of the Board Member Plaintiffs are currently subject to potential suspension under the Suspension Rules. Germany Dec., ¶¶ 7–8.

35. None of the Board Member Plaintiffs are able to point to a single instance in which they were targeted because of the Suspension Rule. *See, e.g.* Deposition of Ernestine Thomas-Clark [Doc. 119], 39:11–40:8; Deposition of Adam Shirley [Doc. 118], 40:21–41:1; Deposition of Judy McNichols [Doc. 121], 44:11–46:2; Pullar Dep., 28:11–29:4.

36. The SEB has only empaneled one performance review panel since the adoption of SB 202. Germany Dec., ¶ 7.

37. The Review Board investigation into Fulton County was robust and searching, involved state officials, county officials, and the Carter Center, and ultimately did not result in the suspension of any county official. Germany Dec., ¶ 6; Fulton Report.

38. The panel concluded that the creation of the performance review that precedes the Suspension Rule incentivized the county officials to improve the administration of elections. Fulton Report, pp. 18–19.

39. The State Election Board has protected the voting rights of Georgia's citizens while protecting the rights of the members of local boards of election in the exercise of their duties. Fulton Report, pp. 18–19.

40. The performance review of Fulton County was comprehensive, cooperative, and resulted in better election administration in Georgia's largest county. *Id*.

41. The SEB has suspended zero county officials under the Suspension Rule. Germany Dec., ¶¶ 6–8.

42. The Suspension Rule processes have resulted in improved elections. Fulton Report, pp. 18–19.

43. It is the counties that select polling locations and decide how to set up ballot stations according to the orientation of the space they have selected. Evans Dec., ¶ 3 and Ex. 1.

44. No individual is being prosecuted based on merely approaching a polling place with large windows. Germany Dec., ¶ 30.

45. There is no evidence that any investigations or charges have been brought against any Plaintiff in this action or any voter for merely

"approaching a polling place with large windows." *See* Ex. B, Response Nos. 1–2.

46.  The State has a strong interest in ensuring that observers do not attempt to depress or otherwise alter voter turnout by disclosing a vote tally before the election has concluded. Germany Dec., ¶¶ 11–14, 18–19.

47.  It is possible that such observers may inadvertently (or purposely) disclose the *wrong* tally, which could depress or alter turnout in the election. Germany Dec., ¶¶ 20–22.

48.  The Tally Rules have not been arbitrarily or discriminatorily applied nor has it been applied in the manner Plaintiffs claim they feared.  Ex. B, Response Nos. 1–2.

49.  Protecting voters from vote-buying schemes and intimidation give the entire electorate confidence in election results. Germany Dec., ¶¶ 23–25.

50.  Vote-buying schemes, where a third-party may offer to pay or offer something of value in return for a vote, or intimidates voters, where a third-party may not explicitly offer to buy votes but may pressure a voter to publicly reveal how they voted, undermine the foundations of merit-based representative democracy and the protections of a secret ballot guaranteed in the Georgia Constitution.  Ga. Const. Art. II, § I, ¶ I; Germany Dec., ¶ 26.

51. Cameras are now commonplace in almost every mobile device in use today. Germany Dec., ¶ 28.

52. Pictures are often quickly uploaded to a cloud storage provider on the Internet and would connect the voter's ballot with the voter immediately. Germany Dec., ¶ 28.

53. It is typically private companies and not the user that control the security protocols at the locations where the photographic data is stored. Germany Dec., ¶ 29.

54. The Photography Rules also ensure that photographic images of a voter's ballot are not stored in ways that can connect the ballot to the voter, preserving the voter's privacy, secret ballot, and the integrity of the election. Germany Dec., ¶ 27.

55. The Photography Rules have not been arbitrarily or discriminatorily enforced in the ways Plaintiffs claim. *See* Ex. B, Response Nos. 1–2.

Respectfully submitted this 17th day of July, 2023.

Christopher M. Carr
Attorney General
Georgia Bar No. 112505

Bryan K. Webb
Deputy Attorney General
Georgia Bar No. 743580
Russell D. Willard
Senior Assistant Attorney General
Georgia Bar No. 760280
Elizabeth Vaughan
Assistant Attorney General
Georgia Bar No. 762715
**State Law Department**
40 Capitol Square, S.W.
Atlanta, Georgia 30334

Gene C. Schaerr*
Special Assistant Attorney General
H. Christopher Bartolomucci*
Brian J. Field*
**SCHAERR | JAFFE LLP**
1717 K Street NW, Suite 900
Washington, DC 20006
(202) 787-1060
gschaerr@schaerr-jaffe.com
*Admitted pro hac vice*

*/s/Bryan P. Tyson*
Bryan P. Tyson
Special Assistant Attorney General
Georgia Bar No. 515411
btyson@taylorenglish.com
Bryan F. Jacoutot
Georgia Bar No. 668272
bjacoutot@taylorenglish.com
Diane Festin LaRoss
Georgia Bar No. 430830
dlaross@taylorenglish.com
Donald P. Boyle, Jr.
Georgia Bar No. 073519
dboyle@taylorenglish.com
Deborah A. Ausburn

11

12

                              Georgia Bar No. 028610
                              dausburn@taylorenglish.com
                              Daniel H. Weigel
                              Georgia Bar No. 956419
                              dweigel@taylorenglish.com
                              Tobias C. Tatum, Sr.
                              Georgia Bar No. 307104
                              ttatum@taylorenglish.com
                              **Taylor English Duma LLP**
                              1600 Parkwood Circle
                              Suite 200
                              Atlanta, Georgia 30339
                              (678) 336-7249

                              *Counsel for Defendants*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to L.R. 7.1(D), the undersigned hereby certifies that the foregoing Statement has been prepared in Century Schoolbook 13, a font and type selection approved by the Court in L.R. 5.1(B).

/s/*Bryan P. Tyson*
Bryan P. Tyson