# EXHIBIT D

Senate Bill 202

By: Senators Burns of the 23rd, Miller of the 49th, Dugan of the 30th, Ginn of the 47th, Anderson of the 24th and others

**AS PASSED**

A BILL TO BE ENTITLED
AN ACT

1  To comprehensively revise elections and voting; to amend Chapter 2 of Title 21 of the
2  Official Code of Georgia Annotated, relating to elections and primaries generally, so as to
3  revise a definition; to provide for the establishment of a voter intimidation and illegal
4  election activities hotline; to limit the ability of the State Election Board and the Secretary
5  of State to enter into certain consent agreements, settlements, and consent orders; to provide
6  that the Secretary of State shall be a nonvoting ex officio member of the State Election
7  Board; to provide for the appointment, confirmation, term, and removal of the chairperson
8  of the State Election Board; to revise provisions relating to a quorum of such board; to
9  require the Secretary of State to support and assist the State Election Board; to provide for
10  the appointment of temporary and permanent replacement superintendents; to provide for
11  procedures; to provide for performance reviews of local election officials requested by the
12  State Election Board or local governing authorities; to provide for a definition; to provide for
13  appointment and duties of performance review boards; to provide for reports of performance
14  review boards; to provide for promulgation of rules and regulations; to provide additional
15  requirements on the State Election Board's power to adopt emergency rules and regulations;
16  to provide that no election superintendents or boards of registrars shall accept private
17  funding; to provide that the State Election Board shall develop methods for distribution of
18  donations; to provide that certain persons may serve as poll workers in other than the county

19 of their residence; to provide for the appointment of acting election superintendents in the

20 event of a vacancy or incapacitation in the office of judge of the probate court of counties

21 without a board of elections; to provide for resumption of the duties of election

22 superintendent upon the filling of such vacancy; to provide for the compensation of such

23 acting election superintendents; to provide for the reduction in size of certain precincts under

24 certain circumstances; to provide for notice when polling places are relocated; to provide for

25 certain reports; to provide limitations on the use of buses and other moveable facilities; to

26 provide that the name and designation of the precinct appears on every ballot; to provide for

27 allocation of voting equipment by counties and municipalities; to provide for the manner of

28 handling the death of a candidate prior to a nonpartisan election; to provide that no candidate

29 shall take or be sworn into any elected public office unless such candidate has received a

30 majority of the votes cast for such office except as otherwise provided by law; to provide for

31 participation in a multistate voter registration system; to revise procedures and standards for

32 challenging electors; to provide for the printing of ballots on safety paper; to provide for the

33 time and manner for applying for absentee ballots; to provide for certain limitations and

34 sanctions on the distribution of absentee ballot applications; to provide for the manner of

35 processing of absentee ballot applications; to provide for absentee ballot drop boxes and the

36 requirements therefor; to provide for the time and manner of issuing absentee ballots; to

37 provide for the manner of voting and returning absentee ballots; to revise the times for

38 advance voting; to limit changes to advance voting locations in the period prior to an

39 election; to provide notice requirements for changes of advance voting locations; to provide

40 for the processing and tabulation of absentee ballots; to provide sanctions for improperly

41 opening an absentee ballot; to provide for certain elector identification for absentee balloting;

42 to provide for monitors and observers; to provide for poll watcher training; to provide for

43 restrictions on the distribution of certain items within close proximity to the polls on election

44 days; to provide for the voting and processing of provisional ballots; to provide for

45 duplication panels for defective ballots that cannot be processed by tabulating machines; to

46  provide for ranked choice voting for military and overseas voters; to revise the time for
47  runoffs; to revise eligibility to vote in runoffs; to provide for the deadline for election
48  certification; to provide for a pilot program for the scanning and publishing of ballots; to
49  provide for the inspection and copying of original ballots by certain persons following the
50  completion of a recount; to provide for special primaries and special elections to fill
51  vacancies in certain offices; to provide for public notice and observation of preparation of
52  voting equipment; to provide for observation of elections and ballot processing and counting;
53  to provide for the filling of vacancies in certain offices; to prohibit observing or attempting
54  to observe how a voter marks or has marked his or her ballot or inducing a voter to do so; to
55  prohibit the acceptance of a ballot for return without authorization; to prohibit the
56  photographing or other recording of ballots and ballot markers; to amend Chapter 35 of Title
57  36 of the Official Code of Georgia Annotated, relating to home rule powers, so as to provide
58  for the delay of reapportionment of municipal corporation election districts when census
59  numbers are delayed; to amend Title 50 of the Official Code of Georgia Annotated, relating
60  to general provisions regarding state government, so as to provide for the submission and
61  suspension of emergency rules by the State Election Board; to provide that scanned ballot
62  images are public records; to provide for legislative findings; to provide a short title; to
63  provide for related matters; to provide for effective dates; to repeal conflicting laws; and for
64  other purposes.

65         BE IT ENACTED BY THE GENERAL ASSEMBLY OF GEORGIA:

66                                  **SECTION 1.**
67  This Act shall be known and may be cited as the "Election Integrity Act of 2021."

68                          **SECTION 2.**

69   The General Assembly finds and declares that:

70   (1)  Following the 2018 and 2020 elections, there was a significant lack of confidence in

71   Georgia election systems, with many electors concerned about allegations of rampant voter

72   suppression and many electors concerned about allegations of rampant voter fraud;

73   (2)  Many Georgia election processes were challenged in court, including the subjective

74   signature-matching requirements, by Georgians on all sides of the political spectrum before

75   and after the 2020 general election;

76   (3)  The stress of the 2020 elections, with a dramatic increase in absentee-by-mail ballots

77   and pandemic restrictions, demonstrated where there were opportunities to update existing

78   processes to reduce the burden on election officials and boost voter confidence;

79   (4)  The changes made in this legislation in 2021 are designed to address the lack of elector

80   confidence in the election system on all sides of the political spectrum, to reduce the

81   burden on election officials, and to streamline the process of conducting elections in

82   Georgia by promoting uniformity in voting.  Several examples will help explain how these

83   goals are achieved;

84   (5)  The broad discretion allowed to local officials for advance voting dates and hours led

85   to significant variations across the state in total number of hours of advance voting,

86   depending on the county.  More than 100 counties have never offered voting on Sunday

87   and many counties offered only a single day of weekend voting.  Requiring two Saturday

88   voting days and two optional Sunday voting days will dramatically increase the total voting

89   hours for voters across the State of Georgia, and all electors in Georgia will have access

90   to multiple opportunities to vote in person on the weekend for the first time;

91   (6)  Some counties in 2020 received significant infusions of grant funding for election

92   operations, while other counties received no such funds.  Promoting uniformity in the

93   distribution of funds to election operations will boost voter confidence and ensure that there

94    is no political advantage conferred by preferring certain counties over others in the

95    distribution of funds;

96    (7)  Elections in Georgia are administered by counties, but that can lead to problems for

97    voters in counties with dysfunctional election systems.  Counties with long-term problems

98    of lines, problems with processing of absentee ballots, and other challenges in

99    administration need accountability, but state officials are limited in what they are able to

100   do to address those problems.  Ensuring there is a mechanism to address local election

101   problems will promote voter confidence and meet the goal of uniformity;

102   (8)  Elections are a public process and public participation is encouraged by all involved,

103   but the enthusiasm of some outside groups in sending multiple absentee ballot applications

104   in 2020, often with incorrectly filled-in voter information, led to significant confusion by

105   electors.  Clarifying the rules regarding absentee ballot applications will build elector

106   confidence while not sacrificing the opportunities for electors to participate in the process;

107   (9)  The lengthy absentee ballot process also led to elector confusion, including electors

108   who were told they had already voted when they arrived to vote in person.  Creating a

109   definite period of absentee voting will assist electors in understanding the election process

110   while also ensuring that opportunities to vote are not diminished, especially when many

111   absentee ballots issued in the last few days before the election were not successfully voted

112   or were returned late;

113   (10)  Opportunities for delivering absentee ballots to a drop box were first created by the

114   State Election Board as a pandemic response.  The drop boxes created by rule no longer

115   existed in Georgia law when the emergency rules that created them expired.  The General

116   Assembly considered a variety of options and constructed a system that allows the use of

117   drop boxes, while also ensuring the security of the system and providing options in

118   emergency situations;

119   (11)  The lengthy nine-week runoffs in 2020 were exhausting for candidates, donors, and

120   electors.  By adding ranked choice voting for military and overseas voters, the run-off

121 period can be shortened to a more manageable period for all involved, easing the burden

122 on election officials and on electors;

123 (12)  Counting absentee ballots in 2020 took an incredibly long time in some counties.

124 Creating processes for early processing and scanning of absentee ballots will promote

125 elector confidence by ensuring that results are reported quickly;

126 (13)  The sanctity of the precinct was also brought into sharp focus in 2020, with many

127 groups approaching electors while they waited in line.  Protecting electors from improper

128 interference, political pressure, or intimidation while waiting in line to vote is of paramount

129 importance to protecting the election system and ensuring elector confidence;

130 (14)  Ballot duplication for provisional ballots and other purposes places a heavy burden

131 on election officials.  The number of duplicated ballots has continued to rise dramatically

132 from 2016 through 2020.  Reducing the number of duplicated ballots will significantly

133 reduce the burden on election officials and creating bipartisan panels to conduct duplication

134 will promote elector confidence;

135 (15)  Electors voting out of precinct add to the burden on election officials and lines for

136 other electors because of the length of time it takes to process a provisional ballot in a

137 precinct.  Electors should be directed to the correct precinct on election day to ensure that

138 they are able to vote in all elections for which they are eligible;

139 (16)  In considering the changes in 2021, the General Assembly heard hours of testimony

140 from electors, election officials, and attorneys involved in voting.  The General Assembly

141 made significant modifications through the legislative process as it weighed the various

142 interests involved, including adding further weekend voting, changing parameters for

143 out-of-precinct voting, and adding transparency for ballot images; and

144 (17)  While each of the changes in this legislation in 2021 stands alone and is severable

145 under Code Section 1-1-3, the changes in total reflect the General Assembly's considered

146 judgment on the changes required to Georgia's election system to make it "easy to vote and

147   hard to cheat," applying the lessons learned from conducting an election in the 2020
148   pandemic.


149                                  **SECTION 3.**

150   Chapter 2 of Title 21 of the Official Code of Georgia Annotated, relating to elections and
151   primaries generally, is amended by revising paragraph (35) of Code Section 21-2-2, relating
152   to definitions, as follows:
153       "(35) 'Superintendent' means:
154       (A)  Either the judge of the probate court of a county or the county board of elections,
155            the county board of elections and registration, the joint city-county board of elections,
156            or the joint city-county board of elections and registration, if a county has such;
157       (B)  In the case of a municipal primary, the municipal executive committee of the
158            political party holding the primary within a municipality or its agent or, if none, the
159            county executive committee of the political party or its agent;
160       (C)  In the case of a nonpartisan municipal primary, the person appointed by the proper
161            municipal executive committee; ~~and~~
162       (D)  In the case of a municipal election, the person appointed by the governing
163            authority pursuant to the authority granted in Code Section 21-2-70; and
164       (E)  In the case of the State Election Board exercising its powers under subsection (f)
165            of Code Section 21-2-33.1, the individual appointed by the State Election Board to
166            exercise the power of election superintendent."


167                                  **SECTION 4.**

168   Said chapter is further amended by revising Code Section 21-2-3, which was previously
169   reserved, as follows:
170       "21-2-3.

171  The Attorney General shall have the authority to establish and maintain a telephone hotline

172  for the use of electors of this state to file complaints and allegations of voter intimidation

173  and illegal election activities.  Such hotline shall, in addition to complaints and reports

174  from identified persons, also accept anonymous tips regarding voter intimidation and

175  election fraud.  The Attorney General shall have the authority to review each complaint or

176  allegation of voter intimidation or illegal election activities within three business days or

177  as expeditiously as possible and determine if such complaint or report should be

178  investigated or prosecuted.  ~~Reserved.~~"


179                              **SECTION 5.**

180  Said chapter is further amended by revising Code Section 21-2-30 relating to creation,

181  composition, terms of service, vacancies, quorum, seal, bylaws, and meetings of the State

182  Board of Elections as follows:

183  "21-2-30.

184  (a)  There is created a state board to be known as the State Election Board, to be composed

185  of ~~the Secretary of State~~ a chairperson elected by the General Assembly, an elector to be

186  elected by a majority vote of the Senate of the General Assembly at its regular session held

187  in each odd-numbered year, an elector to be elected by a majority vote of the House of

188  Representatives of the General Assembly at its regular session held in each odd-numbered

189  year, and a member of each political party to be nominated and appointed in the manner

190  provided in this Code section.  No person while a member of the General Assembly shall

191  serve as a member of the board.

192  (a.1)(1)  The chairperson shall be elected by the General Assembly in the following

193  manner:  A joint resolution which shall fix a definite time for the nomination and election

194  of the chairperson may be introduced in either branch of the General Assembly.  Upon

195  passage of the resolution by a majority vote of the membership of the Senate and House

196  of Representatives, it shall be the duty of the Speaker of the House of Representatives to

197    call for the nomination and election of the chairperson at the time specified in the

198    resolution, at which time the name of the qualified person receiving a majority vote of the

199    membership of the House of Representatives shall be transmitted to the Senate for

200    confirmation.  Upon the qualified person's receiving a majority vote of the membership

201    of the Senate, he or she shall be declared the duly elected chairperson; and the Governor

202    shall be notified of his or her election by the Secretary of the Senate.  The Governor is

203    directed to administer the oath of office to the chairperson and to furnish the chairperson

204    with a properly executed commission of office certifying his or her election.

205    (2)  The chairperson of the board shall be nonpartisan.  At no time during his or her

206    service as chairperson shall the chairperson actively participate in a political party

207    organization or in the campaign of a candidate for public office, nor shall he or she make

208    any campaign contributions to a candidate for public office.  Furthermore, to qualify for

209    appointment as chairperson, in the two years immediately preceding his or her

210    appointment, a person shall not have qualified as a partisan candidate for public office,

211    participated in a political party organization or the campaign of a partisan candidate for

212    public office, or made any campaign contributions to a partisan candidate for public

213    office.

214    (3)  The term of office of the chairperson shall continue until a successor is elected as

215    provided in paragraph (1) of this subsection.  In the event of a vacancy in the position of

216    chairperson at a time when the General Assembly is not in session, it shall be the duty of

217    the Governor and the Governor is empowered and directed to appoint a chairperson

218    possessing the qualifications as provided in this subsection who shall serve as chairperson

219    until the next regular session of the General Assembly, at which time the nomination and

220    election of a chairperson shall be held by the General Assembly as provided in

221    paragraph (1) of this subsection.

222    (b)  A member elected by a house of the General Assembly shall take office on the day

223    following the adjournment of the regular session in which elected and shall serve for a term

224    of two years and until his or her successor is elected and qualified, unless sooner removed.
225    An elected member of the board may be removed at any time by a majority vote of the
226    house which elected him or her.  In the event a vacancy should occur in the office of such
227    a member of the board at a time when the General Assembly is not in session, then the
228    President of the Senate shall thereupon appoint an elector to fill the vacancy if the prior
229    incumbent of such office was elected by the Senate or appointed by the President of the
230    Senate; and the Speaker of the House of Representatives shall thereupon appoint an elector
231    to fill the vacancy if the prior incumbent of such office was elected by the House of
232    Representatives or appointed by the Speaker of the House of Representatives.  A member
233    appointed to fill a vacancy may be removed at any time by a majority vote of the house
234    whose presiding officer appointed him or her.
235    (c)  Within 30 days after April 3, 1968, the state executive committee of each political
236    party shall nominate a member of its party to serve as a member of the State Election Board
237    and, thereupon, the Governor shall appoint such nominee as a member of the board to serve
238    for a term of two years from the date of the appointment and until his or her successor is
239    elected and qualified, unless sooner removed.  Thereafter, such state executive committee
240    shall select a nominee for such office on the board within 30 days after a vacancy occurs
241    in such office and shall also select a nominee at least 30 days prior to the expiration of the
242    term of each incumbent nominated by it; and each such nominee shall be immediately
243    appointed by the Governor as a member of the board to serve for the unexpired term in the
244    case of a vacancy, and for a term of two years in the case of an expired term.  Each
245    successor, other than one appointed to serve an unexpired term, shall serve for a term of
246    two years; and the terms shall run consecutively from the date of the initial gubernatorial
247    appointment. No person shall be eligible for nomination by such state executive committee
248    unless he or she is an elector and a member in good standing of the political party of the
249    committee.  Such a member shall cease to serve on the board and his or her office shall be

250    abolished if and when his or her political organization shall cease to be a 'political party'

251    as defined in Code Section 21-2-2.

252    (d)  The Secretary of State shall be ~~the chairperson of the board~~ an ex officio nonvoting

253    member of the board.  Three voting members of the board shall constitute a quorum, and

254    no vacancy on the board shall impair the right of the quorum to exercise all the powers and

255    perform all the duties of the board.  The board shall adopt a seal for its use and bylaws for

256    its own government and procedure.

257    (e)  Meetings shall be held whenever necessary for the performance of the duties of the

258    board on call of the chairperson or whenever any two of its members so request.  Minutes

259    shall be kept of all meetings of the board and a record kept of the vote of each member on

260    all questions coming before the board.  The chairperson shall give to each member of the

261    board prior notice of the time and place of each meeting of the board.

262    (f)  If any member of the board, other than the Secretary of State, shall qualify as a

263    candidate for any public office which is to be voted upon in any primary or election

264    regulated by the board, that member's position on the board shall be immediately vacated

265    and such vacancy shall be filled in the manner provided for filling other vacancies on the

266    board."


267                                      **SECTION 6.**

268    Said chapter is further amended in Code Section 21-2-33.1, relating to enforcement of

269    chapter, by adding new subsections to read as follows:

270    "(f)  After following the procedures set forth in Code Section 21-2-33.2, the State Election

271    Board may suspend county or municipal superintendents and appoint an individual to serve

272    as the temporary superintendent in a jurisdiction.  Such individual shall exercise all the

273    powers and duties of a superintendent as provided by law, including the authority to make

274    all personnel decisions related to any employees of the jurisdiction who assist with carrying

275   out the duties of the superintendent, including, but not limited to, the director of elections,

276   the election supervisor, and all poll officers.

277   (g)  At no time shall the State Election Board suspend more than four county or municipal

278   superintendents pursuant to subsection (f) of this Code section.

279   (h)  The Secretary of State shall, upon the request of the State Election Board, provide any

280   and all necessary support and assistance that the State Election Board, in its sole discretion,

281   determines is necessary to enforce this chapter or to carry out or conduct any of its duties."


282                          **SECTION 7.**

283   Such chapter is further amended in Subpart 1 of Part 1 of Article 2, relating to the State

284   Election Board, by adding a new Code section to read as follows:

285   "21-2-33.2.

286   (a)  The governing authority of a county or municipality, as applicable, following a

287   recommendation based on an investigation by a performance review board pursuant to

288   Code Section 21-2-106 may petition the State Election Board, through the Secretary of

289   State, for extraordinary relief pursuant to this Code section.  In addition, the State Election

290   Board, on its own motion or following a recommendation based on an investigation by a

291   performance review board pursuant to Part 5 of this article, may pursue the extraordinary

292   relief provided in this Code section.

293   (b)  Upon receiving a petition or taking appropriate action pursuant to subsection (a) of this

294   Code section, the State Election Board shall conduct a preliminary investigation to

295   determine if sufficient cause exists to proceed to a full hearing on the petition.  Such

296   preliminary investigation shall be followed by a preliminary hearing which shall take place

297   not less than 30 days nor more than 90 days after the Secretary of State receives the

298   petition.  Service of the petition shall be made by hand delivery or by statutory overnight

299   delivery to the Secretary of State's office.  At such preliminary hearing, the State Election

300   Board shall determine if sufficient cause exists to proceed to a full hearing on the petition

301  or if the petition should be dismissed.  The State Election Board shall promulgate rules and

302  regulations for conducting such preliminary investigation and preliminary hearing.

303  (c)  Following the preliminary hearing described in subsection (b) of this Code section, the

304  State Election Board may suspend a county or municipal superintendent pursuant to this

305  Code section if at least three members of the board find, after notice and hearing, that:

306  (1)   By a preponderance of the evidence, a county or municipal superintendent has

307  committed at least three violations of this title or of State Election Board rules and

308  regulations, in the last two general election cycles; and the county or municipal

309  superintendent has not sufficiently remedied the violations; or

310  (2)  By clear and convincing evidence, the county or municipal superintendent has, for

311  at least two elections within a two-year period, demonstrated nonfeasance, malfeasance,

312  or gross negligence in the administration of the elections.

313  (d)  A majority of the members of a board of elections, board of elections and registration,

314  or county commission; a probate judge who serves as election superintendent, or, for a sole

315  commissioner form of government, a sole commissioner may petition the Secretary of State

316  to continue any hearing scheduled pursuant to this Code section.  Upon a showing of good

317  cause, the State Election Board may in its sound discretion continue any such hearing.

318  Notwithstanding any other provision of law, deliberations held on such petition by the State

319  Election Board shall not be open to the public; provided, however, that testimony shall be

320  taken in an open meeting and a vote on the recommendation shall be taken in an open

321  meeting following the hearing or at the next regularly scheduled meeting.

322  (e)(1)  If the State Election Board makes a finding in accordance with subsection (c) of

323  this Code section, it may suspend the superintendent or board of registrars with pay and

324  appoint an individual to serve as the temporary superintendent.   The temporary

325  superintendent who is appointed shall be otherwise qualified to serve or meet the

326  necessary qualifications within three months of appointment.

327    (2)  Any superintendent suspended under this Code section may petition the State

328    Election Board for reinstatement no earlier than 30 days following suspension and no

329    later than 60 days following suspension.  In the event that a suspended superintendent or

330    registrar does not petition for reinstatement within the allotted time period, his or her

331    suspension shall be converted into permanent removal, and the temporary superintendent

332    shall become a permanent superintendent subject to removal by the jurisdiction not less

333    than nine months after his or her appointment.

334    (3)  If, after the expiration of the nine-month period following the appointment, the

335    jurisdiction removes the permanent superintendent, any provisions of local or general law

336    governing appointment of the superintendent shall govern the appointment of the

337    superintendent.

338    (4)  If, at any time after the expiration of the nine-month period following the

339    appointment, at least three members of the State Election Board find, after notice and

340    hearing, that the jurisdiction no longer requires a superintendent appointed under this

341    Code section, any provisions of local or general law governing appointment of the

342    superintendent shall govern the appointment of the superintendent.

343    (f)  Upon petition for reinstatement by a superintendent suspended pursuant to a finding

344    under paragraph (1) of subsection (c) of this Code section, the State Election Board shall

345    conduct a hearing for the purpose of receiving evidence relative to whether the

346    superintendent's continued service as superintendent is more likely than not to improve the

347    ability of the jurisdiction to conduct elections in a manner that complies with this chapter.

348    The suspended superintendent shall be given at least 30 days' notice prior to such hearing

349    and such hearing shall be held no later than 90 days after the petition is filed in accordance

350    with Chapter 13 of Title 50, the 'Georgia Administrative Procedure Act,' except that the

351    State Election Board shall have the power to call witnesses and request documents on its

352    own initiative.  If the State Election Board denies the petition, it shall be deemed a final

353    agency decision under Chapter 13 of Title 50, the 'Georgia Administrative Procedure Act,'

354  and it may be appealed in a manner consistent with Code Section 50-13-19.  The Attorney

355  General or his or her designee shall represent the interests of the State Election Board in

356  any such judicial review.

357  (g)  A local government shall not expend any public funds for attorneys' fees or expenses

358  of litigation relating to the proceedings initiated pursuant to this Code section except to the

359  extent such fees and expenses are incurred prior to and through the recommendation of the

360  State Election Board as provided in subsection (c) of this Code section; provided, however,

361  that nothing in this subsection shall be construed to prohibit an insurance provider from

362  covering attorneys' fees or expenses of litigation under an insurance policy.  Any

363  suspended superintendent who is reinstated by the State Election Board pursuant to this

364  Code section may be reimbursed by the local government for his or her reasonable

365  attorneys' fees and related expenses incurred in pursuing such reinstatement.

366  (h)  For purposes of this Code section, where a judge of probate court serves as the

367  superintendent, the suspension authorized by this Code section shall apply only to the judge

368  of probate court's duties as a superintendent and not as a judge of probate court.

369  (i)  When the State Election Board exercises its authority under subsection (f) of Code

370  Section 21-2-33.1, the jurisdiction involved shall not diminish or reduce the funds already

371  budgeted or appropriated by the jurisdiction pursuant to Code Section 21-2-71 and shall

372  pay any necessary and reasonable funds over that amount, as determined by the temporary

373  superintendent, to faithfully carry out their obligations under Code Section 21-2-70."0


374                                          **SECTION 8.**

375  Said chapter is further amended in Subpart 1 of Part 1 of Article 2, relating to the State

376  Election Board, by adding new Code sections to read as follows:

377  "21-2-35.

378  (a)  Notwithstanding any other provision of this chapter, Chapter 3 of Title 38, relating to

379  emergency management, or Chapter 13 of Title 50, the "Georgia Administrative Procedure

380    Act," to the contrary, the State Election Board may only adopt emergency rules or

381    regulations in circumstances of imminent peril to public health, safety, or welfare.  To

382    adopt any such emergency rule or regulation, in addition to any other rule-making

383    requirement of this chapter or Chapter 13 of Title 50, the State Election Board shall:

384    (1)  Give notice to the public of its intended action;

385    (2)  Immediately upon the setting of the date and time of the meeting at which such

386    emergency rule or regulation is to be considered give notice by email of its intended

387    action to:

388    (A)  The Governor;

389    (B)  The Lieutenant Governor;

390    (C)  The Speaker of the House of Representatives;

391    (D)  The chairpersons of the standing committees of each house of the General

392    Assembly tasked with election matters;

393    (E)  Legislative counsel; and

394    (F)  The chief executive officer of each political party registered pursuant to subsection

395    (a) of Code Section 21-2-110; and

396    (3)  State in the notices required by paragraphs (1) and (2) of this subsection the nature

397    of the emergency and the manner in which such emergency represents an imminent peril

398    to public health, safety, or welfare.

399    (b)  Upon adoption or promulgation of any emergency rule or regulation pursuant to this

400    Code section, a majority of the State Election Board shall certify in writing that such

401    emergency rule or regulation was made in strict and exact compliance with the provisions

402    of this chapter and subsection (e) of Code Section 50-13-4.

403    (c)  In the event of any conflict between this Code section and any provision of Chapter 13

404    of Title 50, this Code section shall govern and supersede any such conflicting provision.

405   21-2-36.

406   The State Election Board, the members thereof, the Secretary of State, and any of their

407   attorneys or staff, at least five business days prior to entering into any consent agreement,

408   settlement, or consent order that limits, alters, or interprets any provision of this chapter,

409   shall notify the House of Representatives and Senate Committees on the Judiciary of such

410   proposed consent agreement, settlement, or consent order."


411                              **SECTION 9.**

412   Said chapter is further amended by revising Code Section 21-2-71, relating to payment by

413   county or municipality of superintendent's expenses, as follows:

414   "21-2-71.

415   (a)  The governing authority of each county or municipality shall appropriate annually and

416   from time to time, to the superintendent of such county or municipality, the funds that it

417   shall deem necessary for the conduct of primaries and elections in such county or

418   municipality and for the performance of his or her other duties under this chapter,

419   including:

420   (1)  Compensation of the poll officers, custodians, and other assistants and employees

421   provided for in this chapter;

422   (2) Expenditures and contracts for expenditures by the superintendent for polling places;

423   (3)  Purchase or printing, under contracts made by the superintendent, of all ballots and

424   other election supplies required by this chapter, or which the superintendent shall

425   consider necessary to carry out the provisions of this chapter;

426   (4)   Maintenance of all voting equipment required by this chapter, or which the

427   superintendent shall consider necessary to carry out this chapter; and

428   (5)  All other expenses arising out of the performance of his or her duties under this

429   chapter.

430  (b)  No superintendent shall take or accept any funding, grants, or gifts from any source

431  other than from the governing authority of the county or municipality, the State of Georgia,

432  or the federal government.

433  (c)  The State Election Board shall study and report to the General Assembly a proposed

434  method for accepting donations intended to facilitate the administration of elections and

435  a method for an equitable distribution of such donations state wide by October 1, 2021."


436                                    **SECTION 10.**

437  Said chapter is further amended in Part 3 of Article 2, relating to superintendents, by adding

438  a new Code section to read as follows:

439  "21-2-74.1.

440  (a)  If a county does not have a board of elections and:

441  (1)  There is a vacancy in the office of judge of the probate court that has not been filled

442  pursuant to Code Section 15-9-10 or 15-9-11; or

443  (2)  The judge of the probate court is incapacitated and unable to perform the duties of

444  the election superintendent for a period of more than five days;

445  The chief judge of the superior court in the circuit to which the county is assigned shall

446  appoint a qualified individual to serve as the acting election superintendent during such

447  vacancy or incapacitation.

448  (b)  Upon the filling of a vacancy in the office of judge of the probate court pursuant to

449  Code Section 15-9-10 or 15-9-11, the judge of the probate court shall resume the duties of

450  the election superintendent.

451  (c)  The sole county commissioner or the board of county commissioners shall fix the

452  compensation of the individual who serves as acting election superintendent until the

453  vacancy is filled or the incapacitation ends.  The compensation shall be paid from the

454  general funds of the county."

455                          **SECTION 11.**

456   Said chapter is further amended by revising subsection (a) of Code Section 21-2-92, relating

457   to qualifications of poll officers, service during municipal election or primary, and Student

458   Teen Election Participant (STEP) program, as follows:

459        "(a)(1)  Poll officers appointed pursuant to Code Sections 21-2-90 and 21-2-91 shall be

460        judicious, intelligent, and upright citizens of the United States, residents of or otherwise

461        employed by the county in which they are appointed except as otherwise provided in

462        paragraph (2) of this subsection or, in the case of municipal elections, residents of or

463        otherwise employed by the municipality in which the election is to be held or of the

464        county in which that municipality is located, 16 years of age or over, and shall be able to

465        read, write, and speak the English language.  No poll officer shall be eligible for any

466        nomination for public office or to be voted for at a primary or election at which the poll

467        officer shall serve.  No person who is otherwise holding public office, other than a

468        political party office, shall be eligible to be appointed as or to serve as a poll officer.  A

469        parent, spouse, child, brother, sister, father-in-law, mother-in-law, son-in-law,

470        daughter-in-law, brother-in-law, or sister-in-law of a candidate shall not be eligible to

471        serve as a poll officer in any precinct in which such candidate's name appears on the

472        ballot in any primary or election.

473        (2)  A poll officer may be allowed to serve in a county that adjoins the county in which

474        such poll officer resides if, in the discretion of the election superintendent of the county

475        in which such person resides, the waiver of such county residency or county employment

476        requirements of paragraph (1) of this subsection do not impair the ability of the county

477        to provide adequate staff for the performance of election duties under this chapter and if,

478        in the discretion of the county election superintendent in which such person wishes to

479        serve, sufficient need for more poll officers exists."

480                              **SECTION 12.**

481  Said chapter is further amended in Article 2, relating to supervisory boards and officers, by

482  adding a new part to read as follows:


483                                 "Part 5


484  21-2-105.

485  As used in this part, the term 'local election official' means:

486  (1)   A county board of elections or a county board of elections and registration

487  established pursuant to Code Section 21-2-40;

488  (2)  A judge of the probate court fulfilling the role of election superintendent; or

489  (3)  A municipal election superintendent.


490  21-2-106.

491  (a)   The following officials may request that a performance review of a local election

492  official be conducted:

493  (1)  The governing authority of the same jurisdiction as the local election official;

494  (2)   For counties represented by more than three members of the Georgia House of

495  Representatives and Georgia Senate, at least two members of the Georgia House of

496  Representatives and two members of the Georgia Senate who represent the county; and

497  (3)   For counties represented by fewer than four members of the Georgia House of

498  Representatives and Georgia Senate, at least one member of the Georgia House of

499  Representatives and one member of the Georgia Senate who represent the county.

500  Such request shall be transmitted to the State Election Board which shall appoint an

501  independent performance review board within 30 days after receiving such resolution. The

502  State Election Board shall appoint three competent persons to serve as members of the

503  performance review board, one of whom shall be an employee of the elections division of

504  the Secretary of State and two of whom shall be local election officials, provided that no

505  such appointee shall be a local election official for the county or municipality, as

506  applicable, under review.

507  (b)  It shall be the duty of a performance review board to make a thorough and complete

508  investigation of the local election official with respect to all actions of the local election

509  official regarding the technical competency in the maintenance and operation of election

510  equipment, proper administration and oversight of registration and elections, and

511  compliance with state law and regulations.  The performance review board shall issue a

512  written report of its findings to the Secretary of State, the State Election Board, and the

513  local governing authority which shall include such evaluations, judgments, and

514  recommendations as it deems appropriate.  The local governing authority shall reimburse

515  the members of the performance review board for reasonable expenses incurred in the

516  performance of their duties, including mileage, meals, lodging, and costs of materials.

517  (c)  The findings of the report of the review board under subsection (b) of this Code section

518  or of any audit or investigation performed by the State Election Board may be grounds for

519  removal of one or more local election officials pursuant to Code Section 21-2-33.2.


520  21-2-107.

521  (a)  The State Election Board shall appoint an independent performance review board on

522  its own motion if it determines that there is evidence which calls into question the

523  competence of a local election official regarding the oversight and administration of

524  elections, voter registration, or both, with state law and regulations.

525  (b)  The State Election Board shall appoint three competent persons to serve as members

526  of the performance review board, one of whom shall be an employee of the elections

527  division of the office of Secretary of State and two of whom shall be local election

528  officials, provided that none of the three appointees shall be a local election official for the

529  county or municipality under review.

530   (c)  The performance review board shall issue a written report of its findings to the State

531   Election Board and the Secretary of State and the applicable local governing authority,

532   which shall include such evaluations, judgments, and recommendations as it deems

533   appropriate.  The local governing authority shall reimburse the members of the

534   performance review board for reasonable expenses incurred in the performance of their

535   duties, including mileage, meals, lodging, and costs of materials.

536   (d)  The findings of the report of the performance review board under subsection (c) of this

537   Code section or of any audit or investigation performed by the State Election Board may

538   be grounds for removal of a local election official pursuant to Code Section 21-2-33.2.


539   21-2-108.

540   The State Election Board shall promulgate such rules and regulations as may be necessary

541   for the administration of this part."


542                            **SECTION 13.**

543 Said chapter is further amended in Code Section 21-2-134, relating to withdrawal, death, or

544 disqualification of candidate for office, return of qualifying fee, and nomination certificate,

545 by adding a new subsection to read as follows:

546   "(g)  In the event of the death of a candidate on the ballot in a nonpartisan election prior to

547   such nonpartisan election, such candidate's name shall remain on the ballot and all votes

548   cast for such candidate shall be counted.  If the deceased candidate receives the requisite

549   number of votes to be elected, such contest shall be handled as a failure to fill the office

550   under Code Section 21-2-504.  If the deceased candidate receives enough votes to be in a

551   run-off election, such run-off election shall be conducted as provided in Code

552   Section 21-2-501 and the candidates in such runoff shall be determined in accordance with

553   paragraph (2) of subsection (a) of Code Section 21-2-501."

554 **SECTION 14.**

555 Said chapter is further amended by revising subsection (f) of Code Section 21-2-212, relating

556 to county registrars, appointment, certification, term of service, vacancies, compensation and

557 expenses of chief registrar, registrars, and other officers and employees, and budget

558 estimates, as follows:

559 "(f)  The board of registrars of each county shall prepare annually a budget estimate in

560 which it shall set forth an itemized list of its expenditures for the preceding two years and

561 an itemized estimate of the amount of money necessary to be appropriated for the ensuing

562 year and shall submit the same at the time and in the manner and form other county budget

563 estimates are required to be filed.  No board of registrars shall take or accept any funding,

564 grants, or gifts from any source other than from the governing authority of the county, the

565 State of Georgia, or the federal government."


566 **SECTION 15.**

567 Said chapter is further amended by revising Code Section 21-2-229, relating to challenge of

568 applicant for registration by other electors, notice and hearing, and right of appeal, as

569 follows:

570 "21-2-229.

571 (a)  Any elector of a county or municipality may challenge the qualifications of any person

572 applying to register to vote in the county or municipality and may challenge the

573 qualifications of any elector of the county or municipality whose name appears on the list

574 of electors.  Such challenges shall be in writing and shall specify distinctly the grounds of

575 the challenge.  There shall not be a limit on the number of persons whose qualifications

576 such elector may challenge.

577 (b)  Upon such challenge being filed with the board of registrars, the registrars shall set a

578 hearing on such challenge within ten business days after serving notice of the challenge.

579 Notice of the date, time, and place of the hearing shall be served upon the person whose

580    qualifications are being challenged along with a copy of such challenge and upon the
581    elector making the challenge within ten business days following the filing of the challenge.
582    The person being challenged shall receive at least three days' notice of the date, time, and
583    place of the hearing.  Such notice shall be served either by first-class mail addressed to the
584    mailing address shown on the person's voter registration records or in the manner provided
585    in subsection (c) of Code Section 21-2-228.

586    (c)  The burden shall be on the elector making the challenge to prove that the person being
587    challenged is not qualified to remain on the list of electors.  The board of registrars shall
588    have the authority to issue subpoenas for the attendance of witnesses and the production
589    of books, papers, and other material upon application by the person whose qualifications
590    are being challenged or the elector making the challenge.  The party requesting such
591    subpoenas shall be responsible to serve such subpoenas and, if necessary, to enforce the
592    subpoenas by application to the superior court.  Any witness so subpoenaed, and after
593    attending, shall be allowed and paid the same mileage and fee as allowed and paid
594    witnesses in civil actions in the superior court.

595    (d)  After the hearing provided for in this Code section, the registrars shall determine said
596    challenge and shall notify the parties of their decision.  If the registrars uphold the
597    challenge, the person's application for registration shall be rejected or the person's name
598    removed from the list of electors, as appropriate.  The elector shall be notified of such
599    decision in writing either by first-class mail addressed to the mailing address shown on the
600    person's voter registration records or in the manner provided in subsection (c) of Code
601    Section 21-2-228 for other notices.

602    (e)  Either party shall have a right of appeal from the decision of the registrars to the
603    superior court by filing a petition with the clerk of the superior court within ten days after
604    the date of the decision of the registrars.  A copy of such petition shall be served upon the
605    other parties and the registrars.  Unless and until the decision of the registrars is reversed
606    by the court, the decision of the registrars shall stand.

607    (f)  Failure to comply with the provisions of this Code section by the board of registrars
608    shall subject such board to sanctions by the State Election Board."


609                              **SECTION 16.**

610    Said chapter is further amended by revising Code Section 21-2-230, relating to challenge of
611    persons on list of electors by other electors, procedure;, hearing, and right of appeal, as
612    follows:

613    "21-2-230.

614    (a)  Any elector of the county or municipality may challenge the right of any other elector
615    of the county or municipality, whose name appears on the list of electors, to vote in an
616    election.  Such challenge shall be in writing and specify distinctly the grounds of such
617    challenge.  Such challenge may be made at any time prior to the elector whose right to vote
618    is being challenged voting at the elector's polling place or, if such elector cast an absentee
619    ballot, prior to 5:00 P.M. on the day before the ~~election~~ absentee ballots are to begin to be
620    scanned and tabulated; provided, however, that challenges to persons voting by absentee
621    ballot in person at the office of the registrars or the absentee ballot clerk shall be made prior
622    to such person's voting.  There shall not be a limit on the number of persons whose
623    qualifications such elector may challenge.

624    (b)  Upon the filing of such challenge, the board of registrars shall immediately consider
625    such challenge and determine whether probable cause exists to sustain such challenge.  If
626    the registrars do not find probable cause, the challenge shall be denied.  If the registrars
627    find probable cause, the registrars shall notify the poll officers of the challenged elector's
628    precinct or, if the challenged elector voted by absentee ballot, notify the poll officers at the
629    absentee ballot precinct and, if practical, notify the challenged elector and afford such
630    elector an opportunity to answer.

631    (c)  If the challenged elector appears at the polling place to vote, such elector shall be given
632    the opportunity to appear before the registrars and answer the grounds of the challenge.

633    (d)  If the challenged elector does not cast an absentee ballot and does not appear at the
634    polling place to vote and if the challenge is based on grounds other than the qualifications
635    of the elector to remain on the list of electors, no further action by the registrars shall be
636    required.

637    (e)  If the challenged elector cast an absentee ballot and it is not practical to conduct a
638    hearing prior to the close of the polls and the challenge is based upon grounds other than
639    the qualifications of the elector to remain on the list of electors, the absentee ballot shall
640    be treated as a challenged ballot pursuant to subsection (e) of Code Section 21-2-386.  No
641    further action by the registrars shall be required.

642    (f)  If the challenged elector does not cast an absentee ballot and does not appear at the
643    polling place to vote and the challenge is based on the grounds that the elector is not
644    qualified to remain on the list of electors, the board of registrars shall proceed to hear the
645    challenge pursuant to Code Section 21-2-229.

646    (g)  If the challenged elector cast an absentee ballot and the challenge is based upon
647    grounds that the challenged elector is not qualified to remain on the list of electors, the
648    board of registrars shall proceed to conduct a hearing on the challenge on an expedited
649    basis prior to the certification of the consolidated returns of the election by the election
650    superintendent.  The election superintendent shall not certify such consolidated returns
651    until such hearing is complete and the registrars have rendered their decision on the
652    challenge.  If the registrars deny the challenge, the superintendent shall proceed to certify
653    the consolidated returns.  If the registrars uphold the challenge, the name of the challenged
654    elector shall be removed from the list of electors and the ballot of the challenged elector
655    shall be rejected and not counted and, if necessary, the returns shall be adjusted to remove
656    any votes cast by such elector.  The elector making the challenge and the challenged elector
657    may appeal the decision of the registrars in the same manner as provided in subsection (e)
658    of Code Section 21-2-229.

659    (h)  If the challenged elector appears at the polls to vote and it is practical to conduct a

660    hearing on the challenge prior to the close of the polls, the registrars shall conduct such

661    hearing and determine the merits of the challenge.  If the registrars deny the challenge, the

662    elector shall be permitted to vote in the election notwithstanding the fact that the polls may

663    have closed prior to the time the registrars render their decision and the elector can actually

664    vote, provided that the elector proceeds to vote immediately after the decision of the

665    registrars.  If the registrars uphold the challenge, the challenged elector shall not be

666    permitted to vote and, if the challenge is based upon the grounds that the elector is not

667    qualified to remain on the list of electors, the challenged elector's name shall be removed

668    from the list of electors.

669    (i)  If the challenged elector appears at the polls to vote and it is not practical to conduct

670    a hearing prior to the close of the polls or if the registrars begin a hearing and subsequently

671    find that a decision on the challenge cannot be rendered within a reasonable time, the

672    challenged elector shall be permitted to vote by casting a challenged ballot on the same

673    type of ballot that is used by the county or municipality for provisional ballots.  Such

674    challenged ballot shall be sealed in double envelopes as provided in subsection (a) of Code

675    Section 21-2-419 and, after having the word 'Challenged,' the elector's name, and the

676    alleged cause of the challenge written across the back of the outer envelope, the ballot shall

677    be deposited by the person casting such ballot in a secure, sealed ballot box

678    notwithstanding the fact that the polls may have closed prior to the time the registrars make

679    such a determination, provided that the elector proceeds to vote immediately after such

680    determination of the registrars.  In such cases, if the challenge is based upon the grounds

681    that the challenged elector is not qualified to remain on the list of electors, the registrars

682    shall proceed to finish the hearing prior to the certification of the consolidated returns of

683    the election by the election superintendent.  If the challenge is based on other grounds, no

684    further action shall be required by the registrars.  The election superintendent shall not

685    certify such consolidated returns until such hearing is complete and the registrars have

686   rendered their decision on the challenge.  If the registrars deny the challenge, the
687   superintendent shall proceed to certify the consolidated returns.  If the registrars uphold the
688   challenge, the name of the challenged elector shall be removed from the list of electors and
689   the ballot of the challenged elector shall be rejected and not counted and, if necessary, the
690   returns shall be adjusted to remove any votes cast by such elector.  The elector making the
691   challenge and the challenged elector may appeal the decision of the registrars in the same
692   manner as provided in subsection (e) of Code Section 21-2-229.
693   (j)  Failure to comply with the provisions of this Code section by the board of registrars
694   shall subject such board to sanctions by the State Election Board."

695                              **SECTION 17.**
696   Said chapter is further amended in subsection (b) of Code Section 21-2-232, relating to
697   removal of elector's name from list of electors, by adding a new paragraph to read as follows:
698   "(3)  Once becoming a member of the nongovernmental entity described in subsection (d)
699   of Code Section 21-2-225, the Secretary of State shall obtain regular information from
700   such entity regarding electors who may have moved to another state, died, or otherwise
701   become ineligible to vote in Georgia.  The Secretary of State shall use such information
702   to conduct list maintenance on the list of eligible electors."

703                              **SECTION 18.**
704   Said chapter is further amended by revising Code Section 21-2-263, relating to reduction in
705   size of, or provision of additional voting equipment or poll workers to, precincts containing
706   more than 2,000 electors when voting in such precincts at previous general election not
707   completed one hour after closing of polls, as follows:

708    "21-2-263.

709    (a) If, at the previous general election, a precinct contained more than 2,000 electors and

710    if all those electors desiring to vote had not completed voting one hour following the

711    closing of the polls, the superintendent shall either reduce the size of said precinct so that

712    it shall contain not more than 2,000 electors in accordance with the procedures prescribed

713    by this chapter for the division, alteration, and consolidation of precincts no later than 60

714    days before the next general election or provide additional voting equipment or poll

715    workers, or both, before the next general election.  For administering this Code section, the

716    chief manager of a precinct which contained more than 2,000 electors at the previous

717    general election shall submit a report thereof, under oath, to the superintendent as to the

718    time required for completion of voting by all persons in line at the time the polls were

719    closed.   Any such change in the boundaries of a precinct shall conform with the

720    requirements of subsection (a) of Code Section 21-2-261.1.

721    (b)  If, at the previous general election, a precinct contained more than 2,000 electors and

722    if electors desiring to vote on the day of the election had to wait in line for more than one

723    hour before checking in to vote, the superintendent shall either reduce the size of such

724    precinct so that it shall contain not more than 2,000 electors in accordance with the

725    procedures prescribed by this chapter for the division, alteration, and consolidation of

726    precincts no later than 60 days before the next general election or provide additional voting

727    equipment or poll workers, or both, before the next general election.  For administering this

728    Code section, the chief manager of a precinct which contained more than 2,000 electors at

729    the previous general election shall submit a report thereof to the superintendent of the

730    reported time from entering the line to checking in to vote.  Such wait time shall be

731    measured no fewer than three different times throughout the day (in the morning, at

732    midday, and prior to the close of polls) and such results shall be recorded on a form

733    provided by the Secretary of State.  Any such change in the boundaries of a precinct shall

734    conform with the requirements of subsection (a) of Code Section 21-2-261.1."

735                                    **SECTION 19.**

736   Said chapter is further amended by revising subsection (a) of Code Section 21-2-265, relating

737   to duty of superintendent to select polling places, change, petition objecting to proposed

738   change, space for political parties holding primaries, facilities for disabled voters, selection

739   of polling place outside precinct to better serve voters, and restriction on changing polling

740   place on or near date of election, as follows:

741   "(a)  The superintendent of a county or the governing authority of a municipality shall

742       select and fix the polling place within each precinct and may, either on his, her, or its own

743       motion or on petition of ten electors of a precinct, change the polling place within any

744       precinct.  Except in case of an emergency or unavoidable event occurring within ten days

745       of a primary or election, which emergency or event renders any polling place unavailable

746       for use at such primary or election, the superintendent of a county or the governing

747       authority of a municipality shall not change any polling place until notice of the proposed

748       change shall have been published for once a week for two consecutive weeks in the legal

749       organ for the county or municipality in which the polling place is located.  Additionally,

750       ~~on the first election~~ during the seven days before and on the day of the first election

751       following such change, a notice of such change shall be posted on the previous polling

752       place and at three other places in the immediate vicinity thereof.  Each notice posted shall

753       state the location to which the polling place has been moved and shall direct electors to the

754       new location.  At least one notice at the previous polling place shall be a minimum of four

755       feet by four feet in size.  The occupant or owner of the previous polling place, or his or her

756       agent, shall be notified in writing of such change at the time notice is published in the legal

757       organ."

758                              **SECTION 20.**

759  Said chapter is further amended by revising subsections (a) and (b) of Code

760  Section 21-2-266, relating to use of public buildings as polling places, use of portable or

761  movable facilities, and unrestricted access to residential communities, as follows:

762  "(a)  In selecting polling places <u>and advance voting locations,</u> the superintendent of a

763  county or the governing authority of a municipality shall select, wherever practicable and

764  consistent with subsection (d) of Code Section 21-2-265, schoolhouses, municipal

765  buildings or rooms, or other public buildings for that purpose.  In selecting polling places

766  <u>and advance voting locations,</u> the superintendent of a county or the governing authority of

767  a municipality shall give consideration to the comfort and convenience those places to be

768  selected will provide to both electors and poll officers.  School, county, municipal, or other

769  governmental authorities, upon request of the superintendent of a county or the governing

770  authority of a municipality, shall make arrangements for the use of their property for

771  polling places <u>or advance voting locations</u>; provided, however, that such use shall not

772  substantially interfere with the use of such property for the purposes for which it is

773  primarily intended.

774  (b)  The superintendent of a county or the governing authority of a municipality shall have

775  discretion to procure and provide portable or movable polling facilities of adequate size for

776  any precinct<u>; provided, however, that buses and other readily movable facilities shall only</u>

777  <u>be used in emergencies declared by the Governor pursuant to Code Section 38-3-51 to</u>

778  <u>supplement the capacity of the polling place where the emergency circumstance occurred</u>."


779                              **SECTION 20A.**

780  Said chapter is further amended by revising subsection (a) of Code Section 21-2-284, relating

781  to form of official primary ballot and attestation regarding receiving value in exchange for

782  vote, as follows:

783    ″(a)  In each primary separate official ballots shall be prepared for the political party

784    holding the primary.  At the top of each ballot shall be printed in prominent type the words

785    'OFFICIAL PRIMARY BALLOT OF _____ PARTY FOR,' followed by the

786    name and designation of the precinct for which it is prepared and the name and date of the

787    primary.″

788                                   **SECTION 20B.**

789    Said chapter is further amended by revising Code Section 21-2-284.1, relating to form of

790    ballot in nonpartisan municipal primaries, as follows:

791    ″21-2-284.1.

792     In the case of nonpartisan municipal primaries, the form of the official nonpartisan primary

793    ballot shall conform insofar as practicable to the form of the official primary ballot as

794    detailed in Code Section 21-2-284, including the printing of the name and designation of

795    the precinct on the top of the ballot, except that:

796    (1)  The following shall be printed at the top of each ballot in prominent type:

797                        'OFFICIAL NONPARTISAN PRIMARY BALLOT OF

798                        _____

799                                (Name of Municipality)';

800    (2)  There shall be no name or designation of any political organization nor any words,

801    designation, or emblems descriptive of a candidate's political affiliation printed under or

802    after any candidate's name which is printed on the ballot; and

803    (3)  The incumbency of a candidate seeking election for the public office he or she then

804    holds shall be indicated on the ballot.″

805                              **SECTION 20C.**

806  Said chapter is further amended by revising subsection (a) of Code Section 21-2-285, relating

807  to form of official election ballot, attestation on receipt of benefit in exchange for vote, and

808  when an election is not required, as follows:

809  "(a)  At the top of each ballot for an election shall be printed in prominent type the words

810     'OFFICIAL BALLOT,' followed by the name and designation of the precinct for which it

811     is prepared and the name and date of the election."


812                              **SECTION 21.**

813  Said chapter is further amended by revising Code Section 21-2-285.1, relating to form of

814  ballot, run-off election, and declaration of prevailing candidate in nonpartisan elections, as

815  follows:

816  "21-2-285.1.

817     The names of all candidates for offices which the General Assembly has by general law or

818     local Act provided for election in a nonpartisan election shall be printed on each official

819     primary ballot; and insofar as practicable such offices to be filled in the nonpartisan

820     election shall be separated from the names of candidates for party nomination to other

821     offices by being listed last on each ballot, with the top of that portion of each official

822     primary ballot relating to the nonpartisan election to have printed in prominent type the

823     words 'OFFICIAL NONPARTISAN ELECTION BALLOT.'  In addition, there shall be a

824     ballot that contains just the official nonpartisan election ballot available for electors who

825     choose not to vote in a party primary. Such ballot shall have printed at the top the name and

826     designation of the precinct. Directions that explain how to cast a vote, how to write in a

827     candidate, and how to obtain a new ballot after the elector spoils his or her ballot shall

828     appear immediately under the caption, as specified by rule or regulation of the State

829     Election Board.  Immediately under the directions, the name of each such nonpartisan

830     candidate shall be arranged alphabetically by last name under the title of the office for

831   which they are candidates and be printed thereunder.  The incumbency of a candidate
832   seeking election for the public office he or she then holds shall be indicated on the ballot.
833   No party designation or affiliation shall appear beside the name of any candidate for
834   nonpartisan office.  An appropriate space shall also be placed on the ballot for the casting
835   of write-in votes for such offices.  In the event that no candidate in such nonpartisan
836   election receives a majority of the total votes cast for such office, there shall be a
837   nonpartisan election runoff between the candidates receiving the two highest numbers of
838   votes; and the names of such candidates shall be placed on the official ballot at the general
839   primary runoff in the same manner as prescribed in this Code section for the nonpartisan
840   election and there shall be a separate official nonpartisan election ~~runoff~~ <u>run-off</u> ballot for
841   those electors who do not choose or are not eligible to vote in the general primary runoff.
842   In the event that only nonpartisan candidates are to be placed on a run-off ballot, the form
843   of the ballot shall be as prescribed by the Secretary of State or election superintendent in
844   essentially the same format as prescribed for the nonpartisan election.  <u>Except as provided</u>
845   <u>in subsection (g) of Code Section 21-2-134, the</u> ~~The~~ candidate having a majority of the
846   votes cast in the nonpartisan election or the candidate receiving the highest number of votes
847   cast in the nonpartisan election runoff shall be declared duly elected to such office."

848                        **SECTION 21A.**

849   Said chapter is further amended by revising paragraph (3) of subsection (b) of Code
850   Section 21-2-286, relating to printing specifications, numbering, and binding of ballots, as
851   follows:

852   "(3)  Ballots printed by an electronic ballot marker shall be designed as prescribed by the
853   Secretary of State to ensure ease of reading by electors<u>, provided that each ballot shall</u>
854   <u>have the name and designation of the precinct printed at the top</u>."

| | |
|---|---|
| 855 | **SECTION 21B.** |
| 856 | Said chapter is further amended by revising Code Section 21-2-287, relating to form of |
| 857 | absentee ballot, as follows: |
| 858 | "21-2-287. |
| 859 | The form for the absentee ballot shall be in substantially the same form as the official |
| 860 | ballots used in the precincts, except it shall be printed with only the name stub and without |
| 861 | a number strip and ~~may~~ <u>shall</u> have the precinct <u>name and</u> designation printed or stamped |
| 862 | thereon." |

| | |
|---|---|
| 863 | **SECTION 22.** |
| 864 | Said chapter is further amended by revising subsection (b) of Code Section 21-2-367, relating |
| 865 | to installation of systems, number of systems, and good working order, as follows: |
| 866 | "(b)<u>(1)</u>  In each precinct in which optical scanning voting systems are used <u>in a state-wide</u> |
| 867 | <u>general election</u>, the county ~~or municipal governing authority, as appropriate,~~ <u>election</u> |
| 868 | <u>superintendent</u> shall provide at least one voting booth or enclosure for each 250 electors |
| 869 | therein, or fraction thereof. |
| 870 | <u>(2)  For any other primary, election, or runoff, the county or municipal election</u> |
| 871 | <u>superintendent may provide a greater or lesser number of voting booths or enclosures if,</u> |
| 872 | <u>after a thorough consideration of the type of election, expected turnout, the number of</u> |
| 873 | <u>electors who have already voted by advance voting or absentee ballot, and other relevant</u> |
| 874 | <u>factors that inform the appropriate amount of equipment needed, such superintendent</u> |
| 875 | <u>determines that a different amount of equipment is needed or sufficient.  Such</u> |
| 876 | <u>determination shall be subject to the provisions of Code Section 21-2-263.</u>" |

877                          **SECTION 23.**

878   Said chapter is further amended by revising Code Section 21-2-372, relating to ballot

879   description, as follows:

880   ″21-2-372.

881   Ballots shall be of suitable design, size, and stock to permit processing by a ballot scanner

882   and shall be printed in black ink on clear, white, or colored material.  Other than ballots

883   delivered electronically to qualified electors who are entitled to vote by absentee ballot

884   under the federal Uniformed and Overseas Citizens Absentee Voting Act, 52 U.S.C.

885   Section 20301, et seq., the ballots shall be printed on security paper that incorporates

886   features which can be used to authenticate the ballot as an official ballot but which do not

887   make the ballot identifiable to a particular elector.″


888                          **SECTION 23A.**

889   Said chapter is further amended in Code Section 21-2-379.23, relating to requirements for

890   ballot display for electronic ballot markers, role of Secretary of State, and printed paper

891   ballot controls during recount, by adding a new subsection to read as follows:

892   ″(e)  Each ballot printed by an electronic ballot marker shall include the name and

893   designation of the precinct at the top.″


894                          **SECTION 24.**

895   Said chapter is further amended by revising subsection (c) of Code Section 21-2-379.25,

896   relating to programming for ballot design and style, verification, appointment of custodians,

897   and role of custodians, as follows:

898   ″(c) On or before the third day preceding a primary or election, including special primaries,

899   special elections, and referendum elections, the superintendent shall have each electronic

900   ballot marker tested to ascertain that it will correctly record the votes cast for all offices and

901   on all questions and produce a ballot reflecting such choices of the elector in a manner that

902    the State Election Board shall prescribe by rule or regulation.  Public notice of the time and

903    place of the test shall be made at least five days prior thereto; provided, however, that, in

904    the case of a runoff, the public notice shall be made at least three days prior thereto.  The

905    superintendent of each county or municipality shall publish such notice on the homepage

906    of the county's or municipality's publicly accessible website associated with elections, if

907    the county or municipality maintains a publicly accessible website, and in a newspaper of

908    general circulation in the county or municipality and by posting in a prominent location in

909    the county or municipality.  Such notice shall state the date, time, and place or places where

910    preparation and testing of the voting system components for use in the primary or election

911    will commence, that such preparation and testing shall continue from day to day until

912    complete, and that representatives Representatives of political parties and bodies, news

913    media, and the public shall be permitted to observe such tests.  The superintendent of the

914    county or municipality shall also provide such notice to the Secretary of State who shall

915    publish on his or her website the information received from superintendents stating the

916    dates, times, and locations for preparation and testing of voting system components.

917    However, such representatives of political parties and bodies, news media, and the public

918    shall not in any manner interfere with the preparation and testing of voting system

919    components.  The advertisement in the newspaper of general circulation shall be

920    prominently displayed, shall not be less than 30 square inches, and shall not be placed in

921    the section of the newspaper where legal notices appear."

922                          **SECTION 25.**

923    Said chapter is further amended by revising Code Section 21-2-381, relating to making of

924    application for absentee ballot, determination of eligibility by ballot clerk, furnishing of

925    applications to colleges and universities, and persons entitled to make application, as follows:

926    "21-2-381.

927   (a)(1)(A)   Except as otherwise provided in Code Section 21-2-219 <u>or for advance</u>

928   <u>voting described in subsection (d) of Code Section 21-2-385</u>, not ~~more~~ <u>earlier</u> than ~~180~~

929   <u>78</u> days <u>or less than 11 days</u> prior to the date of the primary or election, or runoff of

930   either, in which the elector desires to vote, any absentee elector may make, either by

931   mail, by facsimile transmission, by electronic transmission, or in person in the

932   registrar's or absentee ballot clerk's office, an application for an official ballot of the

933   elector's precinct to be voted at such primary, election, or runoff.   <u>To be timely</u>

934   <u>received, an application for an absentee-by-mail ballot shall be received by the board</u>

935   <u>of registrars or absentee ballot clerk no later than 11 days prior to the primary, election,</u>

936   <u>or runoff.  For advance voting in person, the application shall be made within the time</u>

937   <u>period set forth in subsection (d) of Code Section 21-2-385.</u>

938   (B)  In the case of an elector residing temporarily out of the county or municipality or

939   a physically disabled elector residing within the county or municipality, the application

940   for the elector's absentee ballot may, upon satisfactory proof of relationship, be made

941   by such elector's mother, father, grandparent, aunt, uncle, sister, brother, spouse, son,

942   daughter, niece, nephew, grandchild, son-in-law, daughter-in-law, mother-in-law,

943   father-in-law, brother-in-law, or sister-in-law of the age of 18 or over.

944   (C)<u>(i)  Any person applying for an absentee-by-mail ballot shall make application in</u>

945   <u>writing on the form made available by the Secretary of State.  In order to confirm the</u>

946   <u>identity of the voter, such form shall require the elector to provide his or her name,</u>

947   <u>date of birth, address as registered, address where the elector wishes the ballot to be</u>

948   <u>mailed, and the number of his or her Georgia driver's license or identification card</u>

949   <u>issued pursuant to Article 5 of Chapter 5 of Title 40.  If such elector does not have a</u>

950   <u>Georgia driver's license or identification card issued pursuant to Article 5 of Chapter 5</u>

951   <u>of Title 40, the elector shall affirm this fact in the manner prescribed in the application</u>

952   <u>and the elector shall provide a copy of a form of identification listed in subsection (c)</u>

953   <u>of Code Section 21-2-417.  The form made available by the Secretary of State shall</u>

954   include a space to affix a photocopy or electronic image of such identification.  The

955   Secretary of State shall develop a method to allow secure electronic transmission of

956   such form.  The application shall ~~be in writing and shall contain sufficient information~~

957   ~~for proper identification of the elector; the permanent or temporary address of the~~

958   ~~elector to which the absentee ballot shall be mailed;~~ also include the identity of the

959   primary, election, or runoff in which the elector wishes to vote; ~~and~~ the name and

960   relationship of the person requesting the ballot if other than the elector; and an oath

961   for the elector or relative to write his or her usual signature with a pen and ink

962   affirming that the elector is a qualified Georgia elector and the facts presented on the

963   application are true.  Submitting false information on an application for an absentee

964   ballot shall be a violation of Code Sections 21-2-560 and 21-2-571.

965   (ii)  A blank application for an absentee ballot shall be made available online by the

966   Secretary of State and each election superintendent and registrar, but neither the

967   Secretary of State, election superintendent, board of registrars, other governmental

968   entity, nor employee or agent thereof shall send absentee ballot applications directly

969   to any elector except upon request of such elector or a relative authorized to request

970   an absentee ballot for such elector.  No person or entity other than a relative

971   authorized to request an absentee ballot for such elector or a person signing as

972   assisting an illiterate or physically disabled elector shall send any elector an absentee

973   ballot application that is prefilled with the elector's required information set forth in

974   this subparagraph.  No person or entity other than the elector, a relative authorized to

975   request an absentee ballot for such elector, a person signing as assisting an illiterate

976   or physically disabled elector with his or her application, a common carrier charged

977   with returning the ballot application, an absentee ballot clerk, a registrar, or a law

978   enforcement officer in the course of an investigation shall handle or return an elector's

979   completed  absentee  ballot  application.   Handling  a  completed  absentee  ballot

980   application by any person or entity other than as allowed in this subsection shall be

981   a misdemeanor.  Any application for an absentee ballot sent to any elector by any
982   person or entity shall utilize the form of the application made available by the
983   Secretary of State and shall clearly and prominently disclose on the face of the form:
984       'This is NOT an official government publication and was NOT provided to you
985       by any governmental entity and this is NOT a ballot.  It is being distributed by
986       [insert name and address of person, organization, or other entity distributing such
987       document or material].'
988   (iii)  The disclaimer required by division (ii) of this subparagraph shall be:
989       (I)    Of sufficient font size to be clearly readable by the recipient of the
990       communication;
991       (II)   Be contained in a printed box set apart from the other contents of the
992       communication; and
993       (III)  Be printed with a reasonable degree of color contrast between the background
994       and the printed disclaimer.
995   (D)   Except in the case of physically disabled electors residing in the county or
996   municipality or electors in custody in a jail or other detention facility in the county or
997   municipality, no absentee ballot shall be mailed to an address other than the permanent
998   mailing address of the elector as recorded on the elector's voter registration record or
999   a temporary out-of-county or out-of-municipality address.  Upon request, electors held
1000  in jails or other detention facilities who are eligible to vote shall be granted access to
1001  the necessary personal effects for the purpose of applying for and voting an absentee
1002  ballot pursuant to this chapter.
1003  (E)   Relatives applying for absentee ballots for electors must also sign an oath stating
1004  that facts in the application are true.
1005  (F)   If the elector is unable to fill out or sign such elector's own application because of
1006  illiteracy or physical disability, the elector shall make such elector's mark, and the

1007    person filling in the rest of the application shall sign such person's name below it as a

1008    witness.

1009    (G)   Any elector meeting criteria of advance age or disability specified by rule or

1010    regulation of the State Election Board or any elector who is entitled to vote by absentee

1011    ballot under the federal Uniformed and Overseas Citizens Absentee Voting Act, 42

1012    U.S.C. Section 1973ff, et seq., as amended, may request in writing on one application

1013    a ballot for a presidential preference primary held pursuant to Article 5 of this chapter

1014    and for a primary as well as for any runoffs resulting therefrom and for the election for

1015    which such primary shall nominate candidates as well as any runoffs resulting

1016    therefrom.  If not so requested by such person, a separate and distinct application shall

1017    be required for each primary, run-off primary, election, and run-off election.  Except

1018    as otherwise provided in this subparagraph, a separate and distinct application for an

1019    absentee ballot shall always be required for any special election or special primary.

1020    (2)    A properly executed registration card submitted under the provisions of

1021    subsection (b) of Code Section 21-2-219, if submitted within 180 days of a primary or

1022    election in which the registrant is entitled to vote, shall be considered to be an application

1023    for an absentee ballot under this Code section, or for a special absentee ballot under Code

1024    Section 21-2-381.1, as appropriate.

1025    (3)(A)    All persons or entities, other than the Secretary of State, election

1026    superintendents, boards of registrars, and absentee ballot clerks, that send applications

1027    for absentee ballots to electors in a primary, election, or runoff shall mail such

1028    applications only to individuals who have not already requested, received, or voted an

1029    absentee ballot in the primary, election, or runoff.  Any such person or entity shall

1030    compare its mail distribution list with the most recent information available about

1031    which electors have requested, been issued, or voted an absentee ballot in the primary,

1032    election, or runoff and shall remove the names of such electors from its mail

1033    distribution list.  A person or entity shall not be liable for any violation of this

1034     subparagraph if such person or entity relied upon information made available by the

1035     Secretary of State within five business days prior to the date such applications are

1036     mailed.

1037     (B)   A person or entity in violation of subparagraph (A) of this paragraph shall be

1038     subject to sanctions by the State Election Board which, in addition to all other possible

1039     sanctions, may include requiring such person or entity to pay restitution to each affected

1040     county or municipality in an amount up to $100.00 per duplicate absentee ballot

1041     application that is processed by the county or municipality due to such violation or the

1042     actual cost incurred by each affected county or municipality for the processing of such

1043     duplicate absentee ballot applications.  ~~Reserved.~~

1044     (4) In extraordinary circumstances as described in Code Section 21-2-543.1, the registrar

1045     or absentee ballot clerk shall determine if the applicants are eligible to vote under this

1046     Code section and shall either mail or issue the absentee ballots for the election for

1047     representative in the United States Congress to an individual entitled to make application

1048     for absentee ballot under subsection (d) of this Code section the same day any such

1049     application is received, so long as the application is received by 3:00 P.M., otherwise no

1050     later than the next business day following receipt of the application.  Any valid absentee

1051     ballot shall be accepted and processed so long as the ballot is received by the registrar or

1052     absentee ballot clerk not later than 45 days after the ballot is transmitted to the absent

1053     uniformed services voter or overseas voter, but in no event later than 11 days following

1054     the date of the election.

1055     (b)(1)  Upon receipt of a timely application for an absentee ballot, a registrar or absentee

1056     ballot clerk shall enter thereon the date received.  The registrar or absentee ballot clerk

1057     shall verify the identity of the applicant and determine, in accordance with the provisions

1058     of this chapter, if the applicant is eligible to vote in the primary or election involved.  In

1059     order to ~~be found eligible to vote an absentee ballot by mail~~ verify the identity of the

1060     applicant, the registrar or absentee ballot clerk shall compare the ~~identifying information~~

1061   applicant's name, date of birth, and number of his or her Georgia driver's license or
1062   identification card issued pursuant to Article 5 of Chapter 5 of Title 40 on the application
1063   with the information on file in the registrar's office ~~and, if the application is signed by the~~
1064   ~~elector, compare the signature or mark of the elector on the application with the signature~~
1065   ~~or mark of the elector on the elector's voter registration card~~.  If the application does not
1066   contain the number of the applicant's Georgia driver's license or identification card issued
1067   pursuant to Article 5 of Chapter 5 of Title 40, the registrar or absentee ballot clerk shall
1068   verify that the identification provided with the application identifies the applicant.  In
1069   order to be found eligible to vote an absentee ballot in person at the registrar's office or
1070   absentee ballot clerk's office, such person shall show one of the forms of identification
1071   listed in Code Section 21-2-417 and the registrar or absentee ballot clerk shall compare
1072   the identifying information on the application with the information on file in the
1073   registrar's office.

1074   (2)  If found eligible, the registrar or absentee ballot clerk shall certify by signing in the
1075   proper place on the application and then:

1076   (A)  Shall mail the ballot as provided in this Code section;

1077   (B)  If the application is made in person, shall issue the ballot to the elector within the
1078   confines of the registrar's or absentee ballot clerk's office as required by Code
1079   Section 21-2-383 if the ballot is issued during the advance voting period established
1080   pursuant to subsection (d) of Code Section 21-2-385; or

1081   (C)  May deliver the ballot in person to the elector if such elector is confined to a
1082   hospital.

1083   (3)  If found ineligible or if the application is not timely received, the clerk or the board
1084   of registrars shall deny the application by writing the reason for rejection in the proper
1085   space on the application and shall promptly notify the applicant in writing of the ground
1086   of ineligibility, a copy of which notification should be retained on file in the office of the
1087   board of registrars or absentee ballot clerk for at least one year.  However, an absentee

1088   ballot application shall not be rejected <u>solely</u> due to ~~an apparent~~ <u>a</u> mismatch between the
1089   ~~signature~~ <u>identifying information</u> of the elector on the application and the ~~signature~~
1090   <u>identifying information</u> of the elector on file with the board of registrars.  In such cases,
1091   the board of registrars or absentee ballot clerk shall send the elector a provisional
1092   absentee ballot with the designation 'Provisional Ballot' on the outer oath envelope and
1093   information prepared by the Secretary of State as to the process to be followed to cure the
1094   ~~signature~~ discrepancy.  If such ballot is returned to the board of registrars or absentee
1095   ballot clerk prior to the closing of the polls on the day of the primary or election, the
1096   elector may cure the ~~signature~~ discrepancy by submitting an affidavit to the board of
1097   registrars or absentee ballot clerk along with a copy of one of the forms of identification
1098   enumerated in subsection (c) of Code Section 21-2-417 before the close of the period for
1099   verifying provisional ballots contained in subsection (c) of Code Section 21-2-419.  If the
1100   board of registrars or absentee ballot clerk finds the affidavit and identification to be
1101   sufficient, the absentee ballot shall be counted as other absentee ballots.  If the board of
1102   registrars or absentee ballot clerk finds the affidavit and identification to be insufficient,
1103   then the procedure contained in Code Section 21-2-386 shall be followed for rejected
1104   absentee ballots.

1105   (4)  If the registrar or clerk is unable to determine the identity of the elector from
1106   information given on the application <u>or if the application is not complete or if the oath on</u>
1107   <u>the application is not signed</u>, the registrar or clerk should promptly ~~write~~ <u>contact the</u>
1108   <u>elector in writing</u> to request <u>the necessary</u> additional information <u>and a signed copy of the</u>
1109   <u>oath</u>.

1110   (5)  In the case of an unregistered applicant who is eligible to register to vote, the clerk
1111   or the board shall immediately mail a blank registration card as provided by Code
1112   Section 21-2-223, and such applicant, if otherwise qualified, shall be deemed eligible to
1113   vote by absentee ballot in such primary or election, if the registration card, properly
1114   completed, is returned to the clerk or the board on or before the last day for registering

1115    to vote in such primary or election. ~~If the closing date for registration in the primary or~~
1116    ~~election concerned has not passed, the clerk or registrar shall also mail a ballot to the~~
1117    ~~applicant, as soon as it is prepared and available; and the ballot shall be cast in such~~
1118    ~~primary or election if returned to the clerk or board not later than the close of the polls~~
1119    ~~on the day of the primary or election concerned.~~

1120    (c)  In those counties or municipalities in which the absentee ballot clerk or board of
1121    registrars provides application forms for absentee ballots, the clerk or board shall provide
1122    such quantity of the application form to the dean of each college or university located in
1123    that county as said dean determines necessary for the students of such college or university.

1124    (d)(1)  A citizen of the United States permanently residing outside the United States is
1125        entitled to make application for an absentee ballot from Georgia and to vote by absentee
1126        ballot in any election for presidential electors and United States senator or representative
1127        in Congress:

1128        (A)  If such citizen was last domiciled in Georgia immediately before his or her
1129        departure from the United States; and

1130        (B)  If such citizen could have met all qualifications, except any qualification relating
1131        to minimum voting age, to vote in federal elections even though, while residing outside
1132        the United States, he or she does not have a place of abode or other address in Georgia.

1133    (2)  An individual is entitled to make application for an absentee ballot under paragraph
1134    (1) of this subsection even if such individual's intent to return to Georgia may be
1135    uncertain, as long as:

1136        (A)  He or she has complied with all applicable Georgia qualifications and requirements
1137        which are consistent with 42 U.S.C. Section 1973ff concerning absentee registration for
1138        and voting by absentee ballots;

1139        (B)  He or she does not maintain a domicile, is not registered to vote, and is not voting
1140        in any other state or election district of a state or territory or in any territory or
1141        possession of the United States; and

1142   (C) He or she has a valid passport or card of identity and registration issued under the

1143   authority of the Secretary of State of the United States or, in lieu thereof, an alternative

1144   form of identification consistent with 42 U.S.C. Section 1973ff and applicable state

1145   requirements, if a citizen does not possess a valid passport or card of identity and

1146   registration.

1147   (e) The State Election Board is authorized to promulgate reasonable rules and regulations

1148   for the implementation of paragraph (1) of subsection (a) of this Code section. Said rules

1149   and regulations may include provisions for the limitation of opportunities for fraudulent

1150   application, including, but not limited to, comparison of voter registration records with

1151   death certificates."


1152                                   **SECTION 26.**

1153   Said chapter is further amended by revising Code Section 21-2-382, relating to additional

1154   sites as additional registrar's office or place of registration for absentee ballots, as follows:

1155   "21-2-382.

1156   (a) Any other provisions of this chapter to the contrary notwithstanding, the board of

1157   registrars may establish ~~additional sites as~~ additional registrar's offices or places of

1158   registration for the purpose of receiving absentee ballots under Code Section 21-2-381 and

1159   for the purpose of ~~voting absentee ballots~~ advance voting under Code Section 21-2-385,

1160   provided that any such site is a building that is a branch of the county courthouse, a

1161   courthouse annex, a government service center providing general government services,

1162   another government building generally accessible to the public, or a ~~location~~ building that

1163   is used as an election day polling place, notwithstanding that such ~~location~~ building is not

1164   a government building.

1165   (b) Any other provisions of this chapter to the contrary notwithstanding, in all counties of

1166   this state having a population of 550,000 or more according to the United States decennial

1167   census of 1990 or any future such census, any building that is a branch of the county

1168   courthouse or courthouse annex established within any such county shall be an additional

1169   registrar's or absentee ballot clerk's office or place of registration for the purpose of

1170   receiving absentee ballots under Code Section 21-2-381 and for the purpose of ~~voting~~

1171   ~~absentee ballots~~ advance voting under Code Section 21-2-385.

1172   (c)(1)  A board of registrars or absentee ballot clerk shall establish at least one drop box

1173   as a means for absentee by mail electors to deliver their ballots to the board of registrars

1174   or absentee ballot clerk.  A board of registrars or absentee ballot clerk may establish

1175   additional drop boxes, subject to the limitations of this Code section, but may only

1176   establish additional drop boxes totaling the lesser of either one drop box for every

1177   100,000 active registered voters in the county or the number of advance voting locations

1178   in the county.  Any additional drop boxes shall be evenly geographically distributed by

1179   population in the county.  Drop boxes established pursuant to this Code section shall be

1180   established at the office of the board of registrars or absentee ballot clerk or inside

1181   locations  at  which  advance  voting,  as  set  forth  in  subsection  (d)  of  Code

1182   Section 21-2-385, is conducted in the applicable primary, election, or runoff and may be

1183   open during the hours of advance voting at that location.  Such drop boxes shall be closed

1184   when advance voting is not being conducted at that location.  All drop boxes shall be

1185   closed when the advance voting period ends, as set forth in subsection (d) of Code

1186   Section 21-2-385.  The drop box location shall have adequate lighting and be under

1187   constant surveillance by an election official or his or her designee, law enforcement

1188   official, or licensed security guard.  During an emergency declared by the Governor

1189   pursuant to Code Section 38-3-51, drop boxes may be located outside the office of the

1190   board of registrars or absentee ballot clerk or outside of locations at which advance voting

1191   is taking place, subject to the other limitations of this Code section.

1192   (2)  The opening slot of a drop box shall not allow ballots to be tampered with or

1193   removed and shall be designed to minimize the ability for liquid or other substances that

1194   may damage ballots to be poured into the drop box.  A drop box shall be labeled

1195    "OFFICIAL ABSENTEE BALLOT DROP BOX" and shall clearly display the signage

1196    developed by the Secretary of State pertaining to Georgia law with regard to who is

1197    allowed to return absentee ballots and destroying, defacing, or delaying delivery of

1198    ballots.

1199    (3)  The board of registrars or absentee ballot clerk shall arrange for the collecting and

1200    return of ballots deposited at each drop box at the conclusion of each day where advance

1201    voting takes place.  Collection of ballots from a drop box shall be made by a team of at

1202    least two people.  Any person collecting ballots from a drop box shall have sworn an oath

1203    in the same form as the oath for poll officers set forth in Code Section 21-2-95.  The

1204    collection team shall complete and sign a ballot transfer form upon removing the ballots

1205    from the drop box which shall include the date, time, location, number of ballots,

1206    confirmation that the drop box was locked after the removal of the ballots, and the

1207    identity of each person collecting the ballots.  The collection team shall then immediately

1208    transfer the ballots to the board of registrars or absentee ballot clerk, who shall process

1209    and store the ballots in the same manner as absentee ballots returned by mail are

1210    processed and stored.  The board of registrars, absentee ballot clerk, or a designee of the

1211    board of registrars or absentee ballot clerk shall sign the ballot transfer form upon receipt

1212    of the ballots from the collection team.  Such form shall be considered a public record

1213    pursuant to Code Section 50-18-70.

1214    (4)  At the beginning of voting at each advance location where a drop box is present, the

1215    manager of the advance voting location shall open the drop box and confirm on the

1216    reconciliation form for that advance voting location that the drop box is empty.  If the

1217    drop box is not empty, the manager shall secure the contents of the drop box and

1218    immediately inform the election superintendent, board of registrars, or absentee ballot

1219    clerk, who shall inform the Secretary of State."

1220                              **SECTION 27.**

1221   Said chapter is further amended by revising Code Section 21-2-384, relating to preparation

1222   and delivery of supplies, mailing of ballots, oath of absentee electors and persons assisting

1223   absentee electors, master list of ballots sent, challenges, and electronic transmission of

1224   ballots, as follows:

1225   ″21-2-384.

1226   (a)(1)  The superintendent shall, in consultation with the board of registrars or absentee

1227   ballot clerk, prepare, obtain, and deliver before the date specified in paragraph (2) of this

1228   subsection an adequate supply of official absentee ballots to the board of registrars or

1229   absentee ballot clerk for use in the primary or election or as soon as possible prior to a

1230   runoff.  Envelopes and other supplies as required by this article may be ordered by the

1231   superintendent, the board of registrars, or the absentee ballot clerk for use in the primary

1232   or election.

1233   (2)  The board of registrars or absentee ballot clerk shall mail or issue official absentee

1234   ballots to all eligible applicants not more than ~~49~~ 29 days but not less than ~~45~~ 25 days

1235   prior to any presidential preference primary, general primary other than a municipal

1236   general primary, general election other than a municipal general election, or special

1237   primary or special election in which there is a candidate for a federal office on the ballot;

1238   22 days prior to any municipal general primary or municipal general election; and as soon

1239   as possible prior to any runoff.  In the case of all other special primaries or special

1240   elections, the board of registrars or absentee ballot clerk shall mail or issue official

1241   absentee ballots to all eligible applicants within three days after the receipt of such ballots

1242   and supplies, but no earlier than 22 days prior to the election; provided, however, that

1243   ~~should~~ official absentee ballots shall be issued to any elector of the jurisdiction ~~be~~

1244   ~~permitted to vote by absentee ballot~~ who is entitled to vote by absentee ballot under the

1245   federal Uniformed and Overseas Citizen Absentee Voting Act, 52 U.S.C. Section 20301,

1246   et seq., as amended, beginning 49 days prior to a federal primary or election~~, all eligible~~

1247   applicants of such jurisdiction shall be entitled to vote by absentee ballot beginning 49

1248   days prior to such primary or election and not later than 45 days prior to a federal primary

1249   or election.  As additional applicants who submitted timely applications for an absentee

1250   ballot are determined to be eligible, the board or clerk shall mail or issue official absentee

1251   ballots  to  such  additional  applicants  immediately  upon  determining  their  eligibility;

1252   provided, however, that no absentee ballot shall be mailed by the registrars or absentee

1253   ballot  clerk  on  the  day  prior  to  a  primary  or  election  and  provided,  further,  that  no

1254   absentee ballot shall be issued on the day prior to a primary or election.  For all timely

1255   received applications for absentee ballots, the board of registrars or absentee ballot clerk

1256   shall mail or issue absentee ballots, provisional absentee ballots, and notices of rejection

1257   as soon as possible upon determining their eligibility within the time periods set forth in

1258   this subsection.  During the period for advance voting set forth in Code Section 21-2-385,

1259   the board of registrars or absentee ballot clerk shall make such determinations and mail

1260   or  issue  absentee  ballots,  provisional  absentee  ballots,  and  notices  of  rejection  of

1261   application within three days after receiving a timely application for an absentee ballot.

1262   The  board  of  registrars  or  absentee  ballot  clerk  shall,  within  the  same  time  periods

1263   specified in this subsection, electronically transmit official absentee ballots to all electors

1264   who have requested to receive their official absentee ballot electronically and are entitled

1265   to vote such absentee ballot under the federal Uniformed and Overseas Citizens Absentee

1266   Voting Act, 42 U.S.C. Section 1973ff 52 U.S.C. Section 20301, et seq., as amended.

1267   (3)  The date a ballot is voted in the registrar's or absentee ballot clerk's office or the date

1268   a ballot is mailed or issued to an elector and the date it is returned shall be entered on the

1269   application record therefor.

1270   (4)  Notwithstanding any other provision of this chapter, an elector confined in a hospital

1271   may make application for an absentee ballot The delivery of an absentee ballot to a

1272   person confined in a hospital may be made by the registrar or clerk on the day of a

1273   primary or election or during a five-day ten-day period immediately preceding the day

1274  of such primary or election.  Such application shall immediately be processed and, if such

1275  applicant is determined to be eligible, the board of registrars or absentee ballot clerk may

1276  deliver the absentee ballot to such elector.

1277  (5)  In the event an absentee ballot which has been mailed by the board of registrars or

1278  absentee ballot clerk is not received by the applicant, the applicant may notify the board

1279  of registrars or absentee ballot clerk and sign an affidavit stating that the absentee ballot

1280  has not been received.  The board of registrars or absentee ballot clerk shall then issue a

1281  second absentee ballot to the applicant and cancel the original ballot issued.  The affidavit

1282  shall be attached to the original application.  A second application for an absentee ballot

1283  shall not be required.

1284  (b)  Except for ballots voted within the confines of the registrar's or absentee ballot clerk's

1285  office, in addition to the mailing envelope addressed to the elector, the superintendent,

1286  board of registrars, or absentee ballot clerk shall provide two envelopes for each official

1287  absentee ballot, of such size and shape as shall be determined by the Secretary of State, in

1288  order to permit the placing of one within the other and both within the mailing envelope.

1289  On the smaller of the two envelopes to be enclosed in the mailing envelope shall be printed

1290  the words 'Official Absentee Ballot' and nothing else.  ~~On the back of the~~ The larger of the

1291  two envelopes to be enclosed within the mailing envelope shall ~~be printed~~ contain the form

1292  of oath of the elector and the oath for persons assisting electors, as provided for in Code

1293  Section 21-2-409, and the penalties provided for in Code Sections 21-2-568, 21-2-573,

1294  21-2-579, and 21-2-599 for violations of oaths; ~~and on~~ a place for the elector to print his

1295  or her name; a signature line; a space for the elector to print the number of his or her

1296  Georgia driver's license or identification card issued pursuant to Article 5 of Chapter 5 of

1297  Title 40; a space for the elector to mark to affirm that he or she does not have a Georgia

1298  driver's license or identification card issued pursuant to Article 5 of Chapter 5 of Title 40;

1299  a space for the elector to print his or her date of birth; and a space for the elector to print

1300  the last four digits of his or her social security number, if the elector does not have a

1301  Georgia driver's license or state identification card issued pursuant to Article 5 of Chapter 5
1302  of Title 40.  The envelope shall be designed so that the number of the elector's Georgia
1303  driver's license or identification card issued pursuant to Article 5 of Chapter 5 of Title 40,
1304  the last four digits of the elector's social security number, and the elector's date of birth
1305  shall be hidden from view when the envelope is correctly sealed.  Any person other than
1306  the elector who requested the ballot, an authorized person who is assisting the elector
1307  entitled to assistance in voting pursuant to Code Section 21-2-409, an absentee ballot clerk,
1308  registrar, or law enforcement officer in the course of an investigation who knowingly
1309  unseals a sealed absentee ballot envelope shall be guilty of a felony.  On the face of such
1310  envelope shall be printed the name and address of the board of registrars or absentee ballot
1311  clerk.  The larger of the two envelopes shall also display the elector's name and voter
1312  registration number.  The mailing envelope addressed to the elector shall contain the two
1313  envelopes, the official absentee ballot, the uniform instructions for the manner of preparing
1314  and returning the ballot, in form and substance as provided by the Secretary of State,
1315  provisional absentee ballot information, if necessary, and a notice in the form provided by
1316  the Secretary of State of all withdrawn, deceased, and disqualified candidates and any
1317  substitute candidates pursuant to Code Sections 21-2-134 and 21-2-155 and nothing else.
1318  The uniform instructions shall include information specific to the voting system used for
1319  absentee voting concerning the effect of overvoting or voting for more candidates than one
1320  is authorized to vote for a particular office and information concerning how the elector may
1321  correct errors in voting the ballot before it is cast including information on how to obtain
1322  a replacement ballot if the elector is unable to change the ballot or correct the error.  The
1323  uniform instructions shall prominently include specific instructions stating that the elector
1324  shall mark his or her ballot in private and sign the oath by writing his or her usual signature
1325  with a pen and ink under penalty of false swearing that the elector has not allowed any
1326  person to observe the marking of his or her ballot other than an authorized person lawfully
1327  assisting the elector if the elector is entitled to assistance, the elector's child under 18 years

1328  of age, or any child under 12 years of age and that the elector will not permit any
1329  unauthorized person to deliver or return the voted ballot to the board of registrars.  The
1330  uniform instructions shall include a list of authorized persons who may deliver or return
1331  the voted ballot to the board of registrars on behalf of the elector as provided in subsection
1332  (a) of Code Section 21-2-385.  The uniform instructions shall include the contact
1333  information of the Secretary of State which may be used by the elector to report any
1334  unauthorized person requesting to observe the elector voting his or her ballot or the
1335  elector's voted ballot or any unauthorized person offering to deliver or return the voted
1336  ballot to the board of registrars.
1337  (c)(1)  The oaths referred to in subsection (b) of this Code section shall be in substantially
1338     the following form:
1339     I, the undersigned, do swear (or affirm) under penalty of false swearing that I am a
1340     citizen of the United States and of the State of Georgia; that I possess the qualifications
1341     of an elector required by the laws of the State of Georgia; that I am entitled to vote in
1342     the precinct containing my residence in the primary or election in which this ballot is
1343     to be cast; that I am eligible to vote by absentee ballot; that I have not marked or mailed
1344     any other absentee ballot, nor will I mark or mail another absentee ballot for voting in
1345     such primary or election; nor shall I vote therein in person; and that I have read and
1346     understand the instructions accompanying this ballot; and that I have carefully complied
1347     with such instructions in completing this ballot; that I have marked and sealed this
1348     ballot in private and have not allowed any unauthorized person to observe the voting
1349     of this ballot or how this ballot was voted except those authorized under state and
1350     federal law; and that I will not give or transfer this ballot to any person not authorized
1351     by law to deliver or return absentee ballots.  I understand that the offer or acceptance
1352     of money or any other object of value to vote for any particular candidate, list of
1353     candidates, issue, or list of issues included in this election constitutes an act of voter
1354     fraud and is a felony under Georgia law.

1355                                                    _____

1356                                                    Signature or Mark of Elector

1357                                                    _____

1358                                                    Printed Name of Elector


1359        Oath of Person Assisting Elector (if any):

1360            I, the undersigned, do swear (or affirm) that I assisted the above-named elector in

1361            marking such elector's absentee ballot as such elector personally communicated such

1362            elector's preference to me; and that such elector is entitled to receive assistance in

1363            voting under provisions of subsection (a) of Code Section 21-2-409.

1364            This, the _____ day of _____, _____.


1365                                                    _____

1366                                                    Signature of Person Assisting

1367                                                    Elector

1368                                                    _____

1369                                                    Printed Name of Person

1370                                                    Assisting Elector


1371        Reason for assistance (Check appropriate square):

1372            ☐ Elector is unable to read the English language.

1373            ☐ Elector requires assistance due to physical disability.

1374        The forms upon which such oaths are printed shall contain the following information:

1375            Georgia law provides that any person who knowingly falsifies information so as to

1376            vote illegally by absentee ballot or who illegally gives or receives assistance in voting,

1377            as specified in Code Section 21-2-568 or 21-2-573, shall be guilty of a felony.

1378    (2)  In the case of absent uniformed services or overseas voters, if the presidential

1379    designee under Section 705(b) of the federal Help America Vote Act promulgates a

1380    standard oath for use by such voters, the Secretary of State shall be required to use such

1381    oath on absentee ballot materials for such voters and such oath shall be accepted in lieu

1382    of the oath set forth in paragraph (1) of this subsection.

1383    (d)  Each board of registrars or absentee ballot clerk shall maintain for public inspection

1384    a master list, arranged by precincts, setting forth the name and residence of every elector

1385    to whom an official absentee ballot has been sent.  Absentee electors whose names appear

1386    on the master list may be challenged by any elector prior to 5:00 P.M. on the day before

1387    ~~the primary or election~~ absentee ballots are to begin being scanned and tabulated.

1388    (e)(1)  The election superintendent shall prepare special absentee run-off ballots for

1389    general primaries and general elections for use by qualified electors who are entitled to

1390    vote by absentee ballot under the federal Uniformed and Overseas Citizens Absentee

1391    Voting Act, 52 U.S.C. Section 20301, et seq.

1392    (2)  Such special absentee run-off ballots for the general primary shall list the titles of all

1393    offices being contested at the general primary and the candidates qualifying for such

1394    general primary for each office and shall permit the elector to vote in the general primary

1395    runoff by indicating his or her order of preference for each candidate for each office.  A

1396    separate ballot shall be prepared for each political party, but a qualified elector under this

1397    subsection shall be mailed only the ballot of the political party in whose primary such

1398    elector requests to vote.  The Secretary of State shall prepare instructions for use with

1399    such special absentee run-off ballots, including instructions for voting by mail using an

1400    electronically transmitted ballot.  Such ballot shall be returned by the elector in the same

1401    manner as other absentee ballots by such electors who are entitled to vote by absentee

1402    ballot under the federal Uniformed and Overseas Citizens Absentee Voting Act, 52

1403    U.S.C. Section 20301, et seq.

1404    (3)  Such special absentee run-off ballots for the general election shall list the titles of all
1405    offices being contested at the general election and the candidates qualifying for such
1406    general election for each office and shall permit the elector to vote in the general election
1407    runoff by indicating his or her order of preference for each candidate for each office.

1408    (4)  To indicate order of preference for each candidate for each office to be voted on, an
1409    elector shall put the numeral '1' next to the name of the candidate who is the elector's first
1410    choice for such office, the numeral '2' for the elector's second choice, and so forth, in
1411    consecutive numerical order, such that a numeral indicating the elector's preference is
1412    written by the elector next to each candidate's name on the ballot.  An elector shall not
1413    be required to indicate preference for more than one candidate for an office if the elector
1414    so chooses.

1415    (5)  A special absentee run-off ballot shall be enclosed with each general primary
1416    absentee ballot sent to an elector who is entitled to vote by absentee ballot under the
1417    federal Uniformed and Overseas Citizens Absentee Voting Act, 52 U.S.C. Section 20301,
1418    et seq., along with instructions on how to cast the special absentee run-off ballot and the
1419    two envelopes to be used in returning such ballot as provided in subsection (b) of this
1420    Code section, provided that the envelopes bear the notation of 'Official Overseas/Military
1421    General Primary Run-off Ballot.'  An elector shall be sent only the ballot containing the
1422    candidates of the political party in whose primary such elector desires to vote.

1423    (6)  A special absentee run-off ballot shall be enclosed with each general election
1424    absentee ballot sent to an elector entitled to vote by absentee ballot under the federal
1425    Uniformed and Overseas Citizens Absentee Voting Act, 52 U.S.C. Section 20301, et seq.,
1426    along with instructions on how to cast the special absentee run-off ballot and the two
1427    envelopes to be used in returning such ballot as provided in subsection (b) of this Code
1428    section, provided that the envelopes bear the notation of 'Official Overseas/Military
1429    General Election Run-off Ballot.'  The State Election Board shall by rule or regulation
1430    establish procedures for the transmission of blank absentee ballots by mail and by

1431   electronic transmission for all electors who are entitled to vote by absentee ballot under

1432   the federal Uniformed and Overseas Citizens Absentee Voting Act, 52 U.S.C.

1433   Section ~~20302~~ 20301, et seq., as amended, and by which such electors may designate

1434   whether the elector prefers the transmission of such ballots by mail or electronically, for

1435   use in county, state, and federal primaries, elections, and runoffs in this state and, if the

1436   Secretary of State finds it to be feasible, for use in municipal primaries, elections, and

1437   runoffs.  If no preference is stated, the ballot shall be transmitted by mail.  The State

1438   Election Board shall by rule or regulation establish procedures to ensure to the extent

1439   practicable that the procedures for transmitting such ballots shall protect the security and

1440   integrity of such ballots and shall ensure that the privacy of the identity and other

1441   personal data of such electors who are entitled to vote by absentee ballot under the federal

1442   Uniformed and Overseas Citizens Absentee Voting Act, 52 U.S.C. Section ~~20302~~ 20301,

1443   et seq., as amended, to whom a blank absentee ballot is transmitted under this Code

1444   section is protected throughout the process of such transmission."

1445                                   **SECTION 28.**

1446   Said chapter is further amended by revising subsections (a) and (d) of and adding a new

1447   subsection to Code Section 21-2-385, relating to procedure for voting by absentee ballot and

1448   advance voting, to read as follows:

1449   "(a)   At any time after receiving an official absentee ballot, but before the day of the

1450   primary or election, except electors who are confined to a hospital on the day of the

1451   primary or election, the elector shall vote his or her absentee ballot, then fold the ballot and

1452   enclose and securely seal the same in the envelope on which is printed 'Official Absentee

1453   Ballot.'  This envelope shall then be placed in the second one, on which is printed the form

1454   of the oath of the elector; the name and oath of the person assisting, if any; and other

1455   required identifying information.  The elector shall then fill out, subscribe, and swear to the

1456   oath printed on such envelope.  <u>In order to verify that the absentee ballot was voted by the</u>

1457   elector who requested the ballot, the elector shall print the number of his or her Georgia

1458   driver's license number or identification card issued pursuant to Article 5 of Chapter 5 of

1459   Title 40 in the space provided on the outer oath envelope.  The elector shall also print his

1460   or her date of birth in the space provided in the outer oath envelope.  If the elector does not

1461   have a Georgia driver's license or state identification card issued pursuant to Article 5 of

1462   Chapter 5 of Title 40, the elector shall so affirm in the space provided on the outer oath

1463   envelope and print the last four digits of his or her social security number in the space

1464   provided on the outer oath envelope.  If the elector does not have a Georgia driver's license,

1465   identification card issued pursuant to Article 5 of Chapter 5 of Title 40, or a social security

1466   number, the elector shall so affirm in the space provided on the outer oath envelope and

1467   place a copy of one of the forms of identification set forth in subsection (c) of Code

1468   Section 21-2-417 in the outer envelope.  Such envelope shall then be securely sealed and

1469   the elector shall then personally mail or personally deliver same to the board of registrars

1470   or absentee ballot clerk, provided that mailing or delivery may be made by the elector's

1471   mother, father, grandparent, aunt, uncle, brother, sister, spouse, son, daughter, niece,

1472   nephew, grandchild, son-in-law, daughter-in-law, mother-in-law, father-in-law,

1473   brother-in-law, sister-in-law, or an individual residing in the household of such elector.

1474   The absentee ballot of a disabled elector may be mailed or delivered by the caregiver of

1475   such disabled elector, regardless of whether such caregiver resides in such disabled

1476   elector's household.  The absentee ballot of an elector who is in custody in a jail or other

1477   detention facility may be mailed or delivered by any employee of such jail or facility

1478   having custody of such elector.  An elector who is confined to a hospital on a primary or

1479   election day to whom an absentee ballot is delivered by the registrar or absentee ballot

1480   clerk shall then and there vote the ballot, seal it properly, and return it to the registrar or

1481   absentee ballot clerk.  If the elector registered to vote for the first time in this state by mail

1482   and has not previously provided the identification required by Code Section 21-2-220 and

1483   votes for the first time by absentee ballot and fails to provide the identification required by

1484   Code Section 21-2-220 with such absentee ballot, such absentee ballot shall be treated as

1485   a provisional ballot and shall be counted only if the registrars are able to verify the

1486   identification and registration of the elector during the time provided pursuant to Code

1487   Section 21-2-419.″

1488   ″(d)(1)  There shall be a period of advance voting that shall commence:

1489   (A)  On the fourth Monday immediately prior to each primary or election; and

1490   (B)  On the fourth Monday immediately prior to a runoff from a general primary;

1491   (C)  On the fourth Monday immediately prior to a runoff from a general election in

1492   which there are candidates for a federal office on the ballot in the runoff; and

1493   (D)(B)  As soon as possible prior to a runoff from any other general primary or election

1494   in which there are only state or county candidates on the ballot in the runoff but no later

1495   than the second Monday immediately prior to such runoff

1496   and shall end on the Friday immediately prior to each primary, election, or runoff.

1497   Voting shall be conducted during normal business hours beginning at 9:00 A.M. and

1498   ending at 5:00 P.M. on weekdays, other than observed state holidays, during such period

1499   and shall be conducted on the second Saturday and third Saturdays during the hours of

1500   9:00 A.M. through 5:00 P.M. and, if the registrar or absentee ballot clerk so chooses, the

1501   second Sunday, the third Sunday, or both the second and third Sundays prior to a primary

1502   or election during the hours of 9:00 A.M. through 4:00 P.M. determined by the registrar

1503   or absentee ballot clerk, but no longer than 7:00 A.M. through 7:00 P.M.; provided,

1504   however, that in primaries and elections in which there are no federal or state candidates

1505   on the ballot, no Saturday voting hours shall be required; and provided, further, that, if

1506   such second Saturday is a public and legal holiday pursuant to Code Section 1-4-1, if

1507   such second Saturday follows a public and legal holiday occurring on the Thursday or

1508   Friday immediately preceding such second Saturday, or if such second Saturday

1509   immediately precedes a public and legal holiday occurring on the following Sunday or

1510   Monday, such advance voting shall not be held on such second Saturday but shall be held

1511   on the third Saturday prior to such primary or election <u>beginning at 9:00 A.M. and ending</u>
1512   <u>at 5:00 P.M.</u>  Except as otherwise provided in this paragraph, ~~counties and municipalities~~
1513   <u>the registrars</u> may extend the hours for voting ~~beyond regular business hours~~ <u>to permit</u>
1514   <u>advance voting from 7:00 A.M. until 7:00 P.M.</u> and may provide for additional voting
1515   locations pursuant to Code Section 21-2-382 to suit the needs of the electors of the
1516   jurisdiction at their option<u>; provided, however, that voting shall occur only on the days</u>
1517   <u>specified in this paragraph and counties and municipalities shall not be authorized to</u>
1518   <u>conduct advance voting on any other days</u>.

1519   (2)  The registrars or absentee ballot clerk, as appropriate, shall provide reasonable notice
1520   to the electors of their jurisdiction of the availability of advance voting as well as the
1521   times, dates, and locations at which advance voting will be conducted.  In addition, the
1522   registrars or absentee ballot clerk shall notify the Secretary of State in the manner
1523   prescribed by the Secretary of State of the times, dates, and locations at which advance
1524   voting will be conducted.

1525   <u>(3)  The board of registrars shall publish the dates, times, and locations of the availability</u>
1526   <u>of advance voting in its jurisdiction on the homepage of the county's publicly accessible</u>
1527   <u>website associated with elections or registrations, or if the county does not have such a</u>
1528   <u>website, in a newspaper of general circulation, and by posting in a prominent location in</u>
1529   <u>the county, no later than 14 days prior to the beginning of the advance voting period for</u>
1530   <u>a general primary, special primary, general election, or special election and no later than</u>
1531   <u>seven days prior to the beginning of the advance voting period for any run-off election.</u>
1532   <u>Any new advance voting locations added after that deadline shall be published in the</u>
1533   <u>same manner as soon as possible.  The board of registrars shall not remove any advance</u>
1534   <u>voting location after the notice of such location is published, except in the case of an</u>
1535   <u>emergency or unavoidable event that renders a location unavailable for use.  Any changes</u>
1536   <u>that are made due to an emergency or unavoidable event after a notice of a location has</u>

1537   been published shall be published as soon as possible in the same manner set forth in this
1538   paragraph.
1539   (e)   On each day of an absentee voting period, each county board of registrars or
1540   municipal absentee ballot clerk shall report for the county or municipality to the Secretary
1541   of State and post on the county or municipal website, or if the county or municipality
1542   does not maintain such a website, a place of public prominence in the county or
1543   municipality, not later than 10:00 A.M. on each business day the number of persons to
1544   whom absentee ballots have been issued, the number of persons who have returned
1545   absentee ballots, and the number of absentee ballots that have been rejected.
1546   Additionally, on each day of an advance voting period, each county board of registrars
1547   or municipal absentee ballot clerk shall report to the Secretary of State and post on the
1548   county or municipal website, or if the county or municipality does not maintain such a
1549   website, a place of public prominence in the county or municipality, not later than 10:00
1550   A.M. on each business day the number of persons who have voted at the advance voting
1551   sites in the county or municipality.  During the absentee voting period and for a period
1552   of three days following a primary, election, or runoff, each county board of registrars or
1553   municipal absentee ballot clerk shall report to the Secretary of State and post on the
1554   county or municipal website, or if the county or municipality does not maintain such a
1555   website, a place of public prominence in the county or municipality, not later than 10:00
1556   A.M. on each business day the number of persons who have voted provisional ballots, the
1557   number of provisional ballots that have verified or cured and accepted for counting, and
1558   the number of provisional ballots that have been rejected."

1559                                    **SECTION 29.**
1560   Said chapter is further amended by revising Code Section 21-2-386, relating to safekeeping,
1561   certification, and validation of absentee ballots, rejection of ballot, delivery of ballots to

1562   manager, duties of managers, precinct returns, and notification of challenged elector, as

1563   follows:

1564    "21-2-386.

1565        (a)(1)(A)   The board of registrars or absentee ballot clerk shall keep safely, unopened,

1566        and stored in a manner that will prevent tampering and unauthorized access all official

1567        absentee ballots received from absentee electors prior to the closing of the polls on the

1568        day of the primary or election except as otherwise provided in this subsection.

1569        (B)   Upon receipt of each ballot, a registrar or clerk shall write the day and hour of the

1570        receipt of the ballot on its envelope.   The registrar or clerk shall then compare the

1571        number of the elector's Georgia driver's license number or state identification card

1572        issued pursuant to Article 5 of Chapter 5 of Title 40 and date of birth entered on the

1573        absentee ballot envelope identifying information on the oath with the same information

1574        on file in his or her office, shall compare the signature or mark on the oath with the

1575        signature or mark on the absentee elector's voter registration card or the most recent

1576        update to such absentee elector's voter registration card and application for absentee

1577        ballot or a facsimile of said signature or mark taken from said card or application, and

1578        shall, if the information and signature appear to be valid and other identifying

1579        information appears to be correct, contained in the elector's voter registration records.

1580        If the elector has affirmed on the envelope that he or she does not have a Georgia

1581        driver's license or state identification card issued pursuant to Article 5 of Chapter 5 of

1582        Title 40, the registrar or clerk shall compare the last four digits of the elector's social

1583        security number and date of birth entered on the envelope with the same information

1584        contained in the elector's voter registration records.   The registrar or clerk shall also

1585        confirm that the elector signed the oath and the person assisting the elector, if any,

1586        signed the required oath.  If the elector has signed the elector's oath, the person assisting

1587        has signed the required oath, if applicable, and the identifying information entered on

1588        the absentee ballot envelope matches the same information contained in the elector's

1589    voter registration record, the registrar or clerk shall so certify by signing or initialing

1590    his or her name below the voter's oath.  Each elector's name so certified shall be listed

1591    by the registrar or clerk on the numbered list of absentee voters prepared for his or her

1592    precinct.

1593    (C)  If the elector has failed to sign the oath, or if the ~~signature~~ identifying information

1594    entered on the absentee ballot envelope does not ~~appear to be valid~~ match the same

1595    information appearing in the elector's voter registration record, or if the elector has

1596    failed to furnish required information or information so furnished does not conform

1597    with that on file in the registrar's or clerk's office, or if the elector is otherwise found

1598    disqualified to vote, the registrar or clerk shall write across the face of the envelope

1599    'Rejected,' giving the reason therefor.  The board of registrars or absentee ballot clerk

1600    shall promptly notify the elector of such rejection, a copy of which notification shall be

1601    retained in the files of the board of registrars or absentee ballot clerk for at least two

1602    years.  Such elector shall have until the end of the period for verifying provisional

1603    ballots contained in subsection (c) of Code Section 21-2-419 to cure the problem

1604    resulting in the rejection of the ballot.  The elector may cure a failure to sign the oath,

1605    ~~an invalid signature~~ nonmatching identifying information, or missing information by

1606    submitting an affidavit to the board of registrars or absentee ballot clerk along with a

1607    copy of one of the forms of identification enumerated in subsection (c) of Code

1608    Section 21-2-417 before the close of such period.  The affidavit shall affirm that the

1609    ballot was submitted by the elector, is the elector's ballot, and that the elector is

1610    registered and qualified to vote in the primary, election, or runoff in question.  If the

1611    board of registrars or absentee ballot clerk finds the affidavit and identification to be

1612    sufficient, the absentee ballot shall be counted.

1613    (D)  An elector who registered to vote by mail, but did not comply with subsection (c)

1614    of Code Section 21-2-220, and who votes for the first time in this state by absentee

1615    ballot shall include with his or her application for an absentee ballot or in the outer oath

1616   envelope of his or her absentee ballot either one of the forms of identification listed in
1617   subsection (a) of Code Section 21-2-417 or a copy of a current utility bill, bank
1618   statement, government check, paycheck, or other government document that shows the
1619   name and address of such elector.  If such elector does not provide any of the forms of
1620   identification listed in this subparagraph with his or her application for an absentee
1621   ballot or with the absentee ballot, such absentee ballot shall be deemed to be a
1622   provisional ballot and such ballot shall only be counted if the registrars are able to
1623   verify current and valid identification of the elector as provided in this subparagraph
1624   within the time period for verifying provisional ballots pursuant to Code
1625   Section 21-2-419.  The board of registrars or absentee ballot clerk shall promptly notify
1626   the elector that such ballot is deemed a provisional ballot and shall provide information
1627   on the types of identification needed and how and when such identification is to be
1628   submitted to the board of registrars or absentee ballot clerk to verify the ballot.

1629   (E)  Three copies of the numbered list of voters shall also be prepared for such rejected
1630   absentee electors, giving the name of the elector and the reason for the rejection in each
1631   case.  Three copies of the numbered list of certified absentee voters and three copies of
1632   the numbered list of rejected absentee voters for each precinct shall be turned over to
1633   the poll manager in charge of counting the absentee ballots and shall be distributed as
1634   required by law for numbered lists of voters.

1635   (F)  All absentee ballots returned to the board or absentee ballot clerk after the closing
1636   of the polls on the day of the primary or election shall be safely kept unopened by the
1637   board or absentee ballot clerk and then transferred to the appropriate clerk for storage
1638   for the period of time required for the preservation of ballots used at the primary or
1639   election and shall then, without being opened, be destroyed in like manner as the used
1640   ballots of the primary or election.  The board of registrars or absentee ballot clerk shall
1641   promptly notify the elector by first-class mail that the elector's ballot was returned too
1642   late to be counted and that the elector will not receive credit for voting in the primary

1643   or election.  All such late absentee ballots shall be delivered to the appropriate clerk and

1644   stored as provided in Code Section 21-2-390.

1645   (G)  Notwithstanding any provision of this chapter to the contrary, until the United

1646   States Department of Defense notifies the Secretary of State that the Department of

1647   Defense has implemented a system of expedited absentee voting for those electors

1648   covered by this subparagraph, absentee ballots cast in a primary, election, or runoff by

1649   eligible absentee electors who reside outside the county or municipality in which the

1650   primary, election, or runoff is held and are members of the armed forces of the United

1651   States, members of the merchant marine of the United States, spouses or dependents of

1652   members of the armed forces or merchant marine residing with or accompanying such

1653   members, or overseas citizens that are postmarked by the date of such primary, election,

1654   or runoff and are received within the three-day period following such primary, election,

1655   or runoff, if proper in all other respects, shall be valid ballots and shall be counted and

1656   included in the certified election results.

1657   (2)(A)  Beginning at 8:00 A.M. on the third Monday prior to ~~After the opening of the~~

1658   ~~polls on~~ the day of the primary, election, or runoff, the ~~registrars or absentee ballot~~

1659   ~~clerks~~ election superintendent shall be authorized to open the outer oath envelope ~~on~~

1660   ~~which is printed the oath of the elector~~ of absentee ballots that have been verified and

1661   accepted pursuant to subparagraph (a)(1)(B) of this Code section, ~~in such a manner as~~

1662   ~~not to destroy the oath printed thereon; provided, however, that the registrars or~~

1663   ~~absentee ballot clerk shall not be authorized to~~ remove the contents of such outer

1664   envelope, ~~or to~~ open the inner envelope marked 'Official Absentee Ballot,' ~~except as~~

1665   ~~otherwise provided in this Code section~~ and scan the absentee ballot using one or more

1666   ballot scanners.  At least three persons who are registrars, deputy registrars, poll

1667   workers, or absentee ballot clerks must be present before commencing; and three

1668   persons who are registrars, deputy registrars, or absentee ballot clerks shall be present

1669   at all times while the ~~outer~~ absentee ballot envelopes are being opened and the absentee

1670    ballots are being scanned. ~~After opening the outer envelopes, the ballots shall be safely~~

1671    ~~and securely stored until the time for tabulating such ballots.~~ However, no person shall

1672    tally, tabulate, estimate, or attempt to tally, tabulate, or estimate or cause the ballot

1673    scanner or any other equipment to produce any tally or tabulate, partial or otherwise,

1674    of the absentee ballots cast until the time for the closing of the polls on the day of the

1675    primary, election, or runoff except as provided in this Code section.  Prior to beginning

1676    the process set forth in this paragraph, the superintendent shall provide written notice

1677    to the Secretary of State in writing at least seven days prior to processing and scanning

1678    absentee ballots.  Such notice shall contain the dates, start and end times, and location

1679    or locations where absentee ballots will be processed and scanned.  The superintendent

1680    shall also post such notice publicly in a prominent location in the superintendent's office

1681    and on the home page of the county election superintendent's website, if the county

1682    election superintendent maintains such a website.  The Secretary of State shall publish

1683    on his or her website the information he or she receives from superintendents stating

1684    the dates, times, and locations where absentee ballots will be processed.

1685    (B)  The proceedings set forth in this paragraph shall be open to the view of the public,

1686    but no person except one employed and designated by the superintendent shall touch

1687    any ballot or ballot container.   Any person involved in processing and scanning

1688    absentee ballots shall swear an oath, in the same form as the oath for poll officers

1689    provided in Code Section 21-2-95, prior to beginning the processing and scanning of

1690    absentee ballots.  The county executive committee or, if there is no organized county

1691    executive committee, the state executive committee of each political party and political

1692    body having candidates whose names appear on the ballot for such election shall have

1693    the right to designate two persons and each independent and nonpartisan candidate

1694    whose name appears on the ballot for such election shall have the right to designate one

1695    person to act as monitors for such process.  In the event that the only issue to be voted

1696    upon in an election is a referendum question, the superintendent shall also notify in

1697   writing the chief judge of the superior court of the county who shall appoint two
1698   electors of the county to monitor such process.  While viewing or monitoring the
1699   process set forth in this paragraph, monitors and observers shall be prohibited from:
1700   (i)  In any way interfering with the processing or scanning of absentee ballots or the
1701   conduct of the election;
1702   (ii)  Using or bringing into the room any photographic or other electronic monitoring
1703   or recording devices, cellular telephones, or computers;
1704   (iii)  Engaging in any form of campaigning or campaign activity;
1705   (iv)  Taking any action that endangers the secrecy and security of the ballots;
1706   (v)  Touching any ballot or ballot container;
1707   (vi)  Tallying, tabulating, estimating, or attempting to tally, tabulate, or estimate,
1708   whether partial or otherwise, any of the votes on the absentee ballots cast; and
1709   (vii)  Communicating any information that they see while monitoring the processing
1710   and scanning of the absentee ballots, whether intentionally or inadvertently, about any
1711   ballot, vote, or selection to anyone other than an election official who needs such
1712   information to lawfully carry out his or her official duties.
1713   (C)  The State Election Board shall promulgate rules requiring reconciliation
1714   procedures; prompt and undelayed scanning of ballots after absentee ballot envelopes
1715   are opened; secrecy of election results prior to the closing of the polls on the day of a
1716   primary, election, or runoff; and other protections to protect the integrity of the process
1717   set forth in this paragraph.
1718   (3) A county election superintendent may, in his or her discretion, after 7:00 A.M. on the
1719   day of the primary, election, or runoff ~~open the inner envelopes in accordance with the~~
1720   ~~procedures prescribed in this subsection and~~ begin tabulating the absentee ballots.  If the
1721   county election superintendent chooses to open the inner envelopes and begin tabulating
1722   such ballots prior to the close of the polls on the day of the primary, election, or runoff,
1723   the superintendent shall notify in writing, at least seven days prior to the primary,

1724   election, or runoff, the Secretary of State of the superintendent's intent to begin the

1725   absentee ballot tabulation prior to the close of the polls.  The county executive committee

1726   or, if there is no organized county executive committee, the state executive committee of

1727   each political party and political body having candidates whose names appear on the

1728   ballot for such election in such county shall have the right to designate two persons and

1729   each independent and nonpartisan candidate whose name appears on the ballot for such

1730   election in such county shall have the right to designate one person to act as monitors for

1731   such process.  In the event that the only issue to be voted upon in an election is a

1732   referendum question, the superintendent shall also notify in writing the chief judge of the

1733   superior court of the county who shall appoint two electors of the county to monitor such

1734   process.

1735   (4)   The county election superintendent shall publish a written notice in the

1736   superintendent's office of the superintendent's intent to begin the absentee ballot

1737   tabulation prior to the close of the polls and publish such notice at least one week prior

1738   to the primary, election, or runoff in the legal organ of the county.

1739   (5)  The process for opening ~~the inner~~ absentee ballot envelopes, scanning absentee

1740   ballots, ~~of~~ and tabulating absentee ballots on the day of a primary, election, or runoff as

1741   provided in this subsection shall be ~~a confidential process~~ conducted in a manner to

1742   maintain the secrecy of all ballots and to protect the disclosure of any balloting

1743   information before 7:00 P.M. on election day.  No absentee ballots shall be tabulated

1744   before 7:00 A.M. on the day of a primary, election, or runoff.

1745   (6) All persons conducting the tabulation of absentee ballots during the day of a primary,

1746   election, or runoff, including the vote review panel required by Code Section 21-2-483,

1747   and all monitors and observers shall be sequestered until the time for the closing of the

1748   polls. All such persons shall have no contact with the news media; shall have no contact

1749   with other persons not involved in monitoring, observing, or conducting the tabulation;

1750   shall not use any type of communication device including radios, telephones, and cellular

1751    telephones; shall not utilize computers for the purpose of ~~e-mail~~ email, instant messaging,

1752    or other forms of communication; and shall not communicate any information concerning

1753    the tabulation until the time for the closing of the polls; provided, however, that

1754    supervisory and technical assistance personnel shall be permitted to enter and leave the

1755    area in which the tabulation is being conducted but shall not communicate any

1756    information concerning the tabulation to anyone other than the county election

1757    superintendent; the staff of the superintendent; those persons conducting, observing, or

1758    monitoring the tabulation; and those persons whose technical assistance is needed for the

1759    tabulation process to operate.

1760    (7)   The absentee ballots shall be tabulated in accordance with the procedures of this

1761    chapter for the tabulation of absentee ballots.  As such ballots are tabulated, they shall be

1762    placed into locked ballot boxes and may be transferred to locked ballot bags, if needed,

1763    for security.  The persons conducting the tabulation of the absentee ballots shall not cause

1764    the tabulating equipment to produce any count, partial or otherwise, of the absentee votes

1765    cast until the time for the closing of the polls <u>except as otherwise provided in this Code</u>

1766    <u>section</u>.

1767    (b)   <u>When requested by the superintendent, but not earlier than the third Monday prior to</u>

1768    <u>a primary, election, or runoff</u> ~~As soon as practicable after 7:00 A.M. on the day of the~~

1769    ~~primary, election, or runoff, in precincts other than those in which optical scanning~~

1770    ~~tabulators are used~~, a registrar or absentee ballot clerk shall deliver the official absentee

1771    ballot of each certified absentee elector, each rejected absentee ballot, applications for such

1772    ballots, and copies of the numbered lists of certified and rejected absentee electors to the

1773    ~~manager in charge of the absentee ballot precinct of the county or municipality, which shall~~

1774    ~~be located in the precincts containing the county courthouse or polling place designated by~~

1775    ~~the municipal superintendent.  In those precincts in which optical scanning tabulators are~~

1776    ~~used, such absentee ballots shall be taken to the tabulation center or other place~~ <u>location</u>

1777    designated by the superintendent, and the <u>superintendent or</u> official receiving such absentee

1778    ballots shall issue his or her receipt therefor.  ~~Except as otherwise provided in this Code~~
1779    ~~section, in no event shall the counting of the ballots begin before the polls close.~~
1780    (c) <u>The superintendent shall cause the verified and accepted absentee ballots to be opened</u>
1781    <u>and tabulated as provided in this Code section.  A</u> ~~Except as otherwise provided in this~~
1782    ~~Code section, after the close of the polls on the day of the primary, election, or runoff, a~~
1783    manager shall then open the outer envelope in such manner as not to destroy the oath
1784    printed thereon and shall deposit the inner envelope marked 'Official Absentee Ballot' in
1785    a ballot box reserved for absentee ballots.  In the event that an outer envelope is found to
1786    contain an absentee ballot that is not in an inner envelope, the ballot shall be sealed in an
1787    inner envelope, initialed and dated by the person sealing the inner envelope, and deposited
1788    in the ballot box and counted in the same manner as other absentee ballots, provided that
1789    such ballot is otherwise proper.  Such manager with two assistant managers, appointed by
1790    the superintendent, with such clerks as the manager deems necessary shall count the
1791    absentee ballots following the procedures prescribed by this chapter for other ballots,
1792    insofar as practicable~~, and prepare an election return for the county or municipality~~
1793    ~~showing the results of the absentee ballots cast in such county or municipality~~.
1794    (d) All absentee ballots shall be counted and tabulated in such a manner that returns may
1795    be reported by precinct; and separate returns shall be made for each precinct in which
1796    absentee ballots were cast showing the results by each precinct in which the electors reside.
1797    <u>The superintendent shall utilize the procedures set forth in this Code section to ensure that</u>
1798    <u>the returns of verified and accepted absentee ballots cast are reported to the public as soon</u>
1799    <u>as possible following the closing of the polls on the day of the primary, election, or runoff.</u>
1800    <u>Failure to utilize these procedures to ensure that the returns of verified and accepted</u>
1801    <u>absentee ballots are reported as soon as possible following the close of polls shall subject</u>
1802    <u>the superintendent to sanctions by the State Election Board.  If a superintendent fails to</u>
1803    <u>report the returns of verified and accepted absentee ballots by the day following the</u>

1804   election at 5:00 P.M., the State Election Board may convene an independent performance
1805   review board pursuant to Code Section 21-2-107.

1806   (e)  If an absentee elector's right to vote has been challenged for cause, a poll officer shall
1807   write 'Challenged,' the elector's name, and the alleged cause of challenge on the outer
1808   envelope and shall deposit the ballot in a secure, sealed ballot box; and it shall be counted
1809   as other challenged ballots are counted.  Where direct recording electronic voting systems
1810   are used for absentee balloting and a challenge to an elector's right to vote is made prior to
1811   the time that the elector votes, the elector shall vote on a paper or optical scanning ballot
1812   and such ballot shall be handled as provided in this subsection.  The board of registrars or
1813   absentee ballot clerk shall promptly notify the elector of such challenge.

1814   (f)  It shall be unlawful at any time prior to the close of the polls for any person to disclose
1815   or for any person to receive any information regarding the results of the tabulation of
1816   absentee ballots except as expressly provided by law."


1817                                    **SECTION 30.**

1818   Said chapter is further amended in Code Section 21-2-390, relating to delivery of election
1819   materials to clerk of superior court or city clerk after primary or election and accounting for
1820   ballots by registrars or municipal absentee ballot clerks, by designating the existing text as
1821   subsection (a) and adding a new subsection to read as follows:

1822   "(b)  The Secretary of State shall be authorized to inspect and audit the information
1823   contained in the absentee ballot applications or envelopes at his or her discretion at any
1824   time during the 24 month retention period.  Such audit may be conducted state wide or in
1825   selected counties or cities and may include the auditing of a statistically significant sample
1826   of the envelopes or a full audit of all of such envelopes.  For this purpose, the Secretary of
1827   State or his or her authorized agents shall have access to such envelopes in the custody of
1828   the clerk of superior court or city clerk."

1829                          **SECTION 31.**

1830  Said chapter is further amended in Code Section 21-2-403, relating to time for opening and

1831  closing of polls, by redesignating the existing text as subsection (a) and adding a new

1832  subsection to read as follows:

1833  "(b)  Poll hours at a precinct may be extended only by order of a judge of the superior court

1834  of the county in which the precinct is located upon good cause shown by clear and

1835  convincing evidence that persons were unable to vote at that precinct during a specific

1836  period or periods of time.  Poll hours shall not be extended longer than the total amount of

1837  time during which persons were unable to vote at such precinct.  Any order extending poll

1838  hours at a precinct beyond 9:00 P.M. shall be by written order with specific findings of fact

1839  supporting such extension."


1840                          **SECTION 32.**

1841  Said chapter is further amended by revising subsections (c) and (e) of Code

1842  Section 21-2-408, relating to poll watchers, designation, duties, removal for interference with

1843  election, reports by poll watchers of infractions or irregularities, and ineligibility of

1844  candidates to serve as poll watchers, as follows:

1845  "(c)  In counties or municipalities using direct recording electronic (DRE) voting systems

1846  or optical scanning voting systems, each political party may appoint two poll watchers in

1847  each primary or election, each political body may appoint two poll watchers in each

1848  election, each nonpartisan candidate may appoint one poll watcher in each nonpartisan

1849  election, and each independent candidate may appoint one poll watcher in each election to

1850  serve in the locations designated by the superintendent within the tabulating center.  Such

1851  designated locations shall include the check-in area, the computer room, the duplication

1852  area, and such other areas as the superintendent may deem necessary to the assurance of

1853  fair and honest procedures in the tabulating center.  The locations designated by the

1854  superintendent shall ensure that each poll watcher can fairly observe the procedures set

1855   forth in this Code section.   The poll watchers provided for in this subsection shall be
1856   appointed and serve in the same manner as other poll watchers."

1857   "(e)  No person shall be appointed or be eligible to serve as a poll watcher in any primary
1858   or election in which such person is a candidate.   No person shall be eligible to serve as a
1859   poll watcher unless he or she has completed training provided by the political party,
1860   political body, or candidate designating the poll watcher.   Upon request, the Secretary of
1861   State shall make available material to each political party, political body, or candidate that
1862   can be utilized in such training but it shall be the responsibility of the political party,
1863   political body, or candidate designating the poll watcher to instruct poll watchers in their
1864   duties and in applicable laws and rules and regulations.   Each political party, political body,
1865   or candidate shall, in their written designation of poll watchers, certify under oath that the
1866   named poll watchers have completed the training required by this Code section."

1867                                              **SECTION 33.**

1868   Said chapter is further amended by revising subsections (a) and (e) of Code
1869   Section 21-2-414, relating to restrictions on campaign activities and public opinion polling
1870   within the vicinity of a polling place, cellular phone use prohibited, prohibition of candidates
1871   from entering certain polling places, and penalty, as follows:

1872   "(a)  No person shall solicit votes in any manner or by any means or method, nor shall any
1873   person distribute or display any campaign material, nor shall any person give, offer to give,
1874   or participate in the giving of any money or gifts, including, but not limited to, food and
1875   drink, to an elector, nor shall any person solicit signatures for any petition, nor shall any
1876   person, other than election officials discharging their duties, establish or set up any tables
1877   or booths on any day in which ballots are being cast:

1878      (1)  Within 150 feet of the outer edge of any building within which a polling place is
1879      established;

1880      (2)  Within any polling place; or

1881       (3)  Within 25 feet of any voter standing in line to vote at any polling place.

1882   These restrictions shall not apply to conduct occurring in private offices or areas which

1883   cannot be seen or heard by such electors."

1884   "(e)  This Code section shall not be construed to prohibit a poll officer from distributing

1885   materials, as required by law, which are necessary for the purpose of instructing electors

1886   or from distributing materials prepared by the Secretary of State which are designed solely

1887   for the purpose of encouraging voter participation in the election being conducted <u>or from</u>

1888   <u>making available self-service water from an unattended receptacle to an elector waiting in</u>

1889   <u>line to vote</u>."


1890                                   **SECTION 34.**

1891   Said chapter is further amended by revising subsections (a) and (b) of Code

1892   Section 21-2-418, relating to provisional ballots, as follows:

1893   "(a)  If a person presents himself or herself at a polling place, absentee polling place, or

1894   registration office in his or her county of residence in this state for the purpose of casting

1895   a ballot in a primary or election stating a good faith belief that he or she has timely

1896   registered to vote in such county of residence in such primary or election and the person's

1897   name does not appear on the list of registered electors, the person shall be entitled to cast

1898   a provisional ballot in his or her county of residence in this state as provided in this Code

1899   section.  <u>If the person presents himself or herself at a polling place in the county in which</u>

1900   <u>he or she is registered to vote, but not at the precinct at which he or she is registered to</u>

1901   <u>vote, the poll officials shall inform the person of the polling location for the precinct where</u>

1902   <u>such person is registered to vote.  The poll officials shall also inform such person that any</u>

1903   <u>votes cast by a provisional ballot in the wrong precinct will not be counted unless it is cast</u>

1904   <u>after 5:00 P.M. and before the regular time for the closing of the polls on the day of the</u>

1905   <u>primary, election, or runoff and unless the person executes a sworn statement, witnessed</u>

1906   by the poll official, stating that he or she is unable to vote at his or her correct polling place

1907   prior to the closing of the polls and giving the reason therefor.

1908   (b)  Such person voting a provisional ballot shall complete an official voter registration

1909   form and a provisional ballot voting certificate which shall include information about the

1910   place, manner, and approximate date on which the person registered to vote.  The person

1911   shall swear or affirm in writing that he or she previously registered to vote in such primary

1912   or election, is eligible to vote in such primary or election, has not voted previously in such

1913   primary or election, and meets the criteria for registering to vote in such primary or

1914   election.  If the person is voting a provisional ballot in the county in which he or she is

1915   registered to vote but not at the precinct in which he or she is registered to vote during the

1916   period from 5:00 P.M. to the regular time for the closing of the polls on the day of the

1917   primary, election, or runoff, the person shall execute a sworn statement, witnessed by the

1918   poll official, stating that he or she is unable to vote at his or her correct polling place prior

1919   to the closing of the polls and giving the reason therefor.  The form of the provisional ballot

1920   voting certificate shall be prescribed by the Secretary of State.  The person shall also

1921   present the identification required by Code Section 21-2-417."


1922                              **SECTION 35.**

1923   Said chapter is further amended by revising Code Section 21-2-419, relating to validation of

1924   provisional ballots and reporting to Secretary of State, as follows:

1925   "21-2-419.

1926   (a)  A person shall cast a provisional ballot on the same type of ballot that is utilized by the

1927   county or municipality.  Such provisional ballot shall be sealed in double envelopes as

1928   provided in Code Section 21-2-384 and shall be deposited by the person casting such ballot

1929   in a secure, sealed ballot box.

1930   (b)  At the earliest time possible after the casting of a provisional ballot, but no later than

1931   the day after the primary or election in which such provisional ballot was cast, the board

1932   of registrars of the county or municipality, as the case may be, shall be notified by the
1933   election superintendent that provisional ballots were cast in the primary or election and the
1934   registrars shall be provided with the documents completed by the person casting the
1935   provisional ballot as provided in Code Section 21-2-418.  Provisional ballots shall be
1936   securely maintained by the election superintendent until a determination has been made
1937   concerning their status.  The board of registrars shall immediately examine the information
1938   contained on such documents and make a good faith effort to determine whether the person
1939   casting the provisional ballot was entitled to vote in the primary or election.  Such good
1940   faith effort shall include a review of all available voter registration documentation,
1941   including registration information made available by the electors themselves and
1942   documentation of modifications or alterations of registration data showing changes to an
1943   elector's registration status.  Additional sources of information may include, but are not
1944   limited to, information from the Department of Driver Services, Department of Family and
1945   Children Services, Department of Natural Resources, public libraries, or any other agency
1946   of government including, but not limited to, other county election and registration offices.
1947   (c)(1)  If the registrars determine after the polls close, but not later than three days
1948   following the primary or election, that the person casting the provisional ballot timely
1949   registered to vote and was eligible and entitled to vote in the precinct in which he or she
1950   voted in such primary or election, the registrars shall notify the election superintendent
1951   and the provisional ballot shall be counted and included in the county's or municipality's
1952   certified election results.
1953   (2) If the registrars determine after the polls close, but not later than three days following
1954   the primary or election, that the person voting the provisional ballot timely registered and
1955   was eligible and entitled to vote in the primary or election but voted in the wrong
1956   precinct, then the board of registrars shall notify the election superintendent only if such
1957   person voted between the hours of 5:00 P.M. and the regular time for the closing of the
1958   polls on the day of the primary, election, or runoff and provided the sworn statement

1959  required by subsection (b) of Code Section 21-2-418.  The superintendent shall count
1960  such person's votes which were cast for candidates in those races for which the person
1961  was entitled to vote but shall not count the votes cast for candidates in those races in
1962  which such person was not entitled to vote.  The superintendent shall order the proper
1963  election official at the tabulating center or precinct to prepare an accurate duplicate ballot
1964  containing only those votes cast by such person in those races in which such person was
1965  entitled to vote for processing at the tabulating center or precinct, which shall be verified
1966  in the presence of a witness.  Such duplicate ballot shall be clearly labeled with the word
1967  'Duplicate,' shall bear the designation of the polling place, and shall be given the same
1968  serial number as the original ballot.  The original ballot shall be retained and the sworn
1969  statement required by subsection (b) of Code Section 21-2-418 shall be transmitted to the
1970  Secretary of State with the certification documents required by paragraph (4) of
1971  subsection (a) of Code Section 21-2-497 and such statement shall be reviewed by the
1972  State Election Board.
1973  (3) If the registrars determine that the person casting the provisional ballot did not timely
1974  register to vote or was not eligible or entitled to vote in the precinct in which he or she
1975  voted in such primary or election or shall be unable to determine within three days
1976  following such primary or election whether such person timely registered to vote and was
1977  eligible and entitled to vote in such primary or election, the registrars shall so notify the
1978  election superintendent and such ballot shall not be counted.  The election superintendent
1979  shall mark or otherwise document that such ballot was not counted and shall deliver and
1980  store such ballots with all other ballots and election materials as provided in Code
1981  Section 21-2-500.
1982  (d)(1) At the earliest time possible after a determination is made regarding a provisional
1983  ballot, the board of registrars shall notify in writing those persons whose provisional
1984  ballots were not counted that their ballots were not counted because of the inability of the
1985  registrars to verify that the persons timely registered to vote or other proper reason.  The

1986    registrars shall process the official voter registration form completed by such persons

1987    pursuant to Code Section 21-2-418 and shall add such persons to the electors list if found

1988    qualified.

1989    (2)  At the earliest time possible after a determination is made regarding a provisional

1990    ballot, the board of registrars shall notify in writing those electors who voted in the wrong

1991    precinct and whose votes were partially counted of their correct precinct.

1992    (e)  The board of registrars shall complete a report in a form designated by the Secretary

1993    of State indicating the number of provisional ballots cast and counted in the primary or

1994    election."


1995                                      **SECTION 36.**

1996    Said chapter is further amended in Part 1 of Article 11, relating to general provisions

1997    regarding preparation for and conduct of primaries and elections, by adding new Code

1998    sections to read as follows:

1999    "21-2-420.

2000    (a)  After the time for the closing of the polls and the last elector voting, the poll officials

2001    in each precinct shall complete the required accounting and related documentation for the

2002    precinct and shall advise the election superintendent of the total number of ballots cast at

2003    such precinct and the total number of provisional ballots cast.  The chief manager and at

2004    least one assistant manager shall post a copy of the tabulated results for the precinct on the

2005    door of the precinct and then immediately deliver all required documentation and election

2006    materials to the election superintendent.  The election superintendent shall then ensure that

2007    such ballots are processed, counted, and tabulated as soon as possible and shall not cease

2008    such count and tabulation until all such ballots are counted and tabulated.

2009    (b)  The election superintendent shall ensure that each precinct notifies the election

2010    superintendent of the number of ballots cast and number of provisional ballots cast as soon

2011    as possible after the time for the closing of the polls and the last elector votes.  The election

2012  superintendent shall post such information publicly.  The State Election Board shall
2013  promulgate rules and regulations regarding how such information shall be publicly posted
2014  to ensure transparency, accuracy, and security.

2015  21-2-421.

2016  (a)  As soon as possible but not later than 10:00 P.M. following the close of the polls on
2017  the day of a primary, election, or runoff, the election superintendent shall report to the
2018  Secretary of State and post in a prominent public place the following information:

2019      (1)  The number of ballots cast at the polls on the day of the primary, election, or runoff,
2020      including provisional ballots cast;

2021      (2)  The number of ballots cast at advance voting locations during the advance voting
2022      period for the primary, election, or runoff; and

2023      (3)  The total number of absentee ballots returned to the board of registrars by the
2024      deadline to receive such absentee ballots on the day of the primary, election, or runoff.

2025  (b)  Upon the completion of the report provided for in subsection (a) of this Code section,
2026  the election superintendent shall compare the total number of ballots received as reported
2027  in subsection (a) of this Code section and the counting of the ballots in the primary,
2028  election, or runoff minus any rejected and uncured absentee ballots, uncounted provisional
2029  ballots, and any other uncounted ballots, with the total number of ballots cast in the
2030  primary, election, or runoff.  The results of such comparison and all explanatory materials
2031  shall be reported to the Secretary of State.  The reason for any discrepancy shall be fully
2032  investigated and reported to the Secretary of State."

2033                                 **SECTION 37.**
2034  Said chapter is further amended by revising subsections (a) and (d) of Code
2035  Section 21-2-437, relating to procedure as to count and return of votes generally and void
2036  ballots, as follows:

2037    "(a)  After the polls close and as soon as all the ballots have been properly accounted for

2038    and those outside the ballot box as well as the voter's certificates, numbered list of voters,

2039    and electors list have been sealed, the poll officers shall open the ballot box and take

2040    therefrom all ballots contained therein.  In primaries in which more than one ballot box is

2041    used, any ballots or stubs belonging to another party holding its primary in the same polling

2042    place shall be returned to the ballot box for the party for which they were issued.  In

2043    primaries, separate tally and return sheets shall be prepared for each party, and separate

2044    poll officers shall be designated by the chief manager to count and tally each party's ballot.

2045    Where the same ballot box is being used by one or more parties, the ballots and stubs shall

2046    first be divided by party before being tallied and counted.  The ballots shall then be counted

2047    one by one and a record made of the total number.  Then the chief manager, together with

2048    such assistant managers and other poll officers as the chief manager may designate, under

2049    the scrutiny of one of the assistant managers and in the presence of the other poll officers,

2050    shall read aloud the names of the candidates marked or written upon each ballot, together

2051    with the office for which the person named is a candidate, and the answers contained on

2052    the ballots to the questions submitted, if any; and the other assistant manager and clerks

2053    shall carefully enter each vote as read and keep account of the same in ink on a sufficient

2054    number of tally papers, all of which shall be made at the same time.  All ballots, after being

2055    removed from the box, shall be kept within the unobstructed view of all persons in the

2056    voting room until replaced in the box.  No person, while handling the ballots, shall have

2057    in his or her hand any pencil, pen, stamp, or other means of marking or spoiling any ballot.

2058    The poll officers shall immediately proceed to canvass and compute the votes cast and shall

2059    not adjourn or postpone the canvass or computation until it shall have been fully

2060    completed~~, except that, in the discretion of the superintendent, the poll officers may stop~~

2061    ~~the counting after all contested races and questions are counted, provided that the results~~

2062    ~~of these contested races and questions are posted for the information of the public outside~~

2063   ~~the polling place and the ballots are returned to the ballot box and deposited with the~~
2064   ~~superintendent until counting is resumed on the following day.~~"

2065   "(d)  Any ballot marked so as to identify the voter shall be void and not counted, except a
2066   ballot cast by a challenged elector whose name appears on the electors list; such challenged
2067   vote shall be counted as prima facie valid but may be voided in the event of an election
2068   contest.  Any ballot marked by anything but pen or pencil shall be void and not counted.
2069   Any erasure, mutilation, or defect in the vote for any candidate shall render void the vote
2070   for such candidate but shall not invalidate the votes cast on the remainder of the ballot, if
2071   otherwise properly marked.  If an elector shall mark his or her ballot for more persons for
2072   any nomination or office than there are candidates to be voted for such nomination or
2073   office, or if, for any reason, it may be impossible to determine his or her choice for any
2074   nomination or office, his or her ballot shall not be counted for such nomination or office;
2075   but the ballot shall be counted for all nominations or offices for which it is properly
2076   marked.  Unmarked ballots or ballots improperly or defectively marked so that the whole
2077   ballot is void shall be set aside and shall be preserved with other ballots.  In primaries,
2078   votes cast for candidates who have died, withdrawn, or been disqualified shall be void and
2079   shall not be counted.  <u>Except as provided in subsection (g) of Code Section 21-2-134</u>
2080   <u>regarding nonpartisan elections, in</u> ~~In~~ elections, votes for candidates who have died or been
2081   disqualified shall be void and shall not be counted."

2082                                    **SECTION 38.**
2083   Said chapter is further amended by revising subsection (a) of Code Section 21-2-438, relating
2084   to ballots identifying voter, not marked, or improperly marked declared void, as follows:
2085   "(a)  Any ballot marked so as to identify the voter shall be void and not counted, except a
2086   ballot cast by a challenged elector whose name appears on the electors list; such challenged
2087   vote shall be counted as prima facie valid but may be voided in the event of an election
2088   contest.  Any ballot marked by anything but pen or pencil shall be void and not counted.

2089  Any erasure, mutilation, or defect in the vote for any candidate shall render void the vote

2090  for such candidate but shall not invalidate the votes cast on the remainder of the ballot, if

2091  otherwise properly marked.  If an elector shall mark his or her ballot for more persons for

2092  any nomination or office than there are candidates to be voted for such nomination or

2093  office, or if, for any reason, it may be impossible to determine his or her choice for any

2094  nomination or office, his or her ballot shall not be counted for such nomination or office;

2095  but the ballot shall be counted for all nominations or offices for which it is properly

2096  marked.  Ballots not marked or improperly or defectively marked so that the whole ballot

2097  is void, shall be set aside and shall be preserved with the other ballots.  In primaries, votes

2098  cast for candidates who have died, withdrawn, or been disqualified shall be void and shall

2099  not be counted.  Except as provided in subsection (g) of Code Section 21-2-134 regarding

2100  nonpartisan elections, in In elections, votes for candidates who have died or been

2101  disqualified shall be void and shall not be counted."

2102                                      **SECTION 38A.**

2103  Said chapter is further amended by revising subsection (a) of Code Section 21-2-480, relating

2104  to caption for ballots, party designations, and form and arrangement, as follows:

2105  "(a)  At the top of each ballot for an election in a precinct using optical scanning voting

2106  equipment shall be printed in prominent type the words 'OFFICIAL BALLOT,' followed

2107  by the name and designation of the precinct for which it is prepared and the name and date

2108  of the election."

2109                                      **SECTION 38B.**

2110  Said chapter is further amended by revising Code Section 21-2-482, relating to absentee

2111  ballots for precincts using optical scanning voting equipment, as follows:

2112  "21-2-482.

2113    Ballots in a precinct using optical scanning voting equipment for voting by absentee
2114    electors shall be prepared sufficiently in advance by the superintendent and shall be
2115    delivered to the board of registrars as provided in Code Section 21-2-384.  Such ballots
2116    shall be marked 'Official Absentee Ballot' and shall be in substantially the form for ballots
2117    required by Article 8 of this chapter, except that in counties or municipalities using voting
2118    machines, direct recording electronic (DRE) units, or ballot scanners, the ballots may be
2119    in substantially the form for the ballot labels required by Article 9 of this chapter or in such
2120    form as will allow the ballot to be machine tabulated.  Every such ballot shall have printed
2121    on the face thereof the following:
2122      'I understand that the offer or acceptance of money or any other object of value to vote
2123      for any particular candidate, list of candidates, issue, or list of issues included in this
2124      election constitutes an act of voter fraud and is a felony under Georgia law.'
2125    The form for either ballot shall be determined and prescribed by the Secretary of State <u>and</u>
2126    <u>shall have printed at the top the name and designation of the precinct</u>."


2127                                **SECTION 39.**

2128    Said chapter is further amended by revising subsection (f) of Code Section 21-2-483, relating
2129    to counting of ballots, public accessibility to tabulating center and precincts, execution of
2130    ballot recap forms, and preparation of duplicate ballots, as follows:

2131    "(f)  If it appears that a ballot is so torn, bent, or otherwise defective that it cannot be
2132    processed by the tabulating machine, the superintendent, in his or her discretion, may order
2133    ~~the proper election official at the tabulating center or precinct~~ <u>a duplication panel</u> to prepare
2134    a true duplicate copy for processing ~~with the ballots of the same polling place, which shall~~
2135    ~~be verified in the presence of a witness~~.  <u>In a partisan election, the duplication panel shall</u>
2136    <u>be composed of the election superintendent or a designee thereof and one person appointed</u>
2137    <u>by the county executive committee of each political party having candidates whose names</u>
2138    <u>appear on the ballot for such election, provided that, if there is no organized county</u>

2139   executive committee for a political party, the person shall be appointed by the state
2140   executive committee of the political party.  In a nonpartisan election or an election
2141   involving only the presentation of a question to the electors, the duplication panel shall be
2142   composed of the election superintendent or a designee thereof and two electors of the
2143   county or municipality.  In the case of a nonpartisan county or municipal election or an
2144   election involving only the presentation of a question to the electors, the two elector
2145   members of the panel shall be appointed by the chief judge of the superior court of the
2146   county or municipality in which the election is held.  In the case of a municipality which
2147   is located in more than one county, the two elector members of the panel shall be appointed
2148   by the chief judge of the superior court of the county in which the city hall of the
2149   municipality is located. The election superintendent may create multiple duplication panels
2150   to handle the processing of such ballots more efficiently.  All duplicate ballots shall be
2151   clearly labeled by the word 'duplicate,' shall bear the designation of the polling place, and
2152   shall ~~be given the same serial number as the defective ballot~~ contain a unique number that
2153   will allow such duplicate ballot to be linked back to the original ballot.  The defective
2154   ballot shall be retained."

2155                               **SECTION 40.**
2156   Said chapter is further amended by revising Code Section 21-2-492, relating to computation
2157   and canvassing of returns, notice of when and where returns will be computed and canvassed,
2158   blank forms for making statements of returns, and swearing of assistants, as follows:
2159   "21-2-492.
2160   The superintendent shall arrange for the computation and canvassing of the returns of votes
2161   cast at each primary and election at his or her office or at some other convenient public
2162   place at the county seat or municipality following the close of the polls on the day of such
2163   primary or election with accommodations for those present insofar as space permits.  An
2164   interested candidate or his or her representative shall be permitted to keep or check his or

2165    her own computation of the votes cast in the several precincts as the returns from the same

2166    are read, as directed in this article.  The superintendent shall give at least one week's notice

2167    prior to the primary or election by publishing same in a conspicuous place in the

2168    superintendent's office, of the ~~time and~~ place ~~when and~~ where he or she will commence and

2169    hold his or her sessions for the computation and canvassing of the returns; and he or she

2170    shall keep copies of such notice posted in his or her office during such period.  The

2171    superintendent shall procure a sufficient number of blank forms of returns made out in the

2172    proper manner and headed as the nature of the primary or election may require, for making

2173    out full and fair statements of all votes which shall have been cast within the county or any

2174    precinct therein, according to the returns from the several precincts thereof, for any person

2175    voted for therein, or upon any question voted upon therein.  The assistants of the

2176    superintendent in the computation and canvassing of the votes shall be first sworn by the

2177    superintendent to perform their duties impartially and not to read, write, count, or certify

2178    any return or vote in a false or fraudulent manner."


2179                                      **SECTION 41.**

2180    Said chapter is further amended by revising subsections (a) and (k) of Code

2181    Section 21-2-493, relating to computation, canvassing, and tabulation of returns,

2182    investigation of discrepancies in vote counts, recount procedure, certification of returns, and

2183    change in returns, and adding a new subsection to read as follows:

2184    "(a)  The superintendent shall, ~~at or before 12:00 Noon~~ after the close of the polls on the

2185    day ~~following the~~ of a primary or election, at his or her office or at some other convenient

2186    public place at the county seat or in the municipality, of which due notice shall have been

2187    given as provided by Code Section 21-2-492, publicly commence the computation and

2188    canvassing of the returns and continue ~~the same~~ until all absentee ballots received by the

2189    close of the polls, including those cast by advance voting, and all ballots cast on the day

2190    of the primary or election have been counted and tabulated and the results of such

2191   tabulation released to the public and, then, continuing with provisional ballots as provided

2192   in Code Sections 21-2-418 and 21-2-419 and those absentee ballots as provided in

2193   subparagraph (a)(1)(G) of Code Section 21-2-386 from day to day until completed.  For

2194   this purpose, the superintendent may organize his or her assistants into sections, each of

2195   ~~which~~ whom may simultaneously proceed with the computation and canvassing of the

2196   returns from various precincts of the county or municipality in the manner provided by this

2197   Code section.    Upon the completion of such computation and canvassing, the

2198   superintendent shall tabulate the figures for the entire county or municipality and sign,

2199   announce, and attest the same, as required by this Code section."

2200   "(j.1)  The Secretary of State shall create a pilot program for the posting of digital images

2201   of the scanned paper ballots created by the voting system.

2202   (k)   As the returns from each precinct are read, computed, and found to be correct or

2203   corrected as aforesaid, they shall be recorded on the blanks prepared for the purpose until

2204   all the returns from the various precincts which are entitled to be counted shall have been

2205   duly recorded; then they shall be added together, announced, and attested by the assistants

2206   who made and computed the entries respectively and shall be signed by the superintendent.

2207   The consolidated returns shall then be certified by the superintendent in the manner

2208   required by this chapter.  Such returns shall be certified by the superintendent not later than

2209   5:00 P.M. on the ~~second Friday~~ Monday following the date on which such election was

2210   held and such returns shall be immediately transmitted to the Secretary of State~~; provided,~~

2211   ~~however, that such certification date may be extended by the Secretary of State in his or~~

2212   ~~her discretion if necessary to complete a precertification audit as provided in Code Section~~

2213   ~~21-2-498~~."


2214                                   **SECTION 42.**

2215   Said chapter is further amended by revising Code Section 21-2-501, relating to number of

2216   votes required for election, as follows:

2217   "21-2-501.

2218   (a)(1)   Except as otherwise provided in this Code section, no candidate shall be

2219   nominated for public office in any primary or special primary or elected to public office

2220   in any election or special election or shall take or be sworn into such elected public office

2221   unless such candidate shall have received a majority of the votes cast to fill such

2222   nomination or public office.  In instances where no candidate receives a majority of the

2223   votes cast, a run-off primary, special primary runoff, run-off election, or special election

2224   runoff between the candidates receiving the two highest numbers of votes shall be held.

2225   Unless such date is postponed by a court order, such run-off primary, special primary

2226   runoff, run-off election, or special election runoff shall be held as provided in this

2227   subsection.

2228   (2) In the case of a runoff from a general primary or a special primary or special election

2229   held in conjunction with a general primary, the runoff shall be held on the Tuesday of the

2230   ninth week following such general primary.

2231   (3) In the case of a runoff from a general election for a federal office or a runoff from a

2232   special primary or special election for a federal office held in conjunction with a general

2233   election, the runoff shall be held on the Tuesday of the ninth week following such general

2234   election.

2235   (4) In the case of a runoff from a general election for an office other than a federal office

2236   or a runoff from a special primary or special election for an office other than a federal

2237   office held in conjunction with a general election, the runoff shall be held on the

2238   twenty-eighth day after the day of holding the preceding general or special primary or

2239   general or special election.

2240   (5) In the case of a runoff from a special primary or special election for a federal office

2241   not held in conjunction with a general primary or general election, the runoff shall be held

2242   on the Tuesday of the ninth week following such special primary or special election.

2243   ~~(6)  In the case of a runoff from a special primary or special election for an office other~~
2244   ~~than a federal office not held in conjunction with a general primary or general election,~~
2245   ~~the runoff shall be held on the twenty-eighth day after the day of holding the preceding~~
2246   ~~special primary or special election; provided, however, that, if such runoff is from a~~
2247   ~~special primary or special election held in conjunction with a special primary or special~~
2248   ~~election for a federal office and there is a runoff being conducted for such federal office,~~
2249   ~~the runoff from the special primary or special election conducted for such other office~~
2250   ~~may be held in conjunction with the runoff for the federal office.~~
2251   ~~(7)~~(2)  If any candidate eligible to be in a runoff withdraws, dies, or is found to be
2252   ineligible, the remaining candidates receiving the two highest numbers of votes shall be
2253   the candidates in the runoff.
2254   ~~(8)~~(3)  The candidate receiving the highest number of the votes cast in such run-off
2255   primary, special primary runoff, run-off election, or special election runoff to fill the
2256   nomination or public office sought shall be declared the winner.
2257   ~~(9)~~(4)  The name of a write-in candidate eligible for election in a runoff shall be printed
2258   on the election or special election run-off ballot in the independent column.
2259   ~~(10)~~(5)  The run-off primary, special primary runoff, run-off election, or special election
2260   runoff shall be a continuation of the primary, special primary, election, or special election
2261   for the particular office concerned.  Only the electors who ~~were~~ are duly registered to
2262   vote and not subsequently deemed disqualified to vote in the ~~primary, special primary,~~
2263   ~~election, or special election~~ runoff for candidates for that particular office shall be entitled
2264   to vote therein, and only those votes cast for the persons designated as candidates in such
2265   run-off primary, special primary runoff, run-off election, or special election runoff shall
2266   be counted in the tabulation and canvass of the votes cast.  No elector shall vote in a
2267   run-off primary or special primary runoff in violation of Code Section 21-2-224.
2268   (b)  For the purposes of this subsection, the word 'plurality' shall mean the receiving by one
2269   candidate alone of the highest number of votes cast.  If the municipal charter or ordinances

2270   of a municipality as now existing or as amended subsequent to September 1, 1968, provide

2271   that a candidate may be nominated or elected by a plurality of the votes cast to fill such

2272   nomination or public office, such provision shall prevail.   Otherwise, no municipal

2273   candidate shall be nominated for public office in any primary or elected to public office in

2274   any election unless such candidate shall have received a majority of the votes cast to fill

2275   such nomination or public office.

2276   (c)  In instances in which no municipal candidate receives a majority of the votes cast and

2277   the municipal charter or ordinances do not provide for nomination or election by a plurality

2278   vote, a run-off primary or election shall be held between the candidates receiving the two

2279   highest numbers of votes.  Such runoff shall be held on the twenty-eighth day after the day

2280   of holding the first primary or election, unless such run-off date is postponed by court

2281   order~~.; provided, however, that, in the case of a runoff from a municipal special election~~

2282   ~~that is held in conjunction with a special election for a federal office and not in conjunction~~

2283   ~~with a general primary or general election, the municipality may conduct such runoff from~~

2284   ~~such municipal special election on the date of the special election runoff for the federal~~

2285   ~~office. Only the electors entitled to vote in the first primary or election shall be entitled to~~

2286   ~~vote in any run-off primary or election resulting therefrom; provided, however, that no~~ No

2287   elector shall vote in a run-off primary in violation of Code Section 21-2-216.  The run-off

2288   primary or election shall be a continuation of the first primary or election, and only those

2289   votes cast for the candidates receiving the two highest numbers of votes in the first primary

2290   or election shall be counted.  No write-in votes may be cast in such a primary, run-off

2291   primary, or run-off election.  If any candidate eligible to be in a runoff withdraws, dies, or

2292   is found to be ineligible, the remaining candidates receiving the two highest numbers of

2293   votes shall be the candidates in such runoff.  The municipal candidate receiving the highest

2294   number of the votes cast in such run-off primary or run-off election to fill the nomination

2295   or public office sought shall be declared the winner.  The municipality shall give written

2296   notice to the Secretary of State of such runoff as soon as such municipality certifies the

2297   preceding primary, special primary, election, or special election.

2298   (d)  The name of a municipal write-in candidate eligible for election in a municipal runoff

2299   shall be printed on the municipal run-off election ballot in the independent column.

2300   (e)  In all cities having a population in excess of 100,000 according to the United States

2301   decennial census of 1980 or any future such census, in order for a municipal candidate to

2302   be nominated for public office in any primary or elected to public office in any municipal

2303   election, he or she must receive a majority of the votes cast.

2304   (f)  Except for presidential electors, to be elected to public office in a general election, a

2305   candidate must receive a majority of the votes cast in an election to fill such public office.

2306   To be elected to the office of presidential electors, no slate of candidates shall be required

2307   to receive a majority of the votes cast, but that slate of candidates shall be elected to such

2308   office which receives the highest number of votes cast."


2309                                          **SECTION 43.**

2310   Said chapter is further amended by revising Code Section 21-2-540, relating to conduct of

2311   special elections generally, as follows:

2312   "21-2-540.

2313   (a)(1)  Every special primary and special election shall be held and conducted in all

2314   respects in accordance with the provisions of this chapter relating to general primaries

2315   and general elections; and the provisions of this chapter relating to general primaries and

2316   general elections shall apply thereto insofar as practicable and as not inconsistent with

2317   any other provisions of this chapter.  All special primaries and special elections held at

2318   the time of a general primary, as provided by Code Section 21-2-541, shall be conducted

2319   by the poll officers by the use of the same equipment and facilities, insofar as practicable,

2320   as are used for such general primary.  All special primaries and special elections held at

2321   the time of a general election, as provided by Code Section 21-2-541, shall be conducted

2322   by the poll officers by the use of the same equipment and facilities, ~~so far~~ insofar as

2323   practicable, as are used for such general election.

2324   (2)  If a vacancy occurs in a partisan office to which the Governor is authorized to

2325   appoint an individual to serve until the next general election, a special primary shall

2326   precede the special election.

2327   (b)  At least 29 days shall intervene between the call of a special primary and the holding

2328   of same, and at least 29 days shall intervene between the call of a special election and the

2329   holding of same.  The period during which candidates may qualify to run in a special

2330   primary or a special election shall remain open for a minimum of two and one-half days.

2331   Special primaries and special elections which are to be held in conjunction with the

2332   presidential preference primary, a state-wide general primary, or state-wide general

2333   election shall be called at least 90 days prior to the date of such presidential preference

2334   primary, state-wide general primary, or state-wide general election; provided, however, that

2335   this requirement shall not apply to special primaries and special elections held on the same

2336   date as such presidential preference primary, state-wide general primary, or state-wide

2337   general election but conducted completely separate and apart from such state-wide general

2338   primary or state-wide general election using different ballots or voting equipment,

2339   facilities, poll workers, and paperwork.  ~~Notwithstanding any provision of this subsection~~

2340   ~~to the contrary, special elections which are to be held in conjunction with the state-wide~~

2341   ~~general primary or state-wide general election in 2014 shall be called at least 60 days prior~~

2342   ~~to the date of such state-wide general primary or state-wide general election.~~

2343   (c)(1)  Notwithstanding any other provision of law to the contrary, a special primary or

2344   special election to fill a vacancy in a county or municipal office shall be held only on one

2345   of the following dates which is at least 29 days after the date of the call for the special

2346   election:

2347   (A)  In odd-numbered years, any such special primary or special election shall only be

2348   held on:

2349        (i)  The third Tuesday in March;

2350        (ii)  The third Tuesday in June;

2351        (iii)  The third Tuesday in September; or

2352        (iv)  The Tuesday after the first Monday in November; and

2353    (B)  In even-numbered years, any such special primary or special election shall only be

2354    held on:

2355        (i)  The third Tuesday in March; provided, however, that in the event that a special

2356        primary or special election is to be held under this provision in a year in which a

2357        presidential preference primary is to be held, then any such special primary or special

2358        election shall be held on the date of and in conjunction with the presidential

2359        preference primary;

2360        (ii)  The date of the general primary; or

2361        (iii)  The Tuesday after the first Monday in November;

2362    provided, however, that, in the event that a special primary or special election to fill a

2363    federal or state office on a date other than the dates provided in this paragraph has been

2364    scheduled and it is possible to hold a special primary or special election to fill a vacancy

2365    in a county, municipal, or school board office in conjunction with such special primary

2366    or special election to fill a federal or state office, the special primary or special election

2367    to fill such county, municipal, or school board office may be held on the date of and in

2368    conjunction with such special primary or special election to fill such federal or state

2369    office, provided all other provisions of law regarding such primaries and elections are

2370    met.

2371    (2)  Notwithstanding any other provision of law to the contrary, a special election to

2372    present a question to the voters shall be held only on one of the following dates which is

2373    at least 29 days after the date of the call for the special election:

2374        (A)  In odd-numbered years, any such special election shall only be held on the third

2375        Tuesday in March or on the Tuesday after the first Monday in November; and

2376     (B)  In even-numbered years, any such special election shall only be held on:

2377       (i)  The date of and in conjunction with the presidential preference primary if one is

2378       held that year;

2379       (ii)  The date of the general primary; or

2380       (iii)  The Tuesday after the first Monday in November.

2381     (3)  The provisions of this subsection shall not apply to:

2382     (A)  Special elections held pursuant to Chapter 4 of this title, the 'Recall Act of 1989,'

2383     to recall a public officer or to fill a vacancy in a public office caused by a recall

2384     election; and

2385     (B)  Special primaries or special elections to fill vacancies in federal or state public

2386     offices.

2387 (d)  Except as otherwise provided by this chapter, the superintendent of each county or

2388 municipality shall publish the call of the <u>special primary or</u> special election.

2389 (e)<u>(1)</u> Candidates in special elections for partisan offices <u>that are not preceded by special</u>

2390 <u>primaries</u> shall be listed alphabetically on the ballot and may choose to designate on the

2391 ballot their party affiliation.  The party affiliation selected by a candidate shall not be

2392 changed following the close of qualifying.

2393 <u>(2)  Candidates in special primaries shall be listed alphabetically on the ballot.</u>"


2394                              **SECTION 44.**

2395 Said chapter is further amended by revising subsection (b) of Code Section 21-2-541, relating

2396 to holding of special primary or election at time of general primary or election and inclusion

2397 of candidates and questions in special primary or election on ballot, as follows:

2398 "(b)  If the times specified for the closing of the registration list for a special primary or

2399 <u>special</u> election are the same as those for a general primary or <u>general</u> election, the

2400 candidates and questions in such special primary or <u>special</u> election shall be included on

2401 the ballot for such general primary or <u>general</u> election.  In such an instance, the name of

2402   the office and the candidates in such <u>special primary or</u> special election shall appear on the

2403   ballot in the position where such names would ordinarily appear if such contest was a

2404   general primary or <u>general</u> election."


2405                              **SECTION 45.**

2406   Said chapter is further amended by revising Code Section 21-2-542, relating to special

2407   election for United States senator vacancy and temporary appointment by Governor, as

2408   follows:

2409   "21-2-542.

2410   Whenever a vacancy shall occur in the representation of this state in the Senate of the

2411   United States, such vacancy shall be filled for the unexpired term by the vote of the electors

2412   of the state at <u>a special primary to be held at the time of the next general primary followed</u>

2413   <u>by</u> a special election to be held at the time of the next November state-wide general

2414   election, occurring at least 40 days after the occurrence of such vacancy; and it shall be the

2415   duty of the Governor to issue his or her proclamation for such <u>special primary and special</u>

2416   election.  Until such time as the vacancy shall be filled by an election as provided in this

2417   Code section, the Governor may make a temporary appointment to fill such vacancy."


2418                              **SECTION 46.**

2419   Said chapter is further amended in Article 14, relating to special elections and primaries

2420   generally and municipal terms of office, by adding a new Code section to read as follows:

2421   "<u>21-2-546.</u>

2422   <u>Notwithstanding any other law to the contrary, in each county in this state in which there</u>

2423   <u>is a civil and magistrate court established by local Act of the General Assembly, vacancies</u>

2424   <u>in the office of chief judge of such court caused by death, retirement, resignation, or</u>

2425   <u>otherwise shall be filled by the appointment of a qualified person by the Governor to serve</u>

2426  until a successor is duly elected and qualified and until January 1 of the year following the

2427  next general election which is more than six months following such person's appointment."


2428                            **SECTION 47.**

2429  Said chapter is further amended by revising subsection (a) of Code Section 21-2-568, relating

2430  to entry into voting compartment or booth while another voting, interfering with elector,

2431  inducing elector to reveal or revealing elector's vote, and influencing voter while assisting,

2432  as follows:

2433  "(a)  Any person who knowingly:

2434      (1)  Goes into the voting compartment or voting machine booth while another is voting

2435      or marks the ballot or registers the vote for another, except in strict accordance with this

2436      chapter;

2437      (2)  Interferes with any elector marking his or her ballot or registering his or her vote;

2438      (3)  Attempts to induce any elector ~~before depositing his or her ballot~~ to show how he or

2439      she marks or has marked his or her ballot; ~~or~~

2440      (4)  Discloses to anyone how another elector voted, without said elector's consent, except

2441      when required to do so in any legal proceeding; or

2442      (5)  Accepts an absentee ballot from an elector for delivery or return to the board of

2443      registrars except as authorized by subsection (a) of Code Section 21-2-385

2444  shall be guilty of a felony."


2445                            **SECTION 48.**

2446  Said chapter is further amended in Article 15, relating to miscellaneous offenses, by adding

2447  new Code sections to read as follows:

2448  "21-2-568.1.

2449  (a)  Except while providing authorized assistance in voting under Code Section 21-2-409

2450  and except for children authorized to be in the enclosed space under subsection (f) of Code

2451   Section 21-2-413, no person shall intentionally observe an elector while casting a ballot in

2452   a manner that would allow such person to see for whom or what the elector is voting.

2453   (b)  Any person who violates the provisions of subsection (a) of this Code section shall be

2454   guilty of a felony.


2455   21-2-568.2.

2456   (a)  It shall be illegal for any person to use photographic or other electronic monitoring or

2457   recording devices, cameras, or cellular telephones, except as authorized by law, to:

2458   (1)  Photograph or record the face of an electronic ballot marker while a ballot is being

2459   voted or while an elector's votes are displayed on such electronic ballot marker; or

2460   (2)  Photograph or record a voted ballot.

2461   (b)  Any person who violates subsection (a) of this Code section shall be guilty of a

2462   misdemeanor."


2463                                        **SECTION 49.**

2464   Chapter 35 of Title 36 of the Official Code of Georgia Annotated, relating to home rule

2465   powers, is amended by revising subsection (a) of Code Section 36-35-4.1, relating to

2466   reapportionment of election districts for municipal elections, as follows:

2467   "(a)  Subject to the limitations provided by this Code section, the governing authority of

2468   any municipal corporation is authorized to reapportion the election districts from which

2469   members of the municipal governing authority are elected following publication of the

2470   United States decennial census of 1980 or any future such census.  Such reapportionment

2471   of districts shall be effective for the election of members to the municipal governing

2472   authority at the next regular general municipal election following the publication of the

2473   decennial census; provided, however, that, if the publication of the decennial census occurs

2474   within 120 days of the next general or special municipal election, such reapportionment of

2475   districts shall be effective for any subsequent special election and the subsequent general
2476   municipal election."


2477                                **SECTION 50.**

2478   Title 50 of the Official Code of Georgia Annotated, relating to state government, is amended
2479   by revising subsection (b) of Code Section 50-13-4, relating to procedural requirements for
2480   adoption, amendment, or repeal of rules, emergency rules, limitation on action to contest
2481   rule, and legislative override, as follows:

2482   "(b)  If any agency finds that an imminent peril to the public health, safety, or welfare,
2483   including but not limited to, summary processes such as quarantines, contrabands, seizures,
2484   and the like authorized by law without notice, requires adoption of a rule upon fewer than
2485   30 days' notice and states in writing its reasons for that finding, it may proceed without
2486   prior notice or hearing or upon any abbreviated notice and hearing that it finds practicable
2487   to adopt an emergency rule.  Any such rule adopted relative to a public health emergency
2488   shall be submitted as promptly as reasonably practicable to the House of Representatives
2489   and Senate Committees on Judiciary, provided that any such rule adopted relative to a state
2490   of emergency by the State Election Board shall be submitted as soon as practicable but not
2491   later than 20 days prior to the rule taking effect.  Any emergency rule adopted by the State
2492   Election Board pursuant to the provisions of this subsection may be suspended upon the
2493   majority vote of the House of Representatives or Senate Committees on Judiciary within
2494   ten days of the receipt of such rule by the committees.  The rule may be effective for a
2495   period of not longer than 120 days but the adoption of an identical rule under paragraphs
2496   (1) and (2) of subsection (a) of this Code section is not precluded; provided, however, that
2497   such a rule adopted pursuant to discharge of responsibility under an executive order
2498   declaring a state of emergency or disaster exists as a result of a public health emergency,
2499   as defined in Code Section 38-3-3, shall be effective for the duration of the emergency or
2500   disaster and for a period of not more than 120 days thereafter."

2501 **SECTION 51.**

2502 Said title is further amended in Code Section 50-18-71, relating to right of access to public

2503 records, timing, fees, denial of requests, and impact of electronic records, by adding a new

2504 subsection to read as follows:

2505 "(k)  Scanned ballot images created by a voting system authorized by Chapter 2 of Title 21

2506 shall be public records subject to disclosure under this article."


2507 **SECTION 52.**

2508 (a)  Sections 21, 23, 25, 27, 28, and 29 of this Act shall become effective on July 1, 2021.

2509 (b)  All other sections of this Act shall become effective upon its approval by the Governor

2510 or upon its becoming law without such approval.


2511 **SECTION 53.**

2512 All laws and parts of laws in conflict with this Act are repealed.