E
X
H
I
B
I
T

E

Case 1:21-cv-02070-JPB   Document 134-5   Filed 08/24/23   Page 2 of 22
30(b)(6) Marilyn Marks                    May 11, 2023
Coalition for Good Governance v. Kemp, Brian

Page 1

1          IN THE UNITED STATES DISTRICT COURT

2          FOR THE NORTHERN DISTRICT OF GEORGIA

3                  ATLANTA DIVISION

4   COALITION FOR GOOD          )
    GOVERNANCE, et al.,         )
5                               )
         Plaintiffs,            )
6                               )CIVIL ACTION FILE NO.
    v.                          )1:21-CV-02070-JPB
7                               )
    BRIAN KEMP, Governor        )
8   of the State of Georgia,)
    in his official            )
9   capacity, et al.,          )
                               )
10       Defendants.           )

11      REMOTE VIDEOTAPED 30(B)(6) DEPOSITION OF

12          COALITION FOR GOOD GOVERNANCE

13                  THROUGH

14              MARILYN MARKS

15              May 11, 2023

16               9:30 a.m.

17

18      Robin K. Ferrill, CCR-B-1936, RPR

19

20

21

22

23

24

25

Case 1:21-cv-02070-JPB  Document 134-5  Filed 08/22/23  Page 3 of 14
30(b)(6) Marilyn Marks          May 11, 2023
Coalition for Good Governance v. Kemp, Brian

Page 38

1   you've already described, did you speak to anyone

2   currently associated with the coalition to prepare

3   for your testimony regarding topic Number 6?

4        A.   Nothing other than what we have already

5   described.

6        Q.   And similar question, did you speak to

7   anyone formerly associated with the coalition to

8   prepare for providing testimony regarding topic

9   Number 6?

10       A.   No.

11       Q.   And did the coalition consider ways to

12   continue engaging in the activities it discontinued

13   because of SB 202?

14       A.   Well, it was, I know, feasible.  There are

15   just only so many hours in a day, so, no.  So, no,

16   we -- there was no -- there was nothing we could do.

17   We don't have a budget to hire more people.

18       Q.   And so would it be fair to say that the

19   coalition did not identify any alternative ways to

20   continue engaging in those activities?

21       A.   I don't think that would be quite fair.  As

22   I say, many times, we have to pull way back from what

23   we should be doing and we might be able to maintain

24   some minimal activity, and that's the alternative as

25   opposed to completely giving it up.  We are diverting

Case 1:21-cv-02070-JPB   Document 134-5   Filed 08/22/23   Page 4 of 154
30(b)(6) Marilyn Marks                                    May 11, 2023
Coalition for Good Governance v. Kemp, Brian

Page 42

```
1        Q.   And it would be fair to say that after

2   SB 202, the coalition would still need to expend

3   resources educating voters, correct?

4             MR. BROWN:   She just answered that.

5        Q.   (By Mr. Weigel) I'll clarify.  That was

6   prior to SB 202.

7             I'm now asking after SB 202, will the

8   coalition still expend resources educating voters?

9        A.   Yes, but on topics that we would prefer to

10  work on, rather than on things like felony -- you

11  know, the chance of getting charged with a felony.

12  Yes, of course, we will spend time on voter education

13  but not on that topic, on preferred topics.

14       Q.   And you mentioned that while educating

15  voters -- and this might be a mischaracterization of

16  your testimony, so certainly feel free to correct my

17  description of it if it's wrong -- but the suggestion

18  that you have provided to voters is to essentially

19  not vote in person and pursue alternative means to

20  vote, correct?

21       A.   That's one that I mentioned.  That is one

22  alternate would be to vote by mail.  But if that is

23  not doable for them, as an example, what we would

24  tell the voter is:  Okay.  Find a time to vote that

25  is not crowded, you know, so that you won't
```

Case 1:21-cv-02070-JPB   Document 134-5   Filed 08/22/23   Page 5 of 22
30(b)(6) Marilyn Marks          May 11, 2023
Coalition for Good Governance v. Kemp, Brian

Page 43

1   inadvertently see someone's screen but be accused of

2   it.  You know, I have even told people, Go to vote

3   where you think that there are friendly --

4   particularly friendly poll workers, not grumpy poll

5   workers who may be looking to try to find a

6   violation.

7            You know, when you are voting, go to the

8   most private station that you can find, look down on

9   your way to that polling station.  When I mean

10  polling station, touchscreen machine.  Look down,

11  don't look around, particularly people who feel that

12  they may be targeted politically or by some kind of

13  personal vendetta someone may have or by the

14  Secretary of State's inspectors, investigators, et

15  cetera.  So, yes, those are the types of things that

16  we tell people in this one example of what we are

17  talking about about felony charge for observation of

18  a touchscreen.

19       Q.   And are there -- you mentioned that that's

20  one example.

21            What are other examples?

22       A.   You mean of the other types of voter

23  education that we would be doing?

24       Q.   As it relates specifically to SB 202.

25            MR. BROWN:  I object.  There's some

Case 1:21-cv-02070-JPB   Document 134-5   Filed 08/22/23   Page 6 of 22
30(b)(6) Marilyn Marks                              May 11, 2023
Coalition for Good Governance v. Kemp, Brian

Page 44

1      confusion over -- the question's whether you are

2      relating to a specific provision of the law,

3      such as the observation rule or the tally rule

4      or something else or the law in general.  And

5      y'all are talking past each other on that, I

6      think.

7      A.    I think so.  Yes, please clarify.

8            MR. WEIGEL:  Thank you.  Yes, thank you so

9      much for that clarification, Mr. Brown.

10     Q     (By Mr. Weigel) And again, to your

11     counsel's distinction that he is making, specific

12     voter education efforts similar to those that are

13     directed at the observation provision that the

14     coalition has participated in.

15     A.    Okay.  One that has come up often and

16     recently is the photography rule and photographing a

17     voted ballot.  Voters have told me how they are

18     confused by what the law says versus what the judge's

19     order was in terms of photographing a voted ballot.

20     Because there has been -- there have been different

21     interpretations by various counties as to what --

22     what the -- how much they are going to comply with

23     the judge's order.  And so I have had to talk to

24     voters about this and tell them, Be cautious because

25     I really do not know what your county is going to try

Case 1:21-cv-02070-JPB   Document 134-5   Filed 08/22/23   Page 7 of 34
30(b)(6) Marilyn Marks                                    May 11, 2023
Coalition for Good Governance v. Kemp, Brian

Page 45

1    to do.

2              So I have spent time doing that.  Also,

3    trying to educate voters as to what the judge's order

4    was, but not being able to assure them that the

5    county is going to follow the judge's order.

6    That's -- that is another example of time spent on

7    the provisions of SB 202.  Also, I have spent a good

8    bit of time on voters/poll watcher, monitor, public

9    observation of absentee ballot processing.  And the

10   rules, very confusing rules, involving that in

11   warning them about the tally rules, for example, and

12   the communication rules, if they are going to be

13   observing absentee ballot processing.  It's hard to

14   really educate, though, because the rules are so

15   confusing.

16       Q.   And aside from those that you have just

17   described, are there any other education activities

18   that the coalition participates in as it relates to

19   the specific provisions in SB 202 that are challenged

20   in this action?

21       A.   Sure, there are.  I'm giving you examples

22   off the top of my head.  But there's not a day that

23   goes by that we are not answering questions from a

24   voter that are directly or indirectly related to some

25   of the provisions of SB 202.  Sometimes it's voters,

Case 1:21-cv-02070-JPB   Document 134-5   Filed 08/22/23   Page 8 of 22
30(b)(6) Marilyn Marks                              May 11, 2023
Coalition for Good Governance v. Kemp, Brian

Page 48

1    re- -- distinctly remembering those two.

2         Q.    And so would it be fair to say that those

3    two webinars were right after SB 202 was passed?

4         A.    It wasn't too long after.  I just can't

5    tell you right now exactly when it was.

6         Q.    And again, this may just be reiterating

7    your testimony, but have there been any similar

8    events that the coalition has conducted since that

9    time related to the SB 202 provisions that are

10   challenged in this action?

11        A.    Not really recently, not in terms of

12   putting on something like a formal webinar.

13        Q.    Now we will go back and, again, jumping

14   around a little bit, but we will jump to topics 3

15   and 4.  I will be sharing my screen again.

16             Topic 3 is the organization's -- do you see

17   where I'm starting with topics 3 and 4, Ms. Marks?

18        A.    I do.

19        Q.    Okay.  And topic 3 is the organization's

20   mission and its exempt purpose since its founding to

21   the present and the activities it undertakes in

22   accordance with its mission and its exempt purpose.

23             Topic 4, the organization's organizational

24   structure, including individuals who have the

25   authority to make funding and resource allocation

Case 1:21-cv-02070-JPB   Document 134-5   Filed 08/22/23   Page 9 of 34
30(b)(6) Marilyn Marks                              May 11, 2023
Coalition for Good Governance v. Kemp, Brian

Page 49

1   decisions for the organization from January 1st, 2021

2   through the present generally and specifically as

3   related to the provisions of SB 202 challenged in

4   this action.

5           And Ms. Marks, you are the designated

6   witness for topics Numbers 3 and 4, correct?

7       A.   That's correct.

8       Q.   And did you review any documents

9   specifically in preparation -- again, aside from the

10  steps we've discussed previously -- in preparation

11  for providing testimony for topics 3 and 4?

12      A.   Not anything in addition to what we have

13  discussed.

14      Q.   And again, same questions.  Aside from what

15  we have already discussed before and ensuring that we

16  do not get into any privileged discussions that

17  you've had with your attorney, did you speak to

18  anyone currently associated with the coalition to

19  prepare for your testimony on these topics?

20      A.   No.

21      Q.   And did you speak to anyone formerly

22  associated with the coalition to prepare for

23  providing testimony on these topics?

24      A.   No.

25      Q.   And do you know the exempt purpose of the

Case 1:21-cv-02070-JPB   Document 134-5 Filed 08/22/23   Page 10 of 22
30(b)(6) Marilyn Marks                    May 11, 2023
Coalition for Good Governance v. Kemp, Brian

Page 50

1    coalition?

2         A.    I can't repeat it word for word off the top

3    of my head, but it's certainly on our form 990, that

4    explains the exempt purpose.  But it is to protect

5    constitutional rights of citizens, and we, I believe,

6    talk about in that exempt purpose specifically voting

7    rights issues, including voter privacy.

8         Q.    And what activities does the coalition --

9    strike that.  I'll take a step back.

10               How would you describe the coalition's

11   organizational structure?

12        A.    It -- in one word "thin."  We have a board

13   of directors that consists now of four individuals.

14   And I am on that board.  I spend all of my time as

15   the executive director.  One of the board members is

16   our accountant.  And we -- we really do not have any

17   full-time paid staff.  We do some contract work with

18   internal research analyst level people from time to

19   time.  But it's a very small organization.

20        Q.    And as far as the present organization

21   structure you just described, how long has that been

22   the organization structure for the coalition?

23        A.    Generally, since 2014.  We did have another

24   board member but she's recently passed away.

25        Q.    Sorry to hear that.

Case 1:21-cv-02070-JPB   Document 134-5   Filed 08/22/23   Page 11 of 62
30(b)(6) Marilyn Marks                                      May 11, 2023
Coalition for Good Governance v. Kemp, Brian

Page 74

```
 1   specifically for this topic?
 2        A.   No.
 3        Q.   And same question, did you discuss with
 4   anyone presently or formerly with the organization to
 5   prepare for providing testimony on this topic?
 6        A.   No.
 7        Q.   Does the organization have individual
 8   members?
 9        A.   Yes, we do.
10        Q.   And how does an individual become a member
11   of the organization?
12        A.   Generally, by saying to us that they want
13   to be a member.  It can be by telephone, e-mail is
14   generally the way that it happens.  Sometimes we go
15   out and recruit members and ask people to join us.
16        Q.   And specifically to that, how does that
17   process go, for going out and recruiting members?
18        A.   There is no, you know, go knock on the door
19   and sign this card kind of process.  It's much more
20   of an individual process where we decide we need help
21   with perhaps advocating to voters, advocating to a
22   local election board, et cetera, in a particular area
23   and begin to talk internally about who do we know in
24   that particular county who could help us expand our
25   work in that county.  It's more organic, not very
```

Case 1:21-cv-02070-JPB   Document 134-5   Filed 08/24/23   Page 12 of 22
30(b)(6) Marilyn Marks                          May 11, 2023
Coalition for Good Governance v. Kemp, Brian

Page 75

1    formalized.

2        Q.    So would it be fair, perhaps not fair, to

3    characterize that as a kind of case-by-case

4    engagement, as far as that goes?

5        A.    That's right.  That's what I'm calling

6    organic.  Case by case is a good way to say it as

7    well.

8        Q.    And what obligations do members have once

9    they become members?

10       A.    Unfortunately, they have no obligations.

11   There are no membership fees.  There are no duties

12   to -- to put in any number of volunteer hours.

13   There's no requirement to agree with us on any

14   particular policy.

15       Q.    And what benefits does the organization

16   offer its members?

17       A.    Well, we have talked about education on

18   various topics.  So we are offering voter education.

19   We -- as we've talked about, we do some amount of

20   lobbying with county election board, state election

21   board, legislators; and in that, we are representing

22   our members and often speaking for members who maybe

23   not -- are not comfortable for either political,

24   personal reasons, or just maybe a little bit timid.

25   So we are speaking for them.  And that is a benefit.

Case 1:21-cv-02070-JPB   Document 134-5   Filed 08/22/23   Page 13 of 22
30(b)(6) Marilyn Marks                                    May 11, 2023
Coalition for Good Governance v. Kemp, Brian

Page 76

1  We try to keep our members informed of pending

2  legislation, pending policy matters, those types --

3  those types of benefits.

4       Q.   And would it be fair to characterize those

5  benefits as available to both members and nonmembers

6  of the organization?

7       A.   Not really.  Certainly we would hope that

8  our work is beneficial to the entire public.  But if

9  a member calls me and says:  Marilyn, would you

10  prepare a memo to go to the Fulton County election

11  board regarding this particular topic, I am going to

12  be much more inclined to do it than if a random

13  person calls me and says -- I get lots of random

14  requests -- asking me to prepare something for the

15  Fulton County election board for them.  So, no, those

16  benefits are not available equally for members and

17  nonmembers.

18       Q.   And is there sort of kind of -- I'm trying

19  to figure out the best way to phrase this -- and

20  maybe using an example from earlier, which is similar

21  to the example you just provided, but we discussed

22  earlier the organization receiving a lot of calls

23  about, for example, the ballot observation provision

24  in SB 202.

25            Do you recall that testimony?

Case 1:21-cv-02070-JPB   Document 134-5   Filed 08/22/23   Page 14 of 22
30(b)(6) Marilyn Marks                              May 11, 2023
Coalition for Good Governance v. Kemp, Brian

Page 77

1      A.    Certainly.

2      Q.    So did all of those calls come from

3  members; did some come from nonmembers?

4            What was kind of the breakdown with that?

5      A.    You know what, I don't remember right now.

6  I couldn't tell you.  If it's -- I don't know.  Too

7  long ago.

8      Q.    And now we will move down to topic

9  Number 10.

10            I will share my screen again.

11      A.    All right.

12      Q.    Can you see my screen, Ms. Marks?

13      A.    Not quite yet, but it will pop up in a

14  moment.  Okay.  It's up now.

15      Q.    And do you see topic 10 there?

16      A.    Yes.

17      Q.    And topic 10 states, Whether and how the

18  organization determined if any of its individual

19  members are impacted by the laws, policies, and

20  protocols challenged in this action.

21            And Ms. Marks, you are the designated

22  witness for the organization on topic 10, correct?

23      A.    Yes.

24      Q.    Quickly going through those same questions,

25  did you review any documents specifically related to

30(b)(6) Marilyn Marks          May 11, 2023
Coalition for Good Governance v. Kemp, Brian

Page 78

1    topic 10 other than what we have discussed?

2         A.    No.

3         Q.    And did you speak with anyone inside or

4    outside the organization to prepare for providing

5    testimony as it relates to topic Number 10?

6         A.    No.

7         Q.    And again, we went through a lot of this

8    previously, so sorry if we are kind of overlapping a

9    little bit about that; but I want to, with this

10   topic, get into a little bit of specific detail with

11   some of the earlier testimony that you provided as it

12   relates to the specific provisions in SB 202.

13         And let's start off with the ballot

14   observation issues that we discussed previously with

15   SB 202.

16         Has the organization identified any

17   individual member that has been subject to the

18   punishments that are at issue with the ballot

19   observation provision in SB 202?

20        A.    Mr. Weigel, just to clarify so that I'm

21   really clear on which one we are talking about.  You

22   are talking about the ballot, the touch screen ballot

23   observation rule where one could be charged with a

24   felony.  Is that what we are both talking about?

25        Q.    Yes.  Yes, correct.

Page 79

1    A.    Okay.  No.  I do not know of anyone at this

2    point who has actually been charged with a felony for

3    seeing someone else's voting screen.

4         Q.    And same question for the photography

5    rules.  Is the organization aware of any specific

6    members that had been subject to any punishments

7    pursuant to the provision SB 202 related to the

8    photography rules that we discussed previously?

9         A.    While not punishments, certainly threats of

10   punishment.

11        Q.    And what were those threats of punishment?

12        A.    Okay.  I will start with myself.  And that

13   is I was observing the DeKalb County 2022 May primary

14   election last year and wanted to take pictures of

15   voted ballots having been counted already once and

16   being processed again for another count.  And I was

17   threatened with arrest for even having my camera out.

18   I was threatened with arrest for taking a picture in

19   a room where the ballots had not even arrived yet.  I

20   was threatened with arrest for taking a picture of a

21   room where the ballots were still in cardboard boxes

22   and was not permitted to take pictures of the ballots

23   once they did arrive on the desk where I could see

24   them.  So, yes, I was threatened with arrest.

25        Q.    And aside from that experience that you

Case 1:21-cv-02070-JPB   Document 134-5 Filed 08/24/23 Page 17 of 62
30(b)(6) Marilyn Marks                    May 11, 2023
Coalition for Good Governance v. Kemp, Brian

Page 80

1    just discussed, is the organization aware of any

2    members that have been subject to similar

3    experiences?

4         A.   I'm thinking for a moment.  Not that I am

5    aware of on the photography rule.  Certainly the

6    press has been prohibited from taking pictures, and I

7    have watched that occur.  By the way, I was also

8    prohibited from taking pictures in Fulton County of

9    voted ballots after the close of the polls.  So I

10   have watched the press be prohibited and I have been

11   prohibited.

12        Q.   And you jumped right into my next question,

13   was the experiences, whether one or multiple, that

14   you described related to the photography rules, did

15   that occur exclusively in Fulton County or was it in

16   any other county?

17        A.   Well, I mentioned DeKalb.

18        Q.   DeKalb, that's correct.

19        A.   DeKalb and --

20        Q.   So aside from DeKalb and Fulton?

21        A.   For me personally.  And I may not be aware

22   of what our members have experienced on that -- or

23   may not be remembering, if I know.

24        Q.   And do you recall, at least from your

25   personal experience with it, what precincts in DeKalb

Case 1:21-cv-02070-JPB   Document 134-5   Filed 08/22/23   Page 18 of 22
30(b)(6) Marilyn Marks                                May 11, 2023
Coalition for Good Governance v. Kemp, Brian

Page 81

1    and Fulton that that occurred in?

2         A.    This was at the central count, at the one

3    for Fulton at what I call the English Street

4    warehouse.  And then in DeKalb, at the Memorial Drive

5    central count location.

6         Q.    And similar line of questioning for the

7    absentee ballot processing that we discussed

8    previously.  Is the organization aware of any

9    individual members that had been impacted directly by

10   laws, policies and protocols related to the absentee

11   ballot processing?

12        A.    Yes.

13        Q.    And what were those?

14        A.    So when you say impacted, I take that to

15   mean that their activities have been curtailed or

16   reduced.  And certainly, there are impacts on the

17   organization from that, but, yes, for example, the

18   rules that require no discussion of what's going on

19   in the absentee balloting room -- absentee ballot

20   processing room, I should say -- the rules that

21   require no discussion.  Our members cannot

22   collaborate, confer on what they are observing, for

23   example.  And that, of course, is a harm.

24              We poll watch -- poll observers, absentee

25   ballot monitors routinely work in teams and confer

Case 1:21-cv-02070-JPB  Document 134-5 Filed 08/22/23 Page 19 of 22
30(b)(6) Marilyn Marks                    May 11, 2023
Coalition for Good Governance v. Kemp, Brian

Page 82

1   with each other on what they are seeing.  And the

2   inability to do that for fear of violating a law

3   reduces the effectiveness of what any monitor can do,

4   if they cannot work in a team and communicate about

5   what they are seeing.

6       Q.   Just for my own understanding on what the

7   effect of that would be, could you just go into a

8   little bit deeper detail on how it reduces the

9   effectiveness or how it curtails the election

10  administration activities of your members.

11      A.   Certainly.  Let me give you an example, a

12  kind of a before-and-after example.

13           Ms. Rhonda Martin, who is a co-plaintiff,

14  and I were observing a special election in the first

15  quarter of 2020.  And we were at the absentee ballot

16  processing in the -- I believe we were in Colquitt

17  County.  And we were watching, and we were in a small

18  room, watching the very few absentee ballots be

19  processed.  We were watching violations of ballot

20  privacy as it was happening.  And there were very

21  small number of absentee ballots, only eight.

22           And we were chatting with each other,

23  saying:  I wonder if this is all -- you know, please

24  watch how many they scan.  I'm going to try to walk

25  over to the guy's desk who is running the operation.

Case 1:21-cv-02070-JPB  Document 134-5 Filed 08/22/23 Page 20 of 22
30(b)(6) Marilyn Marks                    May 11, 2023
Coalition for Good Governance v. Kemp, Brian

Page 83

1   Please watch while I walk away.  We conferred on the
2   number of ballots between the two of us that we had
3   watched.  We conferred about how they were being
4   mishandled from a privacy standpoint.  And then we
5   later watched as the number of ballots was uploaded
6   into the results to make sure that eight ballots in
7   total from that particular county were uploaded as
8   absentee ballots.

9            Today, under SB 202, we would not have been
10  able to confer about how many ballots were being
11  scanned.  I would not have even been able to count as
12  they were going through the scanner because SB 202
13  tells us we are not supposed to get any information,
14  do any counts.  I would not have been legally able to
15  say, Okay.  I saw eight ballots go through.  Let me
16  make sure that eight ballots is what gets reported.

17           And we would not have been able to confer.
18  As we were watching, I remember saying to Ms. Martin,
19  Look at the way she is handling the ballots in terms
20  of looking at the voter's name and looking at the
21  ballot before she puts it into the scanner.  I would
22  not have been able to say that to her under SB 202.

23           And, of course, you like to work in teams
24  so that you have got a witness for whatever
25  complaints you might make later on so that you are

Case 1:21-cv-02070-JPB   Document 134-5   Filed 08/22/23   Page 21 of 22
30(b)(6) Marilyn Marks                              May 11, 2023
Coalition for Good Governance v. Kemp, Brian

Page 84

1  sure that you know what you are looking at.  So if
2  there are more than just eight ballots going through
3  the scanner, you can confer on the count, make sure
4  that you are not missing anything.  So it's very
5  normal for ballot monitors to work in teams.  That's
6  been my experience since I started doing this in 2008
7  or 9 of being able to work in teams.  And basically
8  SB 202 says you cannot do that.
9       Q.   And the testimony you just provided touches
10  on this aspect of it that I wanted to go into a
11  little bit, but as far as the benefits that you
12  described with working as a team, as you say, would a
13  poll worker in that instance still be in compliance
14  with the law but by -- strike that.
15           Is there still a way for reporting
16  mishandling from a privacy standpoint as you
17  described?
18           What is the mechanism for that, I'll ask?
19       A.   That is also confusing.  In the law, yes,
20  while you can report and I believe the phrase -- I'm
21  not going to have this exactly right -- but the
22  phrase in the law is something like, "You can only
23  report it to the official who has the need to know
24  that information for their performance of their
25  duties under the law."  So that leaves you very

Case 1:21-cv-02070-JPB   Document 134-5   Filed 08/22/23   Page 22 of 22
30(b)(6) Marilyn Marks                    May 11, 2023
Coalition for Good Governance v. Kemp, Brian

Page 85

1   unclear as to who it is you should report a privacy

2   violation to.  But it also restricts you from

3   confirming with your colleague the extent of the

4   violation.  It also brings into question what you can

5   put in a declaration that you saw, if you can only

6   report it to that election official.

7           So it is going to restrict quite

8   dramatically what you feel free to report, to whom to

9   report it, the form of that reporting, and the

10  ability to have witnesses back up what you said.

11      Q.   Thanks for that clarification.  That's

12  really helpful.  So would it be fair to characterize

13  it, at least in part, is that the new absentee ballot

14  processing provisions that are in place inhibit, at

15  least in your personal experience, your ability to

16  perform your duties?

17      A.   Absolutely.  Yes.

18      Q.   And just similar to my prior line of

19  questioning, is the coalition aware of any of its

20  members or are you personally being punished for

21  violating that provision, the absentee ballot

22  processing provision of SB 202?

23      A.   Well, the result of SB 202, now, the

24  example I gave you, again, was from pre-SB 202,

25  right?  So what has happened is that we don't operate