IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

COALITION FOR GOOD
GOVERNANCE, et al.,

Plaintiffs,

v.

BRIAN KEMP, et al.,

Defendants.

Civil Action No. 21-cv-02070-JPB

## PLAINTIFFS' RESPONSE TO DEENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS

Plaintiffs file this response to Defendants' Statement of Undisputed

Material Facts (ECF No. 123-2).  Defendants' statements will be single-

spaced; Plaintiffs' responses will be double-spaced.

**Statement 1**

SB 202 provided the State Election Board (SEB) the ability, after notice
and hearing, to temporarily suspend election superintendents after they
committed multiple violations of the law over multiple election cycles.
O.C.G.A. § 21-2-33.2.

**Response to Statement 1**

Disputed.  SB 202 allows for suspension or removal without notice.  SB

202 states that the SEB may "suspend" after following the procedures set

forth in O.C.G.A. § 21-2-33.2.  That section says that the SEB "shall conduct a preliminary investigation" which is followed by a "preliminary hearing." An "audit" of unspecified records or activities is also sufficient grounds for "removal" of the election officials. O.C.G.A. 21-2-106(c).

The statute permits the suspension of a superintendent after the preliminary hearing. O.C.G.A. 21-2-33.2 (c).  There is no requirement of notice for the "preliminary hearing."  At the "preliminary hearing," the SEB "shall determine if sufficient cause exists to proceed to a full hearing." O.C.G.A.  § 21-2-33.2 (b).  The statute, however, does not describe any "full hearing," and permits the suspension to take place after the preliminary hearing and before any "full hearing."  Accordingly, subsection (c) describes the substantive standards for suspending a superintendent (three violations of rules in last two general election cycles, etc.).  Subsection (c) says that the findings of the SEB are to be made "after notice and hearing," but there is no description of the notice or the hearing.  SEB is able to remove a superintendent after "findings" of an undefined audit are presented in a preliminary hearing that has no notice requirements.

### Statement 2

Since the adoption of SB 202 in 2021, none of the counties where the Board Member Plaintiffs serve (currently or previously) were subjected to an

investigation or performance review. Declaration of Ryan Germany ("Germany Dec."), attached as Ex. A, ¶¶ 4–6.

**Response to Statement 2**

Not in dispute as stated.  However, Board Member Plaintiff Thomas-Clark is a member of the Coffee County Board of Elections.  Coffee County has been the subject of multiple investigations, including SEB Case Nos. 2018-082, 2020-250, and 2021-094.  Another is an open investigation arising out of the events that also underlie the indictment by Fulton County of former President Trump and others. The SEB conducted a hearing of an investigation of Jackson County Board of Elections in 2021.  SEB Case No. 2018-027. Audits can also trigger removal of superintendents, O.C.G.A. §21-2-106 (c), and all counties have been subject to the audit of election results in two 2022 elections.

**Statement 3**

The only county election officials who have undergone a performance review are the members of the Fulton County Board of Elections and Registration and staff. Germany Dec., ¶¶ 4–6; Fulton Performance Review Board Report ("Fulton Report"), attached as Ex. 1 to Germany Dec.; Excerpts of Response to Interrogatories, attached as Ex. B, Nos. 1-2.

**Response to Statement 3**

Not in dispute.  However, a performance review is not a prerequisite to a suspension.  Instead, SB 202 provides that the SEB "ꟷꟷꟷ its ꟷꟷ ꟷ ꟷꟷꟷꟷ or

3

following a recommendation based on an investigation by a performance

review =J<M꜀ pursuant to Part 5 of this article, may pursue the extraordinary

relief provided in this Code section.  O.C.G.A. § 21-2-33.2(a).  Also, an "audit"

may trigger the "removal" of one or more officials. O.C.G.A. §21-2-106 (c).

### Statement 4

The Fulton County Performance Review was initially by members of
the General Assembly in the local legislative delegation. Fulton Report, p. 5.

### Response to Statement 4

Not in dispute but not material because Plaintiffs' do not challenge the

review process.  Instead, Plaintiffs challenge the provisions of SB 202 that

allow the SEB to suspend election superintendents.

### Statement 5

The three-member Review Board personally observed "pre-election,
Election Day, and post-election processes at Fulton County in both the 2021
municipal elections and the 2022 general and runoff elections." *Id.* at 6.

### Response to Statement 5

Not in dispute, but not material.

### Statement 6

Those observations included at least four visits to the Fulton County
Election Processing Center and at least 16 visits to different election day
polling place and advance-voting locations. *Id.*

### Response to Statement 6

Not in dispute, but not material.

**Statement 7**

The Review Board also worked with the Carter Center to observe Fulton County elections in November 2022 to assist with its review. *Id.*

**Response to Statement 7**

Not in dispute, but not material.

**Statement 8**

The Review Board conducted formal interviews with staff and members of the Fulton County Board of Elections, reviewed procedures, and coordinated with the Secretary's office for its review. *Id.* at 7.

**Response to Statement 8**

Not in dispute, but not material.

**Statement 9**

When it issued its report, the Review Board confirmed that, in prior years "disorganization and a lack of sense of urgency in resolving issues plagued Fulton County Elections." *Id.* at 1.

**Response to Statement 9**

Not in dispute, but not material.

**Statement 10**

The Review Board also recognized the improvement in election administration in Fulton County from 2020 through 2022, at least in part because of the incentives created by the Performance Review itself. *Id.* at 18.

**Response to Statement 10**

Not in dispute, but not material.

**Statement 11**

The Review Board did not recommend any Fulton officials be suspended under the Suspension Rule. *Id.* at 18–19.

**Response to Statement 11**

In dispute to the extent that it assumes that the Review Board could recommend suspension of individual Fulton officials.  SB 202 does not provide for the suspension of individual election officials, only the entire board, even if the performance or actions of individual board members is beyond reproach.

**Statement 12**

The SEB did not suspend the Fulton officials. Germany Dec., ¶¶ 7–8.

**Response to Statement 12**

In dispute to the extent that it assumes that the Review Board could recommend suspension of individual Fulton officials.  SB 202 does not provide for the suspension of individual election officials in counties with a board of elections, but only the entire board can be suspended, even if the performance or actions of individual board members is beyond reproach.

**Statement 13**

The SEB has not announced any plans for conducting additional performance reviews. Germany Dec., ¶¶ 7–8.

**Response to Statement 13**

Not in dispute.

**Statement 14**

The SEB is not considering suspension of additional county election officials, including the Board Member Plaintiffs here. Germany Dec., ¶¶ 7–8.

**Response to Statement 14**

In dispute to the extent that it assumes that the Review Board could

recommend suspension of individual Fulton officials.  SB 202 does not

provide for the suspension of individual election officials (except for municipal

superintendents and probate judges, not relevant here), only the entire board,

even if the performance or actions of individual board members is beyond

reproach.

**Statement 15**

SB 202 added a provision making it a felony to engage in the *intentional* observation of an elector casting a ballot "in a manner that would allow such person *to see for whom or what the elector is voting*." SB 202 (Ex. D) at 95:2448–2454 (emphasis added).

**Response to Statement 15**

Disputed in part.  The statute makes it a felony to "intentionally observe an elector while casting a ballot in a manner that would allow such person to see for whom or what the elector is voting."  O.C.G.A. § 21-2-568.1.

### Statement 16

The Secretary of State provided guidance to counties on proper precinct layout, and county election officials are ultimately responsible for the setup of voting machines in ways that comply with Georgia law. Declaration of Blake Evans, attached as Ex. C ("Evans Dec."), ¶ 3 and Ex. 1.

### Response to Statement 16

Disputed.  First, the Secretary did not provide meaningful or effective guidance on proper precinct layout.   (Throop Dep., ECF No. 133 at 34:14-15 ("the guidelines from the Secretary of State" are "unrealistic and problematic")).  For example, in the Secretary of State's diagrams, there were only 4 BMDs in the room.  (ECF No. 123-5 at 8-10).  Many if not most polling places have 12 to 20 BMDs.  (*Id.,* at 34:19-23).  Second, the counties do not follow the Secretary's guidelines.  (ECF No. 104 at 29 (photo of Dalton voting location BMD layout); ECF No. 15-1 at 7 (photos of Cartersville and State Farm Arena voting locations); ECF No. 15-3 at 17-19 (multiple photos of voting locations using layout not in compliance with Secretary's "guidance"); Nakamura Dep., ECF No. 132 at 27:1-4 (across the room "I could see three BMDs very clearly").  Third, county election officials do have responsibility

for ensuring that voting machine placement protects ballot secrecy, but Defendants are responsible for ensuring that county election officials discharge that obligation effectively.

Moreover, the issue in this case is whether, given the reality of the actual layout of BMDs in polling places (regardless of who is at fault as between the various government officials), the Observation Rule violates the fundamental right to vote or due process.

### Statement 17

Following the 2020 election, some counties were repeatedly asked how many votes they had left to tabulate that they could not answer in a timely fashion. Germany Dec., ¶ 9.

### Response to Statement 17

Not in dispute.

### Statement 18

Posting election results quickly is one of the best things that election officials can do to generate confidence in the outcome of an election. Germany Dec., ¶ 9.

### Response to Statement 18

Plaintiffs do not dispute that election results should be posted as soon as possible consistent with an election process that is accurate, accountable,

and transparent. However, there is no need to tabulate the results prior to the closing of the polls, nor risk the early disclosure of vote tallies.

**Statement 19**

Prior to SB 202, early scanning of absentee ballots could only be performed by a sequestered group of individuals beginning at 7:00 a.m. on Election Day itself, so there was no danger of those individuals leaving to report vote totals or estimates during that single-day process. O.G.C.A § 21-2-386(a)(2) (2019); Germany Dec., ¶ 13.

**Response to Statement 19**

Not in dispute.

**Statement 20**

To mitigate the risk that early vote counts would be disclosed during early scanning in the weeks before an election, the legislature designed a process that ensured that information about the scanning process would not be publicized prior to the final close of the polls. Germany Dec., ¶¶ 11, 12, 14.

**Response to Statement 20**

Disputed and Georgia law provides to the contrary: the "processing and scanning of absentee ballots" "shall be open to the view of the public." O.C.G.A. § 21-2-386(a)(2)(B).   It is not in dispute that vote totals should not be disclosed until the close of the polls.

**Statement 21**

SB 202 permits only election officials to handle absentee ballots, requires individuals to swear an oath, and places several requirements on observers to avoid disclosure of vote counts. SB 202 at 39:965–40:981; 66:1687–1690; 67:16998–1712; Germany Dec., ¶¶ 15.

**Response to Statement 21**

Not in dispute.

**Statement 22**

The early scanning provisions of SB 202 closely track the emergency SEB rules that were used throughout 2020 for early scanning of ballots. Germany Dec., ¶ 10.

**Response to Statement 22**

Not in dispute, but not material.

**Statement 23**

The Communication Rule only applies to "any ballot, vote or selection" during the viewing or monitoring of the absentee-ballot scanning process. Germany Dec., ¶ 16.

**Response to Statement 23**

Statement 23 is not a complete statement of fact and is disputed.  SB 202 requires that the "processing and scanning of absentee ballots" "shall be open to the view of the public."  O.C.G.A. § 21-2-386(a)(2)(B).  It then prohibits "monitors and observers," under penalty of a misdemeanor, from "Communicating any information that they see while monitoring the processing of the absentee ballots . . . about any ballot, vote, or selection." O.C.G.A. § 21-2-386(a)(2)(B).

**Statement 24**

The absentee-ballot scanning process occurs in a room that also has other specific requirements about the use of recording devices and other equipment. Germany Dec., ¶ 17.

**Response to Statement 24**

Not in dispute, but not material.

**Statement 25**

Maintaining the secrecy of that absentee-ballot scanning process is critical to preserving the integrity of the election process by ensuring vote totals are not disclosed while other voters are still voting or have yet to vote. Germany Dec., ¶ 18.

**Response to Statement 25**

In dispute.  Georgia law provides to the contrary: the "processing and scanning of absentee ballots" "shall be open to the view of the public." O.C.G.A. § 21-2-386(a)(2)(B).   It is not in dispute that vote totals should not be disclosed until the close of the polls.

**Statement 26**

The Tally Rules protect the integrity of the election process by ensuring that counting votes or estimates about vote totals do not take place prior to the conclusion of the voting process. Germany Dec., ¶ 19.

**Response to Statement 26**

This is disputed as Defendants confuse two different Tally Rules.  Tally Rule 1 makes it a misdemeanor to "tally, tabulate, or estimate or cause the ballot scanner or any other equipment to produce any tally or tabulate partial

or otherwise, of the absentee ballots cast until the time for the closing of the polls." O.C.G.A. § 21-2-386(a)(2)(A). Tally Rule 2 prohibits "monitors or observers" "while viewing or monitoring" from "[t]allying, tabulating, estimating, or attempting to tally, tabulate, or estimate, whether partial or otherwise, any of the votes on the absentee ballots cast." O.C.G.A. § 21-2-386(a)(2)(B)(vi).

It is not in dispute that vote totals should not be disclosed until the close of the polls.

**Statement 27**

If officials were enjoined from enforcing these two provisions, individuals would be free to share information about the early-scanning process with the general public and with candidates. Germany Dec., ¶¶ 20–22.

**Response to Statement 27**

Not in dispute. This result is consistent with Georgia law, which provides that "processing and scanning of absentee ballots" "shall be open to the view of the public." O.C.G.A. § 21-2-386(a)(2)(B). It is not in dispute that vote totals should not be disclosed until the close of the polls.

**Statement 28**

Having information about early scanning totals shared with the general public and with candidates would undermine the integrity of the election process. Germany Dec., ¶¶ 20–22.

**Response to Statement 28**

In dispute as stated.   It is not disputed that vote totals should not be shared with anyone until after the close of the polls.

**Statement 29**

The Photography Rules can prevent vote-buying schemes that require a voter to show proof of their vote to the person paying them and also prevent others from pressuring voters to show for whom they voted. Germany Dec., ¶ 23.

**Response to Statement 29**

Disputed.  There is no foundation for Mr. Germany's testimony about the deterrent effect of the Photography Rule upon vote-buying schemes.  A person willing to sell their vote (already illegal) is not likely to be deterred by the Photography Rule any more than a bank thief would be deterred by a law prohibiting selfies of a bank heist.  Since voted ballots do not disclose the identity of the voter, photographs of them are commonplace and are essential to preserving election transparency.

**Statement 30**

The Photography Rules protect individuals from being subjected to outside pressure as a result of the votes they cast and ensures ballot secrecy. Germany Dec., ¶¶ 24–26; Ga. Const. Art. II, § I, ¶ I (guarantee of secret ballot).

**Response to Statement 30**

Disputed.  A photograph of a voted ballot, without more, does not

violate ballot secrecy because voted ballots do not disclose the identity of the

voter and cannot be connected to the voter.

**Statement 31**

The Photography Rules ensure that photographic images of a voter's
ballot are not stored in ways that can connect the ballot to the voter,
preserving the voter's privacy, ballot secrecy, and the integrity of the election.
Germany Dec., ¶ 27.

**Response to Statement 31**

Disputed.  A photograph of a voted ballot, without more, does not

violate ballot secrecy because voted ballots do not disclose the identity of the

voter.

**Statement 32**

Patricia Pullar is no longer serving on an election board. Deposition of
Patricia Pullar [Doc. 122] ("Pullar Dep."), 24:18–25:1.

**Response to Statement 32**

Not in dispute.

**Statement 33**

There are no performance reviews or other pending action related to
the Suspension Rules against Athens-Clarke, Coffee, Chatham, Clayton, and
Jackson Counties. Germany Dec., ¶¶ 7–8.

**Response to Statement 33**

Not in dispute.

**Statement 34**

None of the Board Member Plaintiffs are currently subject to potential suspension under the Suspension Rules. Germany Dec., ¶¶ 7–8.

**Response to Statement 34**

In dispute. At any time, Board Member Plaintiffs are subject to

"potential" suspension. **Statement 35**

None of the Board Member Plaintiffs are able to point to a single instance in which they were targeted because of the Suspension Rule. *See, e.g.* Deposition of Ernestine Thomas-Clark [Doc. 119], 39:11: –40:8; Deposition of Adam Shirley [Doc. 118], 40:21–41:1; Deposition of Judy McNichols [Doc. 121], 44:11–46:2; Pullar Dep., 28:11–29:4.

**Response to Statement 35**

Not in dispute.

**Statement 36**

The SEB has only empaneled one performance review panel since the adoption of SB 202. Germany Dec., ¶ 7.

**Response to Statement 36**

Not in dispute.

**Statement 37**

The Review Board investigation into Fulton County was robust and searching, involved state officials, county officials, and the Carter Center, and ultimately did not result in the suspension of any county official. Germany Dec., ¶ 6; Fulton Report.

**Response to Statement 37**

Not in dispute and not material because Plaintiffs are not challenging

performance reviews.

**Statement 38**

The panel concluded that the creation of the performance review that precedes the Suspension Rule incentivized the county officials to improve the administration of elections. Fulton Report, pp. 18–19.

**Response to Statement 38**

Disputed as stated and not material because Plaintiffs are not

challenging performance reviews.   It is disputed because the Fulton Report

states: "The existence of the Performance Review helped incentivize Fulton

County to make improvements to their elections, *but it took an enormous*

*amount of donated work, and it is difficult to see how it is a sustainable*

*process that can continue to positively influence election administration in*

*Georgia without some reforms."* (ECF No. 123-3 at 13).

**Statement 39**

The State Election Board has protected the voting rights of Georgia's citizens while protecting the rights of the members of local boards of election in the exercise of their duties. Fulton Report, pp. 18–19.

**Response to Statement 39**

Disputed.  The Fulton Report does not say this, or anything close to it, on page 18 and 19.  The statement of opinion is also immaterial.

**Statement 40**

The performance review of Fulton County was comprehensive, cooperative, and resulted in better election administration in Georgia's largest county. *Id.*

**Response to Statement 40**

Not in dispute and not material because Plaintiffs do not challenge performance review.

**Statement 41**

The SEB has suspended zero county officials under the Suspension Rule. Germany Dec., ¶¶ 6–8.

**Response to Statement 41**

Not in dispute.

**Statement 42**

The Suspension Rule processes have resulted in improved elections. Fulton Report, pp. 18–19.

**Response to Statement 42**

Disputed. First, the Fulton Report does not say this on pages 18 and 19.

Second, the Suspension Rule processes have never been invoked.  In fact, the

Fulton Report recommended *against* suspension: "Replacing the board would

not be helpful and would in fact hinder the ongoing improvements to Fulton

County elections."   (ECF No. 123-3 at 13).

**Statement 43**

It is the counties that select polling locations and decide how to set up ballot stations according to the orientation of the space they have selected. Evans Dec., ¶ 3 and Ex. 1.

**Response to Statement 43**

Not in dispute.  *See also* Response to Statement 16.

**Statement 44**

No individual is being prosecuted based on merely approaching a polling place with large windows. Germany Dec., ¶ 30.

**Response to Statement 44**

Not in dispute.

**Statement 45**

There is no evidence that any investigations or charges have been brought against any Plaintiff in this action or any voter for merely "approaching a polling place with large windows." *See* Ex. B, Response Nos. 1–2.

**Response to Statement 45**

Not in dispute.

**Statement 46**

The State has a strong interest in ensuring that observers do not attempt to depress or otherwise alter voter turnout by disclosing a vote tally before the election has concluded. Germany Dec., ¶¶ 11–14, 18–19.

**Response to Statement 46**

Not in dispute but not material because Plaintiffs do not challenge the

prohibition of disclosure of vote tallies prior to the close of the polls.

**Statement 47**

It is possible that such observers may inadvertently (or purposely) disclose the *wrong* tally, which could depress or alter turnout in the election. Germany Dec., ¶¶ 20–22.

**Response to Statement 47**

Not in dispute but not material because Plaintiffs do not challenge the

prohibition of disclosure of vote tallies.

**Statement 48**

The Tally Rules have not been arbitrarily or discriminatorily applied nor has it been applied in the manner Plaintiffs claim they feared. Ex. B, Response Nos. 1–2.

**Response to Statement 48**

Not in dispute as the Tally Rules have not yet been enforced.

**Statement 49**

Protecting voters from vote-buying schemes and intimidation give the entire electorate confidence in election results. Germany Dec., ¶¶ 23–25.

**Response to Statement 49**

Not in dispute.

**Statement 50**

Vote-buying schemes, where a third-party may offer to pay or offer something of value in return for a vote, or intimidates voters, where a third-party may not explicitly offer to buy votes but may pressure a voter to publicly reveal how they voted, undermine the foundations of merit-based representative democracy and the protections of a secret ballot guaranteed in the Georgia Constitution. Ga. Const. Art. II, § I, ¶ I; Germany Dec., ¶ 26.

**Response to Statement 50**

Not in dispute but not material in that there is no evidence of a connection between the Photography Rule and vote buying schemes.

**Statement 51**

Cameras are now commonplace in almost every mobile device in use today. Germany Dec., ¶ 28.

**Response to Statement 51**

Not in dispute.

**Statement 52**

Pictures are often quickly uploaded to a cloud storage provider on the Internet and would connect the voter's ballot with the voter immediately. Germany Dec., ¶ 28.

**Response to Statement 52**

Not in dispute.

**Statement 53**

It is typically private companies and not the user that control the security protocols at the locations where the photographic data is stored. Germany Dec., ¶ 29.

**Response to Statement 53**

Not in dispute.

**Statement 54**

The Photography Rules also ensure that photographic images of a voter's ballot are not stored in ways that can connect the ballot to the voter, preserving the voter's privacy, secret ballot, and the integrity of the election. Germany Dec., ¶ 27.

**Response to Statement 54**

Not in dispute.

**Statement 55**

The Photography Rules have not been arbitrarily or discriminatorily enforced in the ways Plaintiffs claim. *See* Ex. B, Response Nos. 1–2.

**Response to Statement 55**

In dispute. The Photography Rule prohibiting the photography of voted ballots has been enforced in an arbitrary manner against Marilyn Marks, Executive Director of CGG, both in the DeKalb County May 2022 primary election and the Fulton County November 2022 general election, where she served as an authorized poll watcher and absentee ballot monitor. Ms. Marks testified to both instances in the Rule 30(b)(6) deposition of CGG. (ECF No. 130 at 79:4 - 81:5).

Respectfully submitted this 24th day of August 2023.

/s/ Bruce P. Brown
Bruce P. Brown
Georgia Bar No. 064460
BRUCE P. BROWN LAW LLC
1123 Zonolite Rd. NE
Suite 6
Atlanta, Georgia 30306
(404) 881-0700
bbrown@brucepbrownlaw.com

/s/ Greg K. Hecht
Greg K. Hecht
Georgia Bar No. 003860
HECHT WALKER, P.C.
205 Corporate Center Dr.
Suite B
Stockbridge, Georgia 30281
(404) 348-4881
greg@hmhwlaw.com

/s/ Cary Ichter
Cary Ichter
Georgia Bar No. 382515
ICHTER DAVIS LLC
3340 Peachtree Road NE
Suite 1530
Atlanta, Georgia 30326
(404) 869-7600
CIchter@Ichterdavis.com

/s/ Shea E. Roberts
Shea E. Roberts
Georgia Bar No. 608874
GIACOMA ROBERTS & DAUGHDRILL LLC
945 East Paces Rd., Suite 2750
Atlanta, Georgia 30326
(404) 924-2850
sroberts@grdlegal.com

## CERTIFICATE OF SERVICE AND CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 5.1

Pursuant to N.D. Ga. L.R. 5.1(C), I certify that the foregoing was prepared using Century Schoolbook 13 font.  I electronically filed this using CM/ECF, thus electronically serving all counsel of record.

This 24th day of August 2023.

> */s/ Bruce P. Brown*
> Bruce P. Brown
> Georgia Bar No. 064460
> BRUCE P. BROWN LAW LLC
> 1123 Zonolite Rd. NE
> Suite 6
> Atlanta, Georgia 30306
> (404) 386-6856
> bbrown@brucepbrownlaw.com