UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| COALITION FOR GOOD GOVERNANCE, et al., | |
| Plaintiffs, | |
| v. | CIVIL ACTION NO. 1:21-CV-2070-JPB |
| BRIAN KEMP, Governor of the State of Georgia, in his official capacity, et al., | |
| Defendants. | |

## <u>ORDER</u>

This matter is before the Court on Defendants'[1] Motion for Summary

Judgment [Doc. 123].  This Court finds as follows:

## BACKGROUND

Plaintiffs[2] filed this action against Defendants on May 17, 2021.  [Doc. 1].

Plaintiffs include non-profit organizations, county election board members,

members of political parties, voters, election volunteers, advocates and journalists.

---

[1] Defendants are Brian Kemp, in his official capacity as the Governor of the State of Georgia; Brad Raffensperger, in his official capacity as Secretary of State of the State of Georgia; and individual members of the State Election Board, in their official capacities.

[2] Plaintiffs are the Coalition for Good Governance, Adam Shirley, Ernestine Thomas-Clark, Antwan Lang, Patricia Pullar, Judy McNichols, the Jackson County Democratic

Plaintiffs have amended their Complaint twice. In the Second Amended Complaint, which is the operative pleading, Plaintiffs assert eleven causes of action claiming that various provisions of Georgia Senate Bill 202 ("S.B. 202"), a comprehensive bill governing election-related processes in Georgia, are unconstitutional. [Doc. 104]. The provisions are discussed briefly below.

- **O.C.G.A. § 21-2-33.2(c), (f) (the "Suspension Rule")**

  The Suspension Rule allows the State Election Board ("SEB") to "suspend the [local election] superintendent or board of registrars" for specified conduct, such as committing three violations of SEB rules.

- **O.C.G.A. § 21-2-568.1 (the "Observation Rule")**

  The Observation Rule prohibits a person from "intentionally observ[ing] an elector while casting a ballot in a manner that would allow such person to see for whom or what the elector is voting."

- **O.C.G.A. § 21-2-386(a)(2)(B)(vii) (the "Communication Rule")**

  The Communication Rule precludes election "monitors" and "observers" from "[c]ommunicating any information that they see while monitoring the processing and scanning of the absentee ballots . . . to anyone other than an election official who needs such information to lawfully carry out his or her official duties."

---

Committee, the Georgia Advancing Progress Political Action Committee, Ryan Graham, Rhonda Martin, Jeanne Dufort, Aileen Nakamura, Elizabeth Throop and Bradley Friedman.

- **O.C.G.A. §§ 21-2-386(a)(2)(A) and (a)(2)(B)(vi) (the "Tally Rules")**

  The Tally Rules prohibit persons from tallying the absentee ballots cast, attempting to do so or causing a ballot scanner or any other equipment to produce any such tally prior to polls closing on the day of the primary, election or runoff.

- **O.C.G.A. § 21-2-568.2 (the "Photography Rules")**

  The Photography Rules proscribe the use of photographic or other electronic monitoring or recording devices (i) to "[p]hotograph or record the face of an electronic ballot marker while a ballot is being voted or while an elector's votes are displayed on such electronic ballot marker"; or (ii) to "[p]hotograph or record a voted ballot."

To redress these alleged violations, Plaintiffs seek the following relief:  (1) a declaration that the challenged provisions violate the United States Constitution or 52 U.S.C. § 10307, or both; and (2) a permanent injunction prohibiting Defendants from enforcing the challenged provisions of S.B. 202.  [Doc. 104, p. 147].

Discovery in this matter is closed.  Currently pending before the Court is Defendants' Motion for Summary Judgment.  [Doc. 123].  After full briefing and oral argument, the motion is now ripe for review.

## FACTS

The Court derives the facts of this case from Defendants' Statement of Undisputed Material Facts [Doc. 123-2], Plaintiffs' Response to Defendants'

Statement of Material Facts [Doc. 135],[3] Plaintiffs' Statement of Additional

Material Facts [Doc. 136][4] and Defendants' Response to Plaintiffs' Statement of

Additional Material Facts [Doc. 141].  The Court also conducted its own review of

the record.

Counts 1, 2 and 3 involve the Suspension Rule.  The Suspension Rule allows

the SEB to suspend a local election superintendent or board of registrars for

violations of law.  O.C.G.A. § 21-2-33.2.  The suspension process is initiated upon

a petition, followed by a preliminary investigation and then a preliminary hearing.

Id.  Following the preliminary hearing, the SEB must determine if sufficient cause

exists to proceed to a full hearing on the petition or if the petition should be

dismissed.  Id.  The SEB may suspend the superintendent after the preliminary

hearing only if at least three of its board members find, after notice and a hearing,

---

[3] The Local Rules state that the Court "will deem each of the movant's facts as admitted unless the respondent:  (i) directly refutes the movant's fact with concise responses supported by specific citations to evidence (including page or paragraph number); (ii) states a valid objection to the admissibility of the movant's fact; or (iii) points out that the movant's citation does not support the movant's fact or that the movant's fact is not material or otherwise has failed to comply with the provisions set out in LR 56.1(B)(1)." LR 56.1B(2)(a)(2).  In this case, Plaintiffs' responses often failed to comply with the Local Rules because the responses were not supported by specific citations to evidence.

[4] Plaintiffs' Statement of Additional Material Facts also does not comply with the Local Rules because Plaintiffs often cite to legal conclusions and pleadings instead of evidence. For instance, Plaintiffs cite to no evidence that "Defendants intend to vigorously enforce the Suspension Rule, the Observation Rule, the Communications Rule, the Tally Rules, and the Photography Rules."  [Doc. 136, p. 4].

by a preponderance of the evidence that the superintendent committed at least three violations of election regulations in the last two general election cycles. Alternately, the SEB may suspend the superintendent after the preliminary hearing if at least three of its board members find, after notice and a hearing, by clear and convincing evidence that the superintendent has, for at least two election cycles, demonstrated "nonfeasance, malfeasance, or gross negligence in the administration of the elections." Id. Notably, the statute requires the SEB to "promulgate rules and regulations for conducting such preliminary investigation and preliminary hearing." Id.

In Count 1, the Board Member Plaintiffs[5] contend that the Suspension Rule, as written, violates their right to procedural due process. In essence, the Board Member Plaintiffs argue that the Suspension Rule deprives them of a pre-deprivation notice and a hearing and a post-deprivation remedy to obtain reinstatement. In Count 2, the Board Member Plaintiffs and the Voter Plaintiffs[6] claim that the Suspension Rule violates their right to substantive due process. Plaintiffs argue that the Suspension Rule violates substantive due process because

---

[5] The Board Member Plaintiffs are Lang, Pullar, McNichols, Shirley and Thomas-Clark.

[6] The Voter Plaintiffs are Graham, Martin, Dufort, Nakamura, Throop and the organizations.

it constitutes an improper delegation of legislative functions to the executive in violation of the Separation of Powers Clause of the Georgia Constitution.  In Count 3, the Voter Plaintiffs argue that the Suspension Rule violates the fundamental right to vote.  The Voter Plaintiffs assert that because the Suspension Rule gives the SEB the power to remove an entire board of registrars, voters may be disenfranchised by the subsequent confusion that the removal causes.  Specifically, the Voter Plaintiffs contend that hurdles to voting may occur if a board is removed and not replaced.  Plaintiffs envision a situation in which voters would be unable to register to vote.

The Board Member Plaintiffs serve on election boards in the following counties:  Athens-Clark, Chatham, Clayton, Coffee and Jackson.  Since the passage of S.B. 202 in 2021, none of these counties have been investigated or the subject of a performance review.  [Doc. 135, pp. 2–3, 15].  Importantly, none of the Board Member Plaintiffs have ever been targeted because of the Suspension Rule.  Id. at 16.  Indeed, the only county election officials who have undergone a performance review are the members of the Fulton County Board of Elections and Registration and staff, who are not parties here.  Id. at 3.  That performance review was initiated by members of the General Assembly.  Id. at 4.  After a comprehensive review

process, none of the Fulton officials were suspended under the Suspension Rule. Id. at 6.  Indeed, suspension was not even recommended.  Id.

The record in this case shows that no officials have ever been suspended pursuant to the Suspension Rule.  Id. at 18.  At the current time, the SEB has not announced any plans for conducting additional performance reviews for any county.  Id. at 7.  Moreover, the SEB is not currently considering the suspension of any county election officials, including the Board Member Plaintiffs.  Id. at 7, 16.

Counts 4 through 6 pertain to the Observation Rule.  The Observation Rule criminalizes "intentionally observ[ing] an elector while casting a ballot in a manner that would allow such person to see for whom or what the elector is voting." O.C.G.A. § 21-2-568.1(a).  In Count 4, the Voter Plaintiffs assert that because of the large size of voting machines and the relatively small size of some polling places, it is "frequently not possible to vote in person" without appearing to violate the Observation Rule.  Consequently, the Voter Plaintiffs maintain that the Observation Rule violates the fundamental right to vote by imposing a burden on voting.  In Count 5, the Voter Plaintiffs claim that the Observation Rule is void for vagueness because the Observation Rule "potentially criminalizes any action in a polling place, or even mere entry into a polling place" where large voting screens are used.  [Doc. 104, p. 134].  The Voter Plaintiffs assert in Count 6 that the

Observation Rule results in unlawful voter intimidation because it could be invoked to selectively criminalize the mere entry into a polling place or criminalize "even approaching a polling place with large windows." Id. at 135.

In Georgia, county election officials are responsible for the setup of voting machines in ways that comply with Georgia law. [Doc. 135, p. 8]. The county election officials thus select polling locations and decide how to set up ballot stations according to the orientation of the space that they have selected. Id. at 19. Under the law, county election officials must ensure that voting machine placement protects ballot secrecy. Id. at 8–9.

As to the enforcement of the Observation Rule, it is uncontroverted that no individuals are currently being prosecuted for merely approaching a polling place with large windows. Id. at 19. It is also undisputed that no individuals have ever been investigated or charged for approaching a polling place with large windows. Id.

Count 7 pertains to the Communication Rule, which prohibits designated monitors and observers from communicating any information that they see while monitoring the processing and scanning of the absentee ballots to anyone other than "an election official who needs such information to lawfully carry out his or her official duties." O.C.G.A. § 21-2-386(a)(2)(B)(vii). In Plaintiffs' view, the

Communication Rule violates the First Amendment because it criminalizes talking about any information related to absentee ballot processing or scanning, including scanning machine malfunctions, unsecured ballots, mishandling of ballots or improperly rejected ballots. Plaintiffs maintain that this is the type of information that cannot be concealed from the Secretary of State, law enforcement, interested parties or the public.

In Counts 8 and 11, Plaintiffs challenge the constitutionality of the Tally Rules. The Tally Rules impose limitations on the tallying, tabulation or estimation of votes. [Doc. 135, pp. 12–13]. Specifically, the Tally Rules make it a misdemeanor to "tally, tabulate, or estimate or cause the ballot scanner or any other equipment to produce any tally . . . , partial or otherwise, of the absentee ballots cast until the time for the closing of the polls." O.C.G.A. § 21-2-386(a)(2)(A). The Tally Rules also prohibit monitors and observers from "[t]allying, tabulating, estimating, or attempting to tally, tabulate, or estimate, whether partial or otherwise, any of the votes on the absentee ballots cast" "while viewing or monitoring" the processing and scanning of the absentee ballots. Id. § 21-2-386(a)(2)(B)(vi).

In Count 8, Plaintiffs contend that the Tally Rules violate due process because they criminalize the act of "thinking about or attempting to think about a

tally or tabulation, without the requirement of any external manifestation or communication of such thoughts." [Doc. 104, p. 140]. Plaintiffs further assert that the Tally Rules are void for vagueness. In Count 11, Plaintiffs assert that "[i]f and to the extent the Tally Rules criminalize the overt acts of recording or communicating tallies . . . , the Tally Rules criminalize conduct that is protected by the First Amendment, and required for effective performance of the Board Member Plaintiffs' official duties as election board members." Id. at 146.

Plaintiffs do not dispute that the Tally Rules are critical to preserving the integrity of the election process by ensuring that vote totals are not disclosed while other voters are still voting or have yet to vote. [Doc. 135, p. 12]. Moreover, Plaintiffs concede that the State has a strong interest in ensuring that observers do not attempt to depress or otherwise alter voter turnout by disclosing a vote tally before the election has concluded. Id. at 19–20. To date, the Tally Rules have not been enforced. Id. at 20.

Counts 9 and 10 relate to the Photography Rules. The Photography Rules make it a misdemeanor to photograph or record the face of an electronic ballot marker while a ballot is being voted or while an elector's votes are displayed on such electronic marker. O.C.G.A. § 21-2-568.2. The Photography Rules also make it a misdemeanor to photograph or record a voted ballot. In Count 9,

Plaintiffs contend that the Photography Rules violate the First Amendment because it criminalizes constitutionally protected speech.  Indeed, Plaintiffs assert that "[p]hotographs of election officials counting ballots and of voters in the act of voting has been an expected element of routine election press coverage for well over 100 years across the world." [Doc. 104, p. 141].  Plaintiffs also assert, in Count 10, that the Photography Rule is void for vagueness because the Photography Rule should only prevent photographing ballots that can be connected to a specific voter.  Moreover, Plaintiffs argue that the Photography Rules are too broad because it is possible to accidentally capture innocuous but prohibited images of voted ballots and machines.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  A material fact is any fact that "is a legal element of the claim under the applicable substantive law which might affect the outcome of the case."  Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997).  A genuine dispute exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Ultimately, "[t]he basic issue

before the court on a motion for summary judgment is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Allen, 121 F.3d at 646 (quoting Anderson, 477 U.S. at 251).

The party moving for summary judgment bears the initial burden of showing that no genuine issue exists as to any material fact, "and in deciding whether the movant has met this burden the court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the nonmoving party." Id.  After the movant satisfies this initial burden, the burden shifts to the nonmovant who must then present evidence indicating that summary judgment is improper.  Id.  However, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (quoting Anderson, 477 U.S. at 251).  If the record taken as a whole cannot lead "a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288 (1968)).

## ANALYSIS

Defendants contend that they are entitled to summary judgment as to each cause of action.  Specifically, Defendants assert that Plaintiffs cannot demonstrate standing as to any of their claims and that each claim fails on the merits.  The Court will first discuss standing.[7]

Article III of the Constitution limits the subject-matter jurisdiction of federal courts to "Cases" and "Controversies."  U.S. Const. art. III, § 2.  To satisfy this case and controversy requirement, litigants must have standing.  Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992).  The standing doctrine requires a plaintiff to show that it:  (1) suffered an injury-in-fact (2) that is fairly traceable to the challenged conduct of the defendant and (3) that is likely to be redressed by a favorable judicial decision.  Id. at 560–61.  "These three elements 'are not mere pleading requirements but rather an indispensable part of the plaintiff's case.'"  Ga. Ass'n of Latino Elected Offs., Inc. v. Gwinnett Cnty. Bd. of Registration & Elections, 36 F.4th 1100, 1113 (11th Cir. 2022) (quoting Lujan, 504 U.S. at 561).  "In essence, the question of standing is whether the litigant is entitled to have the

---

[7] "Because standing to sue implicates jurisdiction, a court must satisfy itself that the plaintiff has standing before proceeding to consider the merits of [the] claim, no matter how weighty or interesting."  Lewis v. Governor of Ala., 944 F.3d 1287, 1296 (11th Cir. 2019).  It is improper to consider the merits of a dispute if standing is lacking.  Id. at 1292.

court decide the merits of the dispute or of particular issues." Warth v. Seldin, 422 U.S. 490, 498 (1975).

In the analysis below, the Court will analyze whether Plaintiffs have standing as to any of their causes of action.

## I.    Counts 1, 2 and 3

In Counts 1, 2 and 3, Plaintiffs challenge the constitutionality of the Suspension Rule. Defendants assert that they are entitled to summary judgment as to these counts because any injury caused by the Suspension Rule is purely speculative. Plaintiffs, on the other hand, argue that the threat of future enforcement of the Suspension Rule is credible and substantial because Defendants have never affirmatively stated that they will not enforce S.B. 202.

To establish an injury sufficient to establish standing, an injury must be "concrete, particularized, and actual or imminent." Clapper v. Amnesty Int'l USA, 568 U.S. 398, 409 (2013). "Although imminence is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the injury is not too speculative for Article III purposes." Lujan, 504 U.S. at 564 n.2. Importantly, the threatened injury must be "certainly impending," and allegations of "possible future injury" are not sufficient. Clapper, 568 U.S. at 409 (emphasis omitted).

The Court recognizes that if any of the Board Member Plaintiffs—or any other local election superintendent or board of registrars—were suspended before this suit was filed, Plaintiffs would most likely be able to establish the injury element.  That is not what is at issue here, however.  Instead, Plaintiffs claim that they are injured because a possibility exists that at some unknown point in the future, a local election superintendent or board of registrars will be suspended pursuant to the Suspension Rule.  The question thus becomes whether the possibility of this injury is too remote to support standing.

The uncontroverted evidence in this case shows that numerous events must occur before either a local election superintendent or board of registrars is suspended.  First, an election official must commit violations of election law over a multi-year period.  Specifically, the election official must commit at least three violations over two election cycles.  Alternately, the election official must, for at least two election cycles, demonstrate "nonfeasance, malfeasance, or gross negligence in the administration of the elections."  O.C.G.A. § 21-2-33.2(c)(2).  Second, a petition must be filed against the local election superintendent or board of registrars requesting a performance review.  The petition can be filed by the governing authority of the jurisdiction, the Georgia House of Representatives or the Georgia Senate.  Third, the SEB shall conduct a preliminary investigation to

determine if the election official violated the law.  Fourth, and only after the preliminary investigation is completed and sufficient cause exists to find a violation of the law, the SEB conducts a preliminary hearing.  At a preliminary hearing, the SEB must determine if sufficient cause exists to proceed to a full hearing or whether the petition should be dismissed.  Even if a case proceeds to a final hearing, suspension is not guaranteed.  Indeed, a local election superintendent or board of registrars cannot be suspended unless three SEB members find, by a preponderance of the evidence, that the election official committed three violations of law over a two-year period, or three SEB members find, by clear and convincing evidence, that the election official demonstrated nonfeasance, malfeasance or gross negligence in the administration of elections over a two-year period.

In addition to this chain of events that must occur before suspension, Defendants presented undisputed evidence that since the enactment of S.B. 202 in 2021—approximately four years ago—no election official from any county has ever been suspended.  The evidence also showed that none of the Board Member Plaintiffs have been investigated or subject to a performance review.  Indeed, only one county has been subject to a performance review, and that review did not even result in a suspension.  Notably, it is undisputed that Defendants are not currently

investigating any election officials and do not currently intend to suspend any election officials.

After consideration of the uncontroverted evidence, the Court finds that Plaintiffs have failed to show that any injury that could result from the Suspension Rule is certainly impending.  First, the injury is not certainly impending because Plaintiffs' injury, if any, relies on an attenuated chain of possibilities that spans multiple years.  Clapper, 568 U.S. at 410 (finding no standing where the theory of standing relied on a "highly attenuated chain of possibilities").  Plaintiffs simply speculate that an election official will commit the requisite violations over a multi-year period and that a performance review will be initiated.  Plaintiffs further hypothesize that the performance review will yield sufficient evidence of violations and result in a preliminary hearing.  Then, Plaintiffs assume that enough SEB members will find that violations occurred and will actually vote to suspend the election official.  The speculative nature of the claims based on the Suspension Rule is even more evident when considering Count 3, where Plaintiffs allege that injury could occur if a local election superintendent or board of registrars were removed and not replaced, resulting in voters not being able to register to vote before Election Day.  In the Court's view, this type of remote injury is precisely the kind of speculative harm that is insufficient to confer standing.  Second, the

injury is not certainly impending given the absence of any suspensions to date. Indeed, the Court cannot ignore that S.B. 202 was signed into law in 2021, and no election official has ever been suspended. S.B. 202 is no longer new law. Third, the injury is not certainly impending because the undisputed evidence showed that no officials are currently under investigation or pending performance review.

In sum, because Plaintiffs are unable to demonstrate that the threat of injury is both real and immediate, not conjectural or hypothetical, this Court finds that Plaintiffs lack standing to seek declaratory or injunctive relief as to any of their claims relating to the Suspension Rule. To the extent that Defendants argue that they are entitled to summary judgment because any injury caused by the Suspension Rule is speculative, the motion is **GRANTED**.[8]

---

[8] The Court's conclusion is also bolstered by Plaintiffs' Motion to Stay. [Doc. 147]. In that motion, Plaintiffs asked the Court to stay all deadlines in this case until Defendants promulgate the regulations necessary for the enforcement of the Suspension Rule. The Suspension Rule contemplates that the SEB "shall promulgate rules and regulations for conducting such preliminary investigation and preliminary hearing." O.C.G.A. § 21-2-33.2. The statute does not provide for a timeline in issuing those rules. To date, no regulations have been issued concerning the Suspension Rule. Moreover, there is "no current process underway at the SEB to create those rules." [Doc. 157, p. 6]. According to Defendants, the SEB does not have a present need for those regulations because it does not have any current suspensions that it is considering. Id. In the Court's view, the lack of regulations underscores the speculative nature of the claims relating to the Suspension Rule and represents yet another step—in the long chain of events—that must occur before any individual is suspended under the Suspension Rule.

## II.    Counts 4 through 11

In the remaining causes of action, Plaintiffs contest provisions of S.B. 202 that are criminal in nature.  Indeed, violations of those statutes are punishable by either a felony or misdemeanor.  In their Motion for Summary Judgment, Defendants argue that Plaintiffs cannot show traceability or redressability.

"When traceability and redressability are at stake, the key questions are who caused the injury and how it can be remedied."  City of South Miami v. Governor, 65 F.4th 631, 640 (11th Cir. 2023).  For traceability, the Eleventh Circuit Court of Appeals has held that "[t]he injury must be 'fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.'"  Ga. Ass'n of Latino Elected Offs., 36 F.4th at 1115–16 (quoting Lujan, 504 U.S. at 560–61).  Stated another way, traceability requires that the injury must have been caused by the defendant's actions.  Finn v. Cobb Cnty. Bd. of Elections & Registration, 682 F. Supp. 3d 1331, 1339 (N.D. Ga. 2023).  Redressability is a closely related concept, and traceability and redressability often "travel together."  Support Working Animals, Inc. v. Governor of Fla., 8 F.4th 1198, 1201 (11th Cir. 2021).  To show redressability, "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision'" of the court.  Lujan, 504 U.S. at 561 (quoting Simon v. E. Ky.

Welfare Rts. Org., 426 U.S. 26, 38 (1976)).  Particularly relevant here, "[t]o establish traceability and redressability in a lawsuit seeking to enjoin a government official from enforcing the law, a plaintiff must show 'that the official has the authority to enforce the particular provision [being] challenged, such that [the] injunction prohibiting enforcement would be effectual.'"  Dream Defs. v. Gov. of the State of Fla., 57 F.4th 879, 888–89 (11th Cir. 2023) (quoting Support Working Animals, 8 F.4th at 1201).

In their Motion for Summary Judgment, Defendants contend that Plaintiffs cannot meet their burden to show traceability or redressability because Plaintiffs have not named any prosecutorial officials in this suit.  Defendants assert that "regardless of any relief entered against Defendants, Plaintiffs' alleged injury would not be fully addressed because they still [could] have potential criminal charges brought by officials [that] Plaintiffs did not sue."  [Doc. 123-1, p. 21].  Plaintiffs, on the other hand, argue that they have established traceability and redressability because under Georgia law, the Governor is the state official responsible for the enforcement of the laws, has the power to commence criminal prosecutions and has the final authority to direct the Attorney General to "institute and prosecute" on behalf of the state.  [Doc. 134, pp. 14–15].

The Court will begin by addressing the traceability requirement.  As stated previously, "standing requires that the plaintiff's injuries be 'fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party before the court.'"  Walters v. Fast AC, LLC, 60 F.4th 642, 650 (11th Cir. 2023).  While traceability "is not an exact standard," the "requirement is not toothless."  Id.  At the very least, a plaintiff must demonstrate "factual causation between his injuries and the defendant's misconduct," and traceability is lacking "if the plaintiff 'would have been injured in precisely the same way' without the defendant's alleged misconduct."  Id. (emphasis omitted).

Plaintiffs primarily argue that they have established standing because the Governor has enforcement authority.  This Court recognizes that the Governor is vested with chief executive powers.  Among those powers, the Governor has the authority to commence criminal prosecutions and has "the power to direct the Department of Law, through the Attorney General as head thereof, to institute and prosecute in the name of the state such matters, proceedings, and litigations as he shall deem to be in the best interest of the people of the state."  O.C.G.A. §§ 17-1-2, 45-15-35.  Moreover, "[t]he Governor shall take care that the laws are faithfully executed."  Ga. Const. Art. 5, § 2.  This Court also acknowledges that "the governor may be a proper defendant to enjoin the enforcement of a state law when

the governor has sufficient enforcement power to remedy the plaintiff's alleged harm." <u>City of South Miami</u>, 65 F.4th at 644.

In this case, Plaintiffs have only pointed to the Governor's general enforcement authority to establish traceability. The Court is not convinced that this is sufficient. As a general rule, "[a] governor's 'general executive power' is not a basis for jurisdiction in most circumstances" because "[i]f a governor's general executive power provided a sufficient connection to a state law to permit jurisdiction over him, any state statute could be challenged simply by naming the governor as a defendant."[9] <u>Women's Emergency Network v. Bush</u>, 323 F.3d 937, 949 (11th Cir. 2003). In the Court's view, this theory of standing—reliance on the Governor's general authority—"proves entirely too much." <u>Lewis v. Governor of Ala.</u>, 944 F.3d 1287, 1300 (11th Cir. 2019).

Plaintiffs contend that <u>Georgia Latino Alliance for Human Rights v. Governor of Georgia</u>, 691 F.3d 1250 (11th Cir. 2012), and <u>Luckey v. Harris</u>, 860 F.2d 1012 (11th Cir. 1988), require a different result. The Court disagrees. As an initial matter, the procedural posture of this case is different from those cases. Indeed, <u>Georgia Latino Alliance</u> was decided after the plaintiff moved for a

---

[9] The Georgia governor has more authority than the Florida governor. In the Court's view, however, a plaintiff must still allege more than the general authority.

preliminary injunction, and the court considered Luckey at the motion to dismiss stage. Before this Court, however, is a motion for summary judgment. Because the elements of standing are not mere pleading requirements, each standing element must be supported "with the manner and degree of evidence required at the successive stages of the litigation." Lujan, 506 U.S. at 561.

Beyond the differences in the procedural posture of the cases, the cases are distinguishable on another basis. As explained by the Eleventh Circuit in City of South Miami, the plaintiffs in Georgia Latino Alliance demonstrated that the governor "had sufficient contact with the state officers that implemented the law and would presumably mandate its enforcement." City of South Miami, 65 F.4th at 644. The City of South Miami court further stated that the plaintiffs in Luckey showed that the governor had a special prosecutorial role to furnish counsel to indigent defendants in a case involving constitutional protections during criminal prosecutions. Id.

In contrast and despite the advanced procedural posture of this case, Plaintiffs have not presented any evidence that the Governor has any sort of special relationship to S.B. 202 and its enforcement or that the Governor has any specific roles in the enforcement of S.B. 202. The record is also devoid of any facts which would show that the Governor has sufficient contact with the state officers that

implemented the law or would presumably mandate its enforcement. In short, Plaintiffs have done nothing here to link the Governor's general executive authority to S.B. 202. See id. (distinguishing Georgia Latino Alliance and Luckey because the plaintiffs "failed to present any evidence—as they must—that the governor . . . would enforce [the law], or that any enforcement would cause them harm"). As such, Plaintiffs have failed to show traceability.

Also as to the traceability requirement, the Court cannot ignore that Plaintiffs will continue to be harmed in the same manner whether Defendants are enjoined or not. The Eleventh Circuit has held that traceability is lacking "if the plaintiff would have been injured in precisely the same way without the defendant's alleged misconduct." Id. at 645. In Georgia, district attorneys play a significant role in the prosecution of offenses. The district attorney's duty is "to represent the state in all criminal cases in the superior court." Ga. Const. Art. 6, § 8. O.C.G.A. § 15-18-6 requires district attorneys to prosecute all "indictable offenses" and "[t]o review every individual case for which probable cause for prosecution exists and to make a prosecutorial decision available under the law based on the facts and circumstances of each individual case." Thus, even if Defendants could cause some injury here, they "are not alone in this regard" because the district attorneys can continue to bring charges against those who

violate S.B. 202.  <u>ACLU of Fla., Inc. v. Lee</u>, 546 F. Supp. 3d 1096, 1101 (N.D. Fla. 2021).

As to redressability, a plaintiff must demonstrate that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." <u>Support Working Animals</u>, 8 F.4th at 1205.  In deciding whether the redressability requirement is satisfied, a court must first analyze "whether a decision in a plaintiff's favor would 'significant[ly] increase . . . the likelihood' that she 'would obtain relief that directly redresses the injury' that she claims to have suffered." <u>Lewis</u>, 944 F.3d at 1301.  "Second, 'it must be the effect of the court's judgment on the defendant'—not an absent third party—'that redresses the plaintiff's injury, whether directly or indirectly.'" <u>Id.</u> (emphasis omitted). Importantly, "a plaintiff's injury isn't redressable by prospective relief where other state actors, who aren't parties to the litigation, would remain free and clear of any judgment and thus free to engage in the conduct that the plaintiffs say injures them." <u>Support Working Animals</u>, 8 F.4th at 1205.

In analyzing redressability, the question for the Court is whether Plaintiffs' requested relief would significantly increase the likelihood that they would not be prosecuted for violations of S.B. 202.  The answer here is no.  In the Court's view, a judgment against Defendants prohibiting them from enforcing the various

provision of S.B. 202 would not significantly increase the likelihood of redressing Plaintiffs' injuries because "a judgment against [Defendants] would only bind [them], and not other parties not before this Court."  Id.  Problematically for Plaintiffs, every district attorney would still have the ability to bring criminal charges against Plaintiffs.  In other words, even if Defendants were enjoined, the district attorneys would remain independently able to enforce S.B. 202.  An order enjoining Defendants would not, and could not, constrain the district attorneys "who are 'not parties to the suit' and who wouldn't be 'obliged'—at least in any binding sense—'to honor an incidental legal determination the suit produced.'" Lewis, 944 F.3d at 1302.  Critically, Plaintiffs have not presented any evidence that Defendants have any ability to control a local district attorney or to order a district attorney to stop a prosecution.[10]  Thus, even if the Court was to issue a decision in Plaintiffs' favor, S.B. 202 "would remain on the books" and Plaintiffs "would

---

[10] At oral argument, Plaintiffs asserted that it was Defendants' "position that if you enjoin the Governor from enforcing a criminal law that applies statewide, that some errant district attorney is going to prosecute one of the plaintiffs and because of that possibility we don't have standing.  That's absurd."  [Doc. 157, p. 40].  Plaintiffs' argument, however, misses the mark because the Governor has no authority to dictate what a district attorney prosecutes.  Because the district attorneys are not parties to this suit, the Court cannot enjoin them from pursuing violations of S.B. 202.  "[A] decision [that] might persuade actors who are not before the court" to alter their conduct is not enough for redressability.  Haaland v. Brackeen, 599 U.S. 255, 294 (2023).

remain in the same position they were in when they filed the operative complaint."

Support Working Animals, 8 F.4th at 1205.  After review of the undisputed

evidence, the Court finds that Plaintiffs have failed to show that an order enjoining

Defendants would significantly increase the likelihood that they would not be

injured.[11]  As such, Plaintiffs have failed to satisfy the redressability requirement.

For the reasons explained above, Defendants have failed to establish both

traceability and redressability.  As such, to the extent that Defendants argue that

they are entitled to summary judgment as to Counts 4 through 11, the motion is

**GRANTED**.[12]

## CONCLUSION

Because Plaintiffs have failed to demonstrate standing, Defendants' Motion

for Summary Judgment [Doc. 123] is **GRANTED**, and the claims are

---

[11] The Court acknowledges that the redressability requirement "does not demand that the redress sought by a plaintiff be complete."  Moody v. Holman, 887 F.3d 1281, 1287 (11th Cir. 2018).  Despite this standard, Plaintiffs have not met their burden.

[12] Plaintiffs additionally argue that the traceability and redressability requirements are satisfied because the SEB can institute civil proceedings which can result in fines and referrals to the Attorney General for criminal prosecutions.  Even if the SEB can institute civil proceedings, Plaintiffs will continue to be harmed by the threatened enforcement of S.B. 202 by the district attorneys.  Moreover, Plaintiffs failed to present any evidence that the SEB has referred any cases to the Attorney General or levied any fines.  This argument thus fails for the same reasons that the Governor's general enforcement authority argument fails.

**DISMISSED WITHOUT PREJUDICE.**[13]  The Clerk is **DIRECTED** to close

this case.

      **SO ORDERED** this 18th day of March, 2025.

_____

**J. P. BOULEE**
United States District Judge

---

[13] A dismissal for lack of standing is without prejudice.  Stalley ex rel. United States v. Orlando Reg'l Healthcare Sys., Inc., 524 F.3d 1229, 1232 (11th Cir. 2008).